### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

DREW DIXON,

        Plaintiff,                          Case No.:     1:23-cv-09878-VEC

v.

ANTONIO MARQUIS "L.A." REID,

        Defendant.

_____ /


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS COUNTS II AND III AND TO STRIKE

Plaintiff Drew Dixon ("Plaintiff" or "Ms. Dixon"), by and through her undersigned counsel, files this response in opposition to Defendant Antonio Marquis "L.A." Reid's ("Defendant" or "Mr. Reid") motion to dismiss Counts II and III and to strike certain statutory references from the Complaint.  *See* Dkt. 18, 19.  Plaintiff requests oral argument on this motion.


Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ........................................................................................................................ 6

I.     Defendant's Motion to Dismiss Counts II and III for Failure to State a Claim Should Be Denied............................................................................................................... 6

     A.     Legal Standard ..................................................................................... 7

     B.     Counts II and III Are Covered by the Adult Survivors Act Which Renders the Claims Timely ....................................................................... 7

     C.     The Complaint States a Claim for False Imprisonment........................... 8

     D.     The Complaint States a Claim for Intentional Infliction of Emotional Distress... 10

II.     Defendant's Motion to Dismiss Count II for Improper Venue Should Be Rejected......... 13

     A.     Legal Standard ..................................................................................... 14

     B.     Venue Lies in the Southern District of New York................................. 14

III.     Defendant's Motion to Strike Is Misplaced ..................................................... 16

CONCLUSION...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acco, Ltd. v. Rich Kids Jean Corp.*,
  2016 WL 3144053 (S.D.N.Y. Apr. 11, 2016) ........................................................................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 7

*Bonner v. Guccione*,
  916 F. Supp. 271 (S.D.N.Y. 1996) ...................................................................................... 11

*Canosa v. Ziff*,
  2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ................................................................... 11, 12

*Cartier v. Micha, Inc.*,
  2007 WL 1187188 (S.D.N.Y. Apr. 20, 2007) ..................................................................... 14

*Chanko v. Am. Broad. Companies Inc.*,
  27 N.Y.3d 46 (2016) ............................................................................................................ 12

*Cody v. Mello*,
  59 F.3d 13 (2d Cir.1995) ...................................................................................................... 16

*Collins v. Willcox, Inc.*,
  600 N.Y.S.2d 884 (Sup. Ct. 1992) ....................................................................................... 11

*Conboy v. AT & T Corp.*,
  241 F.3d 242 (2d Cir. 2001) ................................................................................................ 12

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
  307 F. Supp.2d 553 (S.D.N.Y. 2004) .................................................................................. 14

*Connell v. City of New York*,
  230 F.Supp.2d 432 (S.D.N.Y. 2002) ................................................................................... 16

*Dicks v. Cooks Junction, Inc.*,
  2023 WL 2775830 (S.D.N.Y. Apr. 4, 2023) ....................................................................... 15

*Doe v. Alsaud*,
  224 F. Supp. 3d 286 (S.D.N.Y. 2016) ............................................................................... 9, 10

*Doe v. New York City Dep't of Educ.*,
  2024 WL 149289 (E.D.N.Y. Jan. 12, 2024) .......................................................................... 8

*Eskridge v. Diocese of Brooklyn*,
  210 A.D.3d 1056, 180 N.Y.S.3d 179 (2022) ..................................................... 8, 11

*Exovir, Inc. v. Mandel*,
  1995 WL 413256 (S.D.N.Y. July 12, 1995) ......................................................... 14

*Fischer v. Maloney*,
  43 N.Y.2d 553 (1978) ............................................................................................ 12

*Gerzog v. London Fog Corp.*,
  907 F. Supp. 590 (E.D.N.Y. 1995) ....................................................................... 12

*Gilani v. National Ass'n of Securities Dealers, Inc.*,
  1997 WL 473383 (S.D.N.Y. Aug.19, 1997) ......................................................... 12

*Giuffre v. Andrew*,
  579 F. Supp. 3d 429 (S.D.N.Y. 2022) ................................................................... 13

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) ................................................................................. 14

*Hough v. Petty*,
  2023 WL 7687866 (E.D.N.Y. Oct. 10, 2023) ..................................................... 7, 8

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ............................................................................................ 12

*In re Skat Tax Refund Scheme Litig.*,
  356 F. Supp. 3d 300 (S.D.N.Y. 2019) ................................................................... 13

*Kashef v. BNP Paribas S.A.*,
  925 F.3d 53 (2d Cir. 2019) ..................................................................................... 7

*Kaul v. Brooklyn Friends Sch.*,
  220 A.D.3d 936 (2023) ........................................................................................... 8

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) ................................................................................. 17

*Marfia v. T.C. Zirant Bankasi*,
  100 F.3d 243 (2d Cir. 1996) ................................................................................. 16

*Matvejs v. Martin County Sheriff's Office*,
  2006 WL 3755202t (S.D. Fla. 2006) ..................................................................... 11

*Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*,
  55 F. Supp. 2d 177 (S.D.N.Y. 1999) ..................................................................... 10

*Murphy v. Am. Home Prod. Corp.*,
  58 N.Y.2d 293 (1983) .................................................................................................. 12

*Olszewski v. Bloomberg, L.P.*,
  1997 WL 375690 (S.D.N.Y. July 7, 1997) ................................................................... 13

*People v. Freeman*,
  34 Misc. 3d 1217(A), 950 N.Y.S.2d 493 (Crim. Ct. 2012) ........................................ 19

*Ponticelli v. Zurich Am. Ins. Grp.*,
  16 F. Supp. 2d 414 (S.D.N.Y. 1998) ............................................................................ 12

*Stuto v. Fleishman*,
  164 F.3d 820 (2d Cir. 1999) ......................................................................................... 12

*Turner v. Manhattan Bowery Mgmt. Corp.*,
  28 N.Y.S.3d 651 (Sup. Ct. 2015) ................................................................................. 11

*Wait v. Beck's N. Am., Inc.*,
  241 F. Supp. 2d 172 (N.D.N.Y. 2003) .......................................................................... 11

*Wilkie v. Village of Hempstead*,
  2023 WL 5952056 (E.D.N.Y. June 20, 2023) ............................................................. 7, 8

## **Statutes**

28 U.S.C. § 1391(b)(2) .................................................................................................... 14

N.Y. C.P.L.R. § 214-j ................................................................................................... 1, 7

New York Penal Law § 135 .............................................................................................. 8

## **Rules**

Fed. R. Civ. P. 12(b)(3) ............................................................................................ 13, 14

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 6, 13

Fed. R. Civ. P. 12(f) ................................................................................................... 13, 16

Fed. R. Civ. P. 8(d)(2) .................................................................................................... 13

## INTRODUCTION

Defendant's motion reflects a fundamental misunderstanding of New York's Adult Survivors Act ("ASA"), which empowers adult survivors of sexual assault to sue their abusers for "every civil claim or cause of action…alleging intentional or negligent acts or omissions" caused by certain sexual offenses, regardless of when the abuse occurred.  N.Y. C.P.L.R. § 214-j.  His contention that Plaintiff's false imprisonment (Count II) and intentional infliction of emotional distress ("IIED") (Count III) counts are "time-barred" falls flat in the face of the ASA's sweeping command to revive "every [] claim" arising from sexual abuse.  Dkt. 19 ("Mot.") at 2.  Not only does the ASA clearly cover the conduct that is the basis for Plaintiff's IIED claim (Mr. Reid's two sexual assaults of Ms. Dixon constituting extreme and outrageous conduct) and false imprisonment claim (Mr. Reid confining Ms. Dixon in his private plane and car to sexually assault her), but New York courts have routinely and explicitly found that the ASA covers such claims.  *See infra* at 7–8 (citing cases finding that false imprisonment and IIED claims are covered under ASA).

Defendant's other arguments fare no better.  Plaintiff's Complaint alleges sufficient facts to state a claim for both false imprisonment and IIED, and venue for her false imprisonment claim lies properly in the Southern District of New York, where the acts giving rise to both sexual assaults occurred.  Finally, Defendant moves to strike from Count I certain citations to Article 130 of New York's penal code.  As explained below, while Plaintiff is not opposed to removing reference to some of these citations, Defendant's efforts are misguided where the Complaint already pleads sufficient factual allegations of conduct alleging far more than a single violation of Article 130, which is all that's required of Plaintiff under the ASA.  *See infra* at 16–19.  The Court should deny Defendant's motion.

## FACTUAL BACKGROUND

Ms. Dixon is a prolific and talented music producer, executive, and entrepreneur.  Dkt. 1 ("Compl.") ¶¶ 1, 42, 44, 62.  A savant, her talent for listening to and analyzing music developed into skills that helped give the world hits such as "American Boy" (Estelle featuring Kanye West), "My Love Is Your Love" (Whitney Houston), "Maria Maria" (Carlos Santana), and "A Rose Is Still a Rose" (Aretha Franklin featuring Lauryn Hill), just to name a few.  *Id.* ¶ 1.  Tragically, Ms. Dixon's career has been derailed by sexual assault and harassment at the hands of Mr. Reid, a wealthy and powerful record executive with tremendous influence in the music industry still today. *Id.* ¶¶ 2, 25, 37, 77.

Ms. Dixon and Mr. Reid first met in 1993 at the mastering session of the band Outkast.  *Id.* ¶ 14.  During this first meeting, their rapport was professional, productive, and mutually respectful. *Id.* ¶ 22.  Mr. Reid indicated that he was impressed by Ms. Dixon's drive to secure a publishing deal despite her young age.  *Id.* ¶ 14.  But before Ms. Dixon could pursue the deal, she was recruited to Def Jam Recordings as a Director of Artists & Repertoire.  *Id.*

While working at Def Jam, Ms. Dixon was hardworking and successful.  *Id.* ¶¶ 15, 17.  But at the height of her success in 1995, she was brutally raped by Def Jam's co-founder Russell Simmons and forced to leave her hard-earned position.  *Id.* ¶ 18.  Ms. Dixon reeled for several months following the rape by Mr. Simmons before she was able to use her talent and tenacity to secure a Senior Director of Artists & Repertoire at Arista Records, where she was hired by legendary Arista Records founder, Clive Davis, in 1996.  *Id.* ¶¶ 2, 19, 21.  A few years later, Mr. Davis, impressed by Ms. Dixon's exceptional work ethic and her consistent ability to identify hit songs, promoted her to Vice President of Artists & Repertoire when she was just 28 years old.  *Id.* ¶ 19.

In this role, Ms. Dixon reported directly to Mr. Davis and had a professional and mutually respectful working relationship with him and the other Arista executives and staff.  *Id.* ¶ 21.  She also interacted with Mr. Reid, whose Atlanta-based label, LaFace Records, was a joint venture with Arista.  *Id.* ¶ 22.  As before, their rapport was professional, creative, productive, and mutually respectful.  *Id.*

In 2000, when Ms. Dixon learned that Mr. Reid would replace Clive Davis as her boss, she was torn between finishing her remaining contract at Arista Records versus following Mr. Davis to J Records, which would require signing a new five-year contract.  *Id.* ¶ 23.  Ultimately, her desire to start her own label, a recent cancer diagnosis, and a kidney removal surgery led her to stay at Arista Records and report to Mr. Reid for the remaining eighteen months in her deal.  *Id.* ¶ 24.

Unexpectedly, Mr. Reid began sexualizing and harassing Ms. Dixon when he became CEO of Arista in 2000.  *Id*. ¶ 39.  In fact, Mr. Reid's changed behavior towards Ms. Dixon began even before his official first day at Arista Records when he asked Ms. Dixon to join him and his wife to look at new apartments in New York.  *Id.* ¶ 40.  When Ms. Dixon arrived at the first apartment, she realized that Mr. Reid's wife would not be joining them.  *Id.* ¶ 41.  During the entire afternoon of showings, Mr. Reid pervasively made flirtatious comments to Ms. Dixon, catching even the realtor's attention.  *Id.*

In January 2001, Mr. Reid's behavior escalated when Arista Records held a company-wide retreat in Puerto Rico.  *Id.* ¶ 42.  Everything in terms of arrangements for the trip originated in the territory of the Southern District of New York in Manhattan:  Arista Records's staff based in Manhattan planned and booked the retreat, and subsequently made the flight arrangements.  *Id.*  It was also the Manhattan-based Vice President of Artists & Repertoire Administration, Karen Kwak,

who came into Ms. Dixon's office at Arista Records offices located at 6 West 57th Street NY, NY 10019 in the Southern District of New York, to tell her not to book a commercial flight to the retreat because Mr. Reid wanted several senior executives to join him on a private plane to Puerto Rico so they could review presentations.  *Id.*  When Ms. Dixon arrived at the plane, she was confused to find Mr. Reid all alone.  *Id.* ¶ 43.  He immediately began flirting with her, so she went to the plane's bathroom and waited for the other executives to arrive.  *Id.*  At some point, she had to exit the bathroom.  *Id.*  Mr. Reid asked her to sit next to him to go over materials for the presentation, and then he began playing with her hair, kissing her, and then digitally penetrated her vulva without her consent.  *Id.*  Ms. Dixon spent the rest of the flight in a daze not aware of who, if anyone, from the company joined the flight.  *Id.*  She was airborne, traumatized, and trapped with Mr. Reid in the sky, with no way out.

Upon arrival in Puerto Rico, and for the duration of the trip, Ms. Dixon took steps to avoid any chance of Mr. Reid cornering her alone again.  *Id.* ¶ 44.  She never occupied her assigned quarters, even though they were on par with the other senior executives as luxury accommodations, and instead stayed in her assistant's room.  Mr. Reid noticed and complained that Ms. Dixon and her assistant were attached at the hip.  *Id.*  Ms. Dixon stuck with her strategy, which worked during the retreat.  *Id.*  She flew back to her residence in Manhattan on a commercial flight.  *Id.*

After Ms. Dixon continued to avoid being alone with Mr. Reid while still trying to be cordial and do her job.  *Id.* ¶ 45.  She did not want to upset or offend Mr. Reid with only a few months left in her Arista Records contract.  *Id.* ¶¶ 45–46.  She knew the pitfalls of resigning and rebuilding, and just tried to do her job, signing stars and producing hit records, which she hoped would allow her to secure a comparable job at another record company.  *Id.* ¶ 46.  Mr. Reid did not let her do her job.  *Id.* ¶ 47.  Realizing that Ms. Dixon was avoiding him, Mr. Reid began to retaliate

against her by embarrassing her in front of others or otherwise being curt and unprofessional, and above all, by blocking her professional progress. *Id.* At that point, Ms. Dixon began to plan her escape from the music industry altogether, but unfortunately not before Mr. Reid would assault her again. *Id.*

Several months after the first assault on Mr. Reid's private plane, Mr. Reid sexually assaulted Ms. Dixon a second time. *Id.* ¶ 48. After a work event in Manhattan, Mr. Reid insisted that Ms. Dixon join him for a ride home so they could continue to discuss work and so he could listen to the demo of a new artist that she had discovered. *Id.* Since it was not a very long ride and because Ms. Dixon knew Mr. Reid's driver would be present, she agreed. *Id.* She thought she would be safe from Mr. Reid under these circumstances, but she was wrong. *Id.* ¶¶ 48–49.

Shortly into the ride, Mr. Reid again, without Ms. Dixon's permission or consent, began to grope and kiss Ms. Dixon, who squirmed and pushed him away as Mr. Reid's driver stared straight ahead. When Mr. Reid complained and became visibly irritated with her lack of compliance, Ms. Dixon froze. Mr. Reid again digitally penetrated Ms. Dixon's vulva without her consent. *Id.* ¶ 49. Again, she was trapped with Mr. Reid in a moving vehicle with no way out. Once the car stopped at her Manhattan residence at 425 Park Avenue South, Ms. Dixon jumped out while taking care not to anger Mr. Reid. *Id.* ¶ 50. Alone in her building, Ms. Dixon cried. *Id.* She told only her life coach about Mr. Reid's sexual assaults. *Id.* ¶ 51. Back then, she knew coming forward as a victim of assault by a music mogul like Mr. Reid would be career-ending. *Id.*

Following the second sexual assault in Mr. Reid's car, Ms. Dixon intensified her efforts to avoid Mr. Reid. *Id.* ¶ 50. However, Mr. Reid persisted in trying to corner her alone by inviting her to meetings in his hotel room night after night. *Id.* ¶ 53. When Ms. Dixon resisted his efforts, Mr. Reid grew angry and increasingly hostile towards her, as well as to her artists, and her ideas.

*Id.*  This was a drastic reversal from Mr. Reid's enthusiasm about her creative taste and instincts over the years, and harm came from the fact that Mr. Reid would directly respond to Ms. Dixon's rejection of his sexual advances by punishing the artists Ms. Dixon had already signed or by blocking the artists she attempted to sign.  *Id.* ¶ 54.  This included future superstars like Kanye West, John Legend, and Toya.  *Id.* ¶¶ 55–57.

Once she realized that Mr. Reid would continue to stifle her career and the prospects of artists she discovered as punishment for refusing his sexual advances, Ms. Dixon gave up on her job at Arista Records and her dream of starting her own label.  *Id.* ¶ 57.  In 2002, she left Arista Records to pursue an MBA at Harvard Business School.  *Id.*

After graduating from Harvard with honors, Ms. Dixon tried to return to the music industry, this time working with John Legend as a General Manager at Homeschool Records, resulting in hits like "American Boy" (Estelle ft. Kanye West).  *Id.*  But even in this new role, Ms. Dixon could not escape Mr. Reid and his enablers.  *Id.* ¶ 59.  She ran into him at music industry events and as a result, found them unbearable to attend although it was necessary to promote and market her work.  *Id.*  Moreover, Mr. Reid continued to stifle her career by using his influence and music industry allies to hamper the prospects of artists Ms. Dixon discovered.  *Id.* ¶ 63.  Even now, decades later, Mr. Reid is punishing Ms. Dixon for having refused to submit to his sexual demands. *Id.*

## ARGUMENT

### I.  Defendant's Motion to Dismiss Counts II and III for Failure to State a Claim Should Be Denied

Defendant moves to dismiss Plaintiff's false imprisonment (Count II) and IIED (Count III) claims and argues that they were neither timely brought nor adequately pled under Rule 12(b)(6). His arguments are unavailing—and, in the case of his "timeliness" argument, blatantly wrong.

## A.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).   The Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."   *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 58 (2d Cir. 2019).

## B.      Counts II and III Are Covered by the Adult Survivors Act Which Renders the Claims Timely

As a threshold matter, Plaintiff's claims are timely brought because they are tethered to New York's Adult Survivors Act which provided a one-year re-opening of the statute of limitations period for many claims including false imprisonment (Count II) and IIED (Count III).   Defendant tries to argue that false imprisonment and IIED claims are not covered by the ASA and therefore untimely.   Mot. at 7–8.   But New York caselaw directly contradicts Defendant's assertion relating to the breadth of the ASA.

To start, the plain text of the ASA states that it revives "*every civil claim or cause of action* brought against any party *alleging intentional or negligent acts or omissions* by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense[.]"   N.Y. C.P.L.R. § 214-j (emphasis added);   *Hough v. Petty*, 2023 WL 7687866, at *3 n.4 (E.D.N.Y. Oct. 10, 2023).   Thus, as with its analogous counterpart in the Child Victims Act, N.Y. C.P.L.R. § 214-g ("CVA"), the ASA applies to any claim that "arise[s] from sexual abuse that occurred."   *See Hough*, 2023 WL 7687866, at *3 (cleaned up); *see also Wilkie v. Village of Hempstead*, 2023 WL 5952056, at *8 (E.D.N.Y. June 20, 2023) (finding persuasive CVA

authority when interpreting ASA "[g]iven that the relevant statutory language in the CVA is identical to that of the ASA.").  Courts applying New York law have held that this includes both claims for false imprisonment and IIED.  *See, e.g.*, *Wilkie*, 2023 WL 5952056, at *7–9 (finding that ASA applied to claim of false imprisonment; "There is then no reason that an intentional tort like false imprisonment, which more obviously arises from the conduct that constitutes an offense under N.Y. Penal L. § 130, would not be revived by the ASA.");  *Hough*, 2023 WL 7687866, at *3 n.4 (citing *Wilkie*);  *Eskridge v. Diocese of Brooklyn*, 210 A.D.3d 1056, 1058, 180 N.Y.S.3d 179 (2022) (finding that IIED claim can be brought under analogous CVA); *Kaul v. Brooklyn Friends Sch.*, 220 A.D.3d 936, 939 (2023) (same); *Doe v. New York City Dep't of Educ.*, 2024 WL 149289, at *4 n.1 (E.D.N.Y. Jan. 12, 2024) (same; "there is no question that the CVA revives . . . IIED claims premised on" "sexual assault").

Defendant fails to mention any of these cases and indeed fails to cite a single case decided *after* the passage of the Adult Survivors Act.  *See* Mot. at 8 (latest cited case decided in 2011). Both Count II and Count III are covered by the ASA and were brought before the expiration of the one-year statute of limitation window.  Accordingly, the Court should reject Defendant's timeliness arguments.

### C.    The Complaint States a Claim for False Imprisonment

Defendant also argues that Plaintiff's false imprisonment claim should be dismissed because the Complaint "does not sufficiently state a recognizable cause of action" under New York Penal Law § 135.  Mot. at 8.  This argument is a red herring.  The ASA "by its plain language, revives 'every *civil* claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense.'"  *Wilkie*, 2023 WL

5952056, *7 (emphasis added).  So "while conduct that gives rise to injury must be a sexual offense, the civil claim itself need not be synonymous with § 130." *New York City Dep't of Educ.*, 2024 WL 149289, at *4.  Thus, Plaintiff must satisfy the elements of a civil claim for false imprisonment under New York law, not the elements of the crime of unlawful imprisonment under the New York Penal Law.  She does this and more.

To state a claim for false imprisonment under New York law, a plaintiff "must show that (1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Doe v. Alsaud*, 224 F. Supp. 3d 286, 295 (S.D.N.Y. 2016) (internal citations omitted).

Plaintiff's Complaint clearly articulates that Defendant intended to confine her on his plane and in his car.  She was deceived into boarding Defendant's private plane by Karen Kwak at Mr. Reid's direction.  Compl. ¶¶ 42, 43.  Ms. Kwak falsely told Plaintiff that a group of Arista Records executives would be flying together on the plane to discuss work, when in reality this was a machination by Defendant to get Plaintiff on the plane for a period of time alone so he could sexually assault Plaintiff.  *Id.* ¶¶ 42–44, 85.  After deceiving Plaintiff into boarding the plane with the false pretense that their colleagues would be joining them, Defendant intentionally confined her in his plane by virtue of it being a confined environment and proceeded to sexually assault her.  *Id.* ¶¶ 43, 85.  Plaintiff was aware of this confinement, did not consent to it, and the confinement was not otherwise privileged, thus satisfying the elements of a false imprisonment claim.  *Alsaud*, 224 F. Supp. 3d at 295.  To the extent Defendant argues Plaintiff consented to board his plane, any such consent was gained through deception and withdrawn once Defendant began sexually assaulting Plaintiff.

Similarly, Defendant lured and confined Plaintiff in his car under the false pretense of listening to music for work purposes.  Soon after he had her confined, Defendant began to sexually assault her.  When Plaintiff pushed him away, Defendant grew upset at her resistance.  Again, this assault satisfies the elements of false imprisonment under New York law:  Defendant intentionally confined Plaintiff, she was conscious of this confinement, she did not consent to it, and the confinement was not otherwise privileged.  *See Alsaud*, 224 F. Supp. 3d at 295 (granting Plaintiff's motion for summary judgment on civil false imprisonment claim where Defendant intentionally confined her without her consent and without privilege by subjecting her to unwanted sexual contact).

This conclusion is supported by the Court's analysis in *Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*, 55 F. Supp. 2d 177 (S.D.N.Y. 1999), an action involving a false imprisonment claim.  In this case, the plaintiff's co-manager enclosed them alone in the managers' office and "made 'unwelcomed verbal remarks and physical contacts, including pulling her close to him and attempting to kiss her, pinning her against a filing cabinet, trying to place her hand on his genitals.'"  *Moore*, 55 F. Supp. 2d at 187.  The defendant moved to dismiss this claim for failure to state a claim, and the Court denied his request, reasoning that from these facts it was "reasonable to infer [the defendant's] intent as well as [the plaintiff's] consciousness and lack of consent."  *Id.*  The same is true here.  Ms. Dixon's allegations satisfy the elements of false imprisonment under New York law, and this claim should not be dismissed.

**D.      The Complaint States a Claim for Intentional Infliction of Emotional Distress**

Plaintiff has likewise properly pled her IIED claim.  "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4)

severe emotional distress." *Eskridge*, 210 A.D.3d at 1057–58.  Defendant's conduct in forcibly touching and making bodily contact with Ms. Dixon by fondling her beneath her clothes and subjecting her to digital penetration of her vulva without her consent on two occasions was extreme and outrageous, and caused Plaintiff severe emotional distress.  *See* Compl., *e.g.*, ¶¶ 2, 43, 49, 89–90.

Defendant's main argument appears to be that his sexual assault of Plaintiff on two occasions as well as a continuous pattern of unwanted advances and sexualization was not so extreme and outrageous as to justify an IIED claim.  Mot. at 7.  But that question of degree is an issue of fact that cannot be decided on the pleadings.  *See, e.g.*, *Wait v. Beck's N. Am., Inc.*, 241 F. Supp. 2d 172, 181 (N.D.N.Y. 2003) (question of degree of outrageousness could not be decided at the motion-to-dismiss stage; declining to dismiss IIED claim); *Matvejs v. Martin County Sheriff's Office*, 2006 WL 3755202, at *4 (S.D. Fla. 2006) (same).  In *Wait*, for example, the district court found that the plaintiff adequately alleged "a continuing course of sexual harassment, unwanted touching, unwarranted reprimands, interference with plaintiff's job performance, and other conduct that may state a claim for the intentional infliction of emotional distress."  241 F. Supp. 2d at 181.  Here, too, Ms. Dixon has pled detailed factual allegations about Defendant's continuous stream of sexual assaults and harassment on Ms. Dixon that are more than sufficient to state an IIED claim.[1]

---

[1] The extreme and outrageous element of an intentional infliction of emotional distress claim is satisfied where a plaintiff alleges a continuous nature of abusive conduct. *Canosa v. Ziff*, 2019 WL 498865, at *8 (S.D.N.Y. Jan. 28, 2019); *Bonner v. Guccione*, 916 F. Supp. 271, 276–78 (S.D.N.Y. 1996) (entire course of conduct alleged in the aggregate constituted IIED, not any given individual act); *Turner v. Manhattan Bowery Mgmt. Corp.*, 28 N.Y.S.3d 651, at *10 (Sup. Ct. 2015) (while each individual act committed by defendants was not actionable, "when aggregated over time, the continuous nature of the conduct may make it sufficiently outrageous that a jury could reasonably find in plaintiffs' favor on the emotional distress allegation"); *Collins v. Willcox, Inc.*, 600 N.Y.S.2d 884, 886 (Sup. Ct. 1992) (same).  For example, in *Canosa*, the court found an

The cases Defendant cites do not move the needle—notably, not a single one involves a court dismissing an IIED claim based on sexual battery allegations at the motion-to-dismiss stage. *See* Mot. at 5–7 (citing, *e.g.*, *Conboy v. AT & T Corp.*, 241 F.3d 242, 258–59 (2d Cir. 2001) (finding that plaintiffs' "harass[ment] . . . [by] telephone calls from debt collectors" where they were "not physically threatened, verbally abused, or publicly humiliated in any manner" was insufficient for IIED claim); *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 50 (2016) (IIED claim concerned filming and broadcast of patient without permission); *Howell v. New York Post Co.*, 81 N.Y.2d 115, 117–18 (1993) (similar); *Stuto v. Fleishman*, 164 F.3d 820, 829 (2d Cir. 1999) (IIED claim concerned actions taken by OWCP officials in terminating worker's compensation benefits; "The individual defendants here neither verbally abused, physically threatened, nor publicly humiliated Stuto"); *Fischer v. Maloney*, 43 N.Y.2d 553, 556 (1978) (IIED claim for bringing allegedly malicious defamation action); *Murphy v. Am. Home Prod. Corp.*, 58 N.Y.2d 293, 303 (1983) (wrongful discharge).  The only case even remotely related in subject matter—*Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414 (S.D.N.Y. 1998), an employment discrimination case— is procedurally distinguishable, as it was decided at the summary judgment stage.  But even here the district court found that IIED claims involving workplace harassment will survive if "sexual battery [is] alleged."  *Id.* at 441 (collecting cases including *Gilani v. National Ass'n of Securities Dealers, Inc.*, 1997 WL 473383, at *14 (S.D.N.Y. Aug.19, 1997) (observing that New York courts have found IIED claims in the employment context well-pled that "involve allegations of more significant battery, or improper physical contact"); *Gerzog v. London Fog Corp.*, 907 F. Supp. 590,

---

actionable IIED claim based on plaintiff's allegations of a "course of intimidating and abusive conduct by [the defendant] spanning August 2010 to August 2017." 2019 WL 498865, at *8.  Just as in *Canosa*, even if Defendant's actions were not actionable alone, in the aggregate they present a claim for IIED.

604 (E.D.N.Y. 1995) (same); and *Olszewski v. Bloomberg, L.P.*, 1997 WL 375690, at \*7 (S.D.N.Y. July 7, 1997) (permitting IIED claim where plaintiff alleged that she was raped and pressured not to reveal that fact after defendant became her supervisor)).  That is exactly what Plaintiff has alleged here.

Defendant alternatively argues that Plaintiff's IIED claim is "duplicative" of her other counts.  Mot. at 12.  But a plaintiff "may plead claims that provide alternative bases for relief," and "a claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other."  *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019); *see also* Fed. R. Civ. P. 8(d)(2); *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 452 (S.D.N.Y. 2022) (because "any risk of duplicative recovery may be resolved by jury instructions . . . battery and IIED claims routinely proceed in tandem under New York law").  Plaintiff has adequately stated a claim for IIED, so Defendant's arguments to the contrary should be rejected.

## II.   Defendant's Motion to Dismiss Count II for Improper Venue Should Be Rejected

Defendant also moves to dismiss Plaintiff's false imprisonment count on improper venue grounds pursuant to Rule 12(b)(3).[2]  Mot. at 4.  This request too should be rejected.  Because the vast majority of the events giving rise to both instances of Mr. Reid falsely imprisoning Ms. Dixon occurred in Manhattan, venue is proper here in the Southern District of New York.

---

[2] Defendant failed to disclose in the parties' January 4, 2024, Joint Letter submission that he would be filing a 12(b)(3) motion to dismiss for improper venue.  *See* Dkt. 15.  Pursuant to the Court's Notice of Initial Pretrial Conference, the parties were ordered to "address[] . . . any contemplated motions" within the Joint Letter.  Dkt. 6 ¶ 2.  While Defendant explicitly listed that he contemplated filing motions "for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6)" and "to strike pursuant to Federal Rules of Civil Procedure 12(f)," among others, he conspicuously did not enumerate a motion to dismiss pursuant to 12(b)(3).  Dkt. 15 at 2–3.  And while it's possible that Defendant only contemplated moving for dismissal on 12(b)(3) grounds in the four days after filing the Joint Letter and before submitting the instant motion, Defendant also failed to seek amendment of the Letter or otherwise inform the Court or Plaintiff that he contemplated bringing an improper venue motion.

A.      **Legal Standard**

"On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Cartier v. Micha, Inc.*, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007) (internal citations omitted). "Absent a formal hearing on the motion, a plaintiff need only make a prima facie showing of venue to defeat the motion." *Id.* at *2 (*citing Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "All facts must be construed in a light most favorable to the plaintiff." *Cartier*, 2007 WL 1187188, at *2 (citing *Exovir, Inc. v. Mandel*, 1995 WL 413256, at *1 (S.D.N.Y. July 12, 1995)). "In ruling on the motion the court may rely on facts and consider documents outside the complaint." *Cartier*, 2007 WL 1187188, at *2 (citing *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp.2d 553, 555 (S.D.N.Y. 2004)). "Where a plaintiff asserts multiple claims, venue must be proper as to each of the claims asserted, but a common factual basis between a claim where venue is proper and one where venue is improper may defeat dismissal of a claim for improper venue." *Cartier*, 2007 WL 1187188, at *2 (internal citations omitted).

B.      **Venue Lies in the Southern District of New York**

Under these standards, Plaintiff has sufficiently alleged facts showing that venue is proper in the Southern District of New York for her false imprisonment count. Defendant insists that the Complaint is "unclear" as to where the exact location of the two sexual assaults occurred. Mot. at 4. But Defendant fails to consider the totality of the allegations giving rise to the assaults—which occurred in Manhattan.

At issue is 28 U.S.C. § 1391(b)(2), the venue statute. "When a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those

claims." *Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830, *5 (S.D.N.Y. Apr. 4, 2023) (internal citations omitted).  "Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Id.*  In other words, significant events or omissions material to those claims should have occurred in the district in question.  *See id.*

Here, while Defendant's first false imprisonment of Plaintiff took place in flight on his private plane, the acts that made this unlawful confinement possible took place in Manhattan within the Court's territorial jurisdiction in the Southern District of New York.  As described in the Complaint and above, the planning, scheduling, and booking for the Arista Records retreat was completed by Arista Records staff based in Manhattan at an address located in the Southern District of New York.  *See supra* at 3–4; Compl. ¶¶ 42, 43.  Karen Kwak, the Manhattan-based administrator who deceived Ms. Dixon into believing she and Mr. Reid would be travelling to Puerto Rico with a group of executives, told her of this fake plan at the Arista Records office in Manhattan, which is located in the Southern District of New York.  *Id.*  Thus, a substantial part of the acts associated with Mr. Reid's first false imprisonment of Ms. Dixon occurred within the Southern District of New York—without which the confinement would not have been possible.

The same holds true for Defendant's second false imprisonment of Plaintiff, which took place in Manhattan, which is within the Court's geographic jurisdiction.  In 2001, Ms. Dixon resided at 425 Park Avenue South, Manhattan, New York, 10016.  Mr. Reid's chauffeur drove Ms. Dixon and Mr. Reid to this address following their work event in Manhattan, which is also within the Court's geographic jurisdiction.  *See supra* at 5; Compl. ¶¶ 48–50.  Taking these substantial acts together—as well as viewing the Complaint in the light most favorable to Plaintiff—it is clear that venue is proper in the Southern District of New York for Plaintiff's false imprisonment count.

**III.     Defendant's Motion to Strike Is Misplaced**

Finally, Defendant has moved to strike certain citations to New York Penal Code Article 130 in Count I.  As set forth in the Complaint, Defendant's actions "constitute sexual offenses as defined in Article 130, including but not limited to aggravated sexual abuse, criminal sexual acts, forcible touching, sexual abuse, sexual assault, and sexual misconduct, inasmuch as Defendant intentionally and forcibly digitally penetrated and touched sexual and intimate parts of Ms. Dixon's body for his own sexual gratification."  Compl. ¶ 81.  Defendant contends that Plaintiff "fails to state a cause of action in support of" various citations to Article 130.  Mot. at 8.  But again, Defendant fails to appreciate that the ASA is a revival statute of *civil* claims that need only be supported by conduct alleging a single violation of Article 130.  *See New York City Dep't of Educ.*, 2024 WL 149289, at *4 ("the civil claim itself need not be synonymous with § 130" so long as the "conduct that gives rise to injury [is] a sexual offense").  Count I easily clears this hurdle.  At any rate, and with some exception, Plaintiff does not oppose striking from paragraph 81 certain Article 130 citations, as explained below.  But Defendant's request at large does not meet the Second Circuit's standards for a motion to strike and appears to be a misplaced attempt to have this Court make impermissible fact-finding and legal determinations at the pleadings stage.

"Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed."  *Connell v. City of New York*, 230 F.Supp.2d 432, 438 (S.D.N.Y. 2002).  Furthermore, the Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default."  *Marfia v. T.C. Zirant Bankasi*, 100 F.3d 243, 249 (2d Cir. 1996) (citing *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995).  "To prevail on a [Rule 12(f)] motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the

case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Acco, Ltd. v. Rich Kids Jean Corp.*, 2016 WL 3144053, at *1 (S.D.N.Y. Apr. 11, 2016) (collecting cases). "[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Not only has Defendant failed to affirmatively demonstrate that all of these motion-to-strike factors have been met, as he must, but his motion does not even include a passing reference to the relevant caselaw.  Defendant has not shown that there is "no evidence…[that] would be admissible" that would support Plaintiff's allegations referencing Article 130—nor could he at the pleading stage and before the commencement of discovery.  The allegations bear directly on Plaintiff's claims that Defendant sexually assaulted her on multiple occasions.  That Defendant contests whether a particular section of Article 130 applies to Mr. Reid's conduct is not relevant; all that matters is that Plaintiff plead a "civil claim or cause of action" "alleging intentional or negligent acts or omissions" caused by a sexual offense, which she has done.  N.Y. C.P.L.R. § 214-j.  In that same vein, there can be no prejudice to Defendant in citing multiple Article 130 penal offenses where Plaintiff need only plead facts sufficient to allege conduct which constitutes any one violation of Article 130, again which she has done.  *See Giuffre v. Andrew*, 579 F. Supp. 3d 429, 451 (S.D.N.Y. 2022) (analogous CVA "does not create plaintiff's cause of action.  She is required only to plead facts sufficient to allege battery").  As the *Giuffre* court noted, so long as the Complaint alleges conduct rising to the level of an Article 130 violation, the claims are well-pled "even where [the] complaint did not cite specific provisions of Article 130."  *Id.* at 451 n.98 (citing *Doe v. Baram*, 2021 WL 4847076, at *4 (S.D.N.Y. Oct. 15, 2021)).

That said, Plaintiff does not oppose striking from Count I the following language in paragraph 81: "130.20, 130.40, 130.45, 130.50"; "130.53"; and "130.70."[3]  To be sure, she does so without waiving any argument that Mr. Reid's conduct would fall under any of these sections as determined by a jury or court—or any other Article 130 offense not enumerated in the Complaint.  After all, Plaintiff's directive under the ASA is to plead a civil cause of action stemming from conduct that is a criminal offense under Article 130.  *See New York City Dep't of Educ.*, 2024 WL 149289, at *4; *Giuffre*, 579 F. Supp. 3d 429, 451 (S.D.N.Y. 2022).  And since Defendant does not challenge the inclusion of citations to Articles 130.52 ("forcible touching") and 130.55[4] ("sexual abuse in the third degree"), he cannot claim that Plaintiff has failed to allege the requisite conduct constituting an Article 130 offense.

Plaintiff opposes Defendant's motion to strike references to Articles 130.60 ("sexual abuse in the second degree"), 130.65 ("sexual abuse in the first degree"), 130.66 ("aggravated sexual abuse in the third degree"), and 130.67 ("aggravated sexual abuse in the second degree").  Plaintiff has adequately alleged conduct by Mr. Reid constituting a violation of each of these offenses:

- 130.60 ("sexual abuse in the second degree"):  "A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is . . . [i]ncapable of consent by reason of some factor other than being less than seventeen years old."  "Sexual contact" means "any touching of the sexual or other

---

[3] For reference, the offenses corresponding to each of these citations are as follows:  130.20 ("sexual misconduct"), 130.40 ("criminal sexual act in the third degree"), 130.45 ("criminal sexual act in the second degree"), 130.50 ("criminal sexual act in the first degree"), 130.53 ("persistent sexual abuse"), 130.60 ("sexual abuse in the second degree"), 130.70 ("aggravated sexual abuse in the first degree").

[4] Citation to section 130.55 was inadvertently listed in the complaint as "1130.55" due to scrivener's error.  *See also* Mot. at 8 (recognizing typo for this citation using "(sic)").

intimate parts of a person for the purpose of gratifying sexual desire of either party."  *See* 130.00.  As for "incapable of consent by reason of some other factor," New York courts have defined it as "mentally disabled, mentally incapacitated, or physically helpless." *People v. Freeman*, 34 Misc. 3d 1217(A), 950 N.Y.S.2d 493, at *3 (Crim. Ct. 2012).  As alleged in the Complaint, Mr. Reid rendered Ms. Dixon "physically helpless" on two occasions and subjected her to sexual contact.

- 130.65 ("sexual abuse in the first degree"):  "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact: 1. By forcible compulsion; or 2. When the other person is incapable of consent by reason of being physically helpless." As with 130.65, Mr. Reid rendered Ms. Dixon "physically helpless" on two occasions and subjected her to sexual contact.  Mr. Reid also used "forcible compulsion," which means "to compel by either:  a. use of physical force; or b. a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped."

- 130.66 ("aggravated sexual abuse in the third degree"):  "A person is guilty of aggravated sexual abuse in the third degree when he or she inserts a foreign object or a finger in the vagina, urethra, penis, rectum or anus of another person: (a) By forcible compulsion; or (b) When the other person is incapable of consent by reason of being physically helpless."  As alleged in the Complaint, Mr. Reid digitally penetrated Ms. Dixon by forcible compulsion, and she was rendered physically helpless.

- 130.67 ("aggravated sexual abuse in the second degree"):  "A person is guilty of aggravated sexual abuse in the second degree when he or she inserts a finger in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person: (a) By

forcible compulsion; or (b) When the other person is incapable of consent by reason of being physically helpless." As with 130.66, Mr. Reid digitally penetrated Ms. Dixon by forcible compulsion, and she was rendered physically helpless.

For these reasons, Defendant has failed to demonstrate a basis for summarily striking these references.

## **CONCLUSION**

Defendant's motion to dismiss and strike (Dkt. 18, 19) should be denied in its entirety,[5] except Plaintiff does not oppose striking from Count I of her Complaint the following language in paragraph 81: "130.20, 130.40, 130.45, 130.50"; "130.53"; and "130.70."

Dated:  January 22, 2024

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

<u>/s/ Kenya K. Davis</u>

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

---

[5] In the event the motion to dismiss and strike is granted in part or in whole, pursuant to the Court's Individual Practice in Civil Cases 4(E)(ii), Plaintiff seeks leave to amend her complaint.