**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**DREW DIXON,**

                          **Plaintiff,**

                                                      **23-cv-9878 (VEC)**

**ANTONIO MARQUIS "L.A" REID,**

                          **Defendant.**
-----------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTIONS**
**TO DISMISS AND STRIKE**

**BOBBI C. STERNHEIM, ESQ.**
**Law Offices of Bobbi C. Sternheim**
**225 Broadway, Suite 715**
**New York, NY 10007**
**212-243-1100**

**SHAWN HOLLEY, ESQ. (*pro hac vice*)**
**Kinsella Holley Iser Kump Steinsapir LLP**
**11766 Wilshire Boulevard, Suite 750**
**Los Angeles, CA 90025**
**310-566-9822**

***Attorneys for Defendant***

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

Table of Authorities…………………………………………….…………………………………ii

Introduction……………………………………………………….……………………………1

I.    Venue for the Alleged Incident During the Flight from New Jersey
       to Puerto Rico Does Not Lie in the Southern District of New York………………………..2

II.   The Complaint Fails to State a Claim for False Imprisonment……………………...…..3
.
III.  The Complaint Fails to State a Claim for IIED……………………………………………3

IV.   The Motion to Strike Is Proper………………..…….…………….…………………....4
.
Conclusion………………………………………………………….……………………………..5

## **TABLE OF AUTHORITIES**

**Cases**                                                                          **Page**

*Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830 (S.D.N.Y. Apr. 4, 2023)…………………….…5

*Doe v. Alsuad,* 224 F. Supp 3d 286 (S.D.N.Y. 2016)……………………………………….…..3

*Kajtazi v. Kajtazi,* 488 F. Supp. 15 (E.D.N.Y. 1978)……………………………………….…..3

*Moore v. Sam's Club, a Div. of Walmart Stores, Inc.,* 55 F. Supp. 2d 177 (S.D.N.Y. 1999 )…........3

*People v. Bjork*, 105 A.D. 3d 1258 (3d Dept 2013)……………………………………….....4

*People v. Cirina,* 143 A.D.2d 763 (2d Dept 1988) ……………………………………….....5

*People v Clyburn,* 212 A.D.2d 1030 (4th Dept 1995) ………………………………………5

*People v. Himmel*, 252 A.D. 2d 273 (3d Dept 1999)……………………………………….…5

*People v. Perkins*, 27 A.D. 3d 890 (3d Dept 2006)…………………………………….....4

*People v. Sensourichanh,* 290 A.D.2d 886 (3d Dept 2002) ……………………………....4-5

*People v Teicher,* 52 N.Y. 2d 638 (1981)……………………………………….……….…...4

*People v Thiessen*, 158 A.D.2d 737 (3d Dept 1990)… ……………………………….....5

## **Statutes**

New York Penal Law:

§ 130.00 (7) ...................................................................................................4

§ 130.60...........................................................................................................4

§130.65............................................................................................................4

§130.66............................................................................................................4

§ 130.67............................................................................................................4

**<u>Miscellaneous Sources</u>**

NYS Criminal Jury Instructions ……………………………………………………………4

https://www.nycourts.gov/judges/cji/2-PenalLaw/130/130.65%282%29.pdf................................5

https://www.nycourts.gov/judges/cji/2-PenalLaw/130/130.67%281%29%28b%29.pdf...............5

This Reply Memorandum of Law in Support of Defendant's motions to dismiss and strike (Dkt. 18, 19) responds to Plaintiff's Opposition ("Opp.") (Dkt. 29).

Defendant does not request oral argument.  Should the Court schedule argument, Defense counsel request permission to appear remotely.

### Introduction

Plaintiff's opposition to Defendant's Motions to Dismiss and Strike sheds further light on her employment gripe.  She admits that she planned to leave Arista at the conclusion of her contract and planned to build her portfolio of talent for her next venture.  Her focus was not on Arista, but on herself and her personal enrichment:  "signing stars and producing records, which she hoped would allow her to secure a comparable job at another record company." Opp. at 4. Plaintiff attempts to stretch two discreet incidents of alleged sexual contact, occurring months apart, into "a continuous stream of sexual assaults." Opp. at 11.  The hyperbole of this assertion dovetails with Plaintiff's self-promotion.

Plaintiff's animus against Defendant is cloaked in two acts of alleged sexual touching, but her real claim is that she was unhappy that Clive Davis left Arista and Defendant replaced him as her boss, causing Plaintiff to be " torn between finishing her remaining contract with Arista Records versus following Mr. Davis …" (Opp. at 3).  Business decisions that were or were not made during the period after Mr. Davis left are not the proper subject of claims under the ASA or GMVA .  Plaintiff's complains she was not permitted "to do her job" – "signing artists and producing records" (Opp. at 4) - talent that she planned to usurp from Arista as part of her premeditated exit plan.

I.      **Venue for the Alleged Incident During the Flight from New Jersey
        to Puerto Rico Does Not Lie in the Southern District of New York**

A motion to dismiss based on venue was not contemplated at the time of the filing of the joint letter. The issue arose upon further review of the Complaint. Indeed, the motion prompted Plaintiff to reveal the location of her home within the Southern District of New York, clearly omitted from the Complaint.  Had Plaintiff been forthcoming in the Complaint, there would have been no need to raise the issue of venue on the alleged incident in the car. Based on newly disclosed information, Defendant does not challenge venue for that alleged incident.[1]

Plaintiff concedes that the alleged incident in the plane did not occur in the Southern District of New York ("SDNY"). The flight began in New Jersey and terminated in Florida. Plaintiff's effort to expand the temporal scope of that alleged incident to the time in which travel arrangements were made in New York does not suffice to establish venue in SDNY for an alleged act of sexual contact that Plaintiff concedes occurred outside the district. Plaintiff now attempts to state that a "substantial portion" of the acts associated with the alleged false imprisonment on the plane occurred in the SDNY.  But Plaintiff's citations to her own Complaint are misleading, as she did not allege anywhere in the Complaint that Karen Kwak, or any other Arista Records staff in Manhattan was part of any deception or fake plan or that any planning of false imprisonment took place in Manhattan. (*Cf.* Opp. at 15 and Compl. at ¶¶ 42, 43.) Moreover, the case cited to by Plaintiff is not applicable.  In that case, which did not deal with false imprisonment or allegations of planning to commit a tort in the judicial district, the court found venue appropriate when the plaintiff attempted to access a website of a California based

---

[1] Plaintiff has not claimed prejudice due to the venue challenge.

company while in the Southern District of New York.  *See Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830, at *5 (S.D.N.Y. Apr. 4, 2023).

II.     **The Complaint Fails to State a Claim for False Imprisonment**

Plaintiff cannot dispute that she and Defendant were not alone in either the car or the plane, and that at no time did she request to leave either vehicle prior to reaching the intended destination. Plaintiff has made no claim that she was incapacitated and unable to speak.  Plaintiff had made no claim that she was restrained.  "False imprisonment consists in [sic] the unlawful detention of the person of another, for any length of time, whereby [s]he is deprived of [her] personal liberty." *Kajtazi v. Kajtazi,* 488 F. Supp. 15, 18 (E.D.N.Y. 1978).  In the cases cited by Plaintiff, no non-accomplice third party was present during the alleged incidents.  *See Moore v. Sam's Club, a Div. of Walmart Stores, Inc.* 55 F. Supp 2d 177, 187  (S.D.N.Y. 1999 ) (Plaintiff and co-manager "enclosed . . . alone in the managers' office"); *Doe v. Alsuad,* 224 F. Supp 3d 286, 295  (S.D.N.Y. 2016).(plaintiff and friend who were sexually assaulted by defendants in a hotel room "appeared heavily drugged to the point of immobility" ).

Plaintiff theorizes that anyone capable of consent who alleges being sexually touched in a vehicle where non-accomplice third parties are present can claim false imprisonment.  Her claim is unsupportable in fact and law.

III.    **The Complaint Fails to State a Claim for IIED**

Plaintiff's IIED claim based on two discreet allegations of improper sexual touching months apart fails to satisfy the element of "extreme and outrageous conduct."  Again, Plaintiff cannot establish a "continuing course" of unwanted touching and should not be permitted to ground her IIED on sexual harassment.  Plaintiff's IIED must have been caused by the alleged sexual offense which forms the basis of the ASA claim (Count 1- sexual assault/battery).

The cases cited by Plaintiff concerning continuous conduct giving rise to IIED claims are grounded in discriminatory employment practices. *See* Opp. at 11 and fn 1. Plaintiff has not pled a continuous pattern of sexual abuse in violation of Article 130.  Plaintiff also has not alleged a cause of action for sexual harassment.

Plaintiff has failed to plead extreme and outrageous sexual misconduct. Accordingly, her IIED claim fails to meet the standards required to prevail.

## IV.    The Motion to Strike Is Proper

Plaintiff does not oppose striking six of the 10 challenged statutes: §§ 130.20, 130.40, 130.45, 130.50, 130.53, and 130.70.  For the reasons stated in Defendant's memorandum of law, the Complaint fails to establish conduct prohibited by §§ 130.60, 130.65. 130.66 and 130.67.

In her opposition to the motion to strike, Plaintiff claims for the first time that she was "rendered" "physically helpless" and then "subjected . . . to sexual conduct" (§§ 130.60, 130.65), and was subjected to sexual contact and then "rendered physically helpless" (§§ 130.66, 130.57) while in a car and a plane where at least one other person was present.   In the context of Article 130, "physically helpless" means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act rendering the person unable to consent.  Plaintiff misconstrues the meaning of being "physically helpless" as defined in § 130.00(7) and interpreted in case law.[2]   Being "physically helpless" is a condition precedent to the alleged misconduct, not a condition resulting from the alleged misconduct.  In any event,

---

[2] *See* NYS Criminal Jury Instructions: Penal Law § 130.00 (7); *See People v Teicher,* 52 N.Y.2d 638 (1981) (Where victim responded negatively to a command to stand and was mentally aware but had no control over her body there was sufficient proof of physical helplessness); *People v. Bjork*, 105 A.D.3d 1258 (3d Dept 2013) ("a person who is asleep or unable to communicate as a result of voluntary intoxication is considered to be physically helpless"); *People v. Perkins*, 27 A.D.3d 890, 892 (3d Dept 2006) ("the victim's testimony that she blacked out and 'was so drunk [she] didn't know what was going on,' is sufficient to establish the element of physical helplessness"); *People v. Sensourichanh*, 290 A.D.2d

Plaintiff's claim that she was rendered physically helpless in vehicles at least one other person was present is unsubstantiated in fact and law.

### Conclusion

For the reasons stated above and in Defendant's initial memorandum of law, the Court should grant Defendant's motions to dismiss and strike, excluding the challenge to venue for the alleged car incident.

Dated:  January 29, 2024

Respectfully submitted:

Counsel for Defendant

*Bobbi C. Sternheim*
Bobbi C. Sternheim

_/s/_____
Shawn Holley

---

886 (3d Dept 2002) ("it is well settled that the definition of physically helpless is broad enough to cover a sleeping victim, particularly where, as here, there is strong evidence that the victim's sleep was drug and alcohol induced") (internal citations omitted); *People v. Himmel*, 252 A.D.2d 273 (3d Dept 1999) (victim's testimony that although he was aware of what was going on, he was very intoxicated and unable to speak was sufficient to show that he was physically helpless); *People v Thiessen*, 158 A.D.2d 737, 740 (3d Dept 1990) ("there was proof that [the victim] was asleep and therefore helpless and unable to consent"); *People v. Cirina,* 143 A.D.2d 763 (2d Dept 1988) (13-year-old complainant was physically helpless because of her voluntary intoxication leading to her "generally weakened condition"); *But see People v Clyburn,* 212 A.D. =2d 1030, 1031 (4th Dept 1995) ("the fact that the victim was afflicted with Huntington's Chorea did not render her physically helpless, i.e., 'unconscious or for any other reason...unable to communicate unwillingness to act'"). *Id.,* available at:
https://www.nycourts.gov/judges/cji/2-PenalLaw/130/130.65%282%29.pdf;
https://www.nycourts.gov/judges/cji/2-PenalLaw/130/130.67%281%29%28b%29.pdf