```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED: 8/13/24
-------------------------------------------------------------- X
DREW DIXON,                                       :
                                                  :
                                      Plaintiff,  :
                                                  :
              -against-                           :   23-CV-9878 (VEC)
                                                  :
                                                  :   OPINION & ORDER
ANTONIO MARQUIS "L.A." REID,                      :
                                                  :
                                      Defendant.  :
-------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

On November 8, 2023, relying on the New York Adult Survivors Act ("ASA"), N.Y. C.P.L.R. § 214-j,[1] Drew Dixon sued Antonio Marquis "L.A." Reid, alleging that he sexually assaulted her twice during the course of her employment at Arista Records approximately 20 years ago. Compl. ¶¶ 43, 49, Dkt. 1. Plaintiff asserts four causes of action: sexual battery and assault, false imprisonment, intentional infliction of emotional distress ("IIED"), and a violation of the New York City Gender Motivated Violence Act ("GMVA"), N.Y.C. Admin. Code § 10-1104. Compl. ¶¶ 79–98. Defendant moved to dismiss Counts II and III of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3) and to strike portions of Count I. Def. Mot., Dkt. 18.

For the reasons discussed below, Defendant's motions are DENIED.

---

[1] The ASA "created a one-year revival period, starting November 24, 2022, during which adult survivors of sexual assault could sue their abusers despite the expiration of the previously applicable statutes of limitations." *Carroll v. Trump*, 650 F. Supp. 3d 213, 218 (S.D.N.Y. 2023).

I.     **BACKGROUND**[2]

Plaintiff is a music producer, executive, and entrepreneur.  Compl. ¶ 1.  In 1996, she became a Senior Director of Artists & Repertoire ("A&R") at Arista Records.  *Id*. ¶¶ 19, 21.  In 2000, Defendant, who is also a record executive, became President and CEO of Arista Records.  *Id*. ¶ 27.  They worked together at Arista for approximately two years.  *Id*. ¶ 57.  Plaintiff alleges that Defendant began sexually harassing her almost immediately after he joined Arista.  *Id*. ¶ 39.

A.    **The First Assault**

In January 2001, Arista held a company-wide retreat in Puerto Rico; the arrangements for the trip were coordinated from Arista's Manhattan office.  *Id*. ¶ 42.  The Vice President of A&R, Karen Kwak, told Plaintiff not to book a flight, as Defendant had invited a group of senior executives to join him on a private plane flying from Teterboro Airport in order to review presentations in advance of the retreat.  *Id*.  Contrary to what Plaintiff had been told, Defendant was the only other person on the plane.  *Id*. ¶ 43.  Defendant asked Plaintiff to sit next to him to review materials for the presentation.  *Id*.  He began playing with her hair and kissing her; he digitally penetrated her genital area without her consent.  *Id*.

B.    **The Second Assault**

A few months following the first assault, Defendant insisted that Plaintiff share a car home with him from a work event in Manhattan purportedly to listen to a demo of a new artist whom Plaintiff had discovered.  *Id*. ¶ 48.  Shortly into the ride, Defendant groped and kissed Plaintiff without her consent.  *Id*. ¶ 49.  Defendant complained and grew irritable when Plaintiff

---

[2]     The well-pled facts alleged in the Complaint are assumed true for purposes of evaluating Defendant's motion to dismiss.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

resisted his advances. *Id*. Defendant digitally penetrated Plaintiff's genital area without her consent. *Id*.

### C. Ongoing Sexual Harassment

When they both worked at Arista, Defendant invited Plaintiff to meetings in his hotel room and to listen to music nightly. *Id*. ¶ 53. When Plaintiff refused, Defendant began calling her late at night and would be angry the next day at work if she did not return his calls. *Id*. Defendant retaliated against Plaintiff for rejecting his advances by punishing the artists she signed or by preventing her from signing new artists, including Kanye West, John Legend, and Toya. *Id*. ¶¶ 54–57. Plaintiff eventually left Arista in 2002. *Id*. ¶ 57. She gave up her desire to start her own label, recognizing that Defendant would continue to thwart her career. *Id*.

## DISCUSSION[3]

### I. Defendant's 12(b)(6) Motion to Dismiss Counts Two and Three is Denied

#### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required to credit "mere conclusory statements" or "threadbare

---

[3] The parties' briefs both contain several incorrect case citations. The parties are advised to proofread and cite check their work product more carefully in the future before submitting it to the Court.

recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Defendant's Motion To Dismiss Counts II and III as Time Barred Is Denied

Defendant moves to dismiss Count II (false imprisonment) and Count III (intentional infliction of emotion distress, "IIED"), arguing that they are time-barred. Def. Mem. at 2–3, Dkt. 19. He contends that these counts are subject to New York's one-year statute of limitations contained in N.Y. C.P.L.R. § 215(3) and that neither is covered by nor revived by the ASA.[4] *Id*.

Counts II and III are timely. The ASA revives "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law[.]" N.Y. C.P.L.R. § 214-j. Accordingly, the "ASA covers civil claims related to intentional torts – false [] imprisonment [and IIED] – that were suffered as a result of conduct that otherwise would be a sexual offense under N.Y. Penal L. § 130." *Wilkie v. Vill. of Hempstead*, No. 22-CV-920, 22-CV-3671, 22-CV-3805, 2023 WL 5952056, at *7 (E.D.N.Y. June 20, 2023) (internal quotation marks omitted). Plaintiff's false imprisonment and IIED claims clearly arise from the alleged sexual assaults. Although there is a dearth of cases analyzing similar claims under the ASA, of the few that have, the weight of authority supports the conclusion that Plaintiff's claims were revived by the ASA. *See Shapiro v. Syracuse Univ.*, 208 A.D. 3d 958, 961 (4th Dep't 2022)

---

[4] Defendant argues in a single sentence that neither Count II nor III is revived by the GMVA. Def. Mem. at 3. Neither Count requires revival by the GMVA, however; GMVA establishes a standalone claim. The GMVA, similar to the ASA, was amended in 2022 to re-open the statute of limitations for GMVA claims for a two-year period beginning March 1, 2023 and ending March 1, 2025. *See* N.Y.C. Admin. § 10-1104; *Louis v. Niederhoffer*, No. 23-CV-6470, 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023). Plaintiff's complaint was filed during that period.

(finding the analogous New York Child Victims Act ("CVA") applied and revived negligence claims).

In *Wilkie*, when considering a claim brough by an adult, the court looked to the CVA whose "relevant statutory language . . . is identical to that of the ASA;" the *Wilkie* Court held that there was "no reason that an intentional tort like false imprisonment . . . would not be revived by the ASA." 2023 WL 5952056, at *8. Similarly, in *Doe v. N.Y.C. Dep't of Educ.*, the court held that the CVA revived the plaintiff's IIED claims. 669 F. Supp. 3d 160, 163 n.1 (E.D.N.Y. 2023) ("there is no question that the CVA revives sexual assault . . . claims . . . or IIED claims premised on that conduct").

This Court agrees with the reasoning of *Wilkie* and *Doe*; the ASA revives false imprisonment and IIED claims arising from an alleged sexual assault. Accordingly, Plaintiff's false imprisonment and IIED claims are not time barred because they were revived by the ASA.

### C. Defendant's Motion to Dismiss the False Imprisonment Claim For Failure to State a Claim is Denied

Defendant also moves to dismiss the false imprisonment claim pursuant to Fed. R. Civ. P. 12(b)(6). To state a civil claim of false imprisonment, a plaintiff must allege facts from which the Court can plausibly infer that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Doe v. Alsaud*, 224 F. Supp. 3d 286, 295 (S.D.N.Y. 2016) (citations omitted). Instead of citing the elements of a civil claim for false imprisonment, Defendant looks to the statutory definition of unlawful imprisonment under New York penal law. Def. Mem. at 3 (citing N.Y. Pen. L. § 135).

Plaintiff correctly notes that this is a civil case so she must only allege the elements of a civil claim for false imprisonment under state law. Pl. Opp. at 9, Dkt. 28. Plaintiff argues she

easily cleared that hurdle.  In support, Plaintiff relies on *Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*, in which the plaintiff's manager enclosed the plaintiff in his office, pushed her against a filing cabinet, and tried to place the plaintiff's hand on his genitals.  55 F. Supp. 2d 177, 187 (S.D.N.Y. 1999).  The court denied the defendant's motion to dismiss, as it was "reasonable to infer [the manager's] intent as well as [the plaintiff's] consciousness and lack of consent."  *Id.*

Starting with the alleged incident on the private plane, the Complaint alleges that Karen Kwak, a VP at Arista, advised Plaintiff not to book a flight to the retreat, as she had been invited with a group of executives to join Defendant on the private flight; it was only after arriving that Plaintiff realized that no one else would be accompanying them on the flight.  Compl. ¶¶ 42–43.  The only element that Defendant seriously challenges is the third – whether Plaintiff adequately alleges that she did not consent to her confinement.[5]

Although Plaintiff consented to take the private plane,[6] it is a question of fact whether her consent continued after Defendant began to assault her.  *See De Abreu v. Johnson Controls Fire Protection LP*, No. 18-CV-2686, 2021 WL 4409716, at * 15 (E.D.N.Y. Sept. 27, 2021) (citing *Faniel v. Chesapeake & Potomac Tel. Co. of Md.*, 404 A.2d 147, 153 (D.C. 1979) ("Of course, if the defendant goes beyond the implied consent, and does a substantially different act, he will be liable. . . . Whether the assent given was broad enough to cover the invasion inflicted is a question of fact to be determined by the jury in doubtful cases.")).  In close cases, where the facts are on the bubble, as they are here, such a question should not be determined at the pleading stage.  *See id.*

---

[5]     There is no question that Plaintiff adequately alleged that Defendant intended to confine her, that she was aware of her confinement and did not consent to it, and it was not otherwise privileged.  Compl. ¶ 85.

[6]     From the allegations in the Complaint, it appears that Plaintiff knew before the airplane took off that only she and the Defendant would be passengers.

As to the second incident, Plaintiff alleges that Defendant lured her into accepting a ride in a car with him by representing that he would listen to music that she wanted him to review. Compl. ¶ 48. While Plaintiff consented to the ride, she did not consent to Defendant's alleged actions once she was in the car. As with the plane ride, it is a question of fact whether Plaintiff's consent continued after Defendant began to assault her.

In short, the Court finds that Plaintiff has sufficiently stated a claim for false imprisonment. Defendant's Motion to Dismiss Count II is, therefore, DENIED.

### D. Defendant's Motion to Dismiss the Intentional Infliction of Emotional Distress Claim for Failure to State a Claim is Denied

To allege an IIED claim, a plaintiff must allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Chanko v. Am. Broadcasting Cos. Inc.*, 27 N.Y. 3d 46, 56 (2016) (citation omitted).

Defendant moves to dismiss Plaintiff's IIED claim for failure to state a claim. Defendant argues that the "conduct alleged was not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.'" Def. Mem. at 7 (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557 (1978)). The Court disagrees. The course of conduct alleged, including two sexual assaults, is atrocious and entirely intolerable in a civilized society.

Defendant also argues that Plaintiff's IIED claim should be dismissed because it is duplicative of her claim for sexual assault/battery. Def. Mem. at 7. The New York Court of Appeals has "cautioned that a claim for IIED may not be sustainable where the conduct complained of falls well within the ambit of other traditional tort liability." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (internal quotation marks omitted) (quoting

*Fischer*, 43 N.Y.2d at 557–58). IIED claims serve as gap fillers intended "to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied." *Id.* at n.18.

While there is obvious overlap, Plaintiff's IIED claim does not so completely overlap with her sexual assault/battery claim that it is subsumed within that claim. In addition to the two alleged instances of sexual assault in 2001, the Complaint alleges that during the course of Plaintiff's employment at Arista, Defendant made "pervasive" suggestive comments towards her, complained when he could not get her alone, made repeated sexual advances and retaliated against her at work by demeaning her in front of coworkers, instructed other executives to advise her to wear skirts and high heels, repeatedly invited her to meetings in his hotel room and called her late at night, and retaliated against her for declining his advances by preventing her from signing new artists. Compl. ¶¶ 41, 44, 47, 52– 55. Because the IIED claim includes a course of conduct broader than just the sexual assaults, it is not duplicative of her sexual assault/battery claim. *See Roelcke v. Zip Aviation, LCC*, No. 15-CV-6284, 2018 WL 1792374, at *13 (S.D.N.Y. Mar. 26, 2018) (allowing IIED claims to proceed where alleged conduct was "not duplicative" of assault claims).

Accordingly, Defendant's Motion to Dismiss Count III is DENIED.

## II.  Defendant's Motion To Dismiss for Lack of Venue is Denied

### A. Legal Standard

Defendant has moved, pursuant to Rule 12(b)(3), to dismiss the false imprisonment claim for lack of venue. The plaintiff bears the burden of showing that venue is proper. *Casville Invs., Ltd. v. Kates*, No. 12-CV-6968, 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). To meet this burden, the

plaintiff must plead facts sufficient for a *prima facie* showing of venue. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The Court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Ballon Stoll P.C. v. Cutler*, No. 23-CV-366, 2024 WL 1256049, at *4 (S.D.N.Y. Mar. 25, 2024) (citation omitted). As is relevant here, venue is proper if a "substantial part" of the events giving rise to the claim occurred in the district. 28 U.S.C. § 1391(b).

### B. Improper Venue

Defendant argues that venue is improper because it is not clear whether the events giving rise to the false imprisonment claim associated with the private flight occurred in the Southern District of New York (the flight departed from Teterboro, which is in New Jersey). Compl. ¶¶ 42–43.[7] Defendant contends that Plaintiff cannot expand the temporal scope of the alleged incident to include the travel arrangements for the trip, which were made in New York. Def. Reply at 2, Dkt. 35. Defendant also asserts that the Complaint does not allege that Karen Kwak, or any other Arista staff in Manhattan, were part of the alleged deception. *Id*.

Plaintiff contends that "a substantial part of the events giving rise to the claim occurred in the Southern District of New York." *Cartier v. Micha, Inc.*, No. 06-CV-4699, 2007 WL 1187188, at *3 (S.D.N.Y. Apr. 20, 2007) (citation omitted). Although the alleged false imprisonment occurred on a flight that originated and ended out of the district, Plaintiff maintains that the acts that made the confinement possible occurred in Manhattan, making venue proper in this district. Pl. Opp. at 15.

---

[7] Defendant initially challenged venue associated with the alleged assault on the plane and the alleged assault in the car. Def. Mem. at 4–5. Plaintiff's opposition stated that, in 2001, she resided in Manhattan, and Defendant's chauffeur drove her from a work event in Manhattan to her home in the same borough. Pl. Opp. at 15. Based on that information, Defendant withdrew his challenge to venue for the claim based on the alleged incident in the car. Def. Reply at 2.

9

Because Plaintiff relies on 28 U.S.C. § 1391(b)(2) for venue, this court must identify the nature of the claims and the acts or omissions giving rise to those claims and then determine whether a substantial part of those acts or omissions occurred in this district. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). If some acts took place within the plaintiff's chosen forum, they are considered "significant" if they have a "close nexus to the claims." *Id*. at 433. This inquiry is "more a qualitative than a quantitative" one that requires a court to assess the overall nature of the claims and "not by simply adding up the number of contacts." *Id.* at 432–33 (citations omitted).

Here, the nature of Plaintiff's claim is the false imprisonment on a private plane. According to the Complaint, the acts giving rise to that claim include the planning, scheduling, and booking for the retreat. The Complaint alleges that the travel arrangements associated with the retreat were coordinated in New York and that Karen Kwak told Plaintiff not to book a flight because Defendant had invited her and other executives to travel with him on a private plane. Compl. ¶ 42. According to the Complaint, no other executives were on the flight, and the flight was part of a scheme to confine her. *Id.* ¶ 43. Although the Complaint does not specifically allege that Kwak[8] was in New York when she told Plaintiff that she would be travelling with Defendant and others on a private plane, the Complaint does allege that the planning and coordination for the company retreat occurred in New York, presumably in Arista's offices in Manhattan. *Id.* ¶ 42. The coordination of the retreat has a "close nexus to" Plaintiff's false imprisonment claim as the acts about which she complains occurred on the flight that was arranged in New York. While the Complaint does not specifically allege that Defendant instructed Kwak to tell Plaintiff that other executives would be on the flight, viewing the facts in

---

[8] In her opposition to the Motion to Dismiss, Plaintiff represented that Kwak was based in Manhattan. Pl. Opp. at 15.

the light most favorable to the Plaintiff, the Court can infer that the scheme to mislead Plaintiff about the travel arrangements occurred in Manhattan.

In short, Plaintiff has adequately established a *prima facie* case that venue is proper in this district as the site of a substantial part of the acts giving rise to the false imprisonment claim. Defendant's Motion to Dismiss Count II for improper venue is, therefore, DENIED.

### III.   Defendant's Rule 12(f) Motion to Strike Is Denied

#### A. Legal Standard

Rule 12(f) authorizes a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike are disfavored, *see IMG Fragrance Brands, LLC v. Houbigant, Inc.*, No. 09-CV-3655, 2009 WL 5088750, at *1 (S.D.N.Y. Dec. 18, 2009) (citation omitted), and the Court must "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike," *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC,* No. 07-CV-9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008).  "[T]he [movant] must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Metrokane, Inc. v. The Wine Enthusiast,* 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001) (internal citation and quotation marks omitted).

#### B. Defendant's Motion is Denied

Defendant moves to strike ten sections of New York Penal Law Article 130 that are cited in count one of the Complaint.[9]  Def. Mem. at 8.  Defendant asserts that the Complaint fails to

---

[9]   Plaintiff does not oppose striking six of the citations.  Pl. Opp. at 18.  These sections include N.Y. Pen. L. §§ 130.20. 130.40, 130.45, 130.50, 130.53, and 130.70.  *Id.*  Plaintiff does not waive any argument that Defendant's

allege facts to justify including N.Y. Penal Law Sections 130.60 (sexual abuse in the second degree), 130.65 (sexual abuse in the first degree), 130.66 (aggravated sexual abuse in the third degree), and 130.67 (aggravated sexual abuse in the second degree) in the litany of penal law sections that his conduct allegedly violated. Def. Mem. at 8. Defendant contends that these sections are unsupported by the Complaint's factual allegations and are unnecessarily prejudicial. *Id.* at 9. Defendant argues that the contested sections are unsubstantiated by Plaintiff's claims that she was "rendered" "physically helpless" and "subjected . . . to sexual conduct," because she misinterprets the term "physically helpless." Def. Reply at 4. Defendant also argues that Plaintiff's allegations that he "digitally penetrated her vulva" without her consent did not put his conduct within the scope of Article 130, which distinguishes a vulva from a vagina. Def. Mem. at 8 (citing N.Y. Pen. L. § 130).

Plaintiff argues that Defendant's motion to strike is an inappropriate attempt to thrust the Court into the impermissible role of factfinder at the pleading stage. Pl. Opp. at 16. She asserts that the statutory sections cited in Count I are amply supported by the allegations in the Complaint; moreover, the ASA revives civil claims that are supported by conduct that violates any part of Article 130. *Id*. (citing *Doe*, 669 F. Supp. 3d at 166 ("the civil claim itself need not be synonymous with § 130" as long as the "conduct that gives rise to injury [is] a sexual offense")). Because Defendant does not challenge the citations to Sections 130.52 (forcible touching) and 130.55 (sexual abuse in the third degree), Plaintiff argues that he cannot claim that she failed to allege conduct comprising an Article 130 offense. *Id*. at 17 (citing *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 451 (S.D.N.Y. 2022) (holding that the analogous CVA "does not

---

conduct could be encompassed within any of those six sections if so determined by a jury or the Court. *Id.* Accordingly, the only contested citations are N.Y. Pen. L. §§ 130.60, 130.65, 130.66, and 130.67. *Id.*

create plaintiff's cause of action" and the plaintiff "is required only to plead facts sufficient to allege battery")).

Defendant's motion to strike the four Article 130 citations is DENIED.  Motions to strike are disfavored as courts "should [not] decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone."  *Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15-CV-7425, 2016 WL 3144053, at *1 (S.D.N.Y. Apr. 11, 2016) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). Without a single citation to case law, Defendant attempts to meet the high threshold necessary to prevail on a Rule 12(f) motion and misses the mark.  Although Defendant quarrels with whether his actions rendered Plaintiff "physically helpless" as required by Sections 130.65, 130.66, and 130.67, that is insufficient to strike the challenged citations.  *See IMG Fragrance Brands, LLC*, 2009 WL 5088750, at *2 (citing *Murchinson v. Kirby*, 27 F.R.D. 14, 19 (S.D.N.Y. 1961) ("A pleading should be stricken only when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis.")).

Defendant's motion to strike references to Sections 130.66 and 130.67 because Plaintiff does not allege he digitally penetrated Plaintiff's vagina is also ill-conceived.  In pertinent part those sections apply when a person "inserts . . . a finger in the vagina . . . of another person." N.Y. Pen. L. §§ 130.66, 130.67.   Defendant argues unconvincingly that Sections 130.66 and 130.67, which use the term "vagina," cannot cover Plaintiff's claims, as Plaintiff alleges that Defendant "digitally penetrated her vulva."  Def. Mem. at 8.

13

The definitions contained in Article 130 do seem to differentiate the "vulva" and "vagina;"[10] however, neither term is defined in Article 130 or elsewhere in penal law.  In the absence of a statutory definition, courts can look to dictionary definitions "as a useful guidepost."  *People v. Monroe*, No. 5248, 2010 WL 3652591, at *2 (Essex Cnty. Ct. Sept. 13, 2010) (citing *Quotron Sys., Inc. v. Gallman,* 39 N.Y.2d 428, 431 (1976)).  "Vulva" is the global term that describes the "female external genitalia," including the "vaginal opening."[11]  John D. Nguyen & Hieu Duong, *Anatomy, Abdomen and Pelvis: Female External Genitalia*, NAT'L INST. OF HEALTH NAT'L LIBR. OF MED., (July 25, 2023) https://www.ncbi.nlm.nih.gov/books/NBK547703/.  Because the vaginal opening is encompassed within the vulva, it cannot be said that Sections 130.66 and 130.67 are unsupported by Plaintiff's allegations.  Nor are these citations unduly prejudicial to the Defendant.  As Plaintiff notes, Defendant did not challenge the citation to Sections 130.52 (forcible touching) and 130.55 (sexual abuse in the third degree); it is difficult to understand any prejudice caused by additional citations to other portions of Article 130.

Because Defendant has not met his burden, his Motion to Strike is DENIED.

---

[10] The definition of "vaginal sexual contact" is "contact between the penis and the vagina or vulva," suggesting the legislature views the vulva as part of the vagina.  N.Y. Pen. L. § 130.00.

[11] *See also What are the parts of the female sexual anatomy?* PLANNED PARENTHOOD, https://www.plannedparenthood.org/learn/health-and-wellness/sexual-and-reproductive-anatomy/what-are-parts-female-sexual-anatomy ("The vulva . . . includes [the] . . . vaginal opening[.]"  BRITTANICA, *vulva*, https://www.britannica.com/science/vulva ("Vulva, the external female genitalia that surround the opening to the vagina[.]").  MERRIAM WEBSTER, vulva, https://www.merriam-webster.com/dictionary/vulva?utm_campaign=sd&utm_medium=serp&utm_source=jsonld ("vulva: the external parts of the female genital organs[.]").

## CONCLUSION

For the foregoing reasons, Defendant's Motions are DENIED. The Clerk of Court is respectfully directed to close the open motion at docket entry 18.

**SO ORDERED.**

**Date: August 13, 2024**
      **New York, New York**

                                              **VALERIE CAPRONI**
                                              **United States District Judge**