**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DREW DIXON,

        Plaintiff,                                    Case No.:      1:23-cv-09878-VEC

v.

                                                 **PUBLIC VERSION**

ANTONIO MARQUIS "L.A." REID,

        Defendant.

_____ /

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
Phone: 310-566-9822
*Attorneys for Antonio Marquis "L.A." Reid*

**GREGORY KORN, ESQ. *(PRO HAC VICE)***

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................5

II.     BACKGROUND AND UNDISPUTED FACTS ................................................6

        A.      Dixon's Allegations Of Harassment .........................................................7

        B.      Dixon's Claims Of Sexual Assault ...........................................................8

        C.      Dixon's Claims Under The Adult Survivors Act And GMVA .............................9

        D.      Dixon's Demand For Lost Commissions....................................................10

III.    LEGAL STANDARDS FOR SUMMARY JUDGMENT ................................11

IV.     ARGUMENT ...................................................................................................12

        A.      The ASA Only Allows Recovery of Damages Suffered as a Result of A
                Defined Sexual Offense ...........................................................................13

        B.      Dixon's Claim To Lost Commissions Is Not Covered By The ASA And Is
                Therefore Time-Barred .............................................................................15

        C.      The Lost Commissions Are Likewise Not Recoverable Under The GMVA ........19

V.      CONCLUSION................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)............................................12

*BDG Gotham Residential, LLC v. Western Waterproofing Co., Inc.*,
2024 WL 4349163 (S.D.N.Y. Sept. 30, 2024)............................................11

*Doe v. New York City Department of Education*,
2023 WL 2574741 (E.D.N.Y. March 20, 2023) ............................................14, 16, 18

*Ehrlich v. American Airlines*,
360 F.3d 366 (2d Cir. 2004)............................................11

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir.1995)............................................12

*Hamblin v. British Airways PLC*,
717 F.Supp.2d 303 (E.D.N.Y. 2010) ............................................11

*Hart v. Rick's Cabaret Intern., Inc.*,
60 F.Supp.3d 447 (S.D.N.Y. 2014) ............................................11

*Levin v. Sarah Lawrence College*,
747 F.Supp.3d 645 (S.D.N.Y. 2024)............................................ *passim*

*Reid v. McKelvey*,
2024 WL 4345585 (S.D.N.Y. Sept. 30, 2024)............................................14

*Scott v. Coughlin*,
344 F.3d 282 (2d Cir.2003)............................................12

*Taylor v. City of New York*,
207 F.Supp.3d 293 (S.D.N.Y. 2016)............................................16

*Wilkie v. Village of Hempstead*,
2023 WL 5952056 (E.D.N.Y. June 20, 2023) ............................................14

*Williams v. Smith*,
781 F.2d 319 (2d Cir.1986)............................................12

**New York Cases**

*Breest v. Haggis*,
115 N.Y.S.3d 322 (2019)............................................19

*J.S.M. v. City of Albany Dept of Gen. Svcs.*,
    211 N.Y.S.3d 859 (2024).................................................................................13

**Federal Statutes**

Code
    § 10–1103.................................................................................................19
    § 10–1104.................................................................................................19

Gender-Motivated Violence Protection Law .............................................6, 9, 13, 19

New York's Adult Survivors Act, n. Y. C.P.L.R.
    § 214-j ........................................................................................... *passim*

**Other State Statutes**

New York Penal Law
    §130 ............................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(b) ...................................................................................11

Fed. R. Civ. P. 56(c) ...................................................................................12

Fed. R. Civ. P. 56(e) ...................................................................................12

N.Y.C. Admin. Code § 8-903 (2017).............................................................10

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff Drew Dixon ("Dixon") filed this case under the New York Adult Survivors Act ("ASA"), alleging that Defendant Antonio Marquis "L.A." Reid ("Reid")—her former supervisor at Arista Records—sexually assaulted her on two occasions in 2001. Reid adamantly denies the allegations, all of which are belied by repeated admissions Dixon has made in prior writings and interviews exculpating Reid of any physical misconduct. Regardless of whether Dixon can prove her allegations, the primary category of damages she is seeking for her revived ASA claims is not viable and should be summarily adjudicated in Reid's favor.

In that regard, Dixon is seeking to recover commissions that she allegedly lost under her employment agreement with Arista when Reid purportedly refused to sign two artists to Arista—Kanye West and John Stephens (pka John Legend)—in retaliation for Dixon rejecting his unwanted sexual advances. To recover these 20-plus year old contract-based damages under the ASA, the damages must have been caused by a "sexual offense" as defined by the New York Penal Law. But Reid's failure to sign these artists obviously is not a "sexual offense."

Moreover, even if Dixon's Complaint could be reimagined as asserting a claim for the lost commissions pursuant to a retaliation/sexual harassment claim—which the Complaint does not assert—the claim and lost commission damages still do not arise out of a statutorily-defined "sexual offense." To the contrary, Dixon's Complaint, deposition testimony, and prior writings all establish that Reid's supposed failure to sign artists at Arista was, if anything, in retaliation for her refusal to acquiesce to his unwanted sexual advances. New York courts have held that sexual harassment claims of this kind—involving unwanted advances, manipulation, and grooming—do not involve "sexual offenses" under the ASA. Accordingly, any retaliation claim that Dixon might assert to seek to recover her alleged lost commissions is long since time-barred.

The result is no different as to Dixon's claim under New York City's Victims of Gender-Motivated Violence Protection Law ("GMVA"). That law revises certain causes of action arising out of "crimes of violence." Reid's failure to sign Kanye West and John Legend as Arista artists was not a "crime of violence" giving rise to a claim under the GMVA.

Dixon can proceed to trial on her claims for assault. She can seek damages for the emotional distress she claims to have suffered as a result. But she cannot seek contract-based damages for lost commissions that do not arise out of the claims for "sexual offenses" and "crimes of violence" that were revived by the ASA and/or GMVA. For these and the reasons discussed in detail below, the Court should grant partial summary judgment and dismiss Dixon's claims for recovery of lost commissions.

## II.    BACKGROUND AND UNDISPUTED FACTS

Dixon is a former Artist & Repertoire ("A&R") executive that represented rap and hip hop artists in the late 1990s and early 2000s. *See* Dkt. No. 1 [Dixon's Complaint ("Compl."), ¶¶ 14-22, 57]. Dixon worked at Def Jam until 1996. *Id.* ¶¶ 14-19. She left Def Jam and joined Arista Records at that time, after she was (allegedly) violently assaulted by the then-head of the Def Jam, Russell Simmons. *Id.* ¶¶ 18-19.

In 2000, Reid took over as President and CEO of Arista and began working with Dixon. *See* Dkt. No. 1 [Compl., ¶¶ 26-27]. Dixon alleges that over the next 18-24 months, Reid harassed her and, on two occasions, physically groped her. *Id.* ¶¶ 39-57. Reid adamantly denies the allegations, as discussed more below; but regardless, Dixon's claim for lost commissions fails even if the Court accepts as true the allegations of sexual harassment and assault.

A.    **Dixon's Allegations Of Harassment**

Dixon claims that between 2000 and 2002, Reid sexualized and harassed her by, among other things, making flirtatious comments and asking that she wear skirts and high heels. Dkt. No. 1 [Compl., ¶¶ 39-41, 52]. Most importantly, Dixon claims Reid frequently invited her to his hotel room "to listen to music," called her late at night to ask that she join him in the hotel, and then became angry when she would not relent. *Id.* ¶ 53. According to Dixon, when she started ignoring his calls and declining to go to his hotel, Reid became angry and retaliated against her by "turn[ing] hostile towards her, and her artists, and her ideas." *Ibid*.

In particular, Dixon alleges that Reid "would directly respond to [Dixon's] rejection of his sexual advances by punishing the artists [Dixon] had already signed or *by blocking the artists that she attempted to sign."* Dkt. No. 1 [Compl. ¶ 54 (emphasis added)]. More specifically, Dixon alleges that Reid retaliated against her for her "rejection of his sexual advances" by refusing to sign two up-and-coming artists at the time, Kanye West and John Legend. She alleges Reid "passed" on Kanye West, whom she supposedly brought to Arista for an audition (*id*. ¶ 55), and that Reid similarly refused at the last minute to attend an audition that she had set up with John Legend, and refused to sign him to the label. *Id.* ¶ 56.

Dixon alleges that in both cases, Reid was "stifl[ing]  her career and the prospects of any of the artists she brought to him … in order to punish Ms. Dixon for rejecting his sexual pressures." Dkt. No. 1 [Compl. ¶ 57]. *See also id*. ¶ 70 (alleging that Reid "consistent[ly] tether[ed] his sexual advances to professional obstacles that he placed in [Dixon's] path"); ¶ 71 (alleging that Reid "made it impossible for [Dixon] to do her job as punishment for rejecting his advances."); ¶ 72 (alleging that Reid "suffocated her career as punishment for her refusal to have a sexual relationship with him or allowing him to continue to assault her unfettered").

Dixon alleges that she "left Arista to pursue an MBA at Harvard Business School in 2002," after "she realized Mr. Reid would continue to stifle her career and the prospects of any of the artists she brought to him …." Dkt. No. 1 [Compl. ¶ 57].

### B.    Dixon's Claims Of Sexual Assault

Dixon separately alleges that Reid physically assaulted her on two occasions in 2001 when she worked at Arista. Dixon's allegations of physical assault, however, were asserted only after the passage of the ASA, and are contradicted by countless statements she made in the past, at a time when she had no motivation to lie about Reid.

For many years, Dixon 

Declaration of Gregory P. Korn in support of Defendant's Motion for Partial Summary Judgment ( "Korn Decl."), Ex. 1 [Dixon 6 at 7480]. ███████████████ Dixon wrote in one entry:

Korn Decl., Ex. 2 [DIXON 841 at 847 (emphasis added)].

Dixon made ███████ admission in a televised interview years ago. In that interview, Dixon was asked how the alleged harassment by Reid was "different" from what had occurred with Simmons. She answered:

It was different. **_L.A. Reid is not violent_**. I want to be very clear. **_I'm not accusing him of being violent or being a rapist_**. At all. What happened there is

> *classic harassment* in the workplace with real economic, and emotional, and life-altering consequences.

Korn Decl., Ex. 3 [Buzzfeed Interview at 22:21-23:03] and Ex. 4 [September 3, 2018 Buzzfeed.News Article].

███████████████████████████████████████████████████████

██████████████████████    Dixon alleges in her November 8, 2023 Complaint in this action that he violently assaulted her on two separate occasions in 2001. The first alleged incident was on a private flight in January 2001. Dkt. No. 1 [Compl. ¶ 42]. The second alleged incident was on a car ride in 2001. *Id*. ¶ 48.

### C.    Dixon's Claims Under The Adult Survivors Act And GMVA

The Complaint asserts a First Count for Sexual Battery/Assault, a Second Count for False Imprisonment, and a Third Count for Intentional Infliction of Emotional Distress. Dkt.  No. 1 [Compl., ¶¶ 79-91]. Those first three claims are asserted under New York's Adult Survivors Act, N.Y. C.P.L.R. § 214-j, on the basis that Reid's alleged assaults "constitute sexual offenses … under New York Penal Law Article 130." *Id.* ¶¶ 78, 81, 84-85, 89. With respect to these three claims, Dixon alleges that, as a "direct and proximate result of [Reid's] acts, [Dixon] has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy." *Id.* ¶¶ 82, 86, 91.

The Complaint also asserts a Fourth Count for violation of New York City's Victims of Gender-Motivated Violence Protection Law (hereinafter, "GMBA"). Dkt.  No. 1 [Compl., ¶¶ 92-98]. That claim alleges that the "conduct of Mr. Reid, including, but not limited to, Reid's sexual assaults and batteries of Ms. Dixon constitutes 'a crime of violence' and a 'crime of violence

motivated by gender' against Ms. Dixon as defined by the New York City Gender Motivated

Violence Act, N.Y.C. Admin. Code § 8-903 (2017)." *Id.* ¶ 93.

    **D.**    **Dixon's Demand For Lost Commissions**

    Dixon has proffered the opinion of Marc Plotkin ("Plotkin")—a professor at New York

University's Clive Davis Institute of Recorded Music— 

See Korn Decl., Ex. 5 [Plotkin Report at 1]. Plotkin's expert report explains that

*Id.*, Ex.

5 [Plotkin Report at 1].

    By way of background, Dixon was employed at Arista

*See* Korn Decl., Exs. 6 and 7. S*ee also id.* Ex. 8 [Plotkin Depo. at

13:11-16, 22:21-23:6, 28:11-21 (testifying that

*See id.* Exs. 6 and 7 at ¶ 4(B).

*Id.*

*Id.*

    As stated above, Dixon alleges that Reid failed to have Arista sign Kanye West and John

Legend as Arista artists "in order to punish Ms. Dixon for rejecting his sexual pressures." Dkt.

No. 1 [Compl., ¶ 57]. She has engaged Plotkin 

. *See* Korn Decl., Ex. 5 (Plotkin Report at 1) and Ex. 8 [Plotkin Depo, at 12:14-15:2].

*See id.* Ex. 5 [Plotkin Report at 1] and Ex. 8 [Plotkin Depo., at 12:14-15:2].

Plotkin then purported

*See generally id*. Ex. 5

(Plotkin Report).

III.    <u>**LEGAL STANDARDS FOR SUMMARY JUDGMENT**</u>

Federal Rule of Civil Procedure 56(b) allows summary judgment "on all or part of a claim." Fed. R. Civ. Proc. 56(b) (emphasis added). Because a claim is "composed of both the theory of liability and the remedies that that theory supports," a motion for partial summary judgment can be directed at "an element of damages." *Hamblin v. British Airways PLC*, 717 F.Supp.2d 303, 307-08 (E.D.N.Y. 2010). *See also Ehrlich v. American Airlines*, 360 F.3d 366, 368, 401 (2d Cir. 2004) (affirming partial summary judgment precluding the plaintiffs from pursuing claims for mental injuries not allowed under the law). "District courts may grant summary judgment as to damages for which there exist no disputed issues of material fact." *Hart v. Rick's Cabaret Intern., Inc.,* 60 F.Supp.3d 447, 474 (S.D.N.Y. 2014) ("If one portion of damages is undisputed while other portions remain in dispute, the court may grant summary judgment as to the undisputed portion."); *BDG Gotham Residential, LLC v. Western*

*Waterproofing Co., Inc.*, 2024 WL 4349163, *27 (S.D.N.Y. Sept. 30, 2024) (granting summary judgment for defendant as to various categories of damages sought by plaintiff).

Summary judgment is appropriate only "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

Once the moving party meets its burden, the burden shifts to the opposing party (here, Dixon) to "'set forth specific facts showing that there is a genuine issue for trial'." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (quoting Fed. R. Civ. P. 56(e)). A party may not defeat a motion for summary judgment solely through "unsupported assertions" or "conjecture." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). The nonmoving party cannot rest on "mere allegations or denials" of the facts submitted by the moving party. Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514 (citing Rule 56(e)); *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.")

IV.    **ARGUMENT**

Dixon's claim to recover alleged lost commissions under her Employment Agreement is not cognizable as a matter of law. As discussed below, the ASA only revives claims that result from "sexual offenses" under New York Penal Law Article 130. New York courts have

repeatedly recognized that the ASA does not cover or revive claims for damages arising out of conduct that is not a "sexual offense," such as claims for sexual harassment.

Here, as is evidenced by Dixon's own complaint, the commissions she claims to have lost from Reid's failure to sign Kanye West and John Legend as Arista artists do not flow from, and were not proximately caused by, the alleged sexual assaults that are the basis for her ASA and GMVA claims. Rather, these hypothesized lost commissions flow from the alleged acts of non-physical retaliation. As courts have repeatedly held, the ASA and GMVA do not revive claims for damages for non-physical acts that are not covered by those acts. The Court should therefore grant partial summary judgment of Dixon's claim for lost commissions.

## A.    The ASA Only Allows Recovery of Damages Suffered as a Result of A Defined Sexual Offense

The ASA revives claims "alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law" that were committed against an adult (i.e., a person eighteen years of age or older). N.Y. C.P.L.R. § 214-j (emphasis added). Under the plain language of the Act, the ASA only revives claims which arise from conduct constituting a statutorily defined sexual offense. *See e.g., J.S.M. v. City of Albany Dept of Gen. Svcs.*, 211 N.Y.S.3d 859 (2024); *Levin v. Sarah Lawrence College*, 747 F.Supp.3d 645, 664 (S.D.N.Y. 2024).

In determining whether a claim is covered by the ASA, the focus is on "the conduct which caused the injury, not on the nature of the legal theory under which the cause of action was brought." *J.S.M.*, 211 N.Y.S.3d at 868. Various state law claims can be revived by the ASA if "a sexual offense is the conduct that caused injury." *Id*.; *see also id*. (holding that claims are

covered if "the ultimate injury was the result of a sexual offense"). For example, in *Wilkie v. Village of Hempstead*, 2023 WL 5952056, *9 (E.D.N.Y. June 20, 2023), the court recognized that the plaintiffs' claims for false arrest/imprisonment would be covered by the ASA if the defendant "falsely arrested/imprisoned them ***during his assaults***." (Emphasis added.)

On the other hand, claims are not revived under the ASA where the injury for which the plaintiff is suing does not stem from a sexual offense. For example, in *Reid v. McKelvey*, 2024 WL 4345585, *4 (S.D.N.Y. Sept. 30, 2024), the Court found that defamation and intentional infliction of emotional distress ("IIED") claims were not revived by the ASA, stating: "Here, the injuries stemming from the alleged defamation and IIED are distinct from those injuries that were 'as a result of conduct which would constitute a sexual offense under Article 130.'" *Accord Doe v. New York City Department of Education*, 2023 WL 2574741 at *4 (E.D.N.Y. March 20, 2023) (dismissing claims that Defendant made "unwanted sexual advances towards Plaintiff" and "sexually harass[ed] her" brought pursuant to New York's Child Victims Action (CVA) because sexual harassment is not a crime covered by New York State Penal Law §130 and thus does not fall under the categories of claims revived by the CVA).

In *Levin*, the plaintiffs asserted claims under the ASA against Sarah Lawrence College, alleging that a third party who resided at the school (Lawrence Ray) "committed acts of manipulation, grooming, sexual abuse, food deprivation and sleep deprivation" upon the plaintiffs. 747 F.Supp.3d at 665. It was undisputed that the plaintiffs' claims were time-barred unless the ASA applied. *See id*. at 659-660. In determining whether the ASA revived the plaintiffs' claims, the court recognized that "the ASA's limitations are injury-specific." *Id*. at 664. That is:

> The ASA revives **only those claims that seek relief from an injury caused by conduct that constitutes a predicate sexual offense** under Article 130 of the Penal Law.

*Id.* (emphasis added); *see also ibid.* ("The ASA applies "to a broader set of causes of action than the assault itself . . . provided the ultimate injury was the result of a sexual offense.").

Applying this rule, the court dismissed the plaintiffs' state-law claims against the college. Regarding Lawrence Ray's alleged "manipulation" and "grooming" of students at the college, the court stated: "None of those allegations suffice to plead any injury or condition suffered as a result of conduct which would constitute a sexual offense under Article 130." *Id.* at 665. The court further rejected the plaintiffs' claims to the extent they were based on alleged "sexual abuse," finding they were "mere conclusory statements unsupported by factual allegations." *Id.* at 666. In addition, the plaintiff could not show that the alleged sexual offenses which occurred after the victims left the college were proximately caused by the college's negligence, particularly given that the college's purported misconduct was "temporally removed from the subsequent injury, and superseded by Ray's intervening criminal conduct." *Id.* at 668 (citation omitted).

**B.    Dixon's Claim To Lost Commissions Is Not Covered By The ASA And Is Therefore Time-Barred**

Dixon's claim for lost commissions fails as a matter of law, because it stems from a claim that was not revived by the ASA and is clearly time-barred.

It is conceded for purposes of this motion that Dixon's first through third counts for sexual battery/assault, false imprisonment, and intentional infliction of emotional distress are covered by the ASA to the extent they are based on the allegation that Reid "intentionally and

15

forcibly digitally penetrated and touched sexual and intimate parts of Ms. Dixon's body" (DKt. No. 1 [Compl. ¶ 81]), and to the extent they seek damages allegedly resulting from the alleged sexual assaults, such as damages for physical injury, emotional distress, and psychological trauma (*id.* ¶ 82). However, by Dixon's own admissions, the purported lost commission damages do not flow from the alleged sexual assaults, but instead flow from a different alleged act by Reid—his refusal to sign Kanye West and John Legend as Arista artists.

Obviously, Reid's failure to sign an artist to Arista is not itself a "sexual offense under Article 130 of the Penal Law" that could give rise to a claim (and resulting damages) under the ASA. *Levin*, 747 F.Supp.3d at 664. Dixon could possibly argue that Reid's failure to sign Kanye West and John Legend gives rise to a claim for retaliatory sexual harassment under New York state and federal law for which Dixon is entitled to recover the lost commissions. However, sexual harassment claims under New York law are subject to a three-year limitations period. *See Taylor v. City of New York*, 207 F.Supp.3d 293, 302 (S.D.N.Y. 2016) ("The NYSHRL and NYCHRL statutes of limitations are three years."). Thus, any claim for retaliation based on Reid's alleged acts in 2001 and/or 2002 is long since time-barred unless the ASA applies.

The ASA, however, does not apply because the alleged retaliation/harassment from which Dixon's claim would arise—Reid's failure to sign West and Legend to Arista—does not constitute a sexual offense. In *Doe*, the district court dismissed a claim for sexual harassment brought under the CVA based on the defendant's "unwanted sexual advances toward Plaintiff" because "[s]exual harassment is not a crime covered by New York State Penal Law §130." 2023 WL 2574741 at *4. Similarly, in *Levin*, the court found that sexual harassment claims were not revived by the ASA where they involved "grooming" and "manipulation" that did not constitute sexual offenses under Article 130. 747 F.Supp.3d at 665-666.

16

Here too, any sexual harassment claim by Dixon is not covered by the ASA and is time-barred. As noted above, the conduct of refusing to sign an artist to a label is not a sexual offense. Further, Dixon herself has admitted that Reid's failure to sign these artists was not related to, much less the result of, the alleged sexual assaults. In the Complaint, Dixon repeatedly alleges that the failure to sign the artists (and thus the allegedly resulting lost commissions) was in retaliation for Dixon's refusal to acquiesce to Reid's unwanted advances: specifically, Dixon's failure to accept his invitation to his hotel room. *See, e.g.*, Dkt. No. 1 [Compl. ¶ 54 (alleging that Reid's decision to "block the artists she attempted to sign" was in retaliation for her "rejection of his sexual advances" in refusing to meet him at his hotel room); ¶ 57 (alleging that Reid passed on signing both artists "to punish [Dixon] for rejecting his sexual pressures"); ¶ 70 (alleging that Reid "consistent[ly] tether[ed] his sexual advances to professional obstacles that he placed in [Dixon's] path"); ¶ 71 (alleging that Reid "made it impossible for [Dixon] to do her job as punishment for rejecting his advances")].

Dixon 



Korn Decl. Ex. 9 [Dixon Depo. at 312:21-314:10]; *see also id.* [Dixon Depo. at 307:11-310:24

(                                                                                              

                                                    ).

        Finally, Dixon                                                             In a

2018 publicized interview for *Profile* by Buzzfeed News, Dixon explained that Reid's

*harassment* derailed her career, stating:

> L.A. Reid is not violent. I want to be very clear. I'm not accusing him of being
> violent or being a rapist. At all. What happened there is ***classic harassment*** in the
> workplace with real economic, and emotional, and life-altering consequences
> because, ***if you do not comply with repeated solicitations, right, this person who
> is the gatekeeper, the decisionmaker, can kill your project, can just shelf your
> record, and just throw up roadblocks for you*** and make your life difficult. And
> that is what happened.

Korn Decl., Ex. 3 [Buzzfeed News Interview at 2:21-23:32 (emphasis added)] and Ex. 4.

                              Korn Decl., Ex. 10 and Ex. 9 [Dixon Depo. at 374:5-376:8

(authenticating writing)].

*Id.*, Ex. 10 (emphasis added).

        Just as in *Doe* and *Levin*, the conduct at issue in any claim for sexual harassment based

upon Reid's failure to sign West and Legend is unwanted "solicitations for sex." Those

solicitations do not amount to sexual offenses under Article 130. Accordingly, this claim was not revived by the ASA, and Dixon cannot seek the purported lost commissions suffered as a result of this alleged retaliation.

### C.    The Lost Commissions Are Likewise Not Recoverable Under The GMVA

New York's GMVA "provides a civil cause of action for 'injur[y] by an individual who commit[ted] a crime of violence motivated by gender.'" *Breest v. Haggis*, 115 N.Y.S.3d 322, 325 (2019) (quoting Administrative Code § 10–1104). "The term 'crime of violence' is defined as 'an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law ... if the conduct presents a serious risk of physical injury to another, whether or not those acts actually resulted in criminal charges, prosecution or conviction.'" *Id.* (quoting Administrative Code § 10–1103).

For all the same reasons stated above in connection with the ASA, Dixon cannot seek her alleged lost commissions under her GMVA claim. Reid's alleged inviting of Dixon to his hotel, and his alleged refusal to sign Kanye and Legend as Arista artists, are not "crimes of violence."

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Reid respectfully requests that the Court grant this motion and summarily adjudicate Dixon's claim for damages for lost commissions.

Respectfully submitted,

Dated: May 19, 2025

Gregory Korn

**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
Shawn Holley (*pro hac vice*)
Gregory Korn (*pro hac vice*)
Suann C. MacIsaac *(pro hac vice)*
Kate Mangels *(pro hac vice)*
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
310-566-9822
sholley@khiks.com
gkorn@khiks.com
smacisaac@khiks.com
kmangels@khiks.com

**LAW OFFICES OF BOBBI C. STERNHEIM**
Bobbi C. Sternheim, Esq.
225 Broadway, Suite 715
New York, NY 10007
212-243-1100

*Attorneys for Defendant Antonio Marquis "L.A." Reid*

**CERTIFICATE OF COMPLIANCE (LOCAL RULE 7.1(c)**

The undersigned, counsel of record for Defendant Antonio Marquis "L.A." Reid, certifies

that this brief contains 4,687 words, which complies with the word limit of Local Rule 7.1(c).

Dated: May 19, 2025

_____

Gregory Korn

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 19, 2025, I electronically served the above document on the following:

Kenya K. Davis
Boies Schiller Flexner LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley
Amber S. Stewart
Daniel J. Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
astewart@bsfllp.com
dcrispino@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

*/s/ Gregory Korn*
Gregory Korn