UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DREW DIXON,

      Plaintiff,                      Case No.:      1:23-cv-09878-JAV

v.

ANTONIO MARQUIS "L.A." REID,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL
MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Drew Dixon ("Plaintiff" or "Ms. Dixon"), by and through her undersigned counsel, files this response in opposition to Defendant Antonio Marquis "L.A." Reid's ("Defendant" or "Mr. Reid") partial motion for summary judgment. *See* Dkt. 107. Plaintiff requests oral argument on this motion.

                                                    Kenya K. Davis (NY Bar #4162483)
                                                    BOIES SCHILLER FLEXNER LLP
                                                    1401 New York Ave., NW
                                                    Washington, DC 20005
                                                    (202) 237-9608
                                                     kdavis@bsfllp.com

                                                    Sigrid S. McCawley (NY Bar # 6051460)
                                                     Daniel J. Crispino (*pro hac vice*)
                                                     Amber S. Stewart (*pro hac vice*)
                                                     BOIES SCHILLER FLEXNER LLP
                                                     401 E. Las Olas Blvd., Suite 1200
                                                     Fort Lauderdale, FL 33301
                                                     (954) 356-0011
                                                     smccawley@bsfllp.com
                                                     dcrispino@bsfllp.com
                                                     astewart@bsfllp.com

                                                    *Counsel for Plaintiff Drew Dixon*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

I. Early Days at Def Jam and Arista Records ................................................................. 2

II. Defendant's System of Sexual Harassment, Intimidation, Retaliation, and Sexual Abuse ........................................................................................................................... 3

III. Plaintiff's Demand for Lost Commissions .................................................................. 7

IV. Response to Defendant's Other Factual Allegations ................................................... 7

LEGAL STANDARD .............................................................................................................. 8

ARGUMENT ........................................................................................................................... 9

I. Plaintiff's Damages for Lost Commissions Were Caused by Defendant's Sexual Assaults and Thus Revived by the ASA ...................................................................... 9

II. Plaintiff's Damages for Lost Commissions Were Caused by Defendant's Crimes of Violence and Thus Revived by the GMVA ............................................................ 12

III. In the Alternative, Whether Plaintiff's Lost Commission Damages Stem from Defendant's Sexual Assault is a Question of Fact for the Jury ................................. 13

CONCLUSION ...................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carroll v. Trump*, 680 F. Supp. 3d 491 (S.D.N.Y.),
  *aff'd in part, appeal dismissed in part*, 88 F.4th 418 (2d Cir. 2023) ........................................... 9

*Hough v. Petty*,
  2023 WL 7687866 (E.D.N.Y. Oct. 10, 2023) ............................................................................ 9

*Levin v. Sarah Lawrence College*,
  747 F.Supp.3d 645 (S.D.N.Y. 2024) ................................................................................. 10, 11

*Reid v. McKelvey*,
  2024 WL 4345585 (S.D.N.Y. Sept. 30, 2024) ......................................................................... 11

*Valentine v. Lopez*,
  283 A.D.2d 739 (2001) ............................................................................................................ 13

**Statutes**

N.Y. Penal Law § 130.20 .............................................................................................................. 11

N.Y. Penal Law §§ 130.55–130.70 ............................................................................................... 11

N.Y. Penal Law § 130.65 .............................................................................................................. 12

N.Y.C. Admin. Code § 8-901-05 .................................................................................................. 12

N.Y.C. Admin. Code § 8-903 ......................................................................................................... 1

N.Y.C. Admin. Code § 10–1103 .................................................................................................. 12

**Rules**

N.Y. C.P.L.R. § 214-j .......................................................................................................... 1, 7, 9

**INTRODUCTION**

Plaintiff Drew Dixon was a prolific music executive with an impressive resume of artists she worked with and songs she produced. Tragically, after she endured a sexual assault at the hands of music mogul Russell Simmons, she was assaulted on two occasions by her boss Defendant Antonio Marquis "L.A." Reid. As part and parcel of his cycle of sexual abuse, Defendant pressured Plaintiff into situations where he could sexually assault her by dangling the careers of artists over her like a sword of Damocles. However, in his motion for partial summary judgment (Mot.), Defendant attempts to avoid liability for his actions by bifurcating Plaintiff's damages resulting from the sexual assaults. This attempt and his motion should be rejected. As explained in Plaintiff's testimony and by her expert, Dr. Chitra Raghavan, Defendant's sabotage of artists discovered by Plaintiff, including Kanye West and John Legend, enabled him to sexually assault Plaintiff through a system of sexual assault, sexual harassment, retaliation, and coercive control.[1] Because Defendant's use of retaliatory acts is inextricably intertwined with his acts of sexual assault, all the damages flowing from his actions, including Plaintiff's lost commissions for signing West and Legend, were revived by New York's Adult Survivors Act ("ASA"), N.Y. C.P.L.R. § 214-j and Gender-Motivated Violence Act ("GMVA"), N.Y.C. Admin. Code § 8-903, and thus viable at trial. Defendant's bid for summary adjudication of this issue should be denied.

---

[1] "Coercive control is an abuse dynamic that seeks to strip the victim of autonomy and agency by using a series of interlinked tactics such as intimidation, microregulation, isolation, and manipulation, including gaslighting, lies, deception, and degradation. By inducing constant fear and anxiety, the victims not only lose their agency and are forced into compliance but also develop traumatic symptoms. Coercive control is particularly powerful because the abuser tailors the control tactics to victim vulnerabilities, as Mr. Reid did, and eventually seeks to convince the victim that she is to blame for his abuse or the outcomes of it." Dkt. 120-1, Dr. Raghavan Report at 1 n.2.

1

**FACTUAL BACKGROUND**

I.    **Early Days at Def Jam and Arista Records**

Plaintiff is a prolific and talented music producer, executive, and entrepreneur. Dkt. 1 ("Compl.") ¶¶ 1, 42, 44, 62. A savant, her talent for listening to and analyzing music developed into skills that helped give the world hits such as "American Boy" (Estelle featuring Kanye West), "My Love Is Your Love" (Whitney Houston), "Maria Maria" (Carlos Santana), and "A Rose Is Still a Rose" (Aretha Franklin featuring Lauryn Hill), just to name a few. *Id.* ¶ 1. In 1994, her talent was recognized by music mogul Russell Simmons, who hired her as Director of Artists & Repertoire (A&R) at his company Def Jam Records ("Def Jam"). Ex. 1, Dixon Tr. 26:13-27:15, 29:2-9, 30:4-6. A year later, in October 1995, Simmons raped Plaintiff. *Id.* at 54:17-21. Plaintiff did not report the rape to the police because, among other things, she "wanted to move on with [her] life [and] put it behind her" because "[she] had a record that was sitting at the top of the R&B charts with [her] name on it, and [she] wanted to move forward with that being the thing people thought of when they heard [her] name and not this horrible thing that happened to [her]. *Id.* at 94:11-95:2. At the time, she didn't know the trauma from the rape would have reverberating effects for the rest of her life. *Id.*

After the rape, Plaintiff stopped going into the Def Jam office on a regular basis so she could avoid Simmons. *Id.* at 122:18-24. She eventually resigned in January of 1996, took some time off, and then started working at Arista Records ("Arista") in April of 1996. *Id.* at 125:11-14, 165:20-22, 166:13-15. Her initial title was Senior Director of A&R, and she was later promoted to Vice President of A&R. *Id.* at 168:14-169:6, 178:23-179:2. One of her main job responsibilities was finding songs for artists like Whitney Houston, Aretha Franklin, and Carlos Santana. *Id.* at 168:14-169:6. In both roles, she had a close and positive working relationship with her boss, Clive Davis, an industry-leading music producer and CEO of Arista. *Id.* at 176:18-21. While working

2

for Davis at Arista, Plaintiff was successful and prolific—she signed an artist shortly after starting, which was unheard of, and she consistently found big singles for existing artists. *Id.* at 168:23-169:19. Davis and Plaintiff worked frequently at his office, his car, his bungalow at the Beverly Hills Hotel, his home in Bedford NY, and his villa at the Bellagio. *See, e.g.*, *id.* at 198:14-24. It was common in the music industry to listen to music in cars and to work out of more private spaces like homes and hotel rooms. While working for Davis, Plaintiff was never hesitant to go where she needed to go to complete an assignment and do her job.

In her role as Vice President of A&R, Plaintiff interacted with Defendant. *Id.* at 180:20-23. They had met before, in 1993, at the mastering session for an Outkast album. *Id.* at 181:2-8, 181:24-182:9. Defendant was respectful to Plaintiff and impressed by her talent when they initially met and when Plaintiff worked for Davis. *Id.* at 183:11-14, 184:13-24. In 1999, Arista's leadership announced that Defendant would replace Davis as CEO of Arista. *Id.* at 189:20-190:15. Davis was going to open a new record label and asked Plaintiff to leave Arista for his label. *Id.* at 194:10-20. Plaintiff initially agreed, but a kidney cancer diagnosis, coupled with pressure from Strauss Zelnick, Defendant's boss, and Defendant himself made her reluctant to break her contract with Arista and leave. *Id.* at 194:22-196:10. Moreover, she thought her respectful relationship with Defendant would continue when he became CEO. *Id.* at 195:19-196:3. Of course, this was not the case.

II. **Defendant's System of Sexual Harassment, Intimidation, Retaliation, and Sexual Abuse**

Soon after Defendant became CEO of Arista, his coercive control of Plaintiff through sexual harassment, intimidation, retaliation, and sexual assault began. It started with inviting Plaintiff to tour apartments with him and his wife, only for his wife to be absent. Ex. 1 at 204:18-204:2, 205:15-9, 208:8-12. It was during this incident that Defendant began to flirt and make

3

inappropriate comments to Plaintiff. *Id.* at 210:19-212:20, 214:22-215:5. It quickly escalated to fondling Plaintiff under her shirts, kissing her neck, and inviting her to his hotel room. *Id.* at 222:3-16. When Plaintiff rejected Defendant's advances and ignored the invitations to his hotel room, he "made it clear to [Plaintiff] that he was unhappy with [her] and that it wasn't because of [her] work ethic or [her] product; it was because [she] was not complying." *Id.* at 228:13-18. This behavior is just one illustration of Defendant's use of coercive control against Plaintiff. His behavior reached a boiling point during a flight to Puerto Rico on Defendant's private plane.

Shortly after Defendant became CEO of Arista, he announced a company-wide retreat to Puerto Rico. *Id.* at 229:17-230:10. Karen Kwak, Defendant's "person" in A&R administration, instructed Plaintiff that she did not need to book a commercial flight because the senior staff would be flying on a private plane to meet and plan presentations. *Id.* at 230:20-231:5. This was a trap, because when Plaintiff arrived at the airport and boarded the plane, no other Arista staff members or executives were there. *Id.* at 237:6-9, 238:9-16, 239:4-25. Plaintiff hid in the bathroom to wait for others to arrive, but eventually she was told to exit. *Id.* at 279:2-22. Having finally gotten Plaintiff alone and after trapping her on his plane, Defendant sexually assaulted her. *Id.* at 279:17-22. Once they arrived at Puerto Rico, Plaintiff stayed in her assistant's room during the retreat and avoided Reid. *Id.* at 287:22-25; Dkt 120-1 at 5. She flew back to New York on a commercial flight to avoid flying back with Defendant. *Id.*

Back in New York, Plaintiff was warier than ever of being alone with Defendant, who was increasingly hostile because Plaintiff could not bring herself to be friendly after the plane assault. Dkt. 120-1 at 5. Armed with the threat that he would sexually assault Plaintiff if he got her alone, Defendant continued his cycle of sexual harassment, coercive control, and retaliation. The plane assault made hotel rooms, cars, and other private places—spaces that Plaintiff had no problem

4

working in for hours with Clive Davis—unsafe spaces. When Plaintiff increasingly refused Defendant's demands to visit his hotel room, he thwarted her projects at almost every turn and perfunctorily dismissed her ideas at weekly meetings. *Id*. For example, in March 2001, Defendant invited Plaintiff to his hotel room to discuss the future of Toya, an artist she had signed to the label. *Id*. at 6. Plaintiff refused to go to his hotel room because she feared being sexually assaulted again. Ex. 1 at 375:9-15. At the next weekly meeting, Defendant looked at Plaintiff and said, "I listened to her (Toya's) album again last night in my hotel room, and I am not feeling it anymore." Dkt. 120-1 at 6. Plaintiff understood that Defendant was referring to her refusal to come his bedroom and was wielding Toya's contract as a weapon against her. *Id*. She could either come to his hotel room where she would be sexually assaulted or watch him sabotage the careers of her artists. In Toya's case, Defendant "kill[e]d" her contract by 2002. *Id*.

After 10 months of Defendant rejecting her work and music projects, Plaintiff agreed to ride in his car to play a sample by Alice Smith, another young artist she'd discovered. Ex. 1 at 292:6-12; Dkt. 120-1 at 6. Her decision was another demonstration of Defendant's coercive control over her—from the outset he pressured her by saying "I've got a few minutes right now. Drew, if you like her, if she's got it good, this is your chance. Do you want to ride with me or not? I'll drop you of [sic]." Ex. 1 at 292:13-17. As detailed in Dr. Raghavan's expert report:



Dkt. 120-1 at 6. But although the car ride would be short, such that Plaintiff thought Defendant wouldn't try to sexually assault her again, she was wrong, and he did. He was

███████████████████████████

███ Ex. 1 at 292:19-293:7.

After this assault, Plaintiff was deeply depressed, suicidal, and just wanted a way to get away from Defendant. *Id.* at 298:19-24; Dkt. 120-1 at 6. It was shortly after the car assault that Plaintiff met John Legend, was impressed by his musical ability, and tried to get him signed at Arista. Ex. 1 at 299:13-16, 308:9-14. Plaintiff invited Defendant to a venue named SOB's to watch Legend perform live. *Id.* at 308:16-22. When Plaintiff played Legend's demo for Defendant, he agreed "[t]his guy is good" and agreed to attend the show at SOB's. *Id.* He then offered Plaintiff a ride. *Id.* at 308:23. The car assault fresh on her mind, Plaintiff initially accepted, but then told him at the last minute that she was already downtown and that she would meet him at the venue. *Id.* at 308:23-309:4. In retaliation for Plaintiff dodging a situation where they both knew she would be assaulted, Defendant did not show up to the performance. *Id.* at 309:5. Legend put on a great show, so Plaintiff tried again to convince Defendant to attend his performance. *Id.* at 309:8-20. This time, Defendant offered her the budget to book a rehearsal space for Legend to perform for him live, and even said he would bring other Arista staff members as well. *Id.* at 309:23-310:4. But the day of the audition, Defendant cancelled, and no one from Arista's senior staff besides Plaintiff attended the audition. *Id.* at 310:14-311:14. Once again, Defendant forced an impossible choice on Plaintiff: she could be sexually assaulted or have her career and those of her artist's sabotaged.

Plaintiff would try one more time to sign an artist—she brought in Kanye West to audition at Arista. *Id.* at 301:15-25. Like Plaintiff's other projects, Defendant "killed" it when Plaintiff refused to be alone with him. Dkt. 120-1 at 7. The difference is that this time, Defendant allowed West to audition for him, but he then "dressed down" Plaintiff in a room full of other Arista executives, telling her that she was bad at her job and that the audition had been a waste of his

6

time. *Id.* at 305:3-25. Helpless in the face of Defendant's cycle of sexual abuse, sexual harassment, coercive control and retaliation, Plaintiff quit her Vice President of A&R role at Arista and enrolled at Harvard Business School but remained a consultant for Arista for the next two years to maintain a salary and health benefits. Dkt. 120-1 at 7.

### III. Plaintiff's Demand for Lost Commissions

As illustrated and explained above, Defendant's sabotage of John Legend, Kanye West, and other artists Plaintiff brought to Arista were not isolated incidents of retaliation divorced from his sexual assaults of Plaintiff—they were one element of a larger system of sexual violence designed to subjugate and abuse Plaintiff in violation of Article 130 of New York's Penal Laws. Plaintiff's lost commissions for signing West and Legend—commissions that Defendant concedes she would have been entitled to under her Arista employment contracts, Mot. at 10—flow directly from this system and were revived by the ASA's sweeping command to revive "every civil claim" arising from sexual abuse. N.Y. C.P.L.R. § 214-j.

### IV. Response to Defendant's Other Factual Allegations

Although irrelevant to his motion for partial summary judgment on Plaintiff's lost commissions damages, Defendant incorrectly asserts in his statement of undisputed facts that Plaintiff only accused Defendant of sexual assault after the passage of the ASA in 2022. Mot. at 8. This statement is false and contradicted by Plaintiff's testimony—she told multiple people about Defendant's assaults prior to the ASA's passage. *Id.* at 405:4-406:8.

Defendant also claims Plaintiff's sexual allegations are contradicted by her prior statements in which she said that Defendant ▮▮▮▮▮▮▮▮▮▮ Mot. at 8-9. Again, this assertion is false. As Plaintiff testified, when Defendant sexually assaulted her in the early 2000s, ▮▮▮▮▮▮▮▮▮▮

7



*Id.* at 107:3-8107:3-22. So, while she knew that Defendant had penetrated her vagina with his finger on two separate occasions, ███ or that it was violent. *Id.* at 108:2-25.

Plaintiff's testimony is supported by Dr. Raghvan's expert report, where she explains that



Dkt. 120-1 at 5 n.11. At bottom, regardless of the noun or adjective Plaintiff used to describe the assaults at Defendant's hands, the outcome is the same. Forced digital penetration of her vulva and vagina constitute sexual assault—███████████████████████████████████████████.

## LEGAL STANDARD

"Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party ... is entitled to a judgment as a matter of law. ... In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.... To grant the motion, the court must determine that there is no genuine issue of material fact to be tried.... The Supreme Court teaches that 'all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' ... It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for

summary judgment." *Carroll v. Trump*, 680 F. Supp. 3d 491, 498 (S.D.N.Y.), *aff'd in part, appeal dismissed in part*, 88 F.4th 418 (2d Cir. 2023) (internal citations omitted).

"A material fact is one that might 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [fact finder] could return a verdict for the nonmoving party.'" *Id*.

## ARGUMENT

Contrary to Defendant's assertions, Plaintiff's claim for lost commissions for Kanye West and John Legend do not fail as a matter of law and are not time-barred. Defendant's motion hinges on erroneously separating Plaintiff's lost commissions damages from the other damages she suffered from Defendant's cycle of sexual assault, sexual abuse, and sexual harassment. His arguments should be rejected because the lost commission damages flow from the assaults and thus were revived by the ASA and GMVA.

### I. Plaintiff's Damages for Lost Commissions Were Caused by Defendant's Sexual Assaults and Thus Revived by the ASA

The plain text of the ASA states that it revives "*every civil claim or cause of action* brought against any party *alleging intentional or negligent acts or omissions* by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense[.]" N.Y. C.P.L.R. § 214-j (emphasis added); *Hough v. Petty*, 2023 WL 7687866, at *3 n.4 (E.D.N.Y. Oct. 10, 2023). In his motion, Defendant argues that Plaintiff's damages for lost commissions do not flow from him sexually assaulting Plaintiff, but from "his refusal to sign Kanye West and John Legend as Arista artists," and thus were not revived by the ASA. Mot. at 16. This argument is counter to the findings in Dr. Raghavan's expert report (which Defendant ignored in this motion), attempts to cut the causal chain between Defendant's assaults and Plaintiff's damages, and should be rejected.

As Dr. Raghavan described in her expert report, Defendant weaponized an interlocked system of sexual assault, harassment, coercive control, and retaliation against Plaintiff that ultimately drove her to leave Arista and the music industry altogether. *See* Dkt. 120-1 at 1. The elements of this system were not disjunctive—they depended on and fed off of each other, collectively resulting in Plaintiff's damages, including those for lost commissions. Defendant started by sexually harassing Plaintiff with inappropriate remarks and sexually abusing her by fondling her under her shirts and kissing her neck. This harassment and abuse made Plaintiff wary of being alone with Defendant because she was afraid he would demand sex. Her fear of being alone with Defendant in private spaces was proven correct when he sexually assaulted her on his plane and then in his car. Following these events, Plaintiff knew that if Defendant caught her alone, he would assault her. Thus, when Defendant began demanding she visit his hotel at the Four Seasons at night to do work, Plaintiff refused, wouldn't respond, or agreed she would but then not show up, in fear of being sexually assaulted. But for Defendant's assaults, Plaintiff would have worked late and in close proximity with Defendant just as she had with Clive Davis in his hotel rooms and at his residence. Instead, she refused, and Defendant, seeking to pressure her into accepting invitations for car rides and hotel room hangouts where he could sexually assault her again, retaliated by sabotaging the artists Plaintiff brought to Arista. In this way, the retaliation was a natural and foreseeable consequence of the sexual assaults. Thus, all of the damages caused by Defendant's cycle of sexual harassment, abuse, assault, coercive control, and retaliation, including Plaintiff's lost commissions, were revived by the ASA and not time-barred.

Certain of Defendant's cited cases do not challenge this argument and in some cases, supports Plaintiff's position. For example, in *Levin v. Sarah Lawrence College*, 747 F.Supp.3d 645, 665 (S.D.N.Y. 2024), when dismissing the plaintiffs claims as time-barred, the Court noted that

the "[p]laintiffs do not allege that the acts of grooming, manipulation, and food and sleep deprivation to which Ray subjected Plaintiffs were accompanied by physical touch such as might give rise to, for example, a claim for sexual misconduct, *see* N.Y. Penal Law § 130.20, forcible touching, *see* N.Y. Penal Law § 130.52, or sexual abuse, *see* N.Y. Penal Law §§ 130.55–130.70." But that is precisely what Plaintiff *did do* here—she has alleged and testified that Defendant's acts of retaliation and harassment were accompanied by physical touches giving rise to claims for sexual misconduct, forcible touching, and sexual abuse. *See* Compl.¶¶ 42-43, 48-49, 53-57; Ex. 1 Dixon Tr. at [XX-XX].

The *Levin* Court went on to say that "[n]either the Complaint nor Plaintiffs' memorandum of law in opposition to SLC's motion to dismiss identify any sexual offense codified within Article 130 that Ray's grooming or manipulation allegedly violated." *Id.* But again, Plaintiff has done exactly what the *Levin* Court asked—she has identified sexual offenses committed by the Defendant and argued that Defendant's retaliation is inextricably intertwined with his sexual offenses. Moreover, the *Levin's* Court reasoning "that the plaintiffs could not show that the alleged sexual offenses which occurred after the victims left the college were proximately caused by the college's negligence, particularly given that the college's purported misconduct was 'temporally removed from the subsequent injury, and superseded by Ray's intervening criminal conduct'" does not apply here because Defendant's sexual assaults and Plaintiff's resulting injuries are temporally and proximately linked.

Like *Levin*, in another one of Defendant's cited cases, *Reid v. McKelvey*, 2024 WL 4345585, at *4 (S.D.N.Y. Sept. 30, 2024), the plaintiff failed to allege that the injuries stemming from defendant's defamation and intentional infliction of emotional distress stemmed from or were connected to his sexually assaulting her. Again, this is the opposite of what Plaintiff has done here,

11

and Defendant's case does not support his position that the ASA did not revive Plaintiff's lost commission damages.

Neither do Defendant's attempts to cherry-pick Plaintiff's layperson descriptions of Defendant's complex web of sexual assault, sexual harassment, retaliation, and coercive control defeat Plaintiff's lost commission damages. As explained by Dr. Raghavan's report, Plaintiff "uses layperson's language to describe both her sexual abuse and her traumatic outcomes." Dkt. 120-1 at 5 n.14. Defendant cannot fault Plaintiff for being unable to completely explain the technical aspects of how Defendant's system of abuse worked—that's what her experts are for.

## II.     Plaintiff's Damages for Lost Commissions Were Caused by Defendant's Crimes of Violence and Thus Revived by the GMVA

For the same reasons that the ASA revived Plaintiff's lost commissions damages, the GMVA also revived these damages. The GMVA provides a cause of action based on crimes of violence motivated by gender, defined as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Admin. Code § 8-901-05. New York's administrative code defines "crime of violence" as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law ... if the conduct presents a serious risk of physical injury to another, whether or not those acts actually resulted in criminal charges, prosecution or conviction.'" N.Y.C. Admin. Code § 10–1103.

Here, the same logic and analysis for Plaintiff's lost commissions damages under the ASA applies to her demand for lost commissions damages under the GMVA. Defendant's refusal to sign Kanye West and John Legend flowed from his previous sexual assaults of Plaintiff, which constitute crimes of violence because they are felonies under Article 130 of New York's Penal Laws. *See, e.g.*, N.Y. Penal L. § 130.65 (sexual abuse in the first degree is a class D felony). But

12

for the assaults, Plaintiff would not have avoided meetings with Defendant, and he would not have retaliated against her by sabotaging West's and Legend's opportunities to secure record deals with Arista. The crime of violence and retaliation, along with the sexual harassment and coercive control, are all intertwined together and led to Plaintiff's damages.

### III. In the Alternative, Whether Plaintiff's Lost Commission Damages Stem from Defendant's Sexual Assault is a Question of Fact for the Jury

Plaintiff maintains that her lost commission damages flow from Defendant's sexual assault, were revived by the ASA and GMVA, and thus are viable at trial. However, solely in the alternative, because damages are a jury determination, and Defendant has already conceded that Plaintiff can proceed to trial on her other damages (Mot. at 6) Plaintiff submits that the question of whether her lost commissions damages flow from Defendant's web of sexual violence and assault under Article 130 or from his retaliation is a question of fact for the jury that cannot be decided at summary judgment. *See c.f., Valentine v. Lopez*, 283 A.D.2d 739, 742 (2001) (upholding jury's determination that defendant's actions directly caused plaintiff's injuries because "such jury determinations are given great deference and must be upheld where, as here, they are supported by sufficient evidence, even if other evidence exists supporting a contrary conclusion.").

### CONCLUSION

Defendant's partial motion for summary judgment (Dkt. 107) should be denied in its entirety, because her lost commission damages were revived by the ASA and GMVA and thus viable at trial.

Dated: June 13, 2025                                    Respectfully submitted,

                                                        **BOIES SCHILLER FLEXNER LLP**

                                                        /s/ Kenya K. Davis

                                                        Kenya K. Davis (NY Bar #4162483)
                                                        BOIES SCHILLER FLEXNER LLP

13

1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## CERTIFICATE OF COMPLIANCE (LOCAL RULE 7.1(c)

The undersigned, counsel of record for Defendant Antonio Marquis "L.A." Reid, certifies that this brief contains 4,410 words, which complies with the word limit of Local Rule 7.1(c).

Dated: June 13, 2025

*/s/ Kenya K. Davis*
Kenya K. Davis (NY Bar #4162483)

## CERTIFICATE OF SERVICE

I certify that on June 13, 2025, I electronically served the above document on the following:

Shawn Holley (*pro hac vice*)
Gregory Korn (*pro hac vice*)
Suann C. MacIsaac (*pro hac vice*)
Kate Mangels (*pro hac vice*)
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
sholley@khiks.com
gkorn@khiks.com
smacisaac@khiks.com
kmangels@khiks.com

*Attorneys for Defendant Antonio Marquis "L.A." Reid*

*/s/ Kenya K. Davis*
Kenya K. Davis (NY Bar #4162483)
