## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DREW DIXON,

        Plaintiff,                                  Case No.:       1:23-cv-09878-JAV

v.

ANTONIO MARQUIS "L.A." REID,

        Defendant.

_____ /

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENSE COUNSEL'S MOTION TO WITHDRAW AS COUNSEL

Plaintiff Drew Dixon ("Plaintiff" or "Ms. Dixon"), by and through her undersigned counsel, files this response in opposition to Defense Counsel's Motion to Withdraw as Counsel. *See* Dkt. 132.

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ iii

BACKGROUND ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................. 6

    I.    Defense Counsel Have Provided No Evidence of Defendant's Alleged
Inability to Pay ............................................................................................. 6

    II.    Defendant Is Wealthy and Capable of Paying His Counsel ........................... 7

    III.    Non-Payment of Legal Fees Is Not Enough to Warrant Withdrawal .................... 11

    IV.    Granting the Motion Would Likely Disturb the Court's Trial Date ...................... 12

    V.    Defense Counsel Have Ongoing Obligations with Respect to Fact
Discovery ..................................................................................................... 13

    VI.    Defense Counsel Have Ongoing Obligations with Respect to Financial
Discovery ..................................................................................................... 14

CONCLUSION .......................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Spina*,
  2020 WL 7753266 (S.D.N.Y. July 27, 2020)...................................................................... 7

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
  2014 WL 1087934 (S.D.N.Y. Mar. 19, 2014) .................................................................. 5, 12

*City of Almaty, Kazakhstan v. Sater*,
  2024 WL 1484051 (S.D.N.Y. Apr. 1, 2024)...................................................................... 13

*In re Meyers*,
  120 B.R. 751 (Bankr. S.D.N.Y. 1990)............................................................................... 11

*John Hancock Property and Cas. Ins. Co. v. Universale Reinsurance Co.*,
  1993 WL 147560 (S.D.N.Y. Apr. 30, 1993) .................................................................... 15

*Malarkey v. Texaco, Inc.*,
  1989 WL 88709 (S.D.N.Y. July 31, 1989) ...................................................................... 13

*Mario Valente Collezioni, Ltd. v. Semeraro*,
  2004 WL 1057790 (S.D.N.Y. May 10, 2004) ................................................................. 6, 15

*Oscar de la Renta Ltd. v. Strelitz Ltd.*,
  1993 WL 205150 (S.D.N.Y. June 7, 1993) ...................................................................... 15

*Rophaiel v. Alken Murray Corp.*,
  1996 WL 306457 (S.D.N.Y. June 7, 1996) ...............................................................7, 11, 12, 13

*S.E.C. v. Gibraltar Glob. Sec., Inc.*,
  2015 WL 2258173 (S.D.N.Y. May 8, 2015) ................................................................. 6, 7, 13

*S.E.C. v. Great Am. Techs., Inc.*,
  2009 WL 4885153 (S.D.N.Y. Dec. 15, 2009) ................................................................... 5

*United States v. Parker*,
  439 F.3d 81 (2d Cir.2006) ............................................................................................. 11

**Rules**

Loc. R. 1.4.................................................................................................................... 5

**Other Authorities**

Lisa Johnson Mandell, *Record Producer L.A. Reid Trims the Price on His Elegant Bel Air Mansion*, Realtor.com (Feb. 27, 2024) .....................................................................11

## INTRODUCTION

Plaintiff opposes the motion for several reasons. First, Defense Counsel have failed to meet their evidentiary burden of proving Defendant's accrued legal fees, refusal to pay, and/or inability to pay. Second, publicly available information and testimony from the Defendant's business partner contradict Defense Counsel's narrative of Defendant's inability to pay and suggest that the Defendant is wealthy and more than capable of paying his counsel. Third, even if the Defendant was unable to pay his counsel, in the Second Circuit, non-payment of legal fees alone is not enough to warrant granting a motion to withdraw. Fourth, Defense Counsel's withdrawal would have a negative impact on the timing of this proceeding to the detriment of Plaintiff, who has incurred expedited service expenses to meet discovery deadlines and trial readiness deadlines. Fifth, contrary to Defense Counsel's assertions, fact discovery is not complete because the review of Defendant's spoliated devices continues. Finally, financial discovery is not complete, as Defendant has yet to produce the financial records Plaintiff requested despite missing the Court's deadline and the extension Plaintiff granted him. For all these reasons, the Court should see Defense Counsel's motion for what it is—yet another effort to delay this case and deny Plaintiff her day in court—and deny the request to withdraw.

## BACKGROUND

In November 2023, Plaintiff filed her action against Defendant under the Adult Survivors Act. *See* ECF No. 1. From the beginning, Defendant has delayed this case by taking a dilatory approach to discovery. On February 1, 2024, Plaintiff served her first set of requests for production on Defendant. On March 18, 2024, Defendant served his written responses and indicated that despite several objections, he would "produce all such non-privileged documents in his possession, custody, or control, if any, that can be located following a reasonably diligent search that are

responsive…" But by May 16, 2024, one-hundred and five (105) days after Plaintiff served her requests for production on Defendant, he had yet to produce a single document. Plaintiff sent Defendant a deficiency letter and counsel for the parties met and conferred on May 28, 2024. During the conferral, Defendant informed that he would be seeking a discovery extension. His reason? That "[m]ore than two decades have elapsed between the date of the allegations and the commencement of this litigation. This extensive time span has posed challenges to locating any documentary evidence and potential witnesses." ECF No. 49. The Court granted Defendant's request to extend the fact discovery deadline to September 18, 2024. *See* ECF No. 50.

But as of September 3, 2024, Defendant had still yet to produce a single document to Plaintiff. Again, Defendant's excuse was that "given that these allegations date back more than two decades, it would be next to impossible for Defendant to locate responsive documents even assuming Plaintiffs' allegations were truthful (which they are not)" ECF No. 62. Even after he finally began producing documents on September 25, 2024, Defendant repeated this argument at the October 10th discovery hearing before the Honorable Judge Caproni. *See* ECF. No. 67, Tr. at 8:11-14. Judge Caproni gave this argument short shrift and pointed out that at the very least, Defendant should have documents concerning the 2017 *New York Times* article and the 2020 *On the Record* documentary, both of which reference him. *See id.* at Tr. 8:15-9:1. At the end of the hearing, Judge Caproni ordered the parties to produce certain discovery items, including the Defendant's text messages. *See* ECF No. 65.

Defendant produced some text messages by Judge Caproni's deadline. However, during the deposition of Karen Kwak, Defendant's "right hand" when they worked at Arista Records with Plaintiff, she revealed that she had also texted Defendant about Plaintiff's case. But to this point, none of Kwak's text messages to Defendant had been produced. *See* ECF No. 89, Tr. at 2:24-3:6.

2

At Plaintiff's insistence, Defendant finally produced the Kwak text message thread on October 30, 2024. Upon review, Plaintiff discovered that Defendant had spoliated evidence by deleting several messages from the text thread that discussed this lawsuit. On November 7, 2024, when confronted with the spoliation issue at his continued deposition, Defendant claimed that he did not know he was not allowed to delete his text messages and emails. *See id.* at Tr. 3:23-4:14. It is worth noting that in January 2023, when Plaintiff issued her first official demand letter to Defendant through his prior counsel, Joel Katz, Defendant was put on notice of his preservation obligations. Thus, Defendant's admission was shocking, but in some ways, it made sense—this explained the initial lack of any documents from Defendant, and why certain search terms about more recent events like the 2017 article and 2020 documentary yielded little to no produced documents. In contrast, Plaintiff has surrendered 1 phone, 2 laptops, and well over 10, 000 documents, including very sensitive information.

On November 18, 2024, counsel for the parties had a hearing before Judge Caproni regarding the spoliation of Defendant's devices. Realizing the gravity of the issue, Defense Counsel offered to pay for a complete forensic review of the Defendant's devices and agreed that all documents responsive to agreed-upon search terms (except for those protected by the attorney-client and marital privileges) would be produced. *See* ECF No. 89, Tr. at 11:12-13:9, 13:25-14:4. Judge Caproni approved this plan and ordered the parties to agree on a vendor to complete the review. *See id.* at Tr. 19:6-25.

Despite Judge Caproni's clear directives, here again, Defendant delayed the process. As ordered, Plaintiff investigated Defendant's proposed discovery vendor but found no independent reviews online about the vendor's work. *See* ECF No. 88 at 3. Thus, on November 22, 2024, Plaintiff proposed a highly reputable vendor, Kroll. *See id.* The parties went back and forth

amongst themselves and with Kroll about pricing, travel costs, etc., but eventually, on December 9, 2024, Defendant agreed to use Kroll. *See id.* However, despite this, Defendant didn't engage Kroll until December 20, 2024, and Kroll didn't begin imaging his devices until January 16, 2025. The imaging wasn't complete until January 30, 2025, ninety-two (92) days after Plaintiff first discovered his spoliation. And, the delays were not done—Plaintiff didn't receive the data and documents from the forensic review until April 23, 2025, one hundred and seventy-four (174) days after discovering Defendant's spoliation. *See* ECF. No. 102. Kroll indicated that its delay was due to Defendant's directive to examine *all* material on the Defendant's computer and phones, including application files. After Plaintiff's counsel met with Kroll to ask questions about the delay, Kroll narrowed the search to manageable text messages and responsive emails.

After completing an initial review of the materials finally provided by Kroll, on May 6, 2025, Plaintiff asked to meet with Kroll to discuss how to identify text messages that were deleted and recovered versus text messages that were never deleted. Kroll didn't agree to meet and instead directed Plaintiff to contact Defendant's other discovery vendor, DISCO. After submitting her opposition responses to Defendant's partial motion for summary judgment and *Daubert* motions, on June 17, 2025, Plaintiff again asked to meet with Kroll and Defense Counsel to ask questions about the forensic review, including how to determine *who* deleted certain text messages (Defendant or the recipient of his texts) and *when*. As of this filing, Plaintiff has not received a response from Kroll or Defense Counsel.

Defendant has also drawn out the financial discovery process. On March 10, 2025, the Court ordered all financial disclosures be served by April 18, 2025. *See* ECF No. 95. On April 1, 2025, after several attempts to ascertain the information needed to guide the financial discovery using the limited discovery Defendant had provided thus far, Plaintiff served on Defendant her

sixteen (16) requests for production and her third-party subpoenas to Defendant's accountant, bank, businesses, business partner, and former employer. Defendant did not object to any of Plaintiff's requests, and his counsel accepted service of the subpoenas on behalf of his accountant and businesses. But by April 18, 2025, Defendant had only produced two tax returns, which were responsive to only one of Plaintiff's requests. None of the records requested from Defendant's accountant or businesses were produced. On April 22, 2025, Plaintiff issued a deficiency letter outlining all the issues with his financial discovery production. The parties met and conferred regarding the deficiencies, and on May 6, 2025, Plaintiff agreed to a three-week extension for production of Defendant's financial disclosures to May 27, 2025. **But again, as of this filing, no additional records have been produced.**

After all these tactical delays and deficient discovery productions, Defense Counsel now seek to withdraw. Based on this record and for the foregoing reasons, the Court should deny their motion. *See S.E.C. v. Great Am. Techs., Inc.*, 2009 WL 4885153, at *5 (S.D.N.Y. Dec. 15, 2009) (denying motion to withdraw as counsel because of the "protracted history of the litigation" due to numerous discovery delays and extensions).

## LEGAL STANDARD

Local Rule 1.4 of the of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York provides that an attorney who has appeared as attorney of record for a party "may not withdraw from a case without leave of the court" and "[s]uch an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal." Loc. R. 1.4. "When considering whether to grant a withdrawal motion, district courts must [ ] analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, 2014 WL 1087934, at *1 (S.D.N.Y.

Mar. 19, 2014) (internal citations omitted). Whether to grant or deny a motion for withdrawal is within the trial court's discretion, and "and conditions may be imposed on permission to withdraw." *Mario Valente Collezioni, Ltd. v. Semeraro*, 2004 WL 1057790, at *1 (S.D.N.Y. May 10, 2004) (internal citation omitted).

## ARGUMENT

Notably, neither of the two factors support granting Defense Counsel's motion to withdraw. Their reason for withdrawal is invalid because 1) they failed to provide a sufficient showing of Defendant's alleged non-payment and inability to pay; 2) Defendant is financially capable of paying them, and 3) because non-payment of legal fees alone is not enough to warrant withdrawal of counsel. Moreover, granting the motion would have a negative impact on the timing of the proceedings, as Defendant's engagement of new counsel is likely to delay the Court's September 8th trial date, and because his current counsel have fact and financial discovery obligations that remain unaddressed.

## I.    Defense Counsel Have Provided No Evidence of Defendant's Alleged Inability to Pay

In support of their motion to withdraw, Defense Counsel submitted several declarations claiming that they want to withdraw because "[s]everal months ago, Mr. Reid stopped paying [their] firm's bills." ECF No. 132-1, ¶4. When moving to withdraw last month, Defendant's former counsel, Ms. Bobbi Sternheim, claimed that "it has become clear that [Defendant] is not able to pay fees for legal services provided to him." ECF No. 104-1, ¶ 4. These assertions are insufficient under New York law to warrant granting the motion.

As a preliminary hurdle, Defense Counsel must provide evidence to support their assertions that Defendant is refusing to pay his legal fees and/or incapable of paying his legal fees. *See S.E.C. v. Gibraltar Glob. Sec., Inc.*, 2015 WL 2258173, at *2 (S.D.N.Y. May 8, 2015) ("DOR has not

made a 'sufficient showing of its clients' purported financial delinquency. The firm has not specified how much Mr. Davis and Gibraltar currently owe in fees, submitted affidavits accounting for the clients' current assets, or provided any evidence of the clients' future inability to pay other than Mr. Davis' one-page affidavit, which is devoid of any detail. This reason therefore does not, on its own, justify withdrawal.").

In their motion and affidavits, Defense Counsel failed to specify how much Defendant owed in fees, to account for his current assets, and to provide any evidence of his future inability to pay. Their failure to satisfy the requirement of "present[ing] documentation suggesting that "a significant period of nonpayment of a substantial fee currently exists" by way of submitting "undisputed documentation" showing how much Defendant has accrued in legal fees is fatal. *Allstate Ins. Co. v. Spina*, 2020 WL 7753266, at *2 (S.D.N.Y. July 27, 2020) (internal citations omitted). *See also Rophaiel v. Alken Murray Corp.*, 1996 WL 306457, at *1 (S.D.N.Y. June 7, 1996) (denying motion to withdraw where law firm had "not made a sufficient showing of its clients' purported financial delinquency to warrant granting of the motion"). The absence of proof that Defendant is "truly unable to fulfill the payment obligations in question" is enough to warrant denial of Defense Counsel's motion to withdraw. *Gibraltar Glob. Sec. Inc.*, 2015 WL 2258173, at *2.

## II.    Defendant Is Wealthy and Capable of Paying His Counsel

In their withdrawal motions, Defendant and his counsel have claimed that he is unable to meet his financial obligations, but they have failed to provide evidence of his lack of resources. Meanwhile, since 2016, and even now, Defendant owns and lives in a lavish Bel Air mansion worth millions:

7













*See* Lisa Johnson Mandell, *Record Producer L.A. Reid Trims the Price on His Elegant Bel Air Mansion*, Realtor.com (Feb. 27, 2024), https://www.realtor.com/news/celebrity-real-estate/l-a-reid-reduces-the-price-of-his-mansion-in-los-angeles-california/ ("Reid first listed the Los Angeles home for $21.5 million in March 2023 but has since trimmed the ask to $17.5 million.").

Last November, Defendant hosted five-time Grammy award winner Mariah Carey in his Bel Air mansion to discuss music and business. *See* Ex. A. Defendant is the executive producer of Carey's sixteenth career album and is likely to receive substantial income from that. *See id.* Furthermore, Larry Jackson, Defendant's business partner in Gamma (a successful American media company) testified ███████████████████████████████ ███████████████████████████. *See* Ex. B, Jackson Tr. 40:4-11. Jackson further testified that Defendant receives compensation from the projects Mega does with Gamma. *See id.* at Tr. 39:6-18. All of this suggests that Defendant continues to be a wealthy music producer capable of paying his legal bills. The Court should not permit him to delay and evade trial in this matter with false claims of poverty that have not been substantiated, and that are contradicted by the record. *See Rophaiel*, 1996 WL 306457, at *2 (denying motion to withdraw as counsel because "[a]ssuming substantial sums are owed in connection with this action, the firm has failed to convince me that its clients are truly unable to fulfill those payment obligations.").

## III.    Non-Payment of Legal Fees Is Not Enough to Warrant Withdrawal

Even if Defendant was unable to pay his counsel, in the Second Circuit, non-payment of legal fees is not enough to warrant withdrawal of counsel. *See United States v. Parker*, 439 F.3d 81, 104 (2d Cir.2006) ("Nonpayment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation."); *In re Meyers*, 120 B.R. 751, 752 (Bankr. S.D.N.Y. 1990) ("A number of courts have held that nonpayment of fees alone is insufficient cause

11

for the withdrawal."). In *Rophaiel v. Alken Murray Corp.*, the Court noted that in cases where "a client's refusal to pay legal fees constitute[d] a 'satisfactory reason' for withdrawal… a second factor also supported the application for withdrawal: the client's refusal to cooperate with his attorney." 1996 WL 306457, at *1 (S.D.N.Y. June 7, 1996). Here, Defense Counsel's affidavits do not indicate that Defendant is refusing to cooperate with them. Instead, they specify that Defendant "has further been uncommunicative concerning *his payment of attorneys' fees and costs*." ECF No. 132-1, ¶ 5 (emphasis added). Absent "something more," Defendant counsel cannot withdraw from the case solely because of Defendant's nonpayment.

## IV.    Granting the Motion Would Likely Disturb the Court's Trial Date

Factor two, the impact of the withdrawal on the timing of the proceeding, also weighs in favor of denying the motion to withdraw as counsel. When analyzing this factor, "[c]ourts should consider whether allowing counsel to withdraw would be too disruptive or cause too much delay, especially when the case is on the verge of trial." *Bruce Lee Enters.*, 2014 WL 1087934, at *2 (denying motion to withdraw because "the court [] would be prejudiced, harmed or burdened were we to grant the motion to withdraw and stay the trial date"). Here, there are two timeliness considerations that support denying the motion to withdraw.

First, granting the motion would necessarily lead to further delays as Defendant would need time to retain new counsel, and new counsel would likely want time to get acclimated to the case. But the Court already set September 8, 2025, which is two months away, as the first day of trial and told the parties to treat it as a firm date. *See* ECF No. 95. In *City of Almaty, Kazakhstan v. Sater*, the Court denied counsel's motion to withdraw that was filed two months before trial was set to begin because granting the motion "on the eve of trial" was likely to disrupt and delay the proceedings. 2024 WL 1484051, at *3 (S.D.N.Y. Apr. 1, 2024). Here, allowing Defense Counsel

12

to withdraw "at this late stage of the litigation" would prejudice "[b]oth plaintiff and defendant" and impede "the Court's ability to manage its docket." *Malarkey v. Texaco, Inc.*, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989). Under these circumstances, the *City of Almaty* and *Malarkey* courts denied the motion to withdraw, and the Court should do the same. *See Gibraltar Glob. Sec., Inc.*, 2015 WL 2258173, at *2 (denying motion to withdraw in part because counsel's "withdrawal would necessarily lead to further delays in the completion of this case" and the court was "unwilling to extend the discovery deadline again").

Second, proceedings have already been protracted because of Defendant's dilatory approach to discovery. This, coupled with the fact that Defendant's current counsel have several pending discovery issues that have claimed responsibility for, is grounds to deny the motion. His counsel should at the very least take care of the discovery mess on Defendant' side of the ledger that they have drawn out and now are trying to leave behind. Court should not permit Defendant "to [further] stall proceedings by inducing the withdrawal of its attorney by non-payment of fees." *Rophaiel*, 1996 WL 306457, at *2.

## V.    Defense Counsel Have Ongoing Obligations with Respect to Fact Discovery

As explained in detail above, contrary to Defense Counsel's assertions, they still have obligations with respect to fact discovery because the forensic review of Defendant's devices remains ongoing. Defense Counsel assured Judge Caproni that they would pay for this forensic review, and that Plaintiff "will be provided total access in terms of communications with the forensic expert." ECF No. 89, Tr. 12:4-9. But there have been access issues with the forensic expert before Defense Counsel moved to withdraw, and those issues are likely to be exacerbated when they are no longer in the picture. During the hearing with Judge Caproni, Defense Counsel, specifically Ms. Holley, "accept[ed] responsibility that there just was not a good enough

13

communication with the client on this issue to ensure that he fully understands that absolutely nothing could be deleted." *Id.* at 10:18-22. After accepting responsibility for the spoliation, at the very least, Defense counsel should not be permitted to withdraw until these issues are resolved, and the spoliation review of the Defendant's devices is complete.

**VI.    Defense Counsel Have Ongoing Obligations with Respect to Financial Discovery**

Similarly, as described in detail above, Defense counsel's obligations with respect to financial discovery are not complete. Defense Counsel accepted service of Plaintiff's requests for production, third-party subpoenas, and deposition notices to Defendant's accountants and businesses on their behalf but have yet to produce any records besides two tax returns. The deposition of Defendant's current accountant and the continued deposition of his business partner have yet to be scheduled. Should Defendant's current counsel withdraw and new counsel hired, Plaintiff anticipates more gamesmanship and delays from Defendant with respect to service of the subpoenas and production of the documents. The court should not permit Defense Counsel to withdraw while this court-ordered discovery remains outstanding.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defense Counsel's motion to withdraw as counsel should be denied. In the alternative, if the Court is inclined to grant their motion, Plaintiff respectfully requests the following conditions be imposed for their withdrawal: 1) completion of the forensic review of Defendant's devices; 2) production of all requested financial discovery, and the deposition of Defendant's current accountant; 3) a 30-day deadline for Defendant to retain new counsel or certify to the Court that he is proceeding to trial *pro se*; 4) preservation of the current September 8, 2025 trial date. *See Mario Valente Collezioni*, 2004 WL 1057790, at *1 (granting motion to withdraw conditioned on the entry of final judgment in plaintiff's favor); *John Hancock*

14

*Property and Cas. Ins. Co. v. Universale Reinsurance Co.*, 1993 WL 147560, at *2 (S.D.N.Y. Apr. 30, 1993) (counsel's withdrawal permitted provided new counsel enroll); *Oscar de la Renta Ltd. v. Strelitz Ltd.*, 1993 WL 205150, at *1 (S.D.N.Y. June 7, 1993) (counsel permitted to withdraw on condition that he submit responsive papers to pending motion to strike the answer).

Dated: June 22, 2025                     Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

/s/ Kenya K. Davis

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## CERTIFICATE OF COMPLIANCE (LOCAL RULE 7.1(c))

The undersigned, counsel of record for Plaintiff Drew Dixon, certifies that this brief contains 3,547 words, which complies with the word limit of Local Rule 7.1(c).

Dated:  June 22, 2025

*/s/ Kenya K. Davis*
Kenya K. Davis (NY Bar #4162483)


## CERTIFICATE OF SERVICE

I certify that on June 22, 2025, I electronically served the above document on the following:

Shawn Holley (*pro hac vice*)
Gregory Korn (*pro hac vice*)
Suann C. MacIsaac (*pro hac vice*)
Kate Mangels (*pro hac vice*)
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
sholley@khiks.com
gkorn@khiks.com
smacisaac@khiks.com
kmangels@khiks.com


*Attorneys for Defendant Antonio Marquis "L.A." Reid*

*/s/ Kenya K. Davis*
Kenya K. Davis (NY Bar #4162483)