

**Gregory P. Korn**
Direct Dial:  (310) 566-9807
Direct Fax:  (310) 566-9877
E-Mail:  gkorn@khiks.com

July 18, 2025

**VIA ECF**

The Honorable Jeannette A. Vargas
United States District Cout Judge
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007
VargasNYSDChambers@nysd.uscourts.gov

    Re:    *Drew Dixon v. Antonio Marquis "L.A." Reid*, 1:23-cv-09878-JAV
            Opposition To Letter Motion For Leave To File Motion For Adverse Inference

Dear Judge Vargas:

      I write on behalf of Defendant Antonio Marquis "L.A." Reid ("Reid") in opposition to the July 17, 2025 Letter Motion for Leave to File Motion for Adverse Inference filed by counsel for Plaintiff Drew Dixon ("Dixon"). The proposed motion for an adverse inference ("Proposed Motion") is entirely without merit, and is an obvious attempt to try to unfairly tip the scales in Dixon's favor by way of an adverse inference—no doubt to make up for the fact that discovery in this case has revealed numerous written and recorded admissions from Dixon that refute the revisionist allegations of sexual assault she began making against Reid after passage of the Adult Survivor's Act.

      As discussed below, the law is clear: (1) that a litigant's preservation obligations apply only to "relevant" documents; and (2) that an adverse inference is improper unless the complaining party can demonstrate the deletion of relevant documents that are likely to contain "favorable" evidence. Dixon ignore these legal principles by attempting to impugn Reid for recently deleting text messages with a "female subordinate" ***that have nothing to do with Dixon or this case*** and are irrelevant and not required to be preserved. She ignores these legal principles by failing to be forthright with the Court that the only "relevant" communications that are known to have been deleted are actually *exculpatory* of Reid. Further, while Dixon attacks Reid and his (current) counsel for their "gamesmanship," it is, in fact, Dixon and her counsel who are playing fast and loose with the facts and law. They misrepresent the history of what has occurred, misrepresent the causes of the delays in the forensics process, and misrepresent the facts and law to the Court in asking for leave to seek an adverse inference. For the reasons discussed further below, the Court should deny Dixon leave to file the Proposed Motion.

The Honorable Jeannette A. Vargas
July 18, 2025
Page 2

### The Forensics Review Stems From Reid's Deletion Of A Single <u>Exculpatory</u> Text

To remind the Court of the genesis of this discovery dispute, through the depositions of Reid and a former colleague and fellow music industry executive, Karen Kwak, it was discovered that Reid had deleted a few text messages sent between him and Ms. Kwak concerning the filing of this litigation. ***Those messages were retrieved from Ms. Kwak and her counsel***. Not only were they unhelpful to Dixon's case, but if anything, they were exculpatory of Reid. In the messages, Ms. Kwak forwarded Reid an article about the filing of this case, and he responded in frustration that Dixon was "dangerous" and a "liar." Even Judge Caproni commented on the record that the deletion of these texts was "no harm, no foul."

Although it is unrealistic to expect Reid would have any other probative text messages on his mobile devices about incidents that alleged occurred more than 20 years ago (and which he denies), I proposed to conduct a forensic imaging of Reid's electronic devices and cloud storage, so as to retrieve, search, and produce whatever relevant deleted data might be found, and Judge Caproni ordered that this be done.

### Reid Has Complied With Judge Caproni's Order

More specifically, Judge Caproni ordered that Reid would hire a mutually agreeable forensics vendor to collect all text message data from his devices, to run searches proposed by Dixon's counsel, and to produce all responsive "hits" after culling out privileged information, even without performing a responsiveness review. As has been described for the Court in prior communications, the process was slowed because of Dixon's counsel's unreasonable requests:

Dixon's counsel refused to allow my firm to use a reputable, affordable, and efficient forensics firm in Los Angeles that we typically use, and instead insisted that we use a national firm (Kroll) that had no offices or technician in Los Angeles. This slowed the collection efforts, as Kroll's technician (Bryant Ling) was required to travel to Los Angeles, and to do so twice when Kroll encountered technical issues on its end with its first collection. Then, once the collection was done, Dixon's counsel demanded that Kroll implement overbroad search terms, which included numerous common terms that were untethered to the case, like "settlement," "mediation," "NDA," "assault*," etc., in spite of my pleas that they narrow the terms. Per Mr. Ling, the searches were so broad they "crashed" Kroll's system, forcing the parties to pivot and have Kroll search only a subset of the data collected from Reid's devices.

Ultimately, Kroll ran all of Dixon's counsel's searches, on the data set that Dixon's counsel was most interested in—text messages. ***And all of the data was produced to Dixon without a substantive review being conducted***. The only data excluded from the production comprised privileged messages between Reid and his wife or lawyers, which were identified using their telephone numbers.

The Honorable Jeannette A. Vargas
July 18, 2025
Page 3

### Reid And Its Counsel Have Not Failed To Comply With Judge Caproni's Order

Once Reid and his counsel completed his production of the data collected by Kroll, they had complied with Judge Caproni's order. Nothing more was required.

Subsequently, Dixon's counsel emailed me and Mr. Ling to set up a call to discuss some ostensibly technical questions about the data that was produced. As Dixon's letter motion concedes, though Mr. Ling did not respond, I responded each time that I was available for a call to answer whatever questions I could.

On July 15, 2025, I had a Zoom with Dixon's counsel concerning their questions, and I provided whatever information I could. Regarding Mr. Ling's non-responsiveness, I noted to opposing counsel that Reid had yet to pay Kroll's more recent invoice, and that it wouldn't surprise me if Mr. Ling had been instructed by his employer not to speak with anyone further until the invoice was paid.

Dixon's argument in the letter motion that my firm has deceived the Court with regard to the payment of Kroll's expenses is specious and offensive. When I proposed to Judge Caproni that "[w]e" would bear the expenses of hiring a forensics company to image Reid's devices, I meant the "royal we." In other words, that our side of the litigation aisle would shoulder the cost of the forensics vendor, including the vendor's time communicating with Dixon's counsel. I was not representing that my law firm in particular would fund the thousands of dollars in costs needed to hire a forensics vendor. Like any other client that retains my firm on an hourly basis, Reid bears responsibility for the costs incurred in this case.

Likewise, the comments of my partner, Shawn Holley, during the hearing on my firm's withdrawal motion were accurate and not misleading. I have confirmed that my firm *did* advance, on Reid's behalf, over $13,000 in costs to Kroll to compensate it for the data collection. (It is also true, as Ms. Holley represented, that these costs are not yet reimbursed.) Having read the quoted portion of Ms. Holley's statement to the Court during the withdrawal motion hearing, I see no representation from her that my firm was taking on ultimate responsibility to pay all of Kroll's expenses, let alone expenses for work performed *after* our compliance with Judge Caproni's order.

Notably, moreover, what Dixon's counsel has been seeking from Kroll is not something that Judge Caproni ordered. Dixon's attorneys, Kenya Davis and Amber Stewart, stated on our July 15 Zoom meeting that they are looking for a spreadsheet of some kind that summarizes the document production and states which text messages had been deleted and when. Judge Caproni did not order that any such spreadsheet be created, nor that it be done at my firm's expense. Reid was ordered to produce the data that was collected and was responsive to Dixon's searches, and he did so.

## The Proposed Motion Is Meritless

Dixon has not come close to establishing a basis for moving for an adverse inference. To start, as stated above, Reid and my firm have already fully complied with Judge Caproni's order. The fact that Mr. Ling of Kroll is at this point unresponsive is immaterial.

Dixon's letter request makes much of Reid's alleged deletion of supposedly inappropriate text messages "of a sexual nature" with "one of his female subordinates." This is a red herring intended to trick the Court. "The scope of a party's preservation obligation can be described as follows: Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of ***relevant*** documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (emphasis added). "Thereafter, the duty to preserve discoverable information persists throughout the discovery process; a litigant must ensure that all potentially ***relevant*** evidence is retained." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 (S.D.N.Y. 2010) (emphasis added). Without in any way suggesting my partners or I knew or endorsed ***any*** deletion of text messages by Reid, these text messages with a current "subordinate"—sent 24 years after the alleged incidents with Dixon—are completely ***irrelevant*** and did not have to be preserved. Dixon suggests that the deleted messages likely "were about Ms. Dixon and/or the case"; in other words, that while Reid was sending inappropriate messages of a sexual nature to a current subordinate, he was telling her about a former subordinate (Dixon) who accuses him of sexual assault. Besides speculative, that hypothesis is nonsensical and preposterous for obvious reasons.

Finally, and most important, Dixon has failed to make a proffer that she can adduce evidence showing a likelihood that any "favorable" documents were deleted, as needed to obtain an adverse inference. New York district courts have repeatedly held that, because of the severe consequences of adverse inferences, they are warranted only where there is sufficient evidence that the particular documents deleted would have been "favorable" to the party demanding the inference. *See, e.g.*, *Zubulake*, 220 F.R.D. at 221 ("Zubulake must demonstrate not only that UBS destroyed relevant evidence as that term is ordinarily understood, but also that the destroyed evidence would have been favorable to her."); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 122 (S.D.N.Y. 2008) (denying adverse inference and stating: "Indeed, there is little extrinsic evidence demonstrating that any pertinent documents at all were destroyed, let alone documents favorable to the plaintiff. Rather, it is more the case that 'the only evidence that Plaintiff has adduced suggesting that the unproduced [discovery] would be unfavorable to Defendants is the non-production itself.'") (citation omitted). The one and only message of Reid's relating to Dixon or this case that is known to be deleted is one in which he calls her "dangerous" and a "liar."

The Court should deny Dixon's request. To the extent the Court is nevertheless inclined to grant leave, I respectfully request that the briefing be pushed back to accommodate the fact that I will be out of town July 28-29, 2025, and further out of town on a pre-paid vacation with my family between August 4 and August 8, 2025.

The Honorable Jeannette A. Vargas
July 18, 2025
Page 5

                                                                                       Respectfully submitted,

                                                                                       Gregory P. Korn

30021-00002/910715.1