UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREW DIXON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ANTONIO MARQUIS "L.A." REID,<br><br>　　　　　　　　　　Defendant. | Civil Action No. 1:23-cv-09878-JAV<br><br>**PROPOSED JOINT PRE-TRIAL**<br>**ORDER** |

　　　　Plaintiff Drew Dixon ("Plaintiff") and Defendant Antonio Marquis "L.A." Reid ("Defendant") jointly submit the following proposed Pre-Trial Order pursuant to Rule 8(f) of the Individual Rules and Practices of the Honorable Jeannette A. Vargas. The Parties, having conferred among themselves, respectfully submit that the following statements, directions, and agreements are adopted as the Pre-Trial Order herein. The Parties respectfully request that they be permitted to supplement or modify the Pre-Trial Order as may be necessary or appropriate, so long as the other side is given reasonable notice and there is no prejudice to the other side.

**I.   Caption**

The full caption of the action is *Drew Dixon v. Antonio Marquis "L.A." Reid*, Civil Case No.: 1:23-cv-09878-JAV.

**II.  Parties and Counsel**

<u>For Plaintiff Drew Dixon</u>

Kenya K. Davis, Esq.
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel.: (202) 237-2727
kdavis@bsfllp.com

Sigrid S. McCawley, Esq.
Daniel Crispino, Esq.
Amber Stewart, Esq.
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

<u>For Defendant Antonio Marquis "L.A." Reid</u>

Shawn Holley, Esq.
Gregory P. Korn, Esq.
Kate E. Mangels, Esq.
Suann C. MacIsaac, Esq.
KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 Wilshire Boulevard
Suite 750
Los Angeles, CA 90025
Tel.: (310) 566-9800
sholley@khiks.com
gkorn@khiks.com
kmangels@khiks.com
smacisaac@khiks.com

**III. Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. § 1332. Plaintiff Drew Dixon is domiciled in Brooklyn, New York. Defendant Antonio Marquis "L.A." Reid is domiciled in Los Angeles, California. The amount in controversy in this action exceeds the sum or value of $75,000.00 excluding interest and costs and is between citizens of different states.

**IV.  Consent to Trial by a Magistrate Judge**

The parties do not consent to a trial by a magistrate judge.

**V.      Number of Trial Days Needed**

Plaintiff estimates she will need 15 trial days and the case is to be tried with a jury. Plaintiff believes additional days should be anticipated for jury selection and jury deliberations. Defendant estimates a jury trial of 7-10 days including jury selection.

**VI.     Claims and Defenses**

   A.     Plaintiff's Summary of the Claims

Plaintiff filed this action under New York's Adult Survivors Act (S.66A/A.648A), N.Y. C.P.L.R. § 214-j, which, beginning on November 24, 2022, created a one-year lookback window for the survivors of sexual assault—when that assault fits within an offense as defined in Article 130 of the state penal code—that occurred when they were over the age of 18, allowing them to sue their abusers regardless of when the abuse occurred.

The claims to be tried in this case are:

1. Defendant's commission of sexual assault and battery against Plaintiff, as defined in Article 130 of New York's Penal Law. *See* N.Y. Penal Law §§ 130.52, 130.55, 130.60, 130.65, 130.66, 130.67.

2. Defendant falsely imprisoning Plaintiff

3. Defendant's intentional infliction of emotional distress

4. Defendant's commission of a "crime of violence" and a "crime of violence motivated by gender," in violation of New York City's Gender Motivated Violence Act, N.Y.C. Admin. Code § 8-903 (2017).

   B.     Plaintiff's Summary of the Defenses

Plaintiff submits that Defendant's defenses are meritless. First, his argument that Plaintiff's emotional distress damages were caused by the acts of third parties flouts the long-standing

3

doctrine of the "egg-shell plaintiff," which holds "that the defendant must take the plaintiff as he finds him" ... [thus] a defendant will be held liable for all of the consequences of [*e.g.*] striking a plaintiff on the head, even though he was unaware when he did so that the plaintiff had an egg-shell cranium." *Campbell v. Goga*, 26 Misc. 3d 1204(A), at *3 (Sup. Ct. 2009) (internal citations omitted). Under this doctrine, a "plaintiff [may] recover to the extent that the accident aggravated [a] pre-existing condition." *Schuster v. Brimstone Hill Corp.*, 64 F. App'x 316, 318 (2d Cir. 2003). Here, Plaintiff has submitted evidence that Defendant aggravated her pre-existing health issues.

Second, his defense that Plaintiff's claim for false imprisonment is barred by the statute of limitations is patently frivolous. As this Court previously ruled when denying Defendant's motion to dismiss and strike, the "ASA covers civil claims related to intentional torts—[including] false imprisonment and IIED claims." *Dixon v. Reid*, 744 F. Supp. 3d at 27-28 (S.D.N.Y. 2024). Therefore, all of Plaintiff's claims were revived under the ASA, so Defendant's statute of limitations defense on Plaintiff's false imprisonment claim fails.

Defendant's third defense, that Plaintiff's GMVA claim is preempted by the ASA is premised on a misapplication of the *Parker v. Alexander*, 2025 WL 268436 --- F.3d ---- (S.D.N.Y. 2025) case. In that case, the plaintiff missed the ASA lookback window and attempted to bring sexual assault claims that would have fell under the ASA's ambit within the lookback window of the GMVA. *See id.* at *1. As Plaintiff timely filed her suit within the ASA'S lookback window (*and* the GMVA's lookback window for her GMVA claim), the *Parker* case does not apply, and the Court should reject Defendant's "defense" for what it is—a red herring.

Fourth, for all the reasons argued in Plaintiff's opposition to Defendant's motion for partial summary judgment, her claims for lost commissions are viable under the ASA. *See* ECF No. 142. In his reply in support of his motion for partial summary judgment on Plaintiff's lost commissions,

Defendant argues that the *Levin v. Sarah Lawrence College*, 747 F.Supp.3d 645 (E.D.N.Y. 2023) and *Reid v. McKelvey*, 2024 WL 4345585 (S.D.N.Y. Sept. 30, 2024) cases he cited don't support Plaintiff's position (as she argued in her opposition). But Defendant fails to acknowledge that the cases he cited were brought against institutions, not the perpetrators of the assaults, and thus there were no assault accusations against the party being sued. In *Reid*, the plaintiff was sexually assaulted in 2001 by Charlemagne the God. *See* 2024 WL 4345585, *1. Years later, in 2017, Charlemagne wrote about the assault in his biography, which Simon and Schuster published. *See Reid v. McKelvey*, 2024 WL 4264896, at *1 (S.D.N.Y. Aug. 14, 2024). The *Reid* plaintiff sued Charlemagne the God for assault and defamation, and Simon and Schuster for defamation and intentional infliction of emotional distress only. *See id.* at *2. The ruling cited by Defendant in his partial summary judgment reply brief was the dismissal of Simon and Schuster, so as the Court highlighted, there were no sexual assault allegations against them from which the defamation and intentional infliction of emotional distress claims could flow. *See Reid*, 2024 WL 4345585, *4. And, in any case, the assault in *Reid* was sixteen years before the defamation and intentional infliction of emotional distress claims, whereas for Plaintiff, the Defendant's retaliation and coercive control occurred contemporaneously with his assaults.

Similarly, in *Levin v. Sarah Lawrence College*, 747 F.Supp.3d 645 (E.D.N.Y. 2023), the case was against Sarah Lawrence College, an institution, for negligence and failing to protect plaintiffs from a sexual predator. *See id.* The plaintiffs obviously did not plead a predicate sexual offense against the college, so their suit against it was dismissed. *See id.* at 669 ("Because Plaintiffs do not plead a predicate sexual offense and the ASA therefore does not revive Plaintiffs' state-law claims against SLC, those claims are dismissed."). Again, the facts are totally different in this case,

5

where Plaintiff has plead and testified that Defendant assaulted her and brings her claims against *Defendant*, not a third-party institution.

Finally, Defendant now appears to be arguing for the first time that the ASA does not revive Plaintiff's reputation and career damages. As a threshold matter, Plaintiff notes for the record that Defendant's motion for partial summary judgment only pertained to her lost commission damages for signing John Legend and Kanye West, and not her wider demand for reputation and career damages. Moreover, New York law supports Plaintiff's demand for career damages. In *Carroll v. Trump*, the Court advised the jury with respect to Plaintiff's demand for compensatory damages stemming reputation harm in both her profession and community to "award an amount that, in the exercise of your good judgment and common sense, you decide is fair and just compensation for the injury to the plaintiff's reputation and the humiliation and mental anguish in her public and private life which you decide was caused by the defendant's [2022] statement." *Carroll v. Trump*, 690 F. Supp. 3d 396, 410 (S.D.N.Y. 2023). In *Stewart v. Jackson & Nash*, the Court denied Defendant's motion to dismiss Plaintiff's claim based on damages to her career. *See* 976 F.2d 86, 87 (2d Cir. 1992) ("She claims that her "career objective—continuing to specialize in environmental law—was thwarted and grossly undermined during her employment with Jackson," and that she suffered "loss of professional opportunity, loss of professional reputation" and damage to her "career growth and potential.").

### C. Defendant's Summary of the Claims

Defendant agrees the claims to be tried in this case are for (1) sexual assault / battery, (2) false imprisonment, (3) intentional infliction of emotional distress, and (4) violation of New York City's Gender Motivated Violence Act. Defendant denies each claim and reserves the right to seek judgment as a matter of law on the claims at any time before, during, or after the trial, including,

without limitation, on the basis that the false imprisonment claim is barred by the statute of limitations, and on the basis that the claim for violation of New York City's Gender Motivated Violence Act is barred as preempted by the Adult Survivor's Act.

D.    Defendant's Summary of the Defenses

The defenses to be used in this case are:

Defendant denies each of the allegations and claims made by Plaintiff and specifically denies, without limitation, that he sexually assaulted or falsely imprisoned Plaintiff, or committed any crime of violence against Plaintiff.

1. Defendant denies that Plaintiff suffered emotional distress or other damages as a result of his conduct and contends that any distress or other damages suffered by Plaintiff were caused by the acts of third parties, including claimed sexual assaults by Russell Simmons, by Plaintiff's family members, and by other third parties.

2. Defendant contends that Plaintiff's claim for false imprisonment is barred by the statute of limitations.

3. Defendant contends that Plaintiff's claim under the New York City's Gender Motivated Violence Act, N.Y.C. Admin. Code § 8-903 (2017) is preempted by the Adult Survivor's Act. *See Parker v. Aleander*, 2025 WL 268436 --- F.3d ---- (S.D.N.Y. 2025).

4. Defendant contends that Plaintiff's claims for reputation and career damages and damages stemming from commissions she claims she lost under a previous employment agreement, are not viable under the Adult Survivor's Act (or under

New York City's Gender Motivated Violence Act), and are therefore barred by the statute of limitations.

## VII. Joint Summary of Case

### A. Plaintiff's Version

Plaintiff Drew Dixon alleges that Defendant Antonio Marquis "L.A." Reid sexually assaulted her when she worked for him at Arista Records. She claims that on the way to a work retreat in Puerto Rico in January 2001 on Defendant's private plane, Defendant digitally penetrated Plaintiff without her consent. Plaintiff also alleges that Defendant assaulted her again in his car after a work event, again digitally penetrating Plaintiff against her will. She claims that after and as a result of the two assaults, as well as the atmosphere of sexual harassment that reinforced and continued the harm of the assaults, Defendant sabotaged the auditions of now mega-stars John Legend and Kanye West who Plaintiff attempted to sign at Arista, as her original "designated" artists, and forced her to leave the music industry.

Plaintiff brings the instant lawsuit under New York's Adult Survivors Act, N.Y. C.P.L.R. § 214-j, and New York City's Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1101, *et seq*. She has brought four discrete claims against Defendant: (1) sexual battery and assault; (2) false imprisonment; (3) intentional infliction of emotional distress; and (4) violation of New York City's Victims of Gender-Motivated Violence Protection Law.

### B. Defendant's Version

The Plaintiff in this case, Drew Dixon, alleges that the Defendant, Antonio Marquis "L.A." Reid, sexually assaulted her on two occasions in 2001 when they worked together at Arista Records. The Plaintiff asserts four claims against the Defendant: (1) sexual battery and assault;

(2) false imprisonment; (3) intentional infliction of emotional distress; and (4) violation of New York City's Gender Motivated Violence Act.

The Defendant denies all of the Plaintiff's claims and, in particular, denies that he ever sexually assaulted the plaintiff. The Defendant also denies that he caused the Plaintiff to suffer any monetary, emotional, or other damages.

**VIII.   List of Relevant Individuals, Places and Institutions**

    A.    <u>Witnesses and Other Individuals Who May Be Mentioned During Trial</u>

1. Aku Orraca-Tetteh
2. Amarillis Rivera
3. Antonio Marquis "L.A." Reid
4. Asia Gulli
5. Babyface (Kenneth Brian Edmonds)
6. Barry Massarsky
7. Carlos Santana
8. Clive Davis
9. Darryl Jones
10. Drew Dixon
11. Elana Radin
12. Ella Wylde
13. Esther Yang
14. Estelle
15. Herb Power
16. Joe Coscarelli
17. John Legend
18. Josh Sarubin
19. Julian Petty
20. Kanye West
21. Karen Kwak
22. Kim Phan
23. Larry Jackson
24. Lauryn Hill
25. Lesvia Castro
26. Lupe Fiasco
27. Nichell Devaille
28. Richard Orenstein
29. Richard Johnson
30. Roy Lott
31. Toya
32. Dr. Valerie Bryant

33. Russell Simmons
34. Arrington Dixon
35. Sharon Pratt
36. Christopher Scott Cherot
37. Andre Harrell
38. Bo Williams
39. Dr. Chitra Raghavan
40. Michael Selverne
41. Marc Plotkin

B. <u>Places That May Be Mentioned During Trial</u>

1. S.I.R. Rehearsal Studios
2. S.O.B.'s New York
3. Teterboro Airport (Private Jet)

C. <u>Institutions and Other Entities That May Be Mentioned During Trial</u>

1. AMR Ventures, Inc.
2. Arista Records
3. Def Jam Records
4. Epic Records
5. Four Seasons
6. Gamma
7. Harvard Business School
8. Mega
9. Stanford University
10. GOOD Music

IX. **List of Undisputed Facts**

1. Plaintiff was employed as an Artists & Repertoire ("A&R") executive at Def Jam Recordings ("Def Jam") from 1994 to 1996.

2. Plaintiff was employed as an Artists & Repertoire ("A&R") executive at Arista Records ("Arista") from 1996 to 2002.

3. In 2001, Defendant became President and CEO of Arista.

4. In 2002, Plaintiff resigned from Arista and went to Harvard Business School.

X. **List of Trial Witnesses**

A. <u>Plaintiff's Case in Chief</u>

| Name | In Person or by Deposition | Description of Testimony | Address & Phone (If Not Yet Provided) |
|---|---|---|---|
| Drew Dixon | In Person | Plaintiff will testify about Defendant's assaults and resulting damages. | |
| Dr. Chitra Raghavan | In Person | Dr. Raghavan will testify to Plaintiff's psychological and career damages resulting from Defendant's assaults. | |
| Michael Selverne | In person | Mr. Selverne will testify to Plaintiff's career damages resulting from her time working for Defendant. | |
| Marc Plotkin | In person | Mr. Plotkin will testify to Plaintiff's lost commission damages resulting from her time working for Defendant. | |
| Roy Lott | In person | Mr. Lott will testify to Plaintiff's talent and success as a record executive. | |
| John Legend | In person | Mr. Legend will testify to Arista's extensive audition arrangements. | |
| Karen Kwak | In person | Ms. Kwak will testify to her working relationships with Plaintiff and Defendant, and other allegations of sexual assault against Defendant. | |
| Nichell Delvaille | In person | Ms. Devaille will testify to the events at the 2001 Arista company retreat in Puerto Rico. | |
| Esther Yang | In person | Ms. Yang will testify to Plaintiff's sexual assault allegations against Defendant. | |
| Lupe Fiasco | In person | Mr. Fiasco will testify to Plaintiff's attempts to sign Kanye West at Arista. | |
| Jon Platt | In person | Mr. Platt will testify to Plaintiff's well-known effort to sign Kanye West at Arista and about his own trajectory in the industry as a result of signing Mr. West. | |

| | | | |
|---|---|---|---|
| Josh Sarubin | In person | Mr. Sarubin will testify to Defendant's treatment of Plaintiff when she brought in Kanye West to audition at Arista. | |
| Aku Orraca-Tetteh | In person | Mr. Orraca-Tetteh will testify to the events that occurred when Plaintiff met with Defendant in 2004 to pitch music to him. | |
| Asia Gulli | In person | Ms. Gulli will testify to her experiences working for Defendant as his assistant. | |
| Elana Radin | In person | Ms. Radin will testify to her experiences working for Defendant as his assistant. | |
| Richard Orenstein | In person | Mr. Orenstein will testify to viewing apartments with Plaintiff and Defendant when Defendant started working at Arista. | |
| Lesvia Castro | In person | Ms. Castro will testify as to Plaintiff's sexual assault allegations against Defendant. | |
| Joe Coscarelli | In person | Mr. Coscarelli will testify to Plaintiff's sexual assault allegations against Defendant. | |
| Barry Massarsky | In person | Mr. Massarky will testify to Plaintiff's reputation in the music industry. | |
| Larry Jackson | By deposition | Mr. Jackson will testify to Defendant's business relationship and profits with Gamma, Usher, Mariah Carey, and others. | |
| Richard Johnson | By deposition | Mr. Johnson will testify to Defendant's finances for damages purposes. | |
| Jeffrey Turner | By deposition | Mr. Turner will testify to Defendant's finances. | |
| Representative from Signature Aviation | In person | A representative from Signature Aviation will testify to the flight records and lack thereof for the 2001 private flight to the Arista retreat. | |

| | | | |
|---|---|---|---|
| Representative from Teterboro Airport | In person | A representative from Teterboro Airport will testify to the flight records or lack thereof for the 2001 private flight to the Arista retreat. | |
| Representative from Gamma | In person | A representative from Gamma will testify to Defendant's business relationship and profits from Gamma. | |
| Representative form Kroll | In person | A representative from Kroll will testify to the forensic review of Defendant's devices and Defendant's spoliation. | |
| Cherub Moore | In person | Ms. Moore will testify to her experiences working for Defendant as an artist. | |
| Julie Swidler | In person | Ms. Swidler will testify to Epic Record's settlement agreement with one of Defendant's accusers. | |
| Jane Khodarkovsky | In person | Ms. Khodarkovsky will testify to Defendant's financial records. | |

B.     Defendant's Case in Chief

| Name | In Person or by Deposition | Description of Testimony | Address & Phone (If Not Yet Provided) |
|---|---|---|---|
| Antonio Marquis "L.A." Reid | In person | Mr. Reid will testify concerning his working relationship with Ms. Dixon and concerning Ms. Dixon's allegations of sexual assault and false imprisonment. | |
| Drew Dixon | In person | Ms. Dixon will testify concerning her career and her working relationship with Mr. Reid and the allegations of sexual assault and false imprisonment made against him. Ms. Dixon will further testify concerning other causes of her claimed emotional distress, including sexual assaults by Russell Simmons, family members, and others, as well as medical issues she endured. | |
| Dr. Valerie Bryant | In person | Dr. Bryant will testify to her treatment of Ms. Dixon for various psychological disorders stemming from trauma that Ms. Dixon has suffered or claims to have suffered as a result | |

| | | of childhood abuse and sexual assaults by Russell Simmons and others. Dr. Bryant will further testify to Ms. Dixon's statements about Mr. Reid. | |
|---|---|---|---|

**XI.    Deposition Designations and Counter-Designations**

The parties have designated testimony from Karen Kwak and Nichell Delvaille to be read at trial. Plaintiff's and Defendant's respective designations are annexed hereto as Exhibit A.

The parties reserve the right to introduce the sworn testimony of any witness for impeachment, rebuttal, or any other purpose allowed by the Federal Rules of Evidence.

Plaintiff reserves the right to amend her deposition designations in order to submit complete designations of the depositions of Richard Johnson and Larry Jackson following the completion of their open depositions; submit designations for Jeffrey Turner following his deposition; and designate additional deposition testimony impacted by the depositions of Johnson, Jackson, and Turner.

**XII.    List of Trial Exhibits and Demonstrative Aids**

The parties' exhibit lists and objections are annexed hereto as Exhibit B.

Plaintiff reserves the right to add additional exhibits from Defendant's recently received and/or expected productions concerning financial discovery and from his personal devices. *See* Dkt. 174, 175. Due to Defendant producing the vast majority of his documents only recently at the tail-end of the discovery period (21,760 documents produced in only past 3 months of 18 month discovery period; only 239 documents produced prior), Plaintiff has been prejudiced in her ability to complete her exhibit list due to these unsettled issues caused by Defendant's belated productions and spoliation of evidence. As such, she reserves the right to amend her list upon the completion of discovery, which includes a final review from Kroll, Defendant's compliance with his financial

14

disclosures, and the completed depositions of Larry Jackson (Defendant's business partner), Jeffrey Turner (Defendant's accountant), and Richard Johnson (Defendant's business manager).

## XIII. Statement of Damages Claimed and Other Relief Sought

### A. Plaintiff's Statement

As a direct and proximate result of Defendant's acts, Plaintiff has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy. Furthermore, a direct and proximate result of Defendant's acts, Plaintiff has also in the past and will in the future continue to suffer career, reputational, and lost commission damages. Defendant's gender-motivated violence against Plaintiff entitles her to punitive damages and an award of attorneys' fees and costs.

For treatment of her psychological trauma, Plaintiff seeks $1.9 million. As detailed more fully in Dr. Raghavan's report, a well-supported, high-quality treatment program with experienced treatment providers and experts in the psychology field at the higher end, holistic care, and crisis treatment will run approximately $93,000 a year. Dr Raghavan advises Plaintiff receive specialized treatment for ten years, and additional maintenance treatment for twenty years at half the cost ($46,000 x 20 years for about $900,000).

For a career guidance coach, Plaintiff seeks $500,000, based on Dr. Raghavan's estimates that top career guidance coaches can charge upwards of $100,000/year.

For career and reputation damages, Plaintiff seeks $60 million, based on the findings in Michael Selverne's report about the earnings for music executives who are Plaintiff's contemporaries.

For lost commission damages, Plaintiff seeks $8.2 million, based on Marc Plotkin's calculations of how much in commissions Plaintiff would have earned under her employment

15

agreements had Arista offered record deals just to Kanye West and John Legend. As detailed in Mr. Plotkin's expert report, to perform his calculations, he created a commission framework based on the terms of Plaintiff's employment agreements that included the following factors: commission rate; duration of payments; applicable revenue streams; payment terms; fiscal year categorization, sales floor and chargeback, and cross-collateralization.

For the pain and suffering she has endured and continues to endure, Plaintiff seeks an amount to be determined by the jury after they consider the evidence.

For punitive damages, Plaintiff defers to the jury to determine an amount sufficient to deter the Defendant and other similarly situated record company CEOs from abusing their power to facilitate the sexual assault of their subordinates, in turn ruining the careers of victims who simply want to do their job.

For the reasons set forth in Plaintiff's responses in opposition to Defendant's partial motion for summary judgment and *Daubert* motions, because Defendant employed a system of sexual assault, sexual harassment, retaliation, and coercive control which enabled him to sexually assault Plaintiff, all damages to Plaintiff flowing from Defendant's interwoven actions—including Plaintiff's lost commissions for signing West and Legend—were revived by the Adult Survivors Act and Victims of Gender-Motivated Violence Protection Law, and therefore are available at trial. Dkt. 137, 142, 147.

B.  Defendant's Statement

Defendant denies all of Plaintiff's claims and denies she has suffered damages of any kind as a result of his conduct. Without limiting the generality of the foregoing, Defendant further denies that Plaintiff's claims for reputation and career damages and for lost commissions are

cognizable under the Adult Survivor's Act, and contends that those damages claims are time-barred.

## XIV. Consent to Less Than a Unanimous Verdict

Plaintiff consents to a less than unanimous verdict. Defendant does not consent to a less than unanimous verdict.

Dated: July 21, 2025

/s/ *Kenya Davis*

Kenya K. Davis (NY Bar #4162483)
Boies Schiller Flexner LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Boies Schiller Flexner LLP
(954) 356-0011
Fort Lauderdale, FL 33301
smccawley@bsfllp.com
dcrispino@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

/s/ *Gregory Korn*

Shawn Holley (*pro hac vice*)
Gregory Korn (*pro hac vice*)
Kate Mangels (*pro hac vice*)
Suann MacIssac (*pro hac vice*)
Kinsella Holley Iser Kump Steinsapir LLP
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
(310) 566-9822
sholley@khiks.com
gkorn@khiks.com
kmangels@khiks.com
smacisaac@khiks.com

*Counsel for Defendant Antonio Marquis "L.A." Reid*.

## **CERTIFICATE OF SERVICE**

  I certify that on July 21, 2025, I electronically served *Joint Letter Regarding Status of Case* via ECF to all counsel of record.

/s/ Kenya K. Davis
Kenya K. Davis

*Counsel for Plaintiff Drew Dixon*
