

Kenya K. Davis
Telephone: (202) 237-9608
Email: kdavis@bsfllp.com

July 31, 2025

**VIA ECF**
The Honorable Jeannette A. Vargas
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007
(212) 805-0210
VargasNYSDChambers@nysd.uscourts.gov

> Re:   *Drew Dixon v. Antonio Marquis "L.A." Reid*, 1:23-cv-09878-JAV —
> Letter to Court Regarding August 1, 2025, Discovery Conference

Dear Judge Vargas:

    We write on behalf of Plaintiff Drew Dixon regarding the Court's July 29, 2025, Order scheduling a discovery conference for August 1 to discuss "the remaining discovery issues." ECF No. 187 at 2. In light of the Court's directive to "promptly notify" Your Honor if there were "any delays in obtaining outstanding discovery from Defendant," ECF No. 172 at 2, and in hopes of expediting discussion of these issues during tomorrow's hearing, Plaintiff submits this letter summarizing recent developments concerning Defendant's outstanding financial/spoliation discovery and related issues of significant concern.

**I.   At the July 29, 2025, Deposition, Defendant's Business Partner Authenticated Forensically Retrieved Text Messages Retrieved from Defendant's Cell Phone, Including a Text Telling Defendant to "███████" Before the Court's March 27, 2024, Settlement Conference.**

    Plaintiff's counsel deposed Larry Jackson this Tuesday for approximately 90 minutes pursuant to a subpoena issued during the Court-ordered financial discovery phase. Jackson is the CEO and co-founder of the music tech company Gamma, founded in 2023. *See* Ex. 1, Variety Article. Defendant, through a joint-venture entity called Raymond Reid LLC (d/b/a "Mega") with superstar musician Usher, has partnered with Jackson and Gamma since at least 2023. *See id*; Ex. 2, Raymond Reid LLC Record. Following Gamma's and Mega's collaboration, Usher released the wildly successful album, *Coming Home*, and performed at the 2024 Super Bowl halftime show. *See* Ex. 3, The New York Times Article. Gamma was recently valued at over $400 million and is in collaboration with superstars Mariah Carey and Snoop Dogg, the latter of whom Jackson offered an equity interest in Gamma as part of contract negotiations. *See* Exs. 4, 5, Hollywood Reporter Articles. Plaintiff has sought testimony from Jackson concerning his business ties with Defendant and how much income Defendant receives from Gamma, initially because of Plaintiff's punitive damages claim and now, because of Defendant's failure to pay his attorneys. *See* ECF No. 132. However, due to Jackson's business and personal schedule, Plaintiff has only been able to depose Jackson for approximately 2.5 hours in two separate sessions spread over the course of two months. *See* Ex. 6, Jackson Dep. Tr. Plaintiff has also subpoenaed Gamma for documents relevant to Defendant's financial status but have received no documents nor objections.

Discovery has also revealed that Defendant and Jackson have been in communication regarding this litigation since at least last year. In text message communications between Defendant and Jackson on March 22, 2024, Defendant informs Jackson that he will be in " ▮ ▮ " next week—one week before the Court-ordered settlement conference in this case before the Honorable Magistrate Judge Katharine H. Parker on March 27, 2024. Ex. 7, Jackson Dep. Exhibit Composite at C-IMG009020; ECF. No. 40. Jackson texted Defendant, " ▮ ," to which Defendant responded, " ▮ ." *Id.* At deposition, Jackson admitted that he exchanged those texts with Defendant before the March 2024 settlement conference (although just before that he denied texting with Defendant before any settlement conferences). Jackson insisted his words were merely a " ▮ " "▮ ," but acknowledged that " ▮ " was " ▮ interpreted as " ▮ ." Ex. 6, Jackson Dep. Tr. at 105:15-19.

This text exchange between Defendant and Jackson before settlement-conference proceedings—only produced in discovery pursuant to the Court-ordered forensic examination of Defendant's devices for spoliated data—is eye-opening. It's also not the only one. Mr. Jackson also authenticated texts exchanged with Defendant before the *second* settlement conference on June 25, 2024, before Magistrate Judge Parker. *See* ECF No. 51. The day before the conference, Defendant texted Jackson, " ▮ ▮ ." Ex. 7, Jackson Dep. Exhibit Composite at C-IMG014874. Jackson responds, " ▮ ▮ ." *Id.* Defendant replies, " ▮ ." *Id.* Defendant texts back, " ▮ ." *Id.* Jackson admitted to speaking with Russell Simmons before the June 2024 settlement conference and sending those texts to Defendant. Jackson testified that he does " ▮ ▮ ," which he found " ▮ so he ▮ ." Ex. 6, Jackson Dep. Tr. at 110:18-23.

II. **Communications Retrieved from the Forensic Examination of Defendant's Devices Reveal Discussions Concerning Defendant's Income and Movement of Assets During the Course of this Litigation.**

Jackson authenticated several other forensically-retrieved text messages at the deposition concerning Defendant's financial status. In response to a text from Defendant about Gamma's successes ▮ Jackson responded that he was working out a " ▮ " for " ▮ ." Ex. 7, Jackson Dep. Exhibit Composite at C-IMG012789. In another exchange, Defendant texts Jackson, " ▮ ▮ ." Ex. 7, Jackson Dep. Exhibit Composite at C-IMG018829. Other communications produced by Defendant pursuant to forensic examination reveal that Defendant had been offered " ▮ and ▮ in Gamma, Ex. 7, Jackson Dep. Exhibit Composite at C-IMG012855, and that Jackson agreed to send Defendant a " ▮ " " ▮ ▮ ." Ex. 7, Jackson Dep. Exhibit Composite at C-IMG025105.

There are many text messages like these ones concerning Defendant's finances between he and Jackson, as well as Defendant's other business associates. Concerningly, many of these text messages reflect a coordinated effort to direct the flow of income through corporate entities and the movement of assets to avoid detection. Notable communications include:

- January 9, 2024, texts between Jeffrey Turner (Defendant's accountant) and Defendant (Turner: "█████"). Ex. 8, Reid Text Message Composite at C-IMG003555;
- May 24, 2024, text from Richard Johnson (Defendant's longtime business manager) to Defendant (█████). Ex. 8, Reid Text Message Composite at C-IMG012541;
- May 24, 2024, texts between Johnson and Defendant (Johnson: "█████ Defendant: █████ Johnson: █████". Ex. 8, Reid Text Message Composite at C-IMG017485;
- July 3, 2024, text from Defendant to Turner (█████). Ex. 8, Reid Text Message Composite at C-IMG015468;
- August 7, 2024, text from Defendant to Johnson, Turner, and Olivia Amaobi-Maduka (Defendant's banker) ("█████". Ex. 8, Reid Text Message Composite at C-IMG017504;
- August 16, 2024, texts with Defendant, Johnson, Turner, and Maduka (Maduka: █████ Turner: "█████" Johnson: "█████ Ex. 8, Reid Text Message Composite at C-IMG018013;
- January 7, 2025, texts between Maduka and Defendant (Maduka: █████ Defendant: █████). Ex. 8, Reid Text Message Composite at C-IMG026666;[1]

---

[1] These text messages are despite representations by Defendant's counsel Shawn Holley at the hearing on her motion to withdraw as counsel that "[Defendant] spoke about a █████ but he didn't really have high hopes for that asset or those assets being sold..." ECF No. 174-1 at █████.

3

- January 28, 2025 text from Johnson to Defendant (█████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████). Ex. 8, Reid
Text Message Composite at C-IMG028854;
- January 29, 2025 texts between Johnson and Defendant (Johnson: "███████
████████████████████████████████████████████████████████████
████████████████████). Ex. 8, Reid Text Message Composite at C-IMG029005.

III.  **Despite Representations to this Court, Defense Counsel Has Not Paid Kroll the Remaining Fees and That is Why Kroll Has Not Completed the Review and Provided Counsel with the Information to Indicate Which Recovered Texts were Deleted.**

As Plaintiff has repeatedly informed Defendant, it is not clear as to which documents from the forensically produced documents were deleted, recovered, deleted in part, or were preserved. As more fully discussed in Plaintiff's Letter Motion for Leave to File Motion for Adverse Inference, ECF No. 174, Kroll, the forensic vendor, is refusing to meet with Plaintiff to discuss or answer her questions regarding the deletion of Defendant's text messages. Moreover, Plaintiff is still reviewing the documents and cannot represent to the Court that she has uncovered all of the possible text messages that may pertain to Plaintiff's substantive claims and were deleted.

IV.  **The Court Should Compel Defendant and Related Third-Parties to Comply With Their Discovery Obligations and Grant Plaintiff's Request for an Adverse Inference in Light of Defendant's Spoliation of Evidence and Misrepresentations Regarding his Financial Status.**

The communications recovered from Defendant's devices—again, only produced pursuant to a Court-ordered forensic investigation and given to Plaintiff in piecemeal productions beginning in April 2025, months after the forensic review was ordered, and totaling 21,760 documents—reveal as many questions as they do answers. They of course beg the obvious as to what Defendant's actual financial status despite his representations to the Court that he can no longer afford to pay his attorneys (a claim which should be in serious doubt based on Jackson's deposition testimony and these documents). But they also touch on the heart of the issue that necessitated an examination of Defendant's devices in the first place—the deletion of evidence. Indeed, several texts within these current productions strongly indicate that the deletion of messages occurred without any confirmation from Defendant or his vendor. Ex. 8, Reid Text Message Composite at C-IMG006719, C-IMG007942. Throughout this litigation, Defendant has stonewalled Plaintiff at every turn. Now, on the eve of trial, Defendant manufactures a change in attorneys on the basis of lack of payment, having hidden from both Plaintiff and the Court the information and documents that shed light on his actual ability to pay—all from a Court-ordered forensic examination of Defendant's devices necessitated by his deletion of messages.

At tomorrow's discovery conference, the Court should order the following:

*First*, Defendant must produce all financial information sought from Plaintiff's request for production (which Defendant never objected to despite his belated request to narrow the scope).

*Second*, Larry Jackson, Richard Johnson, and Jeffrey Turner should be compelled to complete their depositions (as subpoenaed) without delay and without interruption. For Mr. Johnson's part, he indicated that "if there is a court order for the continuation of my deposition, please forward it to me and I will obey the court order." Ex. 9, Johnson Email.

*Third*, Defendant, Defense Counsel, and Kroll should be ordered to complete their obligations with respect to the forensic investigation of Defendant's devices and the identification of which messages were deleted and recovered.

*Finally*, the Court should grant Plaintiff's adverse-inference request, taking into account the forensically-recovered discovery as highly relevant to issues concerning Defendant's financial status, his ability to pay his attorneys, and punitive damages. As more fully explained in Plaintiff's motion for leave to file for an adverse inference, the spoliation principally involves Plaintiff's substantive claims, and the deletions in Defendant's financial discovery is yet *another* example of his spoliation and the discovery abuses that have occurred throughout this case.

Respectfully submitted,

/s/ Kenya K. Davis
Kenya K. Davis
*Counsel for Plaintiff Drew Dixon*