

Kenya K. Davis
Telephone: (202) 237-9608
Email: kdavis@bsfllp.com

August 3, 2025

**VIA ECF**
The Honorable Jeannette A. Vargas
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007
(212) 805-0210
VargasNYSDChambers@nysd.uscourts.gov

Re:  *Drew Dixon v. Antonio Marquis "L.A." Reid*, 1:23-cv-09878-JAV — Letter Response to the Court's July 29, 2025, Order (ECF No. 186)

Dear Judge Vargas:

We write on behalf of Plaintiff Drew Dixon in response to the Court's July 29, 2025, Order to identify the information in Plaintiff's filings she seeks to seal on privacy grounds "where that information is already in the public record" through publication or otherwise; and, if information has been disclosed publicly, address why sealing on privacy grounds is appropriate "in light of" such disclosures and First Amendment considerations. ECF No. 186. Having reviewed her sealed filings, Plaintiff submits that: (1) excerpts from her unpublished manuscript drafts were never entered into the public record; (2) no other grounds exist for unsealing these unpublished drafts which contain highly sensitive information affecting the privacy interests of Plaintiff and other survivors of sexual assault; and, (3) she only seeks to redact references to under-seal documents, including the memoir drafts and confidentially-marked deposition transcripts and expert reports.

I. **Plaintiff's Highly Confidential, Unpublished Memoir Drafts Were Never Publicized and Should Remain Under Seal Pursuant to Strong Privacy Interests of Sex-Abuse Victims Outweighing the Lower Presumption of Public Access Here.**

To avoid all doubt: Plaintiff's personal "memoir" drafts were never published, publicized, or even completed. *See* ECF No. 127 ("Ms. Dixon's copyrighted unpublished manuscript" should remain under seal). By definition, Plaintiff's memoirs were never published, as she never distributed copies of her work to the public by sale or other transfer of ownership. *See* 17 U.S.C. § 101 ("'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."). Defendant submitted a single-page excerpt of these drafts in support of his partial-summary-judgment on Plaintiff's lost commissions for reasons irrelevant to those damages, necessitating Plaintiff to move for sealing, *id.*, as well as submit additional briefing. ECF Nos. 180 at 2–11 (motions *in limine* concerning memoir drafts and related issues), 181 (trial brief including rebuttal of Defendant's anticipated trial defense based on memoir drafts), 191 (supplement concerning law-of-the-case on Defendant's "broader course of conduct"). The excerpts—which contain highly sensitive information describing unrelated sexual-assaults and non-party sexual-assault victims irrelevant to the case—should remain under seal in their entirety. *See Giuffre v. Dershowitz*, 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020) (the gravity of the privacy interests of sexual abuse victims weighs heavily against disclosure).

**A. Because Defendant Attached Irrelevant Evidence on Partial Summary Judgment Which He Intends to Submit at Trial for Dubious Purposes, Plaintiff Filed Certain Excerpts of the Memoir Drafts Under Seal and Pursuant to Letter Requests.**

In denying Defendant's motion to dismiss, the Court held that Plaintiff has justiciable claims against Defendant not only for digitally penetrating her without her consent and while trapped in the confines of his private plane and car, but also for Defendant's "course of conduct broader than just the sexual assaults." ECF No. 58 at 8 (Plaintiff stated a triable claim for IIED where "Defendant made 'pervasive' suggestive comments towards her, complained when he could not get her alone, made repeated sexual advances and retaliated against her at work by demeaning her in front of coworkers, instructed other executives to advise her to wear skirts and high heels, repeatedly invited her to meetings in his hotel room and called her late at night, and retaliated against her for declining his advances by preventing her from signing new artists."). Defendant has never challenged or objected to this ruling. Instead, he filed a partial-summary-judgment motion to try and gut this Court's ruling. He attempts to get the Court to disregard Plaintiff's lost commissions from Defendant's sabotaging her signings of John Legend and Kanye West—despite the Court's clear order that Plaintiff had a triable claim based on Defendant's "broader" course of sexual misconduct which includes these retaliatory acts. *Id.* at 7–8.

Though irrelevant to the adjudication of his damages motion, *see* ECF No. 127 at 1, Defendant attached a single page from excerpts of Plaintiff's personal memoir drafts which were shared in discovery and marked confidential under the protective order, ECF No. 114-1 at 4. Defendant has paraded these drafts around in litigation in order to preview his main defense at trial of faulting a victim of sexual assault for using a layperson's vocabulary to describe traumatic, non-consensual sexual behavior at the hands of her assailant. Because Defendant intends to adduce only cherry-picked excerpts that support his semantical argument (as well as sections exposing horrific sexual abuse by non-party perpetrators on Plaintiff and other non-parties), Plaintiff has filed motions *in limine* and pretrial memoranda of law to address these issues and aid the Court in its consideration. ECF Nos. 177-2 at 14–24 (Defendant marking some, but notably not all, draft excerpts as trial exhibits; Plaintiff's objections), 180 at 10–11 (memoir drafts should be excluded from trial under Rules 401, 403, and 412), 181 (Defendant's strained "assault-and-harassment-are-mutually-exclusive" defense is toothless where testimony will show Plaintiff told witnesses Defendant digitally penetrated her without consent in addition to making unwanted sexual advances and comments), 191 (law-of-the-case doctrine holds that the Court's ruling at motion-to-dismiss stage—that Plaintiff has stated IIED claim covering Defendant's "broader" course of misconduct including unwanted advances, harassing comments, and punishing Plaintiff after he forcibly touched her and she would not sleep with him—applies at successive stages of litigation).

While Plaintiff moved to seal the unpublished excerpts and other confidentially-marked documents, she did not oppose the unsealing of public documents. *Compare* ECF No. 127 at 1 (moving to seal unpublished memoir draft excerpt), ECF No. 178 at 1–2 (moving to seal confidentially-marked deposition transcripts for Defendant and Defendant's former assistant, Karen Kwak, and Defendant's 2017 Sony settlement agreement), 179 (moving to seal highly-confidentially-marked deposition transcript quotes for Plaintiff and Plaintiff's expert witness) *with* ECF No. 127 at 1 n.1 (consenting to filing of transcript from publicly available interview).

### B. The Memoir Drafts Were Unpublished and Never Otherwise Entered Into the Public Record, and So No Other Grounds Justify Unsealing These Highly Sensitive Documents.

The draft excerpts exchanged in discovery have never been published at any time and are more akin to journal entries. *See* ECF No. 120-3 at 25–26. What Defendant refers to as Plaintiff's "memoirs" are actually a series of draft manuscripts for various personal and professional endeavors going back years before she filed this lawsuit. Defendant has never even tried to argue that these memoir drafts *in toto* are relevant to this litigation, but instead has cherry-picked single lines and pages that support his agenda. *Compare* ECF No. 177-2 at 14 (Defendant marking October 18, 2021, version of *Through* as earliest version of drafts on exhibit list) *with id.* at 11 (Plaintiff marking January 2, 2021, version of draft absent from Defendant's list and withheld at deposition). Plaintiff exchanged various versions and excerpts of her drafts with literary agents and ghostwriters (pursuant to non-disclosure agreement) and printed hard copies at print shops, but she never completed them for publication and never entered them into the public record. Final drafts were never even completed, let alone exchanged in discovery.

To determine whether a party has overcome the presumption of public filing, the Court applies the three-step test of *Lugosch v. Pyramid Co. of Onondaga*. *See* 435 F.3d 110, 119–20 (2d. Cir. 2006) ("1) the Court must determine whether the documents at issue are 'judicial documents' to which the common law presumption of public access attaches; 2) the Court must determine the weight of that presumption; and 3) the Court must balance competing considerations against public access, including but not limited to "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure.").

As previously described, the unpublished memoir drafts contain at best hundreds of pages of irrelevant information and at worst contain horrific details of sexual abuse inflicted by non-party perpetrators against Plaintiff and non-party sexual-assault victims. *See* ECF No. 183 at 2. "Before [the common law right of public access to judicial documents] can attach . . . a court must first conclude that the documents at issue are indeed "'judicial documents.'" *Lugosch*, 435 F.3d at 119. "In *Amodeo I,* [the Second Circuit] held that 'the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" *Id.* (citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir 1995)). "In order to be designated a judicial document, 'the item filed must be *relevant* to the performance of the judicial function and *useful* in the judicial process.'" *Id.* (emphasis added).

Here, the memoir excerpt Defendant filed is not a judicial document because it is not relevant to the Court's adjudication of Defendant's partial-summary-judgment motion on damages. As explained in her sealing request, the "reference to Ms. Dixon's unpublished manuscript is minor and not central to the adjudication of whether damages for lost commissions are available." ECF No. 127 at 1–2. Defendant "mere[ly] filing" the memoir excerpt to the record "is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo,* 44 F.3d at 145. Because the document is irrelevant to the Court's performance of its judicial function when considering whether the Adult Survivors Act revived Plaintiff's lost commission damages (which the ASA did, *see* ECF Nos. 58, 142), it is not a judicial document and should remain under seal. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) (holding that report was not judicial document so there was no presumptive First Amendment right to public access to the report where substance of full report was not relied upon or at issue in

contempt proceeding, report was not entered into evidence, and report was utilized during hearing only as reference for witness to refresh his recollection during his testimony).

Even assuming *arguendo* that Plaintiff's memoir drafts were judicial documents, factors two and three weigh heavily in favor of maintaining them under seal. "The privacy interests of Ms. Dixon's and these third parties as victims of sex abuse are strong and outweigh the lower presumption of public access here." ECF No. 179 at 1 (citing *Giuffre*, 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020) ("Those interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure"); *Doe 1 v. JP Morgan Chase Bank, N.A.*, 2024 WL 3597196, at *6 (S.D.N.Y. July 30, 2024) ("Protecting the identity of sexual assault survivors and the details of their assaults is traditionally considered private and has been widely recognized as a compelling reason to limit public access to judicial documents."); *U.S. v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) ("The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."). Any presumption here is especially lightweight where the Court has already ruled that Plaintiff has triable claims for Defendant's "course of conduct broader than just the sexual assaults," which includes Defendant "retaliat[ing] against her for declining his advances by preventing her from signing new artists" like John Legend and Kanye West. ECF No. 58 at 8.

Finally, Plaintiff has a proprietary interest in her unpublished memoirs and has marked her drafts "copyright-protected" accordingly. This propriety interest gives her the right to decide when and how her work is published or communicated to the public. *See Hemingway's Est. v. Random House, Inc.*, 279 N.Y.S.2d 51 (Sup. Ct.), *aff'd sub nom. Hemingway's Est. v. Random House, Inc.*, 23 N.Y.2d 341, (1968) ("Common law copyright is that right which an author has in [her] unpublished literary creations—a kind of property right—whose extent is to give [her] control over the first publication of [her] work, or to prevent its publication."). New York courts have long held that "[t]he author of a work of art has at common law a property therein until it is published with [her] consent. [Sh]e may withhold or communicate it, and in communicating it [s]he may impose such restrictions upon its use as [s]he sees fit." *Ketcham v. New York World's Fair 1939*, 34 F. Supp. 657, 658 (E.D.N.Y. 1940), *decree aff'd*, 119 F.2d 422 (2d Cir. 1941) (citing *Werckmeister v. Am. Lithographic Co.*, 134 F. 321, 324 (2d Cir. 1904)).

## II. Plaintiff Only Seeks to Seal References to Information Derived From Confidentiality-Marked Sources Which Are Not in the Public Record.

Because Defendant submitted and referred to a single-page excerpt from the unpublished memoirs in support of his partial-summary-judgment motion and accompanying Rule 56.1 statement, Plaintiff redacted quotes and references to same in her opposition papers. *See* ECF No. 152 at 6–7. Similarly, she has redacted quotes from confidentially-marked deposition transcripts (including from Defendant's and Karen Kwak's deposition), expert reports, and other non-public sources. *See, e.g.,* ECF No. 142 at 8–11; ECF No. 181 at 6. Plaintiff has made this distinction across all of her briefing. *See, e.g.*, ECF No. 152 at 5–7 (redacting references to Plaintiff's deposition, Plaintiff's unpublished memoir drafts, and Plaintiff's expert report for Dr. Chitra Raghavan, while not redacting references to Plaintiff's public interview); ECF Nos. 144 (same); 149 (same); 139 (same for Plaintiff's expert witnesses Michael Selverne and Marc Plotkin). Dr. Raghavan's expert report in particular contains highly sensitive details surrounding non-party-perpetrator sexual assault on Plaintiff and non-party sexual-assault survivors which have *never* been made public in any forum. So while Plaintiff has not redacted public information concerning

Defendant's sexual assaults and his "broader course of conduct" as the Court described in denying Defendant's motion to dismiss,[1] she has properly redacted all references to those under-seal confidential documents.

The same holds true for Plaintiff's motions *in limine* and pretrial memoranda of law. ECF Nos. 180, 181, 191.[2] Since Defendant intends to parade the worst moments of Plaintiff's life at trial and attempt to prejudice the jury with Plaintiff's romantic history and irrelevant life details, Plaintiff moved to exclude not only the memoirs but references to the highly sensitive sexual-assault details contained therein and in other non-public materials. ECF No. 183 at 1–16. She also filed pretrial memoranda to further clarify the proper scope of the case. ECF Nos. 181, 191. While she filed publicly any details which have already been made public, she redacted references to non-public materials and cited to their sealed versions where already filed or attached them as exhibits for sealing. So for instance, in her trial brief, while she redacted direct references to sealed material, *see* ECF No. 182 at 9–11, she did not redact references to public statements where Plaintiff "referred to Defendant's sexual harassment of her" "as part of his *modus operandi* and intertwined system of sexual misconduct, coercive control, and cyclical retaliation, all resulting in his sexual assaults on" her, *id. at 8, 11.* In a similar vein, Plaintiff moved to seal Defendant's 2017 settlement agreement concerning sexual harassment claims because it specifically names his victim, which has never been publicly disclosed, even though his termination from Sony's Epic Record is in the public record.

\*   \*   \*

The Court should find that Plaintiff's submissions were properly sealed and references thereto properly redacted. The "memoir" drafts were never published or publicized, and the privacy and proprietary interests of Plaintiff and non-parties outweigh the presumption of public access. To the extent the Court has additional inquiries about the memoir drafts referenced but not submitted, or other non-public information redacted but not attached, Plaintiff can provide additional explanation as to individual redactions and can submit those highly-sensitive materials to Your Honor's chambers for an *in camera* review if necessary.

Respectfully submitted,

/s/ Kenya K. Davis
Kenya K. Davis
*Counsel for Plaintiff Drew Dixon*

---

[1] Relatedly, the Court can summarily dispense with the pending partial-summary-judgment and *Daubert* motions which Defendant filed notwithstanding the Court's finding at motion-to-dismiss stage that Plaintiff has a claim for Defendant's "course of conduct broader than just the sexual assaults," including unwanted sexual advances and punishing Plaintiff by sabotaging the Legend/West auditions. *Dixon v. Reid*, 744 F. Supp. 3d 323, 329 (S.D.N.Y. 2024).

[2] As the Court confirmed at the August 1, 2025, discovery conference, ECF No. 187, Defendant waived his right to file motions *in limine* (and trial brief) when he declined to heed the Court's unambiguous mandate that his change-of-counsel maneuver would not permit him to file pretrial motions out-of-time when he retained new counsel. *See* ECF No. 174-1 at 22–23. Tomorrow, should Defendant file "responses" to any of Plaintiff's pretrial memoranda of law which in actuality are motions seeking affirmative relief in disguise, Plaintiff will seek leave to reply to Defendant's untimely submissions. Moreover, while Defendant's counsel, Gregory Korn, expressed a desire to belatedly move to exclude all evidence of Defendant's sexual misconduct outside of the two sexual assaults (which he attempted to minimize as "minor" assaults), such request would be dead on arrival as the Court has already held that Plaintiff has a triable IIED claim which encompasses Defendant's "broader" course of conduct. *Supra*, 5 n.1.