

Kenya K. Davis
Telephone: (202) 237-9608
Email: kdavis@bsfllp.com

August 5, 2025

**VIA ECF**
The Honorable Jeannette A. Vargas
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007
(212) 805-0210
VargasNYSDChambers@nysd.uscourts.gov

Re:   *Drew Dixon v. Antonio Marquis "L.A." Reid*, 1:23-cv-09878-JAV —
      Letter Regarding Spoliation Review of Defendant's Devices

Dear Judge Vargas:

We submit this letter on behalf of Plaintiff Drew Dixon in response to the Court's instructions during the August 1, 2025, discovery hearing that Plaintiff explain the scope of the Court's order with respect to the forensic review of Defendant's devices. Trial in this matter is set to begin on September 8, 2025 on Plaintiff's claims against Defendant for sexual assault, false imprisonment, intentional infliction of emotional distress via a broad course of misconduct (including not only the sexual assaults and imprisonment but also harassment and retaliation), and gender-motivated violence under New York's Gender Motivated Violence Act, N.Y.C. Admin. Code § 8-903 (2017). *See* ECF No. 58 at 8 ("Defendant made 'pervasive' suggestive comments towards her, complained when he could not get her alone, made repeated sexual advances and retaliated against her at work by demeaning her in front of coworkers, instructed other executives to advise her to wear skirts and high heels, repeatedly invited her to meetings in his hotel room and called her late at night, and retaliated against her for declining his advances by preventing her from signing new artists.").

As reflected in the transcript of the November 18, 2024, hearing before the Honorable Judge Caproni (attached hereto in full as Exhibit A and previously filed to the docket at ECF No. 89), critical components of Defense Counsel's offer to pay for a spoliation review of Defendant's devices included determining which texts and emails Defendant had deleted and Plaintiff's counsel having open access to the vendor. However, as of this filing, we still have not received a complete accounting of the deletions in Defendant's devices, and we have several outstanding questions for the vendor, but they are not responding because of non-payment. More importantly, we have discovered *additional* deletions of relevant evidence on Defendant's devices. For the reasons explained below and in Plaintiff's previous letters and filings on this issue, ECF Nos. 99, 154, 174, we ask the Court to order Defendant and his counsel to complete the forensic review of Defendant's devices they agreed to during the November 18, 2024, hearing and to permit Plaintiff to file a motion for adverse inference.

## I.   From the Beginning, It Was Clear the Purpose of the Review Was to Determine Whether and to What Extent Evidence Had Been Deleted.

From the outset of the November 18th hearing, it was clear the point of the forensic review

of Defendant's devices was to determine what evidence he had deleted from his phone. After listening to Plaintiff's counsel explain exactly how Defendant's spoliation was initially discovered and that Defendant had admitted to deleting evidence, Judge Caproni asked,

> Are you asking for me to get involved in some sort of dispute between you and the defense on a forensic review of devices, and, if so, which devices are you asking for a forensic review of? Is that forensic review solely for purposes of ascertaining whether there's been other evidence that was called for and destroyed or not produced? What exactly is the issue? Ex. A at 6:17-23.

Plaintiff's counsel responded, "Yes, ma'am. I'll run it down," and then began to explain that Plaintiff was asking for access to Defendant's phone because his counsel had not detected evidence of the deletions on Defendant's text thread with his former assistant, Karen Kwak. *See id.* at 7:11-21. When Judge Caproni then asked Defense Counsel "why wasn't the [text] string that was relevant produced?," attorney Gregory Korn explained, because "specific messages within the stream [were deleted], as a result of those being deleted, it wasn't evident that the text stream was responsive at all." *Id.* at 10:3-11. So, from the outset, it was acknowledged by Defense counsel that there was an issue identifying relevant evidence because Defendant was deleting all traces of it.

Mr. Korn then went on to assert that Defendant testified at his deposition that "he deleted no other texts." *Id.* at 11:11-12. As discussed below, Defendant not only lied under oath when he gave that testimony, but he also has subsequently continued to delete text messages. But Mr. Korn further said,

> Now, that notwithstanding, we've agreed immediately that *a new forensic review* is justified here. So the proposal we have proposed is to use a litigation forensic group that specializes in this work that we've used in the past. *We would pay them.* They would do a **complete** imaging of the phone, computer, and an iPad if there is one as well. I don't recall if there is one, but if there is, that would be done.
>
> We would make sure that *no deleted emails were missed in the searches* that were done previously by the IT expert, Dwayne Robinson, although we think likely those would have been covered. *We would also, through the imaging in this phone, and also potentially the searches of phone records, obtain any text messages that were deleted but are still accessible.* And there are ways to do that, because certain text messages are backed up in the cloud and can be retrieved from computers. So we will strike to retrieve everything that can be retrieved.
>
> The offer that we further made is while we're engaging this company, *plaintiff's counsel will be provided total access in terms of communications with the forensic expert. They'll be allowed to speak with the forensics expert on our time*, to understand exactly what's occurred, and, you know, to speak about the searches that are going to be done, and to know what the result of those are. *They will have access.* Ex. A at 11:12-12:9 (emphasis added).

As shown above, Mr. Korn represented that they would "make sure no deleted emails were missed in the searches" and "also, through the imaging in this phone, and also potentially the searches of

phone records, obtain any text messages that were deleted but are still accessible." 11:22-24. However, as already mentioned in Plaintiff's previous letters and filings, there has been no document, report or otherwise, that shows or provides a complete picture of what has been deleted from Defendant's phone but was still accessible, and what was not. As explained below, this is extremely relevant to Plaintiff's claims, and is the only way to determine the full scope of Defendant's spoliation. Moreover, it was the purpose of the spoliation review to "ascertain[ ] whether there's been other evidence that was called for and destroyed or not produced[.]" Ex. A at 6:22-23. The process is incomplete without this information. To the extent that Kroll has completed this work but is refusing to provide it because of Defense counsel and Defendant's non-payment, Plaintiff should be not be prejudiced, and Kroll should be ordered to produce the information.

As the above excerpt indicates, Mr. Korn also represented that we would have "total access in terms of communications with the forensic expert." He said, "They'll be allowed to speak with the forensics expert on our time, to understand exactly what's occurred... *They will have access.*" However, as detailed in Plaintiff's letter motion for leave to file a motion for adverse inference, our repeated requests to Kroll have not been answered. What's worse, Defense counsel, who was copied on all our communications with Kroll, knew why Kroll wasn't responding, and didn't have the slightest bit of professional courtesy to let us know why, so, at the very least, we weren't expending our time and energy futilely trying to contact Kroll, which felt no obligation to be responsive because it was not being paid. This behavior typifies Defense Counsel and Defendant's conduct and approach to discovery throughout this case. The Court should not allow them to continue this pattern of behavior and should order Mr. Korn to uphold the promise he made at the November 18, 2024, hearing about open access to the discovery vendor.

## II.    Defendant Has Spoliated Evidence Relevant to the Merits of Plaintiff's Claims.

Contrary Defense Counsel's assertions, the text messages Defendant has been caught deleting (thus far) are patently relevant to the merits of Plaintiff's claims. Starting with the Karen Kwak text message thread, initially, it was not even produced by Defendant. Instead, we learned of this message during Kwak's October 25, 2024, deposition, ██████████████████████████ ████████████████████████████████████ *See* ECF No. 183-3, Kwak Dep. Tr. at 76:18-79:10. After Kwak ███████████████████ but Mr. Korn confirmed, ████████████████ *See id.* at 127:6-15. On October 14, Defendant produced his version of the text thread with Kwak, but Defendant's texts about the case were partially and strategically deleted, and, as discussed at the November 18 hearing, there was other evidence of deletions. *See* Ex. B, Spoliated Kwak Thread at 2-3. As the Court is aware, this, and Defendant's testimony about deleting what he wants, is what prompted the spoliation review. In the version of the Kwak text retrieved by Kroll, we can see what Defendant deleted. *See* Ex. C, Kroll Kwak Thread. However, had we not initially received Defendant's spoliated version of the text thread, and been able to compare, we would have no idea that version produced by Kroll had been deleted but retrieved. This is why a report or accounting of the deletions on Defendant's devices is critical.

As previewed above, when Defendant testified during his November 7, 2024, deposition that he had deleted no other evidence besides his text messages with Karen Kwak about Plaintiff's case, he lied. *See* Ex. D, Defendant Dep. Tr. at 336:4-337:1. In addition to deleting text messages about the case with Kwak, Defendant also deleted messages with at least one other person, Gee

Roberson, who was Kanye West's manager when Plaintiff tried to sign him at Arista. We know this spoliation occurred prior to Defendant's October 30, 2024, deposition because Defendant actually produced the spoliated version of his text thread with Roberson on October 14, 2024. *See* Ex. E, Spoliated Roberson Text.

At the time of Defendant's deposition, all we had was this version of the text message. And so, when we tried to ask Defendant questions about this message and Plaintiff's allegations about the West audition, he was able to evade our questions and perjure himself repeatedly without our detection. *See* Ex. D, Defendant Dep. Tr. at 311:2-319:6. Before introducing the text message as an exhibit, we asked Defendant, ███████████████████████████████████████████████████ He testified, ███████████████ *Id.* at 311:2-6. When we asked Defendant, "And why would Mr. Roberson know if passed on Kanye?" he answered, █████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████ *Id.* at 312:16-313:3. When asked, █████████████████████ Defendant answered, █████████████████████████████████████████ *Id.* at 316:16-18. When asked, ███████████████████████████████████ Defendant answered ████████ *Id.* at 317:1-6. He went on to testify ███████████████ *Id.* at 317:8-11. When asked, ████████ Defendant answered, ██████████████████ And when specifically asked, ████████ Defendant answered ██████████████████ *Id.* at 317:25-318:5. But as the version of the Roberson text produced by Kroll demonstrates, Defendant lied. *See* Ex. F, Kroll Roberson Text.

First, Defendant clearly deleted all but one of his text messages with Roberson. *See id.* Furthermore, ████████████████████████████████████████████████ After that, ███████████████████████████████████████████ But clearly, Defendant's testimony ██████████████████████████████████████ was a lie. And because Defendant spoliated this evidence, Plaintiff was prejudiced in her ability to gather evidence by interviewing Roberson about his recollection of when Plaintiff brought Kanye to Arista to audition for Defendant, and ████████████████████████████████████████ ████ Moreover, because the manner of the deletions on Defendant's devices is so unclear, there could very well be additional text messages in Roberson's possession that Plaintiff would have been entitled to subpoena from him ████ The impact of Defendant's spoliation and perjury looms large and directly impact Plaintiff's ability to investigate and prove the merits of her case.

Defendant also lied when he represented he would not delete further evidence from his devices. As explained in Plaintiff's letter motion for leave to file for an adverse inference, ECF No. 174 at 3, in one of the produced text message threads with one of his female subordinates, Defendant deleted over 200 text messages on December 14, 2024, or six days before Defense Counsel retained Kroll, and thirty-three days before Kroll began retrieving data from Defendant's

devices. *See* Ex. G, Spoliated Thread with Subordinate. The texts that Defendant did not delete are sexual in nature and depict Defendant's pattern of predatory, abusive, and harassing behavior towards his female subordinates, and thus highly relevant to Plaintiff's case. The text messages he deleted were likely even more explicit, and the timing of the deletion, days before Defendant would be forced to surrender his devices for a forensic review, creates an inference that the messages discuss Plaintiff herself, and that the prior messages Defendant deleted that led to the spoliation inquiry were about Plaintiff and/or the case. This argument is bolstered by the fact that the other deletions we've been able to detect thus far (the Kwak and Roberson texts) have been related to this lawsuit.

And, to be clear, we've only been able to detect most of Defendant's spoliated evidence by comparing the handful of text messages he produced before his spoliation was discovered with the version of those text messages produced by Kroll and Kwak. As illustrated in the messages, there was no way to detect from the threads themselves that Defendant's messages with Kwak and Roberson had been deleted but retrieved. But Defendant only produced three text messages as responsive to Plaintiff's search terms before we caught him spoliating evidence. After running Plaintiff search terms again and culling for attorney and spousal privileged documents, Kroll produced over 18,000 text messages as responsive to Plaintiff's search terms. Plaintiff does not contend that each of these text messages are relevant to her claims, but without an accounting, report, or document showing what Defendant deleted (or additional non-Kroll text messages to compare) there is no way to detect which of these messages Defendant destroyed but were retrievable. Plaintiff also does not know what messages were deleted and unretrievable. For example, in a text message thread with Mark Shimmel, a producer, the content of the thread suggests a text or article about the case was deleted, but again, there is no indication on the face of the text that anything had been spoliated. *See* Ex. H, Kroll Shimmel Thread. Entire text threads could have been deleted, but without some sort of report or log that provides an overview or the deletions, we will never know. Even seeing who those messages were with, and when they were deleted, would be instrumental and relevant to Plaintiff's case.

### III. Defense Counsel, Defendant, and Kroll Should Be Ordered to Complete their Obligations, and Plaintiff Should Be Given Leave to File for an Adverse Inference.

In Plaintiff's numerous filings on this issue, we have laid out a clear pattern and practice—Defendant has consistently delayed the discovery process, failed to uphold his discovery obligations, and sought to hide the truth. The deletions we have uncovered (and are continuing to uncover) satisfy the requirements for an adverse inference. *See Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 418 (S.D.N.Y. 2010) ("Where a party seeks a severe sanction such as dismissal or an adverse inference, the movant must prove (1) that the spoliating party had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) that that party acted with a culpable state of mind upon destroying or losing the evidence; and (3) that the missing evidence is relevant to the movant's claim or defense.").

Here, Defendant testified that he alone controls what is deleted from his devices. *See* Ex. E. at 335:1-20. Defendant was put on notice in January 2023 that he had an obligation to preserve evidence, long before he sent and deleted these text messages. The fact that Defendant deleted these messages but testified under oath that he did not is evidence of his "culpable state of mind upon destroying or losing the evidence." *Harkabi*, 275 F.R.D. at 418. On December 14, 2024, he continued to delete messages after he was caught spoliating evidence and after his attorneys made

excuses for him before this Court, further evincing his culpable mind. Finally, the deleted evidence is relevant to Plaintiff's claims, and because Defendant and his counsel are refusing to pay Kroll, we don't know the full extent of the missing evidence. This information is critical to Plaintiff's case.

For these reasons, Plaintiff respectfully requests the Court order Defendant, his counsel, and Kroll complete their discovery obligations by providing some form of analysis, accounting, document, report, etc. of (1) what text messages were deleted from Defendant's devices and when; (2) which text messages were retrievable and which were not. We also ask for a two-hour conferral with Kroll to ask our remaining questions about the forensic review of Defendant's devices including questions about how the process was conducted, how the data was provided to Defendant's counsel, and the deletions we have uncovered.

Plaintiff also reiterates her request leave to file a motion for adverse inference regarding Defendant's spoliation of evidence. *See* ECF No. 174. Plaintiff reserves the right to request monetary sanctions for her attorney's fees and costs associated with discovering and investigating Defendant's spoliation, litigating this issue, and bringing any subsequent related letter motions and motions.

Respectfully submitted,

/s/ Kenya K. Davis
Kenya K. Davis
*Counsel for Plaintiff Drew Dixon*