

Kenya K. Davis<br>
Telephone: (202) 237-9608<br>
Email: kdavis@bsfllp.com

August 8, 2025

**VIA ECF**
The Honorable Jeannette A. Vargas
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007
(212) 805-0210
VargasNYSDChambers@nysd.uscourts.gov

Re: *Drew Dixon v. Antonio Marquis "L.A." Reid*, 1:23-cv-09878-JAV — Letter to Court Regarding Bifurcation of Punitive Damages and Evidence Regarding Defendant's Lack of Candor and Financial Status

Dear Judge Vargas:

We write on behalf of Plaintiff Drew Dixon in accordance with the Court's instructions during the August 1, 2025, discovery hearing that Plaintiff file a letter addressing whether there should "be a bifurcated consideration of the punitive damages issue such that evidence regarding wealth does not come into the case in chief, but only comes in if the jury returns a verdict in plaintiff's favor and renders a special verdict with respect to the appropriateness of punitive damages" and whether "evidence [can] be introduced that bears on credibility to the extent that the issues go only to the financial." *See* ECF No. 200-1, Aug. 1, 2025, Hr'g Tr. at 27:14-28:7.

### I. Plaintiff Does Not Oppose the Determination of Punitive Damages Being Bifurcated from the Main Phase of Trial.

At the August 1, 2025, discovery hearing, the Court *sua sponte* raised the issue of bifurcating punitive damages at trial. ECF No. 200-1 at 23:3-8. "Whether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court." *Mineo v. City of New York*, 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013) (quoting *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988)).

Plaintiff does not oppose bifurcation of punitive damages at trial, as evidenced by her motion in limine to "exclude all references to Defendant's financial status, net worth, and purported insolvency until the punitive damages phase" of the trial. *See* ECF No. 183 at 27. And, contrary to Defendant's false assertions in his response to Plaintiff's motions in limine, Plaintiff did not "refuse[ ] to stipulate to a bifurcated trial" during the August 1, 2025, hearing. ECF No. 195. When the Court raised the issue of whether punitive damages should be bifurcated, Plaintiff's counsel stated, "It wasn't anticipated. It was not discussed [before Judge Caproni]." ECF No. 200-1 at 18:17-18. Then, after explaining its concerns regarding the bifurcation issue, the Court stated,

> I'm going require briefing from both parties on this issue, and I want to give Ms. Davis an opportunity be heard in writing as well, because I am raising this issue *sua sponte*, and I don't want to cause undue prejudice to plaintiff, who hasn't had an opportunity to be heard.

*Id.* at 23:3-8. Defendant falsely asserts that Plaintiff's counsel is "playing both sides here," ECF No. 195 at 17, when in reality, the Court rightfully provided Plaintiff an opportunity to be heard directly on this issue.

I. **Evidence of Defendant's Lack of Credibility and Lack of Candor to the Court Regarding His Financial Status Should Be Admitted**

On the other hand, Plaintiff submits that evidence *should* be admitted at trial that "bears on [Defendant's] credibility to the extent that the issues go only to the financial" and that it *would* "be appropriate to have challenges to credibility that are collateral to the merits issue bearing only on impeachment and credibility." ECF No. 200-1 at 27:20-28:7. Both Federal Rule of Evidence 608 and Second Circuit precedent support the introduction of evidence of Defendant's false statements concerning his financial status during the merits phase of trial for impeachment and credibility purposes.

Federal Rule of Evidence 608(b) provides: "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." *United States v. Dan Zhong*, 2018 BL 434175, at *10 (E.D.N.Y. Nov. 26, 2018) (citing Fed. R. Evid. 608(b)) (concluding that "allegedly fraudulent visa applications… signed by Defendant under penalty of perjury, are admissible on cross-examination as Defendant's false statements relevant to Defendant's character for truthfulness if the Defendant testifies at trial").

In *United States v. Triumph Capital Group, Inc.*, the Second Circuit reaffirmed that "[t]his Court has held that it can be appropriate to introduce false statements, especially false sworn statements, under Rule 608(b)(1) to shed light on a witness' credibility," particularly where the witness's "credibility [is] a crucial issue at trial." 237 Fed. Appx. 625, 629 (2d Cir. 2007). The *Triumph* defendant argued that "the district court abused its discretion in allowing [defendant] to be cross examined about specific instances in which he made false statements, including false sworn statements." *Id.* The Second Circuit rejected this argument and noted that "[n]othing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath." *Id.* (citing *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004)).

The same is true here. In this lawsuit where liability hinges on the parties' credibility, any and all evidence of Defendant lying under oath, regardless of whether his lie pertains only to his financial status, should be admissible for cross-examination purposes. So, for example, the fact that Defendant lied under oath when he said ▇▇▇ ECF No. 183-1, Defendant Dep. Tr. at 199:17-200:1, but then produced ▇▇▇ should be admitted at trial on cross-examination. *See, e.g.*, Ex. A, Defense Financial Production Document.

Defendant also argues that he cannot be impeached on a collateral issue, but Plaintiff submits that Defendant's perjury regarding his financial status is far from a collateral issue because it bears directly on his credibility, which is *the* issue at trial. When determining whether an issue is collateral for purposes of Rule 608(b), courts consider if the evidence being offered is probative

2

of truthfulness or something else. *See, e.g., Bergus v. Florian*, 120 F.4th 14, 25 (1st Cir. 2024)( excluding evidence that plaintiff stored expired medications at his medical practice as "too collateral" because defendant failed to show how that evidence was probative of plaintiff's untruthfulness as opposed to his carelessness). There is no doubt here that evidence of Defendant's financial misrepresentations is probative of his untruthfulness.

Moreover, Defendant's financial status and net worth is not a collateral issue for a separate reason—his wealth and power are what enabled him to abuse Plaintiff without fear and with impunity 20 years ago. The evidence at trial will show that Defendant has continued to use his wealth and power to malign Plaintiff's reputation in the music industry to this day. Evidence of his lies concerning this wealth bears directly on the merits of Plaintiff's claims that Defendant continues to harm her reputation today, contributing to her severe emotional distress and career damages.

Furthermore, as Plaintiff's counsel explained during the August 1, 2025, discovery hearing (and as shown in Defendant's text messages submitted under seal at ECF No. 190-3), much of the evidence concerning Defendant's false statements concerning issues that bear on the merits phase of the trial are interwoven with evidence of his false statements concerning his finances, thus blurring the line between the merits case and the punitive damages portion of the trial. *See* ECF No. 200-1 at 27:4-12. Since the discovery hearing, we've uncovered additional examples of this overlapping evidence:

- <u>Defendant's March and April 2024 correspondences with Valone Brown, his driver of 20 years, who Defendant listed in his sworn interrogatory answers as his sole driver in 2001 when Plaintiff was sexually assaulted in Defendant's car.</u> Plaintiff served her initial set of interrogatories on Defendant on February 1, 2024, which asked Defendant to identify "all individuals employed by L.A. Reid, including, but not limited to, drivers, pilots, and personal assistants." *See* Ex. B, Defendant Interrogatory Responses, at 6. Defendant answered on March 18, 2024, with a sole name and year: "2001: Defendant employed Valone Brown as a driver." *Id.* Defendant confirmed at deposition (as did Richard Johnson) that Brown was his driver when he was the CEO of Arista but didn't work for him anymore and hadn't for years. *See* ECF No. 183-1 at 128:19-129:5.

    Text messages received pursuant to the forensic examination of Defendant's devices reveal additional communications between Defendant and Brown. Days before Defendant submitted his sworn interrogatory responses, on March 9, 2024, Defendant texted Brown, "█████████" *See* Ex. C at 1. Apparently receiving no response from Brown over the next month, on April 1, 2024, Defendant texts Brown again. *Id.* at 2. Defendant asks, ████████████████████ *Id.* Brown responds, ████████████████████ to which Defendant replies, ██████████ *Id.* at 2-3. Days later, Defendant writes, ████████ *Id.* at 4. Brown eventually says, ████████████████████

3

███████████████████████████████████████████ *Id.* at 5. In a separate chain between Defendant, accountant Jeffrey Turner, and banker Olivia Amaobi-Maduka, Maduka texts Defendant: ████████████████████████████████████████████████████ ████████████████████████ *Id.* at 6. Defendant and Brown then confirmed the invoice was paid. *Id.* at 7-8.

Not only do these texts call into question Defendant's lack of candor in his sworn interrogatory responses and deposition testimony as to when or if Brown stopped working for Defendant, but the payments made and facilitated by Richard Johnson, Jeffrey Turner, and other assistants and financial professionals working for Defendant. The fact that Defendant communicated with Brown—his driver at Arista in 2001 when Plaintiff was sexually assaulted in Defendant's car with driver present—at the very beginning of this case and before disclosing his identity, is highly relevant to the merits of Plaintiff's case. This evidence, coupled with the ██████████ payment directed to Brown for an invoice from the previous year (when Brown supposedly no longer worked for Defendant), demonstrates the commingled nature of the merits, financial discovery, and Defendant's significant credibility issues in this case and should be admissible at trial. *Id.* at 6.

- <u>Defendant's January 2024 correspondences with Russell Greene, the private investigator hired by Defendant's counsel, Shawn Holley.</u> On January 8, 2024, Defendant received a text from Russell Greene, which said, ████████████████ ████████████████████████ *See* Ex. D at 1. Over the following days, Defendant and Greene exchanged and confirmed appointment times, including a meeting at 6219 Melrose Avenue (a home music studio which notably was sold in December 2024) at which Defendant said his ████████████████ him. *Id.* at 1-4. On January 18, 2024, Greene texted Defendant, "Retainer sent," to which he responded, ████████████ ████████████████████████████████████████ *Id.* at 5-6.

The Court will recall that the subject of Defendant's private investigator came up at the July 9, 2025, hearing on Defense Counsel's motion to withdraw, after Plaintiff's mother and other family members had been harassed and threatened over this case going to trial. *See* ECF No. 174-1 at 14. While Defendant's attorney Shawn Holley represented to the Court that she "advanced the costs of the investigator which was $5,000" but got a "refund" on unused funds, she did not reveal that Greene had been retained over a year earlier. *Id.* at 17-18. This calls many questions of candor as to not only Defendant's financial ability to afford a private investigator over the course of 18 months, but also the extent to which Defendant (and his counsel) directed Greene to harass potential witnesses at trial. Plaintiff should be allowed to introduce this evidence at trial accordingly.

- <u>Defendant's correspondences with Russell Simmons and his assistant.</u> The Court is already aware of Defendant's communications with his business partner, Larry Jackson, prior to the second settlement conference where Jackson told Defendant that Simmons wanted to speak with him. *See* ECF No. 190. Despite Defendant's insistence that he

never responded to Simmons, forensically-retrieved text messages show several communications between Defendant and Simmons, including one exchange where Simmons texted Defendant, ████████████████ to which Defendant responded, ████████ and Simmons replied with a news article about ████████████████████ *See* Ex. E at 1. Yet again, the evidence blurs the lines between the merits, spoliation, and financial discovery, especially taken in the context of the pre-settlement-conference communications involving Simmons and Jackson's advice to Defendant to ████████████ ECF No. 190.

And, to the extent Defendant "contends that evidence on these issues should [be] excluded as more prejudicial than probative…the evidence is probative of [his] credibility, and [he] has failed to identify any undue or improper prejudice." *Yan Zhao v. United States*, 273 F. Supp. 3d 372, 380 n.5 (W.D.N.Y. 2017) (admitting evidence of plaintiff's inconsistencies in her recitations of her personal history and rejecting as probative of her credibility). This is particularly true where we have sworn testimony from Defendant that is directly contradicted and undermined by his financial records and text messages. And just because this evidence is prejudicial to Defendant does not mean it should be excluded at trial, particularly when Defendant's misrepresentations "were arguably made for the purpose of financial gain." *Bergus*, 120 F.4th at 28. Courts have long "recognized that all evidence is meant to be prejudicial and that Rule 403 prohibits only unfair prejudice." *Id.* Any prejudice to Defendant via admitting evidence of his financial misrepresentations would be fair because he made these statements to bolster ████████ ████████████████████████ Defendant should not be permitted to repeatedly lie under oath and avoid being confronted with those lies at trial.

For these reasons, Plaintiff requests that evidence of Defendant's financial misrepresentations be admissible during the merits phase of trial, and certainly for purposes of cross-examination and impeachment. And, even if such evidence is excluded, Plaintiff maintains that where evidence of Defendant's financial misrepresentations blurs the line with merits issues, it should be admissible at trial.

Respectfully submitted,

/s/ Kenya K. Davis
Kenya K. Davis
*Counsel for Plaintiff Drew Dixon*

5