

**Gregory P. Korn**
Direct Dial: (310) 566-9807
Direct Fax: (310) 566-9877
E-Mail: gkorn@khiks.com

September 12, 2025

**VIA ECF**

The Honorable Jeannette A. Vargas
United States District Cout Judge
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007

VargasNYSDChambers@nysd.uscourts.gov

    Re:    ***Drew Dixon v. Antonio Marquis "L.A." Reid***, 1:23-cv-09878-JAV
              **Response To Letter Seeking Leave to File Motion for Sanctions**

Dear Judge Vargas:

    Pursuant to the Court's September 4, 2025 Order (Dkt. No. 250), I write on behalf of my law firm Kinsella Holley Iser Kump Steinsapir LLP ("KHIKS") in response to the August 27, 2025 Letter Regarding Trial and Renewed Motion to File for Sanctions filed by counsel for Plaintiff Drew Dixon ("Dixon"). The suggestion that my firm strategically delayed sending Defendant Antonio Reid the "file" in order to cause further delays of the trial is simply false, as the chronology shows. We respectfully submit that the request for leave to file sanctions is unwarranted and should be denied.

    As my partner and Mr. Reid's former lead counsel, Shawn Holley, has previously detailed for the Court, our firm urged Mr. Reid repeatedly to obtain new counsel after the Court indicated that it was tentatively inclined to grant our motion to withdraw. Multiple times, our firm notified Mr. Reid that there would be no further delays of the final status conference or trial, and that the Court would require him to proceed with or without counsel. As Ms. Holley previously has stated to the Court, Mr. Reid informed our firm that he was desperately seeking counsel (as he is of course unequipped to try a three-week jury trial in federal court).

    This Court granted my firm's motion to withdraw on August 19, 2025. Although the Court had previously stated that it was *intending* to allow my firm to withdraw, it had not ordered as much until August 19. Thus, my firm continued operating as Mr. Reid's counsel up until that date.

The Honorable Jeannette A. Vargas
September 12, 2025
Page 2

On August 19, 2025, Ms. Holley served the Order of withdrawal on Mr. Reid and advised him, again, that he or an attorney substituting into the case was obligated to attend the final pretrial conference on August 25, 2025. I understand Ms. Holley further discussed the "where" and "when" of the final pretrial conference with Mr. Reid in the days that followed, and Mr. Reid informed Ms. Holley that he was continuing to seek counsel, but would be appearing in person on August 25.

I was informed on August 25 that Mr. Reid appeared in person at the pretrial conference, that he *had* engaged new counsel, and that the Court had continued the trial. My firm immediately pulled together the "file"—*i.e.*, pleadings, written discovery, deposition transcripts, and correspondence—and provided those documents by way of a "Sharefile" link to Mr. Reid's counsel. The file was sent to counsel, and not to Mr. Reid directly, for two reasons. First, it is the norm to communicate with represented parties through counsel. Second, the documents being sent by Sharefile link were voluminous and contained a lot of data, and I knew that Mr. Reid, like any litigation client, would prefer that his counsel and paralegals handle the downloading and maintenance of these documents.

I also immediately set up a call with Mr. Reid's counsel, Imran Ansari, to discuss migrating to his firm all of the documents that had been collected and/or produced. My firm used a review software platform called DISCO to store and review the documents. I explained to Mr. Ansari that our database had a very large total number of documents, and that the productions by the parties—particularly Ms. Dixon's production—were themselves sizeable. For example, Ms. Dixon's production is over 15,000 pages.

Mr. Ansari and I discussed the different mechanisms for turning over the documents. The options included my firm maintaining our DISCO database and providing Mr. Reid's new attorneys access to it, or, as an alternative, providing a "load file" that Mr. Reid's attorneys could use to ingest the documents into their own review software.

While those discussions were ongoing, the Court ordered my firm to send the entire "file" to Mr. Reid personally. Thus, I forwarded the Sharefile link to Mr. Reid with pleadings, discovery, and deposition transcripts. My firm's paralegals then had our document vendor, DISCO, export the entire universe of documents—comprising *over 60 GB*. This took approximately two days. The documents were then shared with Mr. Reid via Dropbox.

Plaintiff's counsel writes that they "cannot fathom why Defendant's prior counsel would not send *Defendant* the litigation file when the Court's order granting their motion to withdraw made it clear that Defendant 'is now deemed to proceeding *pro se*.'" There are two interrelated answers to that query.

First, although Mr. Reid was technically *in pro per* starting August 19, he had no intent to serve as trial counsel and was continuing to look for attorneys to represent him. Turning over the file at that time to Mr. Reid under the guise of him preparing an opening statement and witness examinations would have elevated form over substance.

The Honorable Jeannette A. Vargas
September 12, 2025
Page 3

Second, relatedly, the immediate transfer of the "file" to Mr. Reid would have been impractical because of the amount of data involved and the manner in which it is stored. The pleadings, discovery, and deposition transcripts were too extensive to be provided in paper form. They had to be shared through a link with downloadable files. Even had these been sent to Mr. Reid the day following my firm's withdrawal, it would have been impossible for him to download and review all the documents so as to be prepared for the pretrial conference in a manner that trial counsel would be prepared—*e.g.*, prepared to discuss motions *in limine, Daubert* motions, objections to exhibits, etc.

It would have been even more impractical to immediately turn over my firm's document database to Mr. Reid. Our database contains close to 40,000 documents. The productions themselves contain several thousand documents, comprising 20,000 pages or more of documents—some of the most important of which are audio recordings and videos. As this Court is familiar, the typical procedure for turning over this part of the "file" to new counsel is to provide a "load file" that can be ingested by new counsel's review software (*e.g.*, Relativity). It is unworkable to turn over large document productions otherwise, because the load file maintains the metadata associated with each document, which metadata allows the new reviewer to locate which documents have been produced and by whom, and also to review and use the tags with which the documents have been coded by the prior reviewing attorneys.

Mr. Reid, of course, has no review software for which we could have provided him a load file. The only option, then, would have been for my firm to have our document vendor, DISCO, export everything in bulk into files that can be shared with Mr. Reid. This is what we later did upon the Court's September 4, 2025 Order. But turning over tens of thousands of pages of documents in this manner would have been of little use to Mr. Reid. To review the documents, Mr. Reid would have had to open up the dozens of folders in which the documents are exported, and then click through each document one by one without the benefit of knowing, in each case, whether the document was produced and by whom, whether the document had been tagged as "Hot" or as relevant to a particular issue, etc.

Conceivably, we could have provided only the productions in isolation (in which case we would not have been transferring the entire file). But even then, the process of exporting the documents would have taken at least a day, maybe more,[1] and the pretrial conference would have come and gone by the time Mr. Reid finished downloading the documents on his own.

Plaintiff's counsel cites rules of professional conduct regarding the transfer of the file. These are ethical rules that govern the relationship between lawyers and their clients. Their purpose is to protect the interests of a lawyer's clients, not to protect the interests of third parties (such as by safeguarding the trial date Ms. Dixon wanted). Had Mr. Reid intended to serve as trial counsel, and had we refused over his request to provide him all of the documents at that time, the rules cited by Plaintiff's counsel would be implicated. But here, there was no "foreseeable prejudice" to Mr. Reid of my firm not turning over to him on August 19, in clumsy unworkable formats, tens of thousands of pages of documents for his review in the next six days,

---

[1] As noted above, DISCO's export of the entire database took approximately two days.

The Honorable Jeannette A. Vargas
September 12, 2025
Page 4

when Mr. Reid was clear with Ms. Holley that he was incapable of serving as trial counsel even if the Court left him with no choice but to do so.

      Contrary to Plaintiff's letter motion, my firm did not engage in gamesmanship to multiply the proceedings or cause unjust delays. This was an unusual and complicated situation where our firm's withdrawal was not final until just days before the pretrial conference, and where it was not practical to turn over the file to Mr. Reid at that time, as would have more easily been the case if new counsel had substituted in and could take advantage of the software programs needed to quickly ingest large numbers of documents.

      There was no intent on my firm's part to delay the trial, yet we appreciate Ms. Dixon's desire to get to trial (though she delayed over two decades in filing these claims against Mr. Reid). We submit, however, that the Court has correctly balanced Ms. Dixon's desire to try the case with Mr. Reid's due process rights—including his right to be represented by affordable counsel with whom he has a good working relationship—and that Ms. Dixon will suffer no unfair prejudice by a relatively short continuance that allows Mr. Reid to be represented at trial by experienced trial attorneys.

      On behalf of my firm, we respectfully ask that the Court deny Plaintiff's request for leave to seek sanctions. We have not violated any ethical duties to our client, nor did we violate a court order. Sanctions would be unwarranted, therefore, and the request should be denied.

                                          Respectfully submitted,

                                          Gregory P. Korn

30021-00002/916407.1