**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DREW DIXON,

      *Plaintiff*,

      v.

ANTONIO MARQUIS "L.A." REID,

      *Defendant*.

Case No. 1:23-cv-09878-JAV

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO CONFORM THE PLEADINGS AND
AMEND THE COMPLAINT**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

  I.    Plaintiff Was Sexually Harassed, Assaulted, and Retaliated Against by Defendant. ..........2

  II.   Defendant Has Already Engaged With and Acknowledged These Claims. .......................4

ARGUMENT ........................................................................................................6

  I.    Plaintiff Has Established Good Cause to Amend the Complaint. ......................................6

     A.  Plaintiff Has Been Diligent in Pursuing Amendment. .................................................8

     B.  Defendant Will Not Suffer Prejudice Due to the Amendment. ..................................11

  II.   A Motion to Conform the Pleadings Is Warranted. ........................................................16

  III.  The Proposed Harassment and Retaliation Claims Would Not Be Futile. .......................19

     A.  Plaintiff States a Claim for NYCHRL Retaliation. ....................................................20

     B.  Plaintiff States a Claim for NYCHRL Harassment. ...................................................25

     C.  Plaintiff's Retaliation and Harassment Claims Are Revived Under the ASA............26

CONCLUSION.....................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. New York City Dep't of Educ.*,
2020 WL 7027509 (S.D.N.Y. Nov. 30, 2020) ............................................................24

*Antoine v. Brooklyn Maids 26, Inc.*,
489 F. Supp. 3d 68 (E.D.N.Y. 2020) ............................................................21, 22

*Beter v. Baughman*,
2024 WL 4252036 (S.D.N.Y. Sept. 5, 2024) ............................................................12, 28

*Breyette v. Amedore*,
205 F.R.D. 416 (N.D.N.Y. 2002) ............................................................17

*Bryant v. Carlisle Carrier Corp.*,
2014 WL 712592 (E.D.N.Y. Feb. 25, 2014) ............................................................18

*Burrell v. City Univ. of New York*,
894 F.Supp. 750 (S.D.N.Y.1995) ............................................................21

*Carodenuto v. New York City Health & Hosps. Corp.*,
593 N.Y.S.2d 442 (Sup. Ct. 1992) ............................................................29

*Carpenter v. Churchville Greene Homeowner's Ass'n*,
2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011) ............................................................15

*Carroll v. Trump*,
650 F. Supp. 3d 213 (S.D.N.Y. 2023) ............................................................27

*Ciotti v. City of New York*,
2025 WL 308022 (S.D.N.Y. Jan. 27, 2025) ............................................................12, 28

*Coale v. Metro-N. R. Co.*,
2009 WL 4881077 (D. Conn. Dec. 11, 2009) ............................................................14, 20

*Corrado v. New York Unified Ct. Sys.*,
163 F. Supp. 3d 1 (E.D.N.Y. 2016) ............................................................21

*Crawford v. Ratner*,
2023 WL 8810507 (N.Y. Sup. Ct. Dec. 20, 2023) ............................................................12, 28

*Denis v. Home Depot, U.S.A., Inc.*,
2014 WL 6632486 (E.D.N.Y. Nov. 21, 2014) ............................................................13, 16, 18

*Dietrich v. City of New York*,
2019 WL 2236585 (S.D.N.Y. May 16, 2019) ............................................................24

*Dillon v. Suffolk Cnty. Dep't of Health Servs.*,
  2010 WL 11629554 (E.D.N.Y. Oct. 20, 2010) ....................................................................14

*Doe v. Gross*,
  2024 WL 3729007 (S.D.N.Y. Aug. 7, 2024) ......................................................................29

*E.E.O.C. v. Bloomberg L.P.*,
  967 F. Supp. 2d 816 (S.D.N.Y. 2013) ................................................................................22

*Fresh Castro v. City of New York*,
  2010 WL 889865 (E.D.N.Y. Mar. 6, 2010) .........................................................................15

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
  304 F.R.D. 170 (S.D.N.Y. 2014) ..........................................................................10, 11, 15

*Green v. Dist. Council 1707 et al.*,
  2015 WL 4621107 (S.D.N.Y. Aug. 3, 2015) ................................................................13, 18

*Grochowski v. Phoenix Const.*,
  318 F.3d 80 (2d Cir.2003) ...................................................................................................14

*Hernandez v. Kaisman*,
  103 A.D.3d 106 (1st Dep't 2012) ........................................................................................27

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009) ................................................................................................10

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018) .................................................................................21

*In re Anderson*,
  668 B.R. 753 (Bankr. S.D.N.Y. 2025) ...........................................................................12, 17

*In re Biber*,
  2013 WL 499378 (Bankr. D. Conn. Feb. 1, 2013) ..............................................................29

*In re Refco Sec. Litig.*,
  2013 WL 2035377 (S.D.N.Y. May 9, 2013) ........................................................................14

*J.S.M. v. City of Albany Dep't of Gen. Servs.*,
  211 N.Y.S.3d 859 (N.Y. Sup. Ct. 2024)..........................................................................12, 28

*Jackson v. Roslyn Bd. of Educ.*,
  596 F. Supp. 2d 581 (E.D.N.Y. 2009) .............................................................................14, 16

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ...........................................................................................11, 15

*Little v. Nat'l Broad. Co.*,
   210 F. Supp. 2d 330 (S.D.N.Y. 2002) ................................................................21

*Margel v. E.G.L. Gem Lab Ltd.*,
   2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) ..................................................14, 19

*Massachusetts Bay Ins. Co. v. Seneca Ins. Co., Inc.*,
   697 F. Supp. 3d 196 (S.D.N.Y. 2023) ................................................................13

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013) ....................................................................... passim

*Mitura v. Finco Servs., Inc.*,
   712 F. Supp. 3d 442 (S.D.N.Y. 2024) ................................................................23

*New Yuen Fat Garments Factory Ltd. v. Aug. Silk, Inc.*,
   2009 WL 1515696 (S.D.N.Y. June 1, 2009) ......................................................16

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ............................................. passim

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ..............................................................................10

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
   889 F. Supp. 2d 453 (S.D.N.Y. 2012) ..........................................................17, 20

*Rain Corp. v. Parry*,
   2013 WL 12621554 (S.D.N.Y. Dec. 5, 2013) ....................................................20

*Richardson Greenshields Sec., Inc. v. Lau*,
   825 F.2d 647 (2d Cir. 1987) ..............................................................................14

*Roessner v. Emp. Term Life*,
   589 F.Supp. 2d 174 (D. Conn. 2008) ...........................................................12, 17

*Roldan v. Lewis*,
   2025 WL 676090 (E.D.N.Y. Mar. 3, 2025)..............................................12, 28, 29

*Schottenstein v. Lee*,
   2024 WL 515247 (S.D.N.Y. Feb. 9, 2024) .........................................................29

*Scott v. Chipotle Mexican Grill, Inc.*,
   300 F.R.D. 193 (S.D.N.Y. 2014) ...........................................................11, 17, 19

*Segal v. New York Mil. A*cad.,
   2023 WL 5211220 (S.D.N.Y. Aug. 14, 2023).....................................................28

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) .................................................................................19

*Suri v. Grey Glob. Grp., Inc.*,
    164 A.D.3d 108 (1st Dep't 2018) .........................................................................27

*Valerio v. Metro. Transportation Auth.*,
    2024 WL 2305386 (S.D.N.Y. May 20, 2024) .......................................................22

*Wanamaker v. Columbian Rope Co.*,
    907 F. Supp. 522 (N.D.N.Y. 1995) ......................................................................24

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) .............................................................................26

*Xerox Corp. v. Lantronix, Inc.*,
    342 F. Supp. 3d 362 (W.D.N.Y. 2018) .................................................................20

*Ziccarelli v. NYU Hosps. Ctr.*,
    247 F. Supp. 3d 438 (S.D.N.Y. 2017) ..................................................................20

*Zomba Recording Corp. v. MP3.Com, Inc.*,
    2001 WL 770926 (S.D.N.Y. July 10, 2001) .........................................................16

**Statutes**

N.Y. Penal L. § 130 ......................................................................................................27

**Rules**

Fed. R. Civ. P. 15 ...................................................................................................1, 10

N.Y. CPLR § 214 ........................................................................................................27

SDNY L.R. 15 ................................................................................................................1

Pursuant to Federal Rules of Civil Procedure 15(a), 15(b) and 16(b), and SDNY Local Rule 15.1, Plaintiff Drew Dixon ("Plaintiff" or "Dixon") respectfully submits this memorandum of law in support of her motion to amend the pleadings to conform to the evidence and motion for leave to amend the complaint.

## PRELIMINARY STATEMENT

Plaintiff seeks to conform the pleadings by adding two causes of action for retaliation and harassment under New York City's Human Rights Law ("NYCHRL")—in order to provide the jury a complete picture of the ways in which Defendant L.A. Reid ("Defendant" or "Reid"), carried on a pattern of sexualized conduct that was inappropriate for the workplace and extremely harmful to Plaintiff on a physical, psychological, and financial level. Defendant lashed out against Plaintiff through a pattern of conduct to assault her and then retaliate against her for not acquiescing to his repeated unwanted sexual advances.

Adding these claims to the complaint is appropriate whether styled as a motion to conform the pleadings to the evidence, or a motion for leave to amend. This is so because Defendant has long been on notice that retaliation and harassment were at play in this action, given that he has acknowledged and engaged with Plaintiff's potential harassment and retaliation claims in numerous docket filings, pretrial motions, and depositions, *see infra* page 3-6; and the proposed claims involve no new factual allegations, so no additional discovery, depositions, or fact-finding is necessary. Defendant will suffer no prejudice (and the case will undergo no additional delay) due to the addition of the two proposed claims, as they arise from—and were forecasted by—the exact same constellation of facts alleged in the original complaint. Amendment is also proper in light of recent developments in Adult Survivors Act ("ASA") caselaw, which has recently established that these claims are revived by the ASA and viable. *See infra* page 8. Further, the

Court has acknowledged that under the existing IIED claim, the harassment and retaliation is part of "a course of conduct broader than just the sexual assaults."[1] Thus, Defendant is already on notice of these claims, and these amendments simply provide clarity. Moreover, while closely related, the claims are not duplicative.

The fact that the parties have three months before trial is set to commence—ample time to prepare to address claims that have already been forecasted and probed throughout discovery and motion practice—further underscores the lack of prejudice to Defendant. Moreover, Defendant—through his pattern of dilatory conduct, which includes stonewalling that began even before the original complaint was filed; cycling between attorneys; and delaying each stage of discovery—can claim no prejudice from these modest proposed modifications to the complaint.

## BACKGROUND

### I.    Plaintiff Was Sexually Harassed, Assaulted, and Retaliated Against by Defendant.

As set forth in the complaint, Defendant, Plaintiff's former supervisor at Arista Records, abused his position of power to sexually harass Plaintiff in the workplace, sexually assault her on multiple occasions, and then retaliate against her professionally when she refused or rebuffed his

---

[1]    As the Court noted, "[w]hile there is obvious overlap, Plaintiff's IIED claim does not so completely overlap with her sexual assault/battery claim that it is subsumed within that claim. In addition to the two alleged instances of sexual assault in 2001, the Complaint alleges that during the course of Plaintiff's employment at Arista, Defendant made 'pervasive' suggestive comments towards her, complained when he could not get her alone, made repeated sexual advances and retaliated against her at work by demeaning her in front of coworkers, instructed other executives to advise her to wear skirts and high heels, repeatedly invited her to meetings in his hotel room and called her late at night, and retaliated against her for declining his advances by preventing her from signing new artists. Because her IIED claim includes a course of conduct broader than just the sexual assaults, it is not duplicative of her sexual assault/battery claim." ECF No. 58 at 8 (citations omitted).

advances. *See* Ex. A, Proposed Amended Complaint ("AC") ¶¶ 2–3.[2]

Even before Defendant began his tenure as Plaintiff's boss at Arista, he bombarded her with sexual comments and innuendo. *See* AC ¶¶ 39–41. Later, on a company retreat in Puerto Rico, *see id.* ¶¶ 42–44, and in a private car going to a work event, Defendant sexually assaulted Plaintiff. *See id.* ¶¶ 48–50.

Refusing to take no for an answer, Defendant made further sexual advances towards Plaintiff. He would ceaselessly demand that Plaintiff meet him in his hotel room alone, late at night, ostensibly to listen to music, even though they worked just blocks away with studio equipment of the highest caliber. *See id.* ¶ 53. Plaintiff always turned him down, *see id.*, and went as far as to wear certain clothing that she thought would dissuade Defendant from approaching her. *See id.* ¶ 52. As a result of her refusals, Defendant retaliated against Plaintiff by making rude comments in front of coworkers, publicly reprimanding and humiliating her, blocking promising artists she attempted to sign, and reducing or freezing promotional and recording budgets connected to her artists. *See id.* ¶¶ 47, 52–54, 57.

None of this sated Defendant's retaliatory urges. After Plaintiff brought Kanye West to Arista for an audition, Defendant disparaged Plaintiff "in front of the whole A&R department." *Id.* ¶ 55. Later, Plaintiff gave Defendant a demo of John Legend's music. *See id.* ¶ 56. Defendant was initially impressed and agreed to use Arista funds to pay for and allow Plaintiff to arrange an audition for John Legend at a prestigious venue in front of Defendant and other Arista senior executives. *See id.* But once Defendant again demanded that Plaintiff join him in his hotel room, and once Plaintiff again refused, Defendant—without warning or notice—retaliated against her by

---

[2] All of the facts set forth herein and in the proposed Amended Complaint are identical to the original complaint. *See* ECF No. 1; Ex. A. A redline is included in Exhibit A after the Proposed Amended Complaint. *See* Ex. A.

opting not to attend the audition, and ordered the rest of the Arista senior staff to do the same, leaving Plaintiff humiliated and alone watching John Legend and his band audition before an otherwise empty theater. *See id.*

Defendant's harassment and retaliation severely undermined Plaintiff's mental health and wellbeing, as well as her professional standing, career trajectory, and earning potential. *See id.* ¶ 70–77.

## II.    Defendant Has Already Engaged With and Acknowledged These Claims.

Plaintiff's proposed amendments—a retaliation claim and a harassment claim—arise directly from the same facts alleged in the original complaint. *Compare* ECF No. 1 *with* Ex. A. This amendment should not come as any surprise to Defendant, given that Plaintiff has consistently discussed these theories, and Defendant has consistently engaged with them, since the beginning of this litigation and throughout discovery.

Plaintiff's original complaint brought claims for sexual battery/assault; false imprisonment; intentional infliction of emotional distress; and violation of the Gender Motivated Violence Act. *See* ECF No. 1. But from the beginning, Defendant has litigated this case as if Plaintiff also brought claims for harassment and retaliation. As early as January 4, 2024 (only two months after the complaint was filed), the parties filed a joint status letter summarizing the case, which stated that Plaintiff alleges "she was sexually harassed and assaulted by her supervisor," and that Defendant engaged in a "campaign of relentlessly sexually harassing Ms. Dixon." ECF No. 15. Later that month, in Defendant's motion to dismiss briefing, he stated that "Plaintiff alleges 'ongoing sexual harassment and career sabotage,'" ECF No. 19, and argued that Plaintiff "should not be permitted to ground her IIED [claim] on sexual harassment." ECF No. 35. Tellingly, in Defendant's Answer, he found it necessary to specifically deny "that he assaulted or harassed Plaintiff," or that

"Plaintiff's experiences with him caused her to give up her career." ECF No. 59.

During Plaintiff's deposition, Defendant asked repeated questions about harassment and retaliation that Plaintiff experienced at Arista. *See* ECF No. 143-1, Dixon Depo. Tr at 228:5–6 (asking whether Plaintiff thought her experience amounted to "classic harassment in the workplace"); *id.* at 210:19–23 (asking about "flirtatious comments" made by Defendant while Plaintiff accompanied him apartment hunting, which prompted the realtor to tell Plaintiff that "he thought that Mr. Reid was in love with [Plaintiff]"); *id.* at 213:3–6 (asking whether there were "other circumstances or situations where [Defendant] was flirtatious with you prior to him officially starting at Arista"); *id.* at 219:21–221:25 (asking about Defendant's request—communicated through Defendant's erstwhile assistant Karen Kwak—that Plaintiff wear "skirts" and "heels" to work); *id.* at 221–226 (asking about Plaintiff's experience dealing with Defendant's persistent calls asking her to accompany him alone to his hotel room); *id.* at 227:10–12 (asking Plaintiff whether Defendant would make flirtatious remarks to her "in front of other people").

Defendant's counsel also read from passages in Plaintiff's memoirs that referenced Defendant's harassment, *see id.* at 369:4–21; 371:17–372:24; 374:4–375:25, and peppered her with questions as to the distinction between "sexual assault" and "career-destroying sexual harassment." *Id.* at 376:10–15; *see also id.* at 376:22–25; 377: 9-10 (asking whether, "with respect to L.A., you are categorizing it as harassment"); *id.* at 383:5–13 (asserting that Plaintiff has previously made "a clear distinction between harassment and assault," and implying that she previously stated she only suffered the former at Defendant's hands).

Finally, Defendant probed Plaintiff's claims that Defendant retaliated against her—including by not signing John Legend and Kanye West—for rejecting his sexual overtures. *See e.g., id.* at 312:21–25 (asking whether "anyone ever" told Plaintiff that Defendant "decided not to

sign Kanye or John Stephens because he was retaliating against [her] for not going to the Four Seasons and sleeping with him"); *id.* at 313:3–6 (asking whether Plaintiff "infer[red]" that Defendant had a retaliatory motive based on the way his "treatment of [her] changed after you would not go to the Four Seasons"); *id.* at 305:2–306:23 (asking about Plaintiff being publicly humiliated and "dress[ed ] down" by Defendant following Kanye's audition and whether she "believed then and now that his response was directly tied to [her] unwillingness to go to the Four Seasons"); *id.* at 307:11–312:25 (asking about Defendant's abrupt decision not to attend John Legend's audition after initially praising his demo).

Defendant's summary judgment briefing was the most striking example of his deep engagement with Plaintiff's allegations of harassment and retaliation. In total, Defendant devoted *seven* pages of his summary judgment briefing to discussing Plaintiff's hypothetical harassment/retaliation claims. *See* ECF No. 108 at 15–19; ECF No. 159 at 2–4. So much so that the Court's summary judgment opinion noted that "the parties go back and forth as to whether any retaliation or sexual harassment claims based on Plaintiff's resistance to Defendant's advances" were cognizable. ECF No. 204 at 5.

Following the Court's denial of summary judgment, the parties are now ready to proceed to trial (albeit at a later date than expected, due to Defendant's delays and obstruction) in approximately three months, on January 12, 2026. Permitting Plaintiff to add a retaliation and harassment claim to the complaint would not only more accurately reflect the proof adduced thus far, but it would also be a just and equitable result which would cause no prejudice to Defendant and no further delay to adjudication of this case.

## **ARGUMENT**

### I.    **Plaintiff Has Established Good Cause to Amend the Complaint.**

Plaintiff respectfully submits that good cause exists to allow amendment of the complaint. Under Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Where an existing scheduling order "governs amendments to the complaint," "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs.*, Inc., 73 F. Supp. 3d 358, 375 (S.D.N.Y. 2014) (citations omitted). Thus, a court may allow leave to amend a scheduling order to permit a late amendment upon a showing of good cause. *See New York SMSA Ltd. P'ship v. Town of Hempstead*, 2013 WL 1148898, at *3 (E.D.N.Y. Mar. 19, 2013) (citation omitted) ("[W]here the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline" to amend a complaint); *but see Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014) (noting that the "Second Circuit" has "ma[de] clear that a district court has discretion to consider Rule 15(a) factors notwithstanding the failure to show good cause for violating a Rule 16(b) deadline"). Evaluating whether a party has demonstrated good cause to amend is within the trial court's discretion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (in evaluating such motions, the "district court must exercise its discretion under Rule 16(b) to determine whether the scheduling order should be modified so as to allow an amended complaint").

The "good cause" inquiry turns both on "the diligence of the moving party" in seeking to amend; and on "whether allowing amendment of the pleading at this stage of the litigation will prejudice defendants." *Fresh Del Monte Produce*, 304 F.R.D. at 175. Here, Plaintiff has good cause to make the limited amendments proposed because of (1) recent developments in controlling law as it relates to Plaintiff's amended claims; (2) a complete lack of any prejudice to Defendant

as a result of Plaintiff's narrow proposed amendments; and (3) the significant delay of the litigation, resulting in an adjournment of trial, caused by Defendant's own conduct.

**A. Plaintiff Has Been Diligent in Pursuing Amendment**.

"To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's efforts, the deadline to amend the pleadings could not have been reasonably met." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014). Here, Plaintiff could not have reasonably met the deadline to amend due to intervening changes in the law of this Circuit and the law of this case.

First, leave to amend is appropriate based on intervening changes in the law surrounding the ASA. "In this Circuit, courts regularly allow parties to amend their pleadings when there has been an intervening change in governing law during the pendency of the litigation." *In re Anderson*, 668 B.R. 753, 781 (Bankr. S.D.N.Y. 2025). For example, good cause to amend exists where "the law has developed since this case was initiated" and a "renewed examination of the applicable law" has revealed that previously uncertain claims are now "cognizable." *Roessner v. Emp. Term Life*, 589 F. Supp. 2d 174, 176–77 (D. Conn. 2008).

This is precisely the case here. When this lawsuit was first initiated in November 2023, the year following the enactment of the ASA, there was scant caselaw in this Circuit illuminating which types of civil claims were revived based on the statutory language of the ASA. In the two years since this case was filed, caselaw in this area has significantly developed, and courts have ruled that a wide variety of civil claims may be revived under the ASA. *See, e.g.*, *Roldan v. Lewis*, 2025 WL 676090, at *10 (E.D.N.Y. Mar. 3, 2025) (exploring issue of first impression which had "not been squarely addressed" by New York courts, and holding that "the CVA [Child Victims Act] and ASA can revive expired breach of contract claims"); *Ciotti v. City of New York*, 2025

WL 308022, at *25 (S.D.N.Y. Jan. 27, 2025) (reviving NYCHRL and NYSHRL retaliation claims); *J.S.M. v. City of Albany Dep't of Gen. Servs.*, 211 N.Y.S.3d 859, 868 (N.Y. Sup. Ct. 2024) (reviving claims for "negligent supervision and hostile work environment"); *Beter v. Baughman*, 2024 WL 4252036, at *5 (S.D.N.Y. Sept. 5, 2024), *report and recommendation adopted,* 2024 WL 4252035 (S.D.N.Y. Sept. 20, 2024) (reviving claims for "hostile work environment that would qualify as discrimination under the NYSHRL and the NYCHRL"); *Crawford v. Ratner*, 2023 WL 8810507, at *1, 5 (N.Y. Sup. Ct. Dec. 20, 2023) (reviving claims for "sexual harassment and retaliatory conduct" under the NYCHRL and NYSHRL). Based on these recent developments, Plaintiff now seeks to amend her complaint to add two ASA-revived claims that were previously not-clearly-cognizable when she first filed suit.

In addition to these significant developments in the law, good cause likewise exists due to substantial delays in the litigation and trial date, directly caused by Defendant's stalling and obstruction. After *years* of consistently dilatory behavior from Defendant, on August 25, 2025—less than two weeks before the original trial start date—the Court adjourned the prior September 8, 2025, trial date until January 12, 2026, due to Defendant and his counsel's transparent delay tactics. *See* ECF No. 250. This unexpected adjournment significantly altered the trajectory of the case and has given both parties an additional three months to prepare for trial. The extended time to prepare, coupled with the lack of need for any new discovery, merits affording Plaintiff an opportunity to amend her complaint. *See, e.g., Massachusetts Bay Ins. Co. v. Seneca Ins. Co., Inc.*, 697 F. Supp. 3d 196, 201–202 (S.D.N.Y. 2023) (holding that there was good cause to amend pleadings where "circumstances ha[d] changed" in the case due to a recent ruling in a related case); *Denis v. Home Depot, U.S.A., Inc.*, 2014 WL 6632486, at *5, 6 (E.D.N.Y. Nov. 21, 2014) (finding

good cause to amend where "the trial date has been adjourned" and the motion to amend is not being made "on the eve of trial") (internal citations omitted).

Notably, in the Second Circuit, "[l]eave to amend may be appropriate at any stage of litigation"—even where the moving party waited months (or years) to move to amend. *Green v. Dist. Council 1707 et al.*, 2015 WL 4621107, at *1 (S.D.N.Y. Aug. 3, 2015). Courts in this Circuit have granted leave to amend where the movant delayed waited as long as—or even longer—than Plaintiff did in moving to amend. *See, e.g.*, *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (collecting cases where leave to amend was granted after delays ranging from two to five years); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *11 (E.D.N.Y. Mar. 26, 2010) (collecting cases, noting that courts have found good cause to amend despite delays of "at least six months," and "nearly one year"); *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (finding good cause to amend despite "six month[]" delay in moving to amend, and noting that "courts frequently grant leave to amend after much longer periods of delay"); *Coale v. Metro-N. R. Co.*, 2009 WL 4881077, at *2 (D. Conn. Dec. 11, 2009) (noting that the Second Circuit has upheld granting leave to amend even where "the [new] basis for legal claims in the amended complaint became available more than one year before plaintiffs sought to amend their complaint") (citation omitted).[3]

Here, the lapse of time between the proposed amendments and the initiation of this action does not weight against denial of leave to amend—especially now that the parties have additional

---

[3] That discovery is largely complete also presents no barrier to amendment. No new discovery is needed for the proposed modifications and courts commonly grant leave to amend after discovery has closed. *See, e.g.*, *In re Refco Sec. Litig.*, 2013 WL 2035377, at *1 (S.D.N.Y. May 9, 2013) (noting that "amendments to a complaint after the close of discovery" are not categorially barred); *Nycomed*, 2010 WL 1257803, at *11 (granting leave to amend "although discovery has closed"); *Jackson v. Roslyn Bd. of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009) (same); *Dillon v. Suffolk Cnty. Dep't of Health Servs.*, 2010 WL 11629554, at *2 (E.D.N.Y. Oct. 20, 2010) (same).

time to prepare for trial due to Defendant's dilatory conduct. As noted above, courts have found good cause to amend even where the basis for the new claims (*i.e.*, the new facts or intervening changes in law) arose *years* prior. In this case, by contrast, caselaw interpreting the application of the ASA has continued to evolve as recently as March of 2025. *See supra* page 8 (discussing recent caselaw in *Roldan*, *Ciotti*, *JSM*, *Beter*, and *Crawford* cases). Moreover, prior to adjournment Plaintiff proceeded diligently in preparing for trial in the face of Defendant's delay, which as this Court recognized, necessitated great expenditure of Plaintiff's resources. *See* ECF No. 245-1 at 4 (Court recognizing that "Ms. Dixon's counsel has been working very hard and put in a lot of resources to be trial ready by the date that the Court set"). All this underscores that Plaintiff did not unduly delay in bringing this motion.

## B.  Defendant Will Not Suffer Prejudice Due to the Amendment.

Moreover, leave to amend is warranted because Defendant will suffer no prejudice whatsoever from Plaintiff's modest amendments. The analysis of good cause for a motion to amend centers on whether the defendant will suffer prejudice as a result of the plaintiff's amendment. *See Kassner*, 496 F.3d at 229 (Rule 16(b) inquiry should include consideration of "whether allowing the amendment of the pleadings at this stage of the litigation will prejudice defendants"); *Carpenter v. Churchville Greene Homeowner's Ass'n*, 2011 WL 4711961, at *3 (W.D.N.Y. Sept. 29, 2011), *report and recommendation adopted sub nom.* 2011 WL 6012539 (W.D.N.Y. Dec. 1, 2011) ("In deciding whether to grant a motion to amend, the court must weigh the good cause shown for the delay against the prejudice to the non-movant that will result from the amendment."). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Nycomed*, 2010 WL 1257803, at *12 (citation omitted).

11

Indeed, lack of prejudice is just as important a consideration as diligence, and in "appropriate circumstances, a district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order." *Fresh Del Monte Produce*, 304 F.R.D. at 175; *see also e.g.*, *Olaf Soot Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399 (S.D.N.Y. 2017) ("The Second Circuit has 'left open the possibility that amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment.'") (citation omitted); *Nycomed*, 2010 WL 1257803, at *11 (in the context of the good cause inquiry, "delay alone, in the absence of bad faith or prejudice, is usually not sufficient reason for denying a motion to amend"); *New Yuen Fat Garments Factory Ltd. v. Aug. Silk, Inc.*, 2009 WL 1515696, at *4 (S.D.N.Y. June 1, 2009) (granting motion for leave to amend because "there is no prejudice to the Defendants and no suggestion that [plaintiff] has acted in bad faith"—even though the plaintiff already "had access to" the evidence it sought to add "at the time [plaintiff] filed the initial complaint"); *Jackson*, 596 F. Supp. at 586 (finding good cause to amend due to lack of prejudice, even though "the plaintiff's delay of nearly five months is some evidence of a lack of diligence"); *Zomba Recording Corp. v. MP3.Com, Inc.*, 2001 WL 770926, at *1 (S.D.N.Y. July 10, 2001) ("While plaintiffs' extended delay in moving [to amend] could warrant denial of their motion . . . here, where defendant has utterly failed to show how it will be materially prejudiced by the amendment, the Court exercises its discretion to permit the amendment.").

In evaluating prejudice, "courts in this circuit 'consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Denis*, 2014 WL 6632486, at

*5 (citation omitted). Here, each factor weighs against any notion that Defendant would be prejudiced by the proposed amendments.

First, the amendments would not necessitate any additional discovery or fact-finding. As shown in the proposed Amended Complaint, Plaintiff makes zero new factual allegations in connection with these two proposed claims. Rather, she simply adds two legal causes of action that arise directly from the pre-existing universe of factual allegations in this lawsuit. Amendment is particularly appropriate where, as here, the defendant is already "in possession of all evidence relevant to rebutting the additional claim," and the new claim would "simply conform to what the evidence has already established." *In re Anderson*, 668 B.R. at 781 (internal citations and quotations omitted); *see also Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 461 (S.D.N.Y. 2012) (finding defendant would not be prejudiced by proposed claim where "[plaintiff] represents that it is not seeking additional discovery" as to the new claims and defendant "has not identified any additional discovery it would need to defend against the new claims"); *Roessner* , 589 F. Supp. at 177 ("Given that the new allegations here stem from the same underlying facts . . . are related to Plaintiff's original claim . . . and would not require Defendants to 'expend significant additional resources' or 'significantly delay the resolution of the dispute' . . . Defendants have not demonstrated that they would be sufficiently prejudiced.") (internal citations omitted); *Scott*, 300 F.R.D. at 199 (defendant would not suffer prejudice where "plaintiffs' proposed new claims rely on essentially the same facts as were set out in the original complaint").

Further, the original Complaint put Defendant on notice that Plaintiff may later bring a retaliation claim or harassment claim, as it specifically alleged that Defendant engaged in "ongoing sexual harassment" and "retaliated against" Plaintiff in the workplace after she rebuffed his advances. *See* ECF No. 1 ("Compl.") at ¶¶ 47–52; *Breyette v. Amedore*, 205 F.R.D. 416, 419

(N.D.N.Y. 2002) (concluding that defendants "had sufficient notice of the [new] retaliation claim such that no prejudice will result from granting leave to amend" where the complaint "alleged facts … suggesting retaliation" and "the original complaint use[d] the word retaliation on at least three occasions"). Defendant also acknowledged the factual basis of these claims in his summary-judgment briefing, further demonstrating his notice of Plaintiff's proposed retaliation and harassment claims. *See* ECF No. 159 at 3 (noting Plaintiff's allegation that she was damaged by Defendant's "refusal to sign West and Legend in retaliation for Dixon's rejection of Reid's unwanted advances"); ECF No. 108 at 6–7 (summarizing "Dixon's allegations of harassment" and noting that Plaintiff alleges "Reid sexualized and harassed her").

Second, the addition of these two new claims would not in any way delay resolution of this case. *See Green*, 2015 WL 4621107, at *2 ("One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action.") (citation omitted). Plaintiff does not seek any extension of the trial date, any new discovery or depositions, nor any extended motion practice on these two proposed claims. And because the proposed claims rely on no new facts, Defendant cannot reasonably claim to require any additional fact-finding either.

In sum, Defendant can make no plausible claim that these two proposed legal theories would cause any delays to his trial preparation. *See, e.g., Denis v*, 2014 WL 6632486, at *5 (finding late amendment would not prejudice defendant where "the proposed amended complaint . . . is largely derivative of the original complaint," and the amendments "will not require Defendants to expend a significant amount of additional resources in discovery or preparing for trial"); *Bryant v. Carlisle Carrier Corp.*, 2014 WL 712592, at *2 (E.D.N.Y. Feb. 25, 2014) (late amendment to add a counterclaim would not prejudice plaintiff where "the issue presented in the

counterclaim is identical to the issue at the center of plaintiff's claims" and the counterclaim "should not significantly delay the resolution of this dispute"); *Margel*, 2010 WL 445192, at *12 (permitting late amendment to add new claim would not "result in any undue burden" to defendants as the claim did "not require much in the way of additional time or resources," "plaintiffs' new claim stem[med] from the same [facts] that govern[ed] their previous claims," and information about the claim "[wa]s already within the defendants' possession"); *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (concluding that "district court abused its discretion in denying leave to amend" where "although" the "amendment may [have] result[ed] in a delay" it would "not [have] unduly prejudice[d] the defendant," because "the amended claim was obviously one of the objects of discovery and related closely to the original claim," "the amendment will not involve a great deal of additional discovery," and no additional depositions would be needed).

Third, leave to amend should be granted because forcing Plaintiff to bring the proposed claims in a separate lawsuit would be unjust and inefficient. Even assuming Plaintiff could file a new suit under the ASA, Plaintiff's two proposed claims "rely on essentially the same facts as were set out in the original complaint," and "forcing [her] to institute a new action against the defendant" to bring these two claims "would run counter to the interests of judicial economy." *Scott*, 300 F.R.D. at 199. Plaintiff would thus suffer prejudice if leave to amend were denied.

Finally, the Court should look skeptically upon any claim by Defendant that the proposed amendments would cause prejudice or delay, when Defendant himself has been the sole cause of the delay in the case. *See Nycomed*, 2010 WL 1257803, at *13 (rejecting defendant's contentions that permitting amendment would cause delays where defendant "has identified no legally cognizable prejudice" and "[defendant] has exhibited no eagerness to accelerate the pace of these proceedings"); *Perfect Pearl*, 889 F. Supp. at 461 (rejecting defendant's contention that "granting

. . . the motion to amend" would "protract this litigation materially," noting that the amendment motion "was *sub judice* for far shorter than the time it took for [defendant] to produce its Rule 30(b)(6) witnesses"); *Coale*, 2009 WL 4881077, at *3 (granting leave to amend because defendant "has identified no prejudice that it will suffer by permitting the amendment" and defendant "has conducted itself in this litigation with less than admirable regard for deadlines or rules of procedure"). Thus, Defendant cannot credibly claim that his case will be prejudiced by the potential (minimal) delay that might be caused by Plaintiff's amendment.

## II.    A Motion to Conform the Pleadings Is Warranted.

In the alternative, adding a retaliation and harassment claim is also proper under a motion to conform the pleadings. Under Rule 15(b), "when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings" and a "party may move at any time . . . to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b)(2). Though 15(b) motions are most commonly raised at trial,[4] "[t]he undisputed facts presented by the summary judgment pleadings" can also "provide the basis to deem the Complaint amended to conform to the evidence." *In re Citron,* 2010 WL 2978062, at *5 (Bankr. E.D.N.Y. July 23, 2010).

The two "key questions" in evaluating a motion to conform the pleadings are (1) "whether the issues were litigated with express or implied consent" and (2) "whether the defendant would be prejudiced by the implied amendment." *Bozdogan v. 23 Ludlam Fuel, Inc.*, 2022 WL 523546,

---

[4] Plaintiff chose to bring this Motion now—as opposed to waiting until trial—to accord with the Court's preference for "mak[ing] sure that we're using the jury's time efficiently" and not "wast[ing] the jury's time" with sidebars and "evidentiary issues" that could have been addressed in pre-trial filings. ECF No. 245-1, Tr. at 33, 35.

at *4 (E.D.N.Y. Feb. 22, 2022) (cleaned up). Here, both prongs weigh in favor of granting a motion to conform.

### A.  Defendant Has Given Implied Consent to the Amendment.

The essence of the "implied consent" prong is "whether the parties recognized that the [unpleaded] issue had entered the case." *CIT Bank, N.A. v. Zisman*, 2021 WL 3354047, at *6 (E.D.N.Y. Mar. 1, 2021). "Courts have found consent to be implied in situations where a claim is 'introduced outside the complaint—say, by means of a sufficiently pointed interrogatory answer or in a pretrial memorandum—and then treated by the opposing party as having [been] pleaded . . . through his effective engagement of the claim." *Timex Licensing Corp. v. Advance Watch Co.*, 2010 WL 3169345, at *3 (D. Conn. Aug. 10, 2010) (citation omitted).

A party can effectively engage with a claim by discussing and combating that claim in a pre-trial memorandum. *See Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 131 (E.D.N.Y. 2005) ("By engaging a theory of liability in a 'pretrial memorandum,' [defendant] impliedly consents to this Court's consideration of [the unpleaded issue]."); *CIT Bank*, 2021 WL 3354047, at *6  ("A party's implied consent can be found in, for example . . . briefing the issue or raising the issue at oral argument."); *id.* (holding that an unpleaded issue "conspicuously entered the litigation, notwithstanding its absence from the pleadings" where defendant's summary judgment briefing discussed the issue, plaintiff's briefing responded, and the parties thus already "litigat[ed] the issue on the merits"); *Bozdogan*, 2022 WL 523546, at *5 (implied consent to litigate claims was shown via "Plaintiff's exploration of these claims in written discovery and depositions, and the inclusion of these claims in his pre-trial memorandum").

Here, as explained in detail above, *see infra* page 3-6, Defendant has acknowledged the presence of the two unpleaded claims (harassment and retaliation) from the very beginning of this

17

case, including by discussing these claims in his Answer, questioning Plaintiff about these topics in her deposition, and repeatedly acknowledging these claims in his pre-trial filings. Moreover, Defendant already had a full and fair chance to litigate the legal issues surrounding these claims, as indicated by his devoting seven pages of his summary judgement briefing to these issues.[5]  Thus, Defendant has impliedly consented to litigating these issues.

### B.  Defendant Will Not Be Prejudiced by the Amendment.

The second prong that courts look to in evaluating a motion to conform is "whether the defendant would be prejudiced by the implied amendment." *Bozdogan*, 2022 WL 523546, at *4 (citation omitted).[6]  This involves inquiry into "whether the unpleaded claim involves the same material facts as the pleaded claims . . .  and whether, in fairness, the objecting party should have had an opportunity to better contest the unpleaded claim by, for example, exploring defenses to it in pre-trial discovery." *Id*. at *5 (citations omitted). "Prejudice does not result simply because the amendment would change the cause of action." *Id*. at *4 (citation omitted). Courts commonly find that a defendant is not prejudiced by the addition of the unpleaded claims where there is significant factual overlap between the original claims and the unpleaded claims. *See, e.g., id*. at *6 (finding no "resulting prejudice from the addition of Plaintiff's" new claims because "the facts and evidence relevant to these claims overlap with the pleaded claims," such that "defendants could not be

---

[5] To ensure complete fairness, Plaintiff would not object to further briefing on the retaliation and harassment issues, if Defendant so requests—provided that such additional briefing does not delay the start of trial. And given that there are three months remaining before trial, there is sufficient time for briefing on any motion to dismiss in connection with the proposed claims.

[6] Courts look to substantially the same factors in evaluating prejudice under Rules 15(a), 15(b), and 16(b). *See In re London Silver Fixing, Ltd., Antitrust Litig*., 2017 WL 11566841, at *3 (S.D.N.Y. June 8, 2017) ("The Court can consider similar factors, including prejudice, under Rule 15 and Rule 16."); *James v. Stewart*, 2021 WL 5331752, at *6 (S.D.N.Y. Nov. 16, 2021), *aff'd*, 2023 WL 1113533 (2d Cir. Jan. 31, 2023) ("[T]he standards for evaluating Rule 15(a) and Rule 15(b) motions overlap.").

expected to offer new evidence if the case were to be retried" and thus could not argue that "they were so disadvantaged").

Here, as explained in great detail above (*see infra* page 10–15), Defendant would not be prejudiced by the addition of the harassment and retaliation claims, because (1) these proposed claims rely on the exact same nucleus of facts set out in the original complaint; (2) Defendant already factually explored these claims via written discovery and depositions; and (3) Defendant has already raised his legal defenses to these claims in his summary judgment briefing. *See Maschmeijer v. Ingram*, 97 F. Supp. 639, 643 (S.D.N.Y. 1951) (no prejudice where the "amendment would conform the pleading to the testimony given . . . in [depositions] before trial"); *Earth Island Inst. v. Elliott*, 318 F. Supp. 3d 1155, 1170 (E.D. Cal. 2018) ("Where Defendants 'had ample notice . . . and the issue did not require further discovery,' then the parties 'fully argued' the issue in their summary judgment briefing, any claim of prejudice rings hollow.") (citation omitted); *Beacher v. Est. of Beacher*, 756 F. Supp. 2d 254, 272 (E.D.N.Y. 2010) ("The record reveals that the defendant was fully apprised of all the facts and evidence introduced and, in addition, fully advised of the theory of the [proposed claim]. The defendant was offered every opportunity to refute the facts and evidence adduced."); *In re Adelphia Commc'ns Corp.*, 376 B.R. 87, 106 (Bankr. S.D.N.Y. 2007) ("If, in an effort to prove one of its other claims, [movant] presents evidence at trial that is sufficient to demonstrate [their proposed claim], it is difficult to see how this would prejudice [the opponent] in presenting its case. Amendments to conform pleadings . . . are to be liberally granted.").

Accordingly, Plaintiff requests that the Court conform the pleadings to the proof and permit Plaintiff to bring her claims for retaliation and harassment.

### III.    The Proposed Harassment and Retaliation Claims Would Not Be Futile.

19

"When [a] plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy" and futility. *O'Brien v. City of New York*, 709 F. Supp. 3d 105, 110 (E.D.N.Y. 2024)  (citation omitted). "It is axiomatic that the party opposing an amendment has the burden of establishing that leave to amend would be futile." *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 373 (W.D.N.Y. 2018). A proposed amendment is futile if it "fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Rain Corp. v. Parry*, 2013 WL 12621554, at *1 (S.D.N.Y. Dec. 5, 2013) (citation omitted). Under that standard, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation omitted).

Here, Plaintiff's proposed amendments state plausible claims for NYCHRL retaliation and harassment.

## A.  Plaintiff States a Claim for NYCHRL Retaliation.

As alleged in her proposed Amended Complaint, Plaintiff brings a claim for NYCHRL retaliation under NYC Admin. Code § 8-107. She alleges that, after she rebuffed Defendant's unwanted sexual advances, Defendant retaliated against her by, *inter alia*, publicly reprimanding her, depriving her of professional opportunities, and refusing to sign promising new artists she presented to him. *See* AC ¶¶ 98–103.

"To establish a prima facie case of retaliation under the NYCHRL, a plaintiff must show that: (1) he participated in a protected activity; (2) the defendant knew about his participation; (3) the defendant took an employment action that disadvantaged the plaintiff in any manner; and (4) a causal connection existed between the protected activity and the negative employment action." *Corrado v. New York Unified Ct. Sys.*, 163 F. Supp. 3d 1, 25–26 (E.D.N.Y. 2016) (citation omitted), *aff'd sub nom.*, 698 F. App'x 36 (2d Cir. 2017). Courts must construe NYCHRL claims

"liberally for the accomplishment of the uniquely broad and remedial purposes" of the statute. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted).

As for the first element—Plaintiff's participation in a protected activity—the Amended Complaint alleges that Plaintiff engaged in a protected activity "when she rebuffed and rejected Mr. Reid's sexual advances." AC ¶ 99. It is well-established that "[r]ejecting sexual advances from an employer constitutes 'protected activity.'" *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 86 (E.D.N.Y. 2020); *see also Burrell v. City Univ. of New York,* 894 F. Supp. 750, 761 (S.D.N.Y.1995) (holding that "refusing to accede to [] sexual advances" constitutes protected activity); *Antoine*, 489 F. Supp. at 86 ("Plaintiff's verbal and physical expressions of resistance to [defendant's] sexual advances were protected activities."); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 448 (S.D.N.Y.2018) ("[Defendant's] sexual advances 'qualified as an unlawful employment practice,' and [plaintiff] engaged in protected activity each time she rejected them.") (citation omitted). Here, Plaintiff's repeated rejection of Defendant's unwelcome sexual advances easily satisfies this element.

The second element—Defendant's knowledge of Plaintiff's protected activity—is likewise satisfied because Defendant himself is alleged to be the person who harassed Plaintiff, and he was aware that his advances were unwelcome given that, without fail, she resisted him and turned down his phone calls. *See e.g.*, *Antoine*, 489 F. Supp. at 86 (second element was "plainly established" where "complaint alleges that plaintiff rejected [defendant's] sexual advances by telling him

21

directly, thus making clear to [defendant] that plaintiff was engaging in a protected activity"); *see also* AC ¶¶ 38–53, 99–100 (detailing Defendant's sexual assaults and advances).

The Amended Complaint similarly sufficiently alleges the third element—that Plaintiff was disadvantaged in the workplace. The NYCHRL "does not require that a plaintiff prove an adverse employment action." *Wilkerson v. Blink Holdings, Inc.*, 2024 WL 2945646, at *5 (S.D.N.Y. June 10, 2024) (citation omitted). Instead, a "plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik*, 715 F.3d at 110. Here, Plaintiff has shown that Defendant engaged in numerous actions to treat her "less well" in the workplace. "Under the NYCHRL, public reprimands can constitute adverse action." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 851 (S.D.N.Y. 2013). Here, after turning down Kanye West, Defendant "berate[d Plaintiff] in front of the whole A&R department about how bad she was at her job and what a waste of his time the audition had been, all while Kanye waited in the lobby." AC ¶ 55. And after Defendant had initially listened to John Legend's demo and agreed to attend his audition, and after Plaintiff had "booked a performance space . . . and invited the Arista senior staff," Defendant suddenly "canceled and told the entire senior staff not to go," leaving Plaintiff alone "in the front row" watching John Legend perform "next to a row of empty chairs, unable to offer [him] . . . an explanation." *Id.* ¶ 56; *see also Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 453, 458 (S.D.N.Y. 2024) (plaintiff stated a claim for sexual harassment under the NYCHRL when she alleged that a workplace superior made "degrading comments and insults" "in an effort to humiliate her").

These types of allegations of public reprimands and humiliation rituals are sufficient to allege retaliatory adverse action when, as here, they occur after a plaintiff repeatedly rejects a defendant's sexual propositions. *See Mihalik*, 715 F.3d at 115–16 (reversing grant of summary

judgment on NYCHRL retaliation claims where the complainant "testified in her deposition that, after she rejected [her workplace superior's] propositions . . . he began to tell her—in front of her mostly male colleagues—that she 'add[ed] nothing of value,' that she has 'no fucking clue what [she was] doing,' and that she was 'pretty much useless.'"). Here, Defendant's persistent sexual propositions to Plaintiff that she join him one-on-one in his hotel room, and Plaintiff's repeated rejections of his overtures, all preceded in time or occurred contemporaneously with the Kanye West and John Legend incidents. *See* AC ¶ 53 (detailing Defendant's persistent phone call propositions to Plaintiff, and Plaintiff's rejections, all of which occurred around the same period as the Kanye West audition).

Indeed, in the case of John Legend, the timeline—and Defendant's motivation—could not be clearer. Initially, Defendant was so "impressed" by Legend's music that he "approv[ed]" Plaintiff booking an audition space. *See id.* ¶ 56. It was only after Defendant "resumed his requests that [Plaintiff] come to his hotel room," and only after Plaintiff declined and "avoided" him, that Defendant decided to cancel and tell "the entire senior staff not to go." *Id.*

By arbitrarily passing on Kanye West, John Legend, and other promising artists that Plaintiff attempted to sign, *see id.* ¶ 57, and by dramatically reducing or freezing Plaintiff's "[p]romotional and recording budgets," *id.* ¶ 54, Defendant subjected Plaintiff to an adverse action: causing a "setback to [her] career." *Alexander v. New York City Dep't of Educ.*, 2020 WL 7027509, at *5 (S.D.N.Y. Nov. 30, 2020) (a change in duties or projects "may be an adverse employment action, if it results in a change in responsibility so significant as to constitute a setback to the plaintiff's career" or in less "opportunities for advancement") (citation omitted); *see also Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522, 535 (N.D.N.Y. 1995), *aff'd,* 108 F.3d 462 (2d Cir. 1997) (examples of retaliatory employment actions include "providing unfair work

references," "failing to promote the employee," or "subjecting an employee to unreasonable working conditions") (citations omitted); *Dietrich v. City of New York*, 2019 WL 2236585, at *7 (S.D.N.Y. May 16, 2019) (for the purposes of ADEA claim, being "placed in a position that was 'materially less prestigious . . . [and] materially less conducive to career advancement' such that the change in role could have 'constitute[d] a setback to [his] career,'" was an "adverse employment action") (citation omitted).

The fourth element—a causal connection between the protected activity and the negative employment actions—has also been plausibly alleged. "[C]ausation can be shown either indirectly—usually, though not exclusively, through temporal proximity—or directly, through evidence of retaliatory animus." *Alexander*, 2020 WL 7027509, at *11 (citation omitted). Here, there is evidence of both.

As to temporal proximity, as noted above, Defendant's unceasing sexual advances towards Plaintiff (and Plaintiff's rebuffing of same) occurred in the period before and contemporaneous with the Kanye West and John Legend incidents. *See* AC ¶¶ 53, 55–56. In John Legend's case, the temporal link could not be tighter: Defendant retaliated against Plaintiff as soon as she again spurned his advances. *See id.* ¶ 56. Had Plaintiff acquiesced to him, Defendant would not have abruptly cancelled the audition, as evidenced by the fact that Defendant had earlier been "impressed" by Legend's music and had approved Plaintiff *booking* an audition space at a prestigious New York venue.

Beyond temporal proximity, Defendant's conduct in connection with the Legend audition (paying for a venue and then humiliating and burning bridges with a promising artist) is also wholly inexplicable other than by reference to retaliatory animus. More generally, Defendant's sudden professional mistreatment of Plaintiff can only be accounted for by retaliatory animus, considering

Plaintiff's exceptional track record both earlier in her career and during her time at Arista. *See* AC ¶¶ 14–17, 20–22.

Even in cases where there is "substantial" evidence of the complainant's "poor [job] performance," courts deny motions to dismiss NYCHRL retaliation claims, especially when the perpetrator's misconduct only occurs after the complainant raises issue with his sexual advances. *See Mihalik*, 715 F.3d at 117 ("[W]hile we agree that the evidence of [the plaintiff's] poor performance was substantial, we also conclude that a jury could find, notwithstanding that poor performance, that [the employer] was not yet ready to fire [the plaintiff] and that it did so only after . . . [the plaintiff] raised the issue of his sexual advances. Moreover, because [the employer] had never criticized [the plaintiff's] performance before she rejected his propositions, a jury could find that he used her shortcomings as an excuse to humiliate and punish her for opposing his discriminatory behavior . . . [and] as a mere cover-up for retaliation."). That Plaintiff had experienced singular professional success before Defendant disrupted her upward trajectory furnishes additional evidence of his retaliatory motive.

Therefore, Plaintiff has stated a plausible claim for retaliation under the NYCHRL, and granting leave for her to amend her complaint would not be futile.

### B. Plaintiff States a Claim for NYCHRL Harassment.

Defendant's targeted sexual misconduct towards Plaintiff also constitutes a claim for NYCHRL harassment under NYC Admin. Code § 8-101, et seq. She alleges that Defendant created a hostile workplace environment and treated her worse than other employees by making persistent unwanted sexual overtures and harassing comments, subjecting her to public reprimands and humiliation, and sexually assaulting her on at least two occasions. *See* AC ¶¶ 104–08.

"[T]he primary issue for a trier of fact in harassment cases [under the NYCHRL] . . . is

whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Ibrahim v. Fid. Brokerage Servs. LLC*, 2020 WL 107104, at *4 (S.D.N.Y. Jan. 9, 2020) (citation omitted); *see also Davis v. Phoenix Ancient Art, S.A.*, 975 N.Y.S.2d 365 (Sup. Ct. 2013) (noting that determining liability by the existence of differential treatment (i.e., unwanted gender-based conduct) maximizes the law's deterrent effect) (citation omitted); *Mihalik*, 715 F.3d at 114 ("[T]he NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct").

Here, Plaintiff has plausibly alleged "that she [w]as been treated less well than other employees because of her gender." Defendant's conduct towards Plaintiff stemmed from the latter's rejection of his sexual advances, *see supra* at III.A, and his conduct negatively impacted Plaintiff's career, by humiliating her in front of colleagues and up-and-coming artists, and by depriving her of professional opportunities. *See Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (1st Dep't 2012) (reinstating NYCHRL harassment claim when "[t]he record support[ed the] plaintiffs' claim that [the] defendant took a perverse pleasure in demeaning and embarrassing his female employees"); *Suri v. Grey Glob. Grp., Inc.*, 164 A.D.3d 108, 111 (1st Dep't 2018) (reinstating NYCHRL harassment claim where the plaintiff "offer[ed] evidence that [the defendant] used his position to implicitly demand sexual favors, and, when she rebuffed him, to explicitly make her life miserable for the next 18 months").

Therefore, Plaintiff has plausibly alleged that she was "treated less well than other employees because of her gender," and she states a claim for NYCHRL harassment.

## C.  Plaintiff's Retaliation and Harassment Claims Are Revived Under the ASA.

The ASA "created a one-year revival period" "during which adult survivors of sexual assault could sue their abusers despite the expiration of the previously applicable statute of

limitations." *Carroll v. Trump*, 650 F. Supp. 3d 213, 218 (S.D.N.Y. 2023). The ASA functions to revive otherwise time-barred claims for "every civil claim or cause of action" for injuries "suffered as a result of conduct which would constitute a sexual offense as defined in" NY Penal Law § 130. *See* N.Y. CPLR § 214-j. Section 130, in turn, describes various sex offenses such as rape, sexual misconduct, sexual abuse, and forcible touching. N.Y. Penal L. § 130 et seq. In determining whether a claim falls under the ASA, "the focus is thus on the conduct which caused injury, not on the nature of the legal theory under which the cause of action was brought"—"[n]othing in the statute requires that the cause of action include a sexual offense as a necessary element, so long as a sexual offense is the conduct that caused the injury." *J.S.M*, 211 N.Y.S.3d at 868; *see also Roldan*, 2025 WL 676090, at *10 (noting that the "capacious phrasing" of the ASA indicates that the statute "definitively encompasses" any "civil claim or cause of action," "so long as it arises out of conduct that constitutes a sexual offense") (citation omitted).

Here, both Plaintiff's retaliation and harassment claims are revived by the ASA because they each stemmed from conduct that fell within the ambit of Section 130—namely, Defendant's forcible touching and sexual assaults of Plaintiff in the workplace. *See Ciotti*, 2025 WL 308022, at *25 (finding that clams for retaliation under the NYCHRL and NYSHRL were revived by the ASA because they "stem from [plaintiff's] complaints to the NYPD of [the defendant's] sexual harassment, sexual assaults, and rape—all acts that fall within the ambit of Section 130"); *Beter*, 2024 WL 4252036, at *5 (collecting cases, noting that "courts in this Circuit have found that claims under the NYSHRL and NYCHRL for discrimination and retaliation were revived by the New York Child Victim's Act . . . which has substantially similar language to the ASA"); *Crawford*, 2023 WL 8810507, at *5 ("[I]t is clear that the [ASA] applied to all City and State laws for which plaintiff can assert a civil claim deriving out of conduct in Section 130 of the Penal Law."); *J.S.M.*,

211 N.Y.S.3d at 868 (noting that the ASA "will apply to a broader set of causes of action than the assault itself," such as negligence supervision, hostile work environment, and harassment); *Segal v. New York Mil. A*cad., 2023 WL 5211220, at *6 (S.D.N.Y. Aug. 14, 2023) (plaintiff's "NYSHRL claims for gender discrimination and retaliation" were revived by the CSA because they "clearly" stem from "conduct which would constitute a sexual offense under state penal law") (cleaned up). Thus, not only are the two proposed claims plausibly alleged, they are also timely[7] under the ASA.

In sum, Plaintiff has amply demonstrated good cause to amend her complaint to add these two proposed claims. Plaintiff acted diligently in pursuing these claims, both of which arise in their entirety from the factual allegations contained in the original complaint, and Defendant will suffer no prejudice whatsoever from the amendment. The proposed claims simply provide a more complete picture for the jury of the various ways that Defendant's conduct violated the law.

---

[7] The harassment and retaliation claims are also timely because they relate back to the date of the original complaint. "An amendment to a pleading relates back to the date of the original pleading"—and is thus timely—"where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." *Schottenstein v. Lee*, 2024 WL 515247, at *2 (S.D.N.Y. Feb. 9, 2024) (citation omitted). Courts have applied this principle in the context of the ASA and CVA to allow relation-back where the amended pleading arises from the same set of facts as the original pleading. *See, e.g.*, *Doe v. Gross*, 2024 WL 3729007, at *6 n.4 (S.D.N.Y. Aug. 7, 2024) (finding that amended complaint "relates back to the date of the original pleading" and was thus timely—even though amended complaint was filed after the one-year ASA revival window—because the new assault and battery claims raised in the amended complaint "plainly arise out of the conduct . . . set out in the original pleading") (cleaned up); *Roldan*, 2025 WL 676090, at *14 (amended claim brought after "the window for bringing claims under the CVA closed" related back to original pleading because it "plainly 'arose out of the conduct' described in the original complaint, which is largely unchanged in the [new pleading]"). Here, the two new claims asserted in the amended complaint plainly arise out of the same conduct and occurrences as the original complaint, as Plaintiff makes zero new factual allegations—she simply adds two causes of action. *See In re Biber*, 2013 WL 499378, at *1, n.1 (Bankr. D. Conn. Feb. 1, 2013) (amended complaint related back to original complaint where it "asserts a new legal ground for relief" but "[n]o new facts are alleged"); *Carodenuto v. New York City Health & Hosps. Corp.*, 593 N.Y.S.2d 442, 447 (Sup. Ct. 1992) (new claim "clearly relates back to the original claim" where "no new facts were alleged in the amended complaint" and "at most the plaintiff sets forth a new theory of the law based upon the facts formerly alleged") (cleaned up).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the court amend the scheduling order so that Plaintiff may file an amended complaint adding claims for sexual harassment and retaliation under the NYCHRL or alternatively grant the motion to conform the pleadings as to these two claims.

Dated:  New York, New York

October 10, 2025

Respectfully submitted,

*/s/ Kenya K. Davis*
Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Ste 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

Jacqueline Kelly (NY Bar #5005392)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 446-2344
jkelly@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## **CERTIFICATE OF COMPLIANCE**

1.      Pursuant to Local Civil Rules 6.3 and 7.1, I hereby certify that this document complies with applicable length limitations because, excluding the parts of the document exempted by Local Civil Rule 6.3, this document contains 8,654 words.

2.      I further certify that this document complies with the typeface and type-style requirements of Local Civil Rule 7.1 because this document has been prepared in a 12-point font, with one-inch margins, and with double-spacing.


Dated: October 10, 2025                    */s/ Kenya K. Davis*

                                           Kenya K. Davis

## CERTIFICATE OF SERVICE

I certify that on October 10, 2025, I electronically filed this document with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all parties in the case who are registered through CM/ECF.


Dated: October 10, 2025                         */s/ Kenya K. Davis*

                                                Kenya K. Davis