**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DREW DIXON,

               Plaintiff,                          Case No.:     1:23-cv-09878-JAV

v.

ANTONIO MARQUIS "L.A." REID,

               Defendant.

_____ /

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SANCTIONS

Plaintiff Drew Dixon ("Plaintiff" or "Ms. Dixon"), by and through her undersigned counsel, files this motion for sanctions against Defendant Antonio Marquis "L.A" Reid ("Defendant" or "Mr. Reid")'s prior counsel, Kinsella Holley Iser Kump Steinsapir LLP ("KHIKS").

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

Jacqueline Kelly (NY Bar #5005392)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 446-2344
jkelly@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT ...................................................................................................................11

    **I.**    Sanctions Should Be Imposed Under § 1927 and the Court's Inherent
        Powers for KHIKS's Delaying of the September 8th Trial Date ...........................11

    **II.**   Sanctions Should Be Imposed Under § 1927 and the Court's Inherent
        Powers for KHIKS's Dilatory Discovery Tactics Throughout This
        Litigation .......................................................................................................... 14

CONCLUSION .............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apex Oil Co. v. Belcher Co. of New York*,
   855 F.2d 1009 (2d Cir. 1988) ................................................................................. 15

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .................................................................................... 10, 11, 12

*Enmon v. Prospect Cap. Corp.*,
   675 F.3d 138 (2d Cir. 2012) .......................................................................... 10, 14

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   278 F.3d 175 (3d Cir. 2002) ................................................................................. 15

*Junjiang Ji v. Jling Inc.*,
   2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) ....................................................... 10

*Rasmy v. Marriott Int'l, Inc.*,
   2024 WL 1676357 (S.D.N.Y. Apr. 18, 2024) ................................................ 12, 14

*Steimel v. Inc. Vill. of Rockville Ctr.*,
   965 F. Supp. 366 (E.D.N.Y. 1997) ....................................................................... 13

*United States v. International Bhd. of Teamsters*,
   948 F.2d 1338 (2d Cir. 1991) ........................................................................ 10, 13

**Statutes**

28 U.S.C. § 1927 ................................................................................. 2, 9, 10, 11

N.Y. C.P.L.R. § 214-j ............................................................................................. 1

## <u>INTRODUCTION</u>

*"And our last note, ... this is a 24-year wait for her as opposed to one that is just over a couple of years."* – Kenya Davis, Attorney for Plaintiff, ECF No. 245-1, Aug. 25, 2025, Hr'g Tr. 21:2-6.

Plaintiff Drew Dixon was sexually assaulted and harassed by, and subject to retaliation from, Defendant Antonio L.A. Reid, her boss in the early 2000s. Following the assaults, when Ms. Dixon refused to be alone with Defendant and rebuffed his advances and late-night invitations, he sabotaged her prolific career as a music executive. He also retaliated against the outstanding talent she discovered and presented to their company, Arista Records. At that time, fearing further reprisal, blackballing, and the societal and reputational damage associated with publicly accusing a famous music mogul of sexual misconduct, Ms. Dixon quietly left her job and attempted to start over. Years later, when she tried to enter the music industry again, Defendant ensured she would be stopped at every turn. As a result of Defendant's actions, Ms. Dixon went from a high-achieving hitmaker to a footnote in the annals of music history.

After New York passed the Adult Survivors Act, N.Y. C.P.L.R. § 214-j ("ASA") in 2022, Ms. Dixon finally sought justice from Defendant for his crimes. When pre-suit settlement negotiations fell through, she timely filed her claims against Defendant in November 2023. Despite numerous discovery delays and obfuscations from Defendant and his former attorneys at Kinsella Holley Iser Kump Steinsapir (KHIKS), trial on Ms. Dixon's case was finally set for September 8, 2025. At long last, Ms. Dixon was to have her day in court and her opportunity to hold Defendant accountable for his crimes, twenty-four years after he first penetrated her against her will.

Not so fast, said Defendant's counsel at KHIKS. After deploying delay tactic after delay tactic during this litigation, the firm then made it impossible for the September 8, 2025 date to stick—flouting the Court's repeated, clear orders in the process. The firm failed to give Defendant

1

his litigation file, preventing him from being in a position to proceed to trial on September 8. When asked by the Court to account for their actions, KHIKS responded with more obfuscation and excuses.

For their role in "unreasonably and vexatiously" "multipl[ying] the proceedings" since the beginning of this case and more recently with their litigation-file machinations, KHIKS should be sanctioned pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. In consequence, the Court should order KHIKS to pay at least half of our fees and costs during the ramp-up to trial from July through August of 2025. Anything less would be unfair and prejudicial to Ms. Dixon, who has already endured "a 24-year wait . . . as opposed to one that is just over a couple of years." ECF No. 245-1, Aug. 25, 2025, Hr'g Tr. 21:2–6.

## FACTUAL AND PROCEDURAL BACKGROUND

KHIKS's unreasonable and vexatious conduct has plagued every step of this litigation, culminating in their most flagrant conduct to date—causing an adjournment of the September 8 trial date by knowingly failing to turn over the litigation file to their client as ordered by this Court." But of course that was not an isolated act. From the beginning, KHIKS has delayed this case by taking a dilatory approach to discovery. They began by seeking an extension of the fact discovery deadline from July 12, 2024, to September 18, 2024, claiming that because "[m]ore than two decades have elapsed between the date of the allegations and the commencement of this litigation," there were supposedly "challenges" in "locating any documentary evidence and potential witnesses." ECF No. 49. The Honorable Judge Caproni expressed skepticism with that position during the October 10, 2024, discovery hearing, *see* ECF. No. 67, Oct. 10, 2024, Hr'g Tr. 8:15–9:1, and of course even with the requested extension, KHIKS didn't begin producing Defendant's documents until September 25, 2024—nine months after litigation commenced.

During Defendant's depositions and discovery hearings before Judge Caproni, additional discovery deficiencies on KHIKS's part (which resulted in additional delays) came to light. First, despite KHIKS's repeated representations that Defendant was "paperless" and had no physical documents in his possession, when asked by Ms. Dixon's counsel during his deposition, Defendant revealed that he did in fact have a desk drawer at home with potentially relevant documents. *See* ECF No. 67, Tr. 5:12–22. When this issue came up during the October 10 hearing, Judge Caproni said to counsel at KHIKS:

> I'm going to presume that you ask the sort of searching questions that would be appropriate for an attorney to ask when trying to figure out where documents are that need to be reviewed. And yet, for whatever reason, you didn't know about this cache of documents. So maybe somebody other than [Mr. Reid] should go through the drawer to find out what's in there and find out what's responsive.

*Id.* at Tr. 11:15–25. In essence, Judge Caproni had to instruct KHIKS on proper discovery protocol. This wouldn't be the last time she had to do this.

Later, during the very same conference, Judge Caproni chastised KHIKS for failing to have searched for an email between Defendant and Russell Simmons about Ms. Dixon—an email mentioned at Defendant's deposition almost twenty days prior:

> MR. KORN: The client has said he doesn't know what it's regarding, but I'm happy to search for that email. That email --
> THE COURT: When was the deposition? When was the deposition?
> MR. KORN: Let me find the date.
> THE COURT: I don't need the exact date. Was it two days ago?
> MR. KORN: September 22nd.
> MS. DAVIS: No.
> MR. KORN: September 22nd.
> THE COURT: With all due respect, *you should already be looking for that*.
> MR. KORN: I'm happy to do it, Your Honor.
> THE COURT: Okay, good. *That's your responsibility*.

3

*Id.* at Tr. 19:25–20:15 (emphasis added). The fact that Judge Caproni had to remind KHIKS that it was their responsibility to search for documents their client referenced during his deposition speaks volumes.

The unreasonable and vexatious conduct on KHIKS's part continued. During part two of Defendant's deposition on November 7, 2024 (nearly two years since Defendant was first put on notice of his document-preservation obligations), it was revealed that he had been deleting evidence, and that he was (allegedly) unaware that he was prohibited from doing so. *See* ECF. No. 89, Nov. 18, 2024, Hr'g Tr. 4:10–24. When Judge Caproni asked KHIKS, "how is it that your client was deleting text messages?," KHIKS admitted that "that there just was not a good enough communication with the client on this issue to ensure that he fully understands that absolutely nothing could be deleted." *Id.* at Tr. 10:12–22. As Judge Caproni remarked, "the fact that you've got a defendant that believes that he is entitled to delete text messages and God only knows what else after a lawsuit has been filed *is disturbing*." *Id.* at Tr. 17:14–21 (emphasis added). KHIKS's unreasonable conduct in not making it crystal clear to Defendant that he's not allowed to delete or destroy evidence not only multiplied these proceedings, but it also substantially prejudiced Ms. Dixon.

Even after Defendant's spoliation of evidence was uncovered, KHIKS continued to act unreasonably and vexatiously with respect to this issue. After agreeing to pay for a forensic review of Defendant's devices to retrieve deleted materials during the November 18, 2024, discovery hearing, KHIKS didn't engage Kroll until December 20, 2024. In dragging their feet, KHIKS gave Defendant a chance to delete even more evidence from his phone. *See* ECF No. 174 at 3 ("But in one of the produced text message threads with one of his female subordinates, Defendant deleted

over 200 text messages on December 14, 2024, or six days before Defense Counsel retained Kroll, and thirty-three days before Kroll began retrieving data from Defendant's devices.").

Kroll didn't begin imaging Defendant's devices until January 16, 2025, and the imaging wasn't complete until January 30, 2025, ninety-two days after Ms. Dixon's counsel first discovered his spoliation. Worse still, Ms. Dixon's counsel didn't receive the data and documents from the forensic review until April 23, 2025, one hundred and seventy-four days after discovering Defendant's spoliation. *See* ECF. No. 102. Kroll indicated that its delay was due to KHIKS's instruction to examine *all* material on Defendant's computer and phones, including application and computer function files. After Ms. Dixon's counsel met with Kroll to ask questions about the delay, Kroll narrowed the search to manageable text messages and responsive emails. Once again, KHIKS's actions significantly delayed the discovery process.

KHIKS's unreasonable and dilatory conduct didn't end there. As fully detailed in Ms. Dixon's first motion for leave to file for sanctions against KHIKS, *see* ECF No. 207, on April 10, 2025, KHIKS accepted service of Ms. Dixon's subpoena to Gamma Media Holdings, LLC—even though they had no authorization to do so. According to KHIKS, they didn't realize they lacked authorization until May 21, 2025. *See* ECF No. 199. But even so, KHIKS *never* informed Ms. Dixon's counsel that they weren't authorized to accept the Gamma subpoena, despite repeated reminders from Ms. Dixon's counsel that the requested materials from Gamma were outstanding. *See* ECF No. 207 at 2–3. This resulted in a months-long delay in Gamma's document production and wasted significant time and resources in drafting deficiency letters and letter motions in pursuit of a discovery request of which Gamma wasn't even aware.

After these repeated instances of calculated discovery delays and vexatious conduct, KHIKS made yet another attempt to multiply these proceedings and buy their then-client time. On

July 9, 2025, at the hearing on KHIKS's motion to withdraw as Defendant's counsel, "Kinsella Holley was [put] on notice . . . that Defendant would be *required to represent himself at trial* commencing on September 8, 2025, if he was unable to secure replacement counsel in the intervening two months." ECF No. 256 at 1 (emphasis added). The next day, the Court memorialized its instruction in written order:

> Kinsella Holley shall remain as Defendant Reid's counsel for a limited time, solely to ensure completion of outstanding discovery (including financial discovery) and the submission of the joint pretrial order due on July 21, 2025 . . . [u]pon completion of the aforementioned tasks, Kinsella Holley shall promptly notify the Court, at which time the Court intends to grant Kinsella Holley's Motion to Withdraw.

> (. . .)

> Trial will proceed as scheduled, beginning Monday, September 8, 2025. *Defendant Reid is on notice that September 8, 2025, is a FIRM trial date and will not be moved.*

> If Defendant Reid does not obtain new counsel prior to August 25, *he must appear pro se* at the Final Pre-Trial Conference scheduled for Monday, August 25, 2025, *as well as at the trial* scheduled for September 8.

ECF No. 172 at 2 (emphasis added).

At each and every subsequent conference with KHIKS and Ms. Dixon's counsel, the Court repeated this explicit notice about the trial date to KHIKS, and KHIKS confirmed that they understood that Defendant would need to proceed *pro se* at trial if he did not hire new counsel:

> THE COURT: Well, as long as it's still conveyed to [Defendant] that we have a trial starting in September. So if he does intend to engage new counsel, they will need time to get up to speed, and we are not going to delay the trial date because new trial counsel is being brought up to speed. I made that very clear in the motion to withdraw.

> MR. KORN: You did, and that has been made clear to Ms. Holley and made clear to Mr. Reid.

ECF Nos. 200-1, 257, Aug. 1, 2025, Hr'g Tr. 5:16–23.

> THE COURT: (. . .) Maybe Mr. Reid is planning to represent himself. I've heard no indication of that from defense counsel. I don't know if Ms. Holley or Mr. Korn,

you have any indication if Mr. Reid intends to travel to New York and represent himself *pro se*, which is obviously his right to do. He has the option. I outlined that at the motion to withdraw hearing.

MS HOLLEY: I will tell you, I will tell your Honor, that I let him know that that -- if he didn't get new counsel, that would be something that would need to occur. So he understands that certainly.

ECF Nos. 231-1, 263, Aug. 12, 2025, Hr'g Tr. 36:4–14.

THE COURT: There was both the statements I made at the conference, a written order that followed, that written order was served upon Mr. Reid. Ms. Holley then discussed it with Mr. Reid and represented as much as prior conferences reaffirming that today, at this conference and another written order will go out today. So there will have been abundant notice to Mr. Reid regarding the August 25th date and the consequences potentially if he does not appear at that conference.
…
THE COURT: Do you know, Ms. Holley, if he does not obtain counsel, what his current intention is with respect to the final pretrial conference?

MS. HOLLEY: I don't know. I told him that if he did not have counsel, he himself would need to appear or else the Court would consider hearing from plaintiff's counsel with respect to a default.

Ex. 1, Aug. 19, 2025, Hr'g Tr. 14:14–15:5.

Despite this clear and documented understanding on KHIKS's part that Defendant would be required to proceed *pro se* at the September 8, 2025, trial if he did not secure new counsel, and that the trial date would not be moved in order for new counsel to be acclimated to the case, KHIKS did not transmit Defendant's litigation file to him so he could prepare for trial. The Court and Ms. Dixon's counsel were not made aware of this fact until what was supposed to be the final pretrial conference on August 25, 2025, when Defendant arrived with new counsel, who of course moved for an adjournment of the trial date, citing the lack of a litigation file:

We are here as proposed new counsel for Mr. Reid, but we would like to discuss with the Court an adjournment of the trial date. We only just -- we met with Mr. Reid this morning in our offices and we have agreed to retain Mr. Reid, but we cannot in good conscience go to trial in two weeks under the circumstances. We don't have the file. Mr. Reid does not have his file.

7

ECF No. 245-1, Aug. 25, 2025, Hr'g Tr. 2:14–20.

When asked why they had not transmitted the litigation file to Defendant—even though

they knew he would be proceeding *pro se* if new counsel did not enroll by the pretrial conference—

KHIKS again gave multiple excuses:

> First, although Mr. Reid was technically *in pro per* starting August 19, he had no
> intent to serve as trial counsel and was continuing to look for attorneys to represent
> him. Turning over the file at that time to Mr. Reid under the guise of him preparing
> an opening statement and witness examinations would have elevated form over
> substance . . . Second, relatedly, the immediate transfer of the "file" to Mr. Reid
> would have been impractical because of the amount of data involved and the
> manner in which it is stored . . . Mr. Reid, of course, has no review software for
> which we could have provided him a load file. The only option, then, would have
> been for my firm to have our document vendor, DISCO, export everything in bulk
> into files that can be shared with Mr. Reid . . . But here, there was no "foreseeable
> prejudice" to Mr. Reid of my firm not turning over to him on August 19, in clumsy
> unworkable formats, tens of thousands of pages of documents for his review in the
> next six days, when Mr. Reid was clear with Ms. Holley that he was incapable of
> serving as trial counsel even if the Court left him with no choice but to do so.

ECF No. 254 at 2–4.

The Court found KHIKS's excuses unpersuasive, noting that

> Notwithstanding this Court's repeated admonitions that Mr. [Reid] should be
> prepared to proceed *pro se* at the September trial, Kinsella Holley appears to have
> made the unilateral decision that in fact Mr. [Reid] would not be proceeding *pro se.*
> They therefore claim that to have provided him his litigation file would have
> "elevated form over substance." ECF No. 254 at 1. Of course, by not starting the
> process of providing Defendant with his litigation file on July 7, 2025, or at the
> latest July 10, *Kinsella Holley ensured that the trial scheduled for September 8
> could not go forward*.

ECF No. 256 at 1–2 (emphasis added). The Court also threw cold water on KHIKS's contention

that Defendant "is of course unequipped to try a three-week jury trial in federal court":

> Kinsella Holley's representation that Mr. [Reid] "is of course unequipped to try a
> three-week jury trial in federal court" *is baffling*. At the time that Kinsella Holley
> moved to withdraw as counsel, *they offered no indication that Mr. [Reid] lacks the
> mental or physical competence to represent himself pro se.* And of course, litigants
> represent themselves *pro se* in federal proceedings routinely, including at jury trials.

*Id*. at 2 (emphasis added).

As the Court correctly noted, at no point did KHIKS ever suggest that Defendant lacked the mental or physical competence to represent himself at the September 8 trial. Indeed, the opposite is true—as illustrated above, in the two months after the Court indicated it would be granting KHIKS's motion to withdraw, KHIKS repeatedly represented that they and Defendant understood he would be proceeding *pro se* if he couldn't secure new counsel. And, as late as August 12, KHIKS suggested that Defendant had no money to hire new counsel:

> MS. HOLLEY: As the Court is aware, given our motion to withdraw, you know, there is no money. So I don't know if there is any money to hire new counsel, to retain new counsel.

ECF Nos. 231-1, 263, Aug. 12, 2025, Hr'g Tr. 29:12–14. Thus, KHIKS was fully aware of the possibility Defendant would be representing himself at the September 8 trial and would need his litigation file to do so. Their failure to transmit the file promptly back in July—and failing to do at all leading up to the eve of trial—made it impossible for Defendant to proceed *pro se* and directly undermined the Court's orders and ability to enforce the agreed-upon trial date. KHIKS also ensured that Ms. Dixon, who has already waited twenty-four years for justice, would have to wait even longer for her day in court.

Because KHIKS's conduct *far* surpasses the minimum sanctionable conduct under 28 U.S.C. § 1927 and the inherent-powers doctrine, sanctions are warranted.

## **LEGAL STANDARD**

Section 1927 provides that, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.

§ 1927. As the Second Circuit explains in *United States v. International Bhd. of Teamsters*, "section 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys *throughout the entire litigation to avoid dilatory tactics* . . . The purpose of this statute is *to deter unnecessary delays in litigation* . . . Bad faith is the touchstone of an award under this statute." 948 F.2d 1338, 1345 (2d Cir. 1991) (emphasis added) (internal citations omitted). "[A] party shows bad faith by delaying or disrupting the litigation or *by hampering enforcement of a court order.*" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (emphasis added) (internal citations and quotations omitted). It is proper to infer the requisite bad faith "when the attorney's actions are so completely without merit as to require the conclusion that they must have been *undertaken for some improper purpose such as delay*." *International Bhd. of Teamsters*, 948 F.2d at 1343 (emphasis added) (citation omitted).

The Court also has the inherent power to sanction for improper conduct, which derives from "the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 1345 (internal citations and quotation omitted). "The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is similar to that necessary to invoke the court's inherent power." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143–44 (2d Cir. 2012) (internal citations omitted). "In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Id.* (internal citation and quotation omitted). "Where, as here, sanctions are sought against counsel only, there is no meaningful difference between the type of conduct that is sanctionable under the Court's inherent power and under 28

U.S.C. § 1927 because both require a similar finding of bad faith." *Junjiang Ji v. Jling Inc.*, 2019 WL 1441130, at *13 (E.D.N.Y. Mar. 31, 2019) (internal citations and quotations omitted). "Consequently, requests for sanctions under § 1927 and pursuant to the court's inherent authority may be decided in a single inquiry, because the same standard applies to both theories." *Id.* (cleaned up).

## ARGUMENT

### I.   Sanctions Should Be Imposed Under § 1927 and the Court's Inherent Powers for KHIKS's Delaying of the September 8, 2025, Trial Date.

By every metric, KHIKS's failure to provide Defendant with his litigation file once they knew and acknowledged that he would be required to proceed *pro se* at the September 8 trial if he didn't hire new counsel, thus necessitating an adjournment of the trial date, constitutes bad faith under § 1927 and the inherent-powers doctrine and is sanctionable.

First, their actions "unreasonably and vexatiously" "multiplie[d] the proceedings." 28 U.S.C. § 1927. As a preliminary matter, because Defendant did not have his litigation file two weeks before the trial was set to commence, the September 8 trial could not go forward; trial was adjourned to January 12, 2026; the litigation was delayed and disrupted; and the proceedings were prolonged for at least four months. This alone demonstrates bad faith. *See Chambers*, 501 U.S. at 46 ("a party shows bad faith by delaying or disrupting the litigation"). Making matters worse is the fact that, as the Court acknowledged during the August 25 pretrial conference, Ms. Dixon and her counsel "have been spending a lot of resources getting prepared for a trial two weeks from today." ECF No. 245-1, Aug. 25, 2025, Hr'g Tr. 5:8–9. These resources included hours of witness preparation, expedited document review, expedited preparation of trial materials, pre-trial motions *in limine*, and a moot court exercise.

11

The Court itself was also "working very closely with plaintiff's counsel and former defense counsel" on an expedited basis in anticipation of trial. *Id.* at Tr. 5:10–11. As the Court accurately described, "[w]e've had practically weekly conferences on discovery issues, procedural issues. The Court has been resolving outstanding motions, all in readiness for this date." *Id.* at Tr. 5:11– 14. Had trial gone forth on September 8, these expedited efforts from Ms. Dixon's counsel and the Court would have been time well spent. But now, because of KHIKS's "unilateral decision that in fact Mr. [Reid] would not be proceeding *pro se*," these expedited efforts by the Court and Ms. Dixon's counsel were for naught. ECF No. 256 at 1. Indeed, the Court's calendar in the weeks leading up to the trial date would likely not have included three conferences in three weeks and would have been available for other pressing and important judicial matters. For Ms. Dixon's part, the pretrial preparation will all need  to be revisited and repeated as January 2026 approaches, thus multiplying the proceedings. In this district, this is grounds for sanctions. *See Rasmy v. Marriott Int'l, Inc.,* 2024 WL 1676357, at *3 (S.D.N.Y. Apr. 18, 2024) (awarding sanctions under the Court's inherent powers when Defendant fired his counsel on the eve of trial and "on the heels of three weeks of final witness preparations, filing of motions in limine and proposed jury instructions, and readying of exhibits for what had for months been a firm trial date [because there was] no colorable basis other than to delay the trial").

Second, not only did KHIKS's actions "delay[ ] and disrupt[ ] the litigation," it also "hamper[ed] enforcement of a court order." *Chambers*, 501 U.S. at 46. As laid out above, the Court was very clear during the July 7 hearing, in its July 10 order, and in every subsequent hearing with the parties' counsel, that the September 8 trial date was a *firm* date, that it would not be moved, and that Defendant would be required to proceed *pro se* if he did not secure new counsel by the final pretrial conference. But once the Court was made aware during the August 25 pretrial

conference that Defendant did not have his litigation file from KHIKS, it was unable to enforce its previous orders and directives regarding the September 8 trial date. Again, this alone constitutes a showing of bad faith sufficient for § 1927 sanctions and for sanctions under the Court's inherent powers.

Third, KHIKS's bad faith can be inferred because their actions "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *International Bhd. of Teamsters*, 948 F.2d at 1343. KHIKS's failure to give Defendant his litigation file so that he could prepare to represent himself—despite KHIKS repeatedly confirming with the Court on the record that both they and Defendant understood that he would have to proceed *pro se* at the September 8 trial if he didn't secure new counsel—could only have been done for the purpose of delaying the trial. As the Court noted in its September 18 order, "by not starting the process of providing Defendant with his litigation file on July 7, 2025, or at the latest July 10, Kinsella Holley ensured that the trial scheduled for September 8 could not go forward." ECF No. 256 at 2.

KHIKS's excuses in their September 12 letter are unavailing. If KHIKS truly believed that Defendant was "unequipped to try a three-week jury trial in federal court," then they should have voiced their concern to the Court that Defendant "lack[ed] the mental or physical competence to represent himself *pro se*." *Id.* But they did not. Instead, they allowed the Court and Ms. Dixon's counsel to proceed full steam ahead to a trial which they knew Defendant did not have the materials to prepare for. Because "there [is] no legal justification for counsels' conduct," this is another basis for concluding KHIKS acted in bad faith. *Steimel v. Inc. Vill. of Rockville Ctr.*, 965 F. Supp. 366, 375 (E.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (awarding sanctions under § 1927 when

counsel had no legal justification for waiting to present a dispositive motion after the jury was empaneled and opening statements had been made).

For KHIKS's unreasonable and vexatious conduct in ensuring that the September 8 trial could not go forward, Ms. Dixon seeks half of the fees and expenses from July and August of 2025, as this formulation reflects the excess expended in costs, expenses, and attorneys' fees.[1] These fees and expenses represent the money spent on expedited trial preparation, expedited witness preparation, and a moot court that will now need to be repeated. Such fees are reasonable under New York law. *See, e.g., Rasmy*, 2024 WL 1676357, at *3 ("Having carefully reviewed defendants' requested fees and expenses, the Court further finds that the figures are reasonable and that defendants are entitled to the full amount of $79,832.10 that they seek. During the three-week period that is the subject of this motion, defense counsel performed multiple witness preparation sessions and other work that all had to be redone six months later, when the trial eventually took place."). Ms. Dixon is also entitled to the entirety of fees and costs associated with bringing this sanctions motion. *See id.* ("Accordingly, the Court finds that, under its inherent power, an award of attorneys' fees and expenses from Rasmy to defense counsel is warranted for that three-week period and for the work done on the instant motion to recover those fees and expenses."); *see also Enmon*, 675 F.3d at 148 (affirming district court's decision to award fees for litigating "the sanctions motion itself").

## II. Sanctions Should Be Imposed Under § 1927 and the Court's Inherent Powers for KHIKS's Dilatory Discovery Tactics Throughout This Litigation.

---

[1] Counsel is happy to submit a detailed accounting of fees and costs from the relevant time period to the Court for *in camera* review.

Buying Defendant time via calculated delays has been KHIKS's *modus operandi* since the inception of this litigation. In addition to sanctions for disrupting the September 8 trial, sanctions should also be imposed for KHIKS's repeated dilatory discovery tactics. As discussed in depth above, KHIKS fell woefully short of its discovery obligations as Defendant's counsel. Twice they were admonished by Judge Caproni for not properly and timely searching Defendant's records. They failed to adequately instruct Defendant that he could not delete evidence—an omission that substantially multiplied the proceedings in the form of several court hearings, additional motion practice, numerous meet-and-confers, a forensic review, and hundreds of hours of additional document review. KHIKS's failure also substantially prejudiced Ms. Dixon, as significant portions of the deleted evidence could not be retrieved by the forensic expert. Furthermore, while KHIKS dragged its feet in engaging the forensic expert and surrendering Defendant's devices for review, Defendant was able to delete even more evidence, further exacerbating the waste of time and resources and the prejudice to Ms. Dixon. And to top it all off, KHIKS knowingly sent Ms. Dixon's counsel on a wild goose chase of pursuing discovery from Gamma even after they realized they weren't authorized to accept service of Gamma's subpoena, and that Gamma had no knowledge the subpoena even existed.

Taken together, KHIKS's "pattern of obfuscation" and discovery abuses warrant sanctions under § 1927 and the Court's inherent powers. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 189–90 (3d Cir. 2002) ("[w]hen viewed individually, each single instance of misbehavior by Mr. Malakoff might not warrant the sanctions arrived at by the court. *But considered as a whole*, his transgressions evidence a pattern of obfuscation and mean spiritedness") (citation omitted). The Second Circuit has long held that sanctions can be imposed under § 1927 for discovery abuse. *See Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009,

15

1019 (2d Cir. 1988) ("Shea & Gould asserts on appeal that such an award was beyond the scope of Section 1927, because that statute does not permit the award of sanctions for discovery abuse. We disagree."). Here, there is bad faith in KHIKS's failure to adequately and timely search Defendant's records, their failure to adequately inform Defendant he was not allowed to delete evidence (one of the most basic yet critical roles of a lawyer), and their failure to notify Ms. Dixon's counsel once they realized they did not have authorization to accept a subpoena on Gamma's behalf.

For these abuses, Ms. Dixon is again only seeking half of the reasonable fees and costs accumulated over the months of July and August of 2025, when all parties were clear that trial was imminent. This accounting represents the excess costs, expenses, and attorneys' fees incurred for preparing for trial, which included reviewing the data retrieved from Defendant's devices on an expedited basis, motion practice and conferrals related to Defendant's spoliation of evidence, and in pursuing the document production from Gamma.

## CONCLUSION

For these reasons, Ms. Dixon asks the Court to assess sanctions against KHIKS pursuant to § 1927 and the Court's inherent powers. KHIKS must be held responsible for their role in delaying the litigation, multiplying the proceedings, and postponing Ms. Dixon's day in court.

Dated: October 17, 2025                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

/s/ Kenya K. Davis

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP

16

1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

Jacqueline Kelly (NY Bar #5005392)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 446-2344
jkelly@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      Pursuant to Local Civil Rules 6.3 and 7.1, I hereby certify that this document complies with applicable length limitations because, excluding the parts of the document exempted by Local Civil Rule 6.3, this document contains 5,447 words.

2.      I further certify that this document complies with the typeface and type-style requirements of Local Civil Rule 7.1 because this document has been prepared in a 12-point font, with one-inch margins, and with double-spacing.


Dated: October 17, 2025                          */s/ Kenya K. Davis*
                                                 Kenya K. Davis

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 17, 2025, I electronically filed this document with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all parties in the case who are registered through CM/ECF.

Dated: October 17, 2025                    */s/ Kenya K. Davis*
                                           Kenya K. Davis