UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DREW DIXON,

      Plaintiff,

v.

ANTONIO MARQUIS "L.A." REID,

      Defendant.

_____ /

Case No.:   1:23-cv-09878-JAV

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SANCTIONS**

Plaintiff Drew Dixon ("Plaintiff" or "Ms. Dixon"), by and through her undersigned counsel, files this reply in support of her motion for sanctions against Defendant Antonio Marquis "L.A" Reid ("Defendant" or "Mr. Reid")'s prior counsel, Kinsella Holley Iser Kump Steinsapir LLP ("KHIKS").

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

Jacqueline Kelly (NY Bar #5005392)
Kelly Waldo (NY Bar # 5982004)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 446-2344
jkelly@bsfllp.com
kwaldo@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

# **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

    **I.**    KHIKS Acted in Bad Faith and Hampered Enforcement of the Court's Order. ................................................................................................................ 1

    **II.**   *New York State v. Carey* and its Progeny Are Inapposite. ....................... 5

    **III.**   KHIKS' Actions Caused Plaintiff to Incur Excess Fees and Costs. ........................ 7

    **IV.**   KHIKS Misrepresents the Discovery Record, Including the Hearings Before Judge Caproni. ....................................................................................... 7

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................................................. 1, 3

*Keitel v. D'Agostino*,
  2023 WL 3560553 (S.D.N.Y. May 19, 2023) ............................................................................ 6

*Mills, Inc. v. Stern*,
  136 F.R.D. 63 (S.D.N.Y. 1991) ................................................................................................. 7

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
  2024 WL 641263 (S.D.N.Y. Feb. 15, 2024) ............................................................................ 6

*Rasmy v. Marriott Int'l, Inc.*,
  2024 WL 1676357 (S.D.N.Y. Apr. 18, 2024) ........................................................................... 7

*Scott v. City of New York*,
  626 F.3d 130 (2d Cir. 2010) ..................................................................................................... 5

*Sherman v. Graves*,
  2025 WL 1558476 (S.D.N.Y. June 2, 2025) ............................................................................ 6

## ARGUMENT

In responding to Plaintiff's Motion for Sanctions, *see* ECF No. 265 ("Mot."),[1] Kinsella Holley Iser Kump Steinsapir misstate the law, misrepresent the facts, and fail to address one of Plaintiff's key arguments—that their actions "hamper[ed] the enforcement of a court order." ECF No. 266 at 16 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). In arguing that Plaintiff's motion should be denied because counsel did not submit contemporaneous time records, KHIKS misleadingly characterize *Carey*, the case they rely on. Moreover, KHIKS, not Plaintiff, "cherry-pick" from hearing transcripts and distort the record by including only partial quotes and making unsupported conclusions about what Plaintiff's counsel knew and when. And, despite the Court's admonitions and repeated warnings about the trial date and that Defendant had only until August 25 to hire new counsel or decide to proceed *pro se*, KHIKS obstinately maintain that they were correct to withhold Defendant's litigation file until new counsel had enrolled. For all these reasons, the Court should grant Plaintiff's Motion.

**I.    KHIKS Acted in Bad Faith and Hampered Enforcement of the Court's Order.**

KHIKS cannot overcome the undeniable truth that their failure to give Defendant his litigation file—after the Court's repeated warnings that the September 8, 2025, trial would proceed whether or not Defendant had trial counsel—"unreasonably and vexatiously" "multiplie[d] the proceedings" and constituted bad faith. KHIKS' excuses for their failure to give Defendant the

---

[1] KHIKS complain that they were not "timely served" with the Court's order or Plaintiff's motion and blames Plaintiff's counsel. We were not ordered to serve KHIKS with the order or our motion, and only did so out of an abundance of caution. We note that KHIKS have not claimed any prejudice, and, despite their representations, they are clearly still receiving notice of filings and has access to the docket because it cites Plaintiff's motion to amend her complaint (which we did not serve on them) as a basis for denying the sanctions motion. *See* Opp. at 12.

1

litigation file, *see* ECF Nos. 276 ("Opp."), 276-1 ("Holley Aff."), 276-2 ("Korn Aff."), only underscore that KHIKS did not take the Court's warnings seriously.

First, KHIKS claim that "had Kinsella Holley been relieved as counsel at that time, Reid would have been forced to hire new counsel immediately, and the September 9 [sic] trial date would have been unaffected." Opp. at 8. But the fault lies solely with Defendant and KHIKS themselves for any failure of Defendant to move with alacrity in finding new counsel until the Court formally permitted KHIKS to withdraw. The Court made crystal clear in its July 10, 2025, order that

> If Defendant Reid does not obtain new counsel prior to August 25, he must appear *pro se* at the Final Pre-Trial Conference scheduled for Monday, August 25, 2025, as well as at the trial scheduled for September 8.

ECF No. 172 at 2. Again, Defendant's failure to secure new counsel until days after KHIKS formally withdrew was his fault. But by failing to give Defendant the litigation file, KHIKS made Defendant's dilatoriness in hiring new counsel Plaintiff's and the Court's problem.

KHIKS's attempts to excuse their failure to give Defendant the litigation file by claiming that they knew Defendant would not proceed *pro se*, and that Defendant would not himself have "downloaded and reviewed" the file when he was searching for new counsel, Opp. at 9–10; Korn Aff. ¶ 11, should be rejected. It was not for KHIKS to decide whether Defendant would have proceeded *pro se*, and by failing to give Defendant the litigation file, KHIKS not only prevented Defendant from preparing to defend himself if he so chose, but also tied the Court's hands in postponing the trial date.

KHIKS's concerns about "practicality" and the large size of the litigation file should likewise be disregarded. Defendant has been a major-label music executive for decades and presumably has had responsibility for many sophisticated tasks, including reviewing large music

2

files and related content. KHIKS previously asserted that "[t]urning over the file at that time to Mr. Reid under the guise of him preparing an opening statement and witness examinations would have elevated form over substance," ECF Nos. 254 at 2; 256 at 1–2—an assertion the Court rejected when noting that, "by not starting the process of providing Defendant with his litigation file on July 7, 2025, or at the latest July 10, [KHIKS] ensured that the trial scheduled for September 8 could not go forward." ECF No. 256 at 2. This conduct constituted bad faith because it "hamper[ed] the enforcement of a court order"—and KHIKS utterly fails to address this in their opposition. *Chambers*, 501 U.S. at 46.

KHIKS further excuses their failure to give Defendant the litigation file by reasoning that "Boies Schiller's financial discovery"—which was ongoing in late August—"would likely have required a trial continuance" anyhow. Opp. at 8, 12. Never mind that financial discovery has been protracted because of KHIKS's own sanctionable action in accepting the Gamma subpoena when they had no authority to do so, and because of Defendant's substantial delays in producing his financial records long after the Court's original deadline had elapsed. KHIKS's argument assumes that Plaintiff would have asked for more time to pursue financial discovery despite the Court's clear directives that September 8 was a firm trial date, even though Plaintiff and her counsel—unlike KHIKS and Defendant—take the Court's orders seriously and were prepared to proceed to trial with whatever discovery was made available by the time the jury was empaneled and opening statements began. Plaintiff's counsel said as much during the August 1, 2025, discovery hearing when the Court asked "[t]o what extent is plaintiff committed to going forward to trial in September," *see* ECF Nos. 200-1, 257, Aug. 1, 2025, Hr'g Tr. 42:8-2, and when counsel responded that "we are prepared to go forward." ECF Nos. 200-1, 257, Aug. 1, 2025, Hr'g Tr. 43:9-44:1.

3

Next, the notion that KHIKS's failure to give Defendant the litigation file was excusable because they were "not [specifically] ordered or under an ethical obligation" to do so, Opp. at 9, is contrary to common sense and the Court's orders. The Court made clear that if Defendant did not secure counsel by the August 25 then-final pretrial conference, then he would either have to proceed *pro se* or default. *See* ECF No. 172 at 2. Thus, whatever statements Defendant made to KHIKS aside, Opp. at 9, it was a foreseeable possibility that Defendant would not have been able to secure new counsel, and would have had to proceed *pro se*. *See* ECF No. 172 at 2. KHIKS had an ethical obligation to ensure that their former client would have been able to mount a defense; giving Defendant the litigation file would have been the bare minimum in satisfying this ethical duty. Instead, to buy Defendant additional time, KHIKS ignored the Court's orders, to the detriment of Plaintiff.

KHIKS's bad faith in withholding the litigation file with the aim of delaying the trial is further revealed by their final argument[2] that giving Defendant litigation file earlier would have been futile, as new counsel "would not have been able to review it" in the two-week period before trial, and no counsel would be willing to "take on [an] engagement" that required them to try a case without preparation. Opp. at 11. This argument ignores the Court's clear admonition to KHIKS during the August 1, 2025, discovery hearing that "*we are not going to delay the trial date because new trial counsel is being brought up to speed.* I made that very clear in the motion to

---

[2] KHIKS's comment in footnote 2—that "Boies Schiller may argue in response that Reid was going to have no choice but to try the case himself, and thus the file should have been sent. That is not true. Reid still had time to engage new counsel, and also had the option of defaulting"— does them no favors. Again, the Court was clear that no additional time would be granted for new counsel to be "brought up to speed." ECF Nos. 200-1, 257, Aug. 1, 2025, Hr'g Tr. 5:16–23. And, even if Defendant did elect to default, he presumably would still need his litigation file and the information therein to respond to Plaintiff's default-judgment motion.

4

withdraw." ECF Nos. 200-1, 257, Hr'g Tr. 5:16–23 (emphasis added). KHIKS's disregard for the Court's warnings that more time would not be allotted for new counsel to prepare for trial constitutes bad faith because it demonstrates that they did not take the Court at its word.

## II.   *New York State v. Carey* and its Progeny Are Inapposite.

KHIKS's claim that Plaintiff's counsel failed to submit "contemporaneous time records" falls flat. Opp. at 12 (citing *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)). Under *Carey*, contemporaneousness does not refer to the time at which the records are *submitted* to the court (*i.e.*, whether they are attached to the fee motion itself or submitted at a later, court-ordered date), but instead when the work in the records was *performed* and *logged* by the requesting attorney. *See Carey*, 711 F.2d at 1141 (emphasis added) ("While the plaintiffs submitted substantial documentation, contemporaneous time records were included for only a small fraction of the total hours claimed. *The plaintiffs' attorneys estimated the majority of their time by reconstruction.*"). Subsequent cases confirm contemporaneousness refers to whether "the time entries [were made] at the time [the attorney] did the work memorialized in the entries." *Scott v. City of New York*, 626 F.3d 130, 131 (2d Cir. 2010). KHIKS's citation to these authorities either reflects at worst an egregious misstatement or at best a gross misunderstanding of the cases. In any case, Plaintiff's counsel enters their time records on a daily basis and submits time records to firm leadership for review and approval biweekly, so the availability of contemporaneous time records is no issue here.

Plaintiff's counsel did not file their time records with the initial sanctions motion because we are still in active litigation, and the records would reveal our trial strategy, attorney-client privileged communications, and other privileged work product. Thus, Plaintiff's counsel offered to submit "a detailed accounting of fees and costs from the relevant time period to the Court for *in*

5

*camera* review." Mem. at 18 n. 1. Notably, in each of the cases cited by KHIKS, the fee motions were brought when trial had concluded, so disclosure of trial strategy was not an issue.

Moreover, myriad New York cases have granted motions for sanctions and ordered the submission of time records at a later date. *See, e.g.*, *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, 2024 WL 641263, at *9 (S.D.N.Y. Feb. 15, 2024) (granting in part motion for spoliation and discovery sanctions; "The parties shall, within two weeks of the date of this Opinion and Order, meet and confer regarding the amount due to Defendants. If the parties are able to reach an agreement, they shall promptly file a stipulation and joint proposed order. If the parties are unable to reach agreement, Defendants shall, within three weeks of the date of this Opinion and Order, submit an accounting of its relevant attorneys' fees and costs, supported by contemporaneous billing records."); *Sherman v. Graves*, 2025 WL 1558476, at *6 (S.D.N.Y. June 2, 2025) ("By June 30, 2025, Defendants shall submit proof of the costs and attorneys' fees they have incurred in opposing this action, including but not limited to receipts, invoices, and contemporaneous time records").

In sum, contrary to KHIKS's representations, it is well established that an award under § 1927 can issue even where the initial motion does not attach contemporaneous time records. In *Keitel v. D'Agostino*, for instance, the court imposed sanctions against an offending attorney under §1927 and its inherent powers, and then ordered the moving party to "submit an accounting of their relevant attorneys' fees and costs, supported by contemporaneous billing records, within two weeks of the" issued order. 2023 WL 3560553, at *6 (S.D.N.Y. May 19, 2023). Thus, the fact that Plaintiff's counsel did not submit time entries at the time of filing its sanctions motion is not grounds for denying the sanctions motion, especially when counsel offered in the motion to provide the Court with the time entries for *in camera* review.

6

### III. KHIKS' Actions Caused Plaintiff to Incur Excess Fees and Costs.

KHIKS next tries to defeat Plaintiff's motion by stating in conclusory fashion that the excess costs Plaintiff is seeking in the form of "trial preparation, witness preparation, and mock trials are all ordinary costs of litigation that Dixon's counsel would incur regardless of a trial continuance" and that "[t]he claim that all of this work 'will now need to be repeated' is not supported by a declaration and is not credible." The Court should reject this argument: these kinds of costs and fees are commonly recognized by New York courts as reasonable costs that can be awarded under § 1927. *See* Mot. at 18 (citing *Rasmy v. Marriott Int'l, Inc.*, 2024 WL 1676357, at *3 (S.D.N.Y. Apr. 18, 2024)). Failing to address *Ramsy*, KHIKS instead cites the entirely inapposite *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 77 (S.D.N.Y. 1991), which did not concern trial preparation, but an opposition brief for which fees were sought contained "specious arguments" and was "overkill."

Ultimately, Plaintiff's excess-costs request is reasonable. It is within the parameters of the type of work New York courts award under similar circumstances, and she has only requested half of what she incurred as her counsel were preparing for the September 8 trial date.

### IV. KHIKS Misrepresents the Discovery Record, Including the Hearings Before Judge Caproni.

Finally, KHIKS's brief omits key facts and misrepresents the discovery record. For starters, with respect to Defendant's desk drawer that Defendant lied to KHIKS about, Judge Caproni had to instruct KHIKS on proper discovery protocol because, originally, KHIKS planned to have *Defendant* search the desk drawer:

> MR. KORN: …there was a question asked that elicited that there is a drawer that I was not aware of. And I mentioned during the deposition that the client would search that drawer. He testified to what's in it, and it has nothing to do with Ms. Dixon. But that is something that, of course, will be -- he will doublecheck.

7

ECF. No. 67, Oct. 10, 2024, Hr'g Tr. 11:7–14. It was at this point that Judge Caproni instructed KHIKS that someone other than Defendant "should go through the drawer to find out what's in there and find out what's responsive." *Id.* at 11:22–25. KHIKS then had Dwayne Robinson, Defendant's IT person, search the drawer. KHIKS's claim that after Defendant's deposition they instructed Mr. Robinson to search the drawer, Opp. at 15, is again highly misleading. KHIKS didn't instruct Mr. Robinson to search the drawer until Judge Caproni's indicated they should.

Similarly, with respect to the Simmons email, KHIKS misleadingly claims that the email "was not about Ms. Dixon." Opp. at 16. But Judge Caproni already admonished KHIKS' for its spurious argument that the Simmons email had nothing to do with Plaintiff:

> MR. KORN: Correct. It's two questions. There were a number of questions about Mr. Reid knowing Mr. Simmons. And then the question is: "Q: Have you had any emails with him about Drew Dixon? A: He sent me an email or somebody did and I didn't respond to it. Q: He sent you an email? A: Yeah, somebody sent me an email. His assistant or somebody. Quote, Russell would like to speak with you, closed quote. He didn't say regarding what. I just avoided it." That's the end of the questioning.
>
> THE COURT: With all due respect, Mr. Korn, the notion of saying it's not clear that that's about Dixon doesn't make any sense given the question. *I mean, I don't know how you can even make that argument with a straight face.*

ECF. No. 67, Oct. 10, 2024, Hr'g Tr. 18:3–19:24 (emphasis added). That Plaintiff's initial discovery requests did not *specifically* include communications with Mr. Simmons is of no moment, as Plaintiff's first document request was for "All Documents and Communications concerning Plaintiff," and this email with Simmons (which *Defendant* thought of when asked if Simmons ever contacted him about Plaintiff) is responsive to that request. ECF No. 276-7 at 9. Moreover, and as noted by Judge Caproni, once Plaintiff's counsel requested the email during Defendant's deposition, KHIKS "should already [have] be[en] looking for [it]" because it was their "responsibility." ECF. No. 67, Oct. 10, 2024, Hr'g Tr. 20:11–15.

8

KHIKS likewise omit key portions of the hearing before Judge Caproni where Defendant's spoliation of evidence was discussed. The full quote from Judge Caproni is, "I appreciate that a lawyer *who's not on the phone* will fall on her sword over it, *but this is serious*." ECF No. 89, Nov. 18, 2024, Hr'g Tr. 17:22–23 (emphasis added). This occurred right after Judge Caproni recognized that it was "disturbing" that KHIKS's erstwhile client "believe[d] that he is entitled to delete text messages and God only knows what else after a lawsuit ha[d] been filed." *Id.* at 17:18–21 (emphasis added). And regardless, this colloquy does not detract from our principal point—that KHIKS *admitted* they failed to properly advise their client he could not destroy evidence. As already explained in the opening memorandum, this both multiplied these proceedings, and substantially prejudiced Ms. Dixon." *See* Mot. at 8.

As for the spoliation review process, KHIKS falsely assert that Plaintiff's counsel knew KHIKS had already engaged SETEC before the November 18 hearing. *See* Korn Aff. ¶ 23. We did not. We were not copied on Mr. Korn's communication with SETEC, and our meet-and-confer before the hearing with Judge Caproni was focused on the scope of the spoliation review, not who would be performing it. We first learned during the hearing that KHIKS had retained SETEC and immediately followed up to ask for its information because we initially couldn't find SETEC online. *See* Ex. 1 at 4. Once KHIKS sent us SETEC's information, we tried to find references, independent reviews, and biographies for SETEC's employees but could not. *Id.* at 2. It was on this basis that we rejected SETEC. We then offered two alternatives, and KHIKS selected Kroll. *Id.* at 1–2. In the nearly two-week delay during which KHIKS purportedly engaged Kroll and then finalized the engagement letter, Defendant was able to delete even more evidence. *See* Mot. at 8–9. Had the engagement been finalized sooner, the imaging of Defendant's phone could have been completed before the holiday rush.

9

With respect to the search terms, the issue of the "overbroad" search terms was in fact raised during the February 25, 2025, pretrial hearing, and the Court suggested the following:

> Has there been thought about running hit reports and getting numbers of documents? Because it would seem to me that that would alleviate some concern about overbreadth. If you knew, for example, that, you know, a term was bringing up a very few, you know, number of hits on the devices, you know, that obviously could play into either way what -- whether or not it was overbroad.

ECF No. 96, Feb. 25, 2025 Hr'g Tr. at 4:23–5:16. KHIKS's co-counsel at the time, Ms. Sternheim, agreed. *Id.* at 5:17–20. Thus, KHIKS's claim that Plaintiff's counsel ignored the Court's order to submit disputes concerning the search terms to the Court is false.

As for the Gamma subpoena, KHIKS fails to explain why Ms. Holley did not inform Plaintiff's counsel that she was not authorized to accept service once she learned she lacked authorization. In her affidavit, Ms. Holley claims that Plaintiff's counsel learned at the same time she did (on May 21, 2025, *see* ECF No. 199 at 1) that Defendant was not affiliated with Gamma. *See* Holley Aff. ¶ 9. This is false, because as late as July 9, 2025, Plaintiff's counsel was still asking KHIKS about the outstanding Gamma files, *see* ECF No. 207-7 at 3, and KHIKS did not ask why we continued to follow-up with them instead of with Mr. Jackson or otherwise indicate that they were not authorized to accept service for Gamma. Rather, KHIKS simply said they would forward our letters to Defendant's business managers. *See id.* at 1. All these lapses resulted in a months-long delay (that KHIKS now seeks to weaponize by claiming the trial would have been continued anyways because of Plaintiff's extended financial discovery).

The Court should reject KHIKS's attempts to rewrite history and the discovery record. Since day one, they have lapsed in their obligations, and the delay in sending Defendant his litigation file is their latest attempt to buy him time and defer Plaintiff's day in court.

10

## CONCLUSION

For these reasons, Ms. Dixon asks the Court to assess sanctions against KHIKS pursuant to § 1927 and the Court's inherent powers.

Dated: November 10, 2025                     Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

/s/ Kenya K. Davis

Kenya K. Davis (NY Bar #4162483)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar # 6051460)
Daniel J. Crispino (*pro hac vice*)
Amber S. Stewart (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com
astewart@bsfllp.com

Jacqueline Kelly (NY Bar #5005392)
Kelly Waldo (NY Bar # 5982004)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 446-2344
jkelly@bsfllp.com
kwaldo@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

## CERTIFICATE OF COMPLIANCE

1.      Pursuant to Local Civil Rules 6.3 and 7.1, and the Court's Individual Rules and Practices in Civil Cases, I hereby certify that this document complies with applicable length limitations because, excluding the parts of the document exempted by Local Civil Rule 6.3, this document contains 3,494 words.

2.      I further certify that this document complies with the typeface and type-style requirements of Local Civil Rule 7.1 because this document has been prepared in a 12-point font, with one-inch margins, and with double-spacing.

Dated:  November 10, 2025                    */s/ Kenya K. Davis*
                                              Kenya K. Davis

## CERTIFICATE OF SERVICE

I certify that on November 10, 2025, I electronically filed this document with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all parties in the case who are registered through CM/ECF.

I further certify that I electronically served this document on the following attorneys at Kinsella Holley Iser Kump Steinsapir LLP:

Shawn Holley
Greg Korn
Kinsella Holley Iser Kump Steinsapir LLP
11766 Wilshire Boulevard, Suite 750
Los Angeles, California 90025-6543
Main Tel: 310.566.9800 | Main Fax: 310.566.9850
sholley@khiks.com
gkorn@khiks.com

Dated: November 10, 2025                          */s/ Kenya K. Davis*
                                                  Kenya K. Davis