UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
DREW DIXON,                                                        :
                                                                   :
                                    Plaintiff,                     :
                                                                   :        23-CV-09878 (JAV)
                     -v-                                           :
                                                                   :        ORDER
ANTONIO MARQUIS "L.A." REID,                                      :
                                                                   :
                                    Defendant.                     :
                                                                   :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

        The parties have requested that certain information submitted in connection with Plaintiff's
motions *in limine*, including substantial portions of the supporting memoranda of law and exhibits
submitted in connection with that motion, be redacted and/or placed under seal. *See* ECF Nos. 178,
185, 193, 218. The Court **GRANTS** ECF Nos. 185 and 218. The motions to seal at ECF Nos. 178
and 193 are **GRANTED IN PART AND DENIED IN PART**.

        The presumptive right of the public to access judicial documents is firmly entrenched in
both the common law and the First Amendment. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d
110, 119-20 (2d Cir. 2006) (citations omitted). Under the common law inquiry, courts apply a three-
part test to determine if sealing is appropriate. First, courts must determine whether the records at
issue are judicial documents, that is, is "the item filed . . . relevant to the performance of
the judicial function and useful in the judicial process." *Id.* at 119 (citation omitted). Second, if the
records are judicial documents, courts assess the weight to be given to the presumption of judicial
access, "governed by the role of the material at issue in the exercise of Article III judicial power and
the resultant value of such information to those monitoring the federal courts." *Id.* (citation
omitted). Third, courts balance the presumption of judicial access against "competing
considerations against it," such as privacy interests or the confidentiality of business records. *Id.* at
120 (citation omitted).

        To determine whether the First Amendment presumption of access applies, the Second
Circuit applies an "experience and logic" approach, which "requires the court to consider both
whether the documents 'have historically been open to the press and general public' and whether
'public access plays a significant positive role in the functioning of the particular process in
question.'" *Id.* (citation omitted). "The courts that have undertaken this type of inquiry have
generally invoked the common law right of access to judicial documents in support of finding a
history of openness." *Id.* (citation omitted). Where the presumptive First Amendment right of
access applies, "documents may be sealed if specific, on the record findings are made
demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve
that interest." *Id.* (cleaned up).

Motions *in limine* call upon the Court to exercise its Article III powers and thus constitute judicial documents.  Yet the Second Circuit has held that "the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment."  *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (citation omitted).  Accordingly, "while a court must still articulate specific and substantial reasons for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings."  *Id.*

Narrowly tailored redactions in the Memorandum of Law in Support of Plaintiff's Motions *in Limine* (ECF No. 183) and Defendant's Opposition to Plaintiff's Motions *in Limine* (ECF No. 195) are appropriate to protect certain private information.  Namely, redactions are appropriate to protect the substantial personal privacy interests of Plaintiff and third parties where the presumption of access is low because the redacted information is either immaterial or, at most, "play[s] only a negligible role in the performance of Article III duties."  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); *see Fairstein v. Netflix, Inc.*, No. 20-CV-8042 (PKC), 2023 WL 6164293, at *2 (S.D.N.Y. Sept. 21, 2023) ("The privacy interests of third parties should weigh heavily in a court's balancing equation.") (cleaned up).  Accordingly, ECF Nos. 178 and 193 are **GRANTED IN PART** to the extent they seek to redact such information in ECF Nos. 183 and 195.  Attached to this Order are versions of ECF No. 183 and 195 that redact the information that the Court authorizes for sealing.

The Court, however, denies the request to redact the remaining information in ECF No. 183.  Although Plaintiff justifies the redactions as necessary to protect her privacy interest in revealing details regarding her sexual assault, ECF No. 178 at 1, this information "is already public and ha[s] been publicized," *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020), both in the Complaint, ECF No. 1, ¶ 18,  and elsewhere, Joe Coscarelli & Melena Ryzik, *Music Mogul Russell Simmons Is Accused of Rape by 3 Women*, *N.Y. Times* (Dec. 13, 2017), https://www.nytimes.com/2017/12/13/arts/music/russell-simmons-rape.html.  Indeed, Plaintiff seeks to redact portions of the brief that merely summarize the allegations in her publicly filed Complaint. *Compare* ECF No. 183 at 21-23, *with* ECF No. 1, ¶¶ 39-51.  These descriptions are highly relevant to the Court's performance of its Article III duties because those descriptions form the foundation of Plaintiff's arguments in her motions in *limine*.  Moreover, the proposed redactions are not narrowly tailored to serve Plaintiff's interest in the protection of private and confidential information. Accordingly, ECF No. 178 is **DENIED IN PART**.

For the same reasons, the Court denies the request to redact the remaining information in ECF No. 195 as well.  Accordingly, ECF No. 193 is **DENIED IN PART**.

In contrast, both Plaintiff in ECF No. 178 and third-party Sony Music Entertainment ("Sony") in ECF No. 185 have sufficiently demonstrated that Exhibit 2 (ECF No. 183-2) to ECF No. 183, a settlement agreement between Sony and a third party, involves the privacy interests of a third party and confidential business information.  Additionally, courts frequently recognize that the public policy in favor of promoting settlements justifies maintaining the confidentiality of settlement agreements.  *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 1317975, at *2 (S.D.N.Y. Mar. 2, 2016).  Accordingly, ECF No. 185 is **GRANTED** and ECF No. 178 is **GRANTED IN PART** to the extent it seeks to seal Exhibit 2 to ECF No. 183.

Plaintiff also seeks to seal Exhibit 1 (ECF No. 183-1) and Exhibit 3 (ECF No. 183-3) to the Memorandum of Law in Support of Plaintiff's Motions *in Limine* (ECF No. 183) in their entirety. ECF No. 178 at 1. Exhibit 1 consists of Defendant's deposition transcript and Exhibit 3 consists of a third-party witness's deposition transcript. *See generally* ECF Nos. 183-1, 183-3. Each exhibit implicates substantial personal privacy interests concerning an unrelated sexual assault as well as the privacy interests of third parties. The exhibits are also of marginal relevance to the issues to be adjudicated in connection with the motions *in limine*. Accordingly, ECF No. 178 is **GRANTED IN PART** to the extent it seeks to seal Exhibits 1 and 3 to ECF No. 183.

Defendant, at Plaintiff's request, seeks to seal Exhibit 1 (ECF No. 193-2) and Exhibit 2 (ECF No. 195-3) to Defendant's Opposition to Plaintiff's Motions *in Limine* (ECF No. 195) in their entirety. ECF No. 193. To the extent certain information from these documents is referenced in the parties' briefs, descriptions of the contents of these documents have been ordered unsealed above. Yet the exhibits themselves contain additional details implicating Plaintiff's privacy interests that were not pertinent to the motions in limine. Accordingly, ECF No. 193 is **GRANTED IN PART** to the extent it seeks to seal Exhibits 1 and 3 to ECF No. 183.

Finally, Plaintiff also sought leave to file a reply brief in further support of the motion *in limine* (ECF No. 220), ECF No. 219, and to file portions of that reply brief under seal, ECF No. 218. The Court denied the motion for leave (ECF No. 219) to file this document. ECF No. 274. To the extent the proposed brief (ECF No. 220) constitutes a judicial document, the presumption of access is at its lowest ebb, as the Court will not consider this filing in its adjudication of the motions *in limine*. Accordingly, ECF No. 218 is **GRANTED**.

The parties are directed to file the relevant documents on the docket with only the permitted redactions. The Clerk of Court is directed to terminate ECF Nos. 178, 185, 193, and 218.

SO ORDERED.

Dated: December 15, 2025
     New York, New York

                                                   JEANNETTE A. VARGAS
                                                 United States District Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DREW DIXON,

      Plaintiff,

v.

ANTONIO MARQUIS "L.A." REID,

      Defendant.

_____ /

Case No. 1:23-cv-09878-VEC

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE***

**CONFIDENTIAL UNDER SEAL VERSION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    EVIDENCE OF DIXON'S CONSENSUAL CONDUCT WITH REID IS PLAINLY ADMISSIBLE ....................................................................5

    A.    Dixon's Consent, Or Lack Thereof, Is The Central Issue On Her Claims ............5

    B.    The Court Must Admit Dixon's Admissions Of Consent........................................6

II.    EVIDENCE OF OTHER SEXUAL ASSAULTS IS ADMISSIBLE AS TO HER CLAIM FOR EMOTIONAL DISTRESS DAMAGES........................8

III.    EVIDENCE OF DIXON'S HEALTH CONDITIONS IS LIKEWISE RELEVANT TO HER EMOTIONAL DISTRESS CLAIM ...............................12

IV.    THE COURT MUST ADMIT DIXON'S MEMOIRS, WHICH CONTAIN INNUMERABLE EXCULPATORY ADMISSIONS.......................................13

    A.    The Motion Should Be Denied As Impermissibly Vague .....................................13

    B.    The Motion Is Meritless, Because The Memoirs Are Replete With Exculpatory Admissions .................................................................................14

        1.    Dixon's Refutation Of The Claimed Assault On A Private Flight ............14

        2.    Dixon's Admission That Reid Was Never "Violent" With Her ...............15

        3.    Dixon's Contrasting Of The "Assault" By Simmons And "Harassment" By Reid ....................................................................16

        4.    The Above-Described Examples Are Only Examples..............................16

    C.    The Memoirs Are Not Inadmissible Under Fed. R. Evid. 403 Or 412 .................17

V.    OTHER PENDING LAWSUITS ........................................................................17

VI.    REID STIPULATES THAT EVIDENCE OF HIS FINANCIAL STATUS AND INSOLVENCY IS INADMISSIBLE IN THE FIRST PHASE OF THE TRIAL ............17

VII.    THE COURT SHOULD EXCLUDE EVIDENCE CONCERNING REID'S "OTHER WORKPLACE CONDUCT AND ASSOCIATIONS" ....................................18

    A.    Evidence of Reid's Alleged Non-Assault Harassment or Consensual Relationships is Inadmissible and Prejudicial Character Evidence ......................18

    B.    Dixon Has Failed to Proffer Any Evidence That is Even Potentially Admissible under Federal Rule of Evidence 415 .................................................21

    C.    Federal Rule of Evidence 403 Precludes Any Evidence Concerning Reid's Other Workplace Sexual Conduct and Associations .............................................21

30021-00002/912083.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaniz v. Zamora-Quezada*,
   591 F.3d 761 (5th Cir. 2009) ...................................................19

*Alden v. Time Warner, Inc.*,
   1995 WL 679238 (S.D.N.Y. Nov. 14, 1995) ...................................................10, 12

*Bridges v. Eastman Kodak Co.*,
   850 F.Supp. 216 (S.D.N.Y. 1994).............................................9, 10, 11

*Cook v. Greyhound Lines, Inc.*,
   847 F. Supp. 725 (D. Minn. 1994)..........................................7

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) ..................................13

*Lowe v. Philadelphia Newspapers Inc.*,
   101 F.R.D. 296 (E.D. Pa. 1983)..........................................9, 10, 11

*Montanez v. City of Syracuse*,
   2019 WL 4328872 (N.D.N.Y. Sept. 12, 2019) ...........................19, 20

*People v. Parbhu*,
   191 743 N.Y.S.2d 660 (Crim. Ct. 2002) ..................................6

*United States v. Helbrans*,
   2021 WL 4778525 (S.D.N.Y. Oct. 12, 2021) ..........................5

*United States v. LaFlam*,
   369 F.3d 153 (2d Cir. 2004)...........................................18

*Viada v. Osaka Health Spa, Inc.*,
   2005 WL 3435111 (S.D.N.Y. Dec. 12, 2005) ..........................13

**Statutes**

N.Y. C.P.L.R. § 214-j ............................................ *passim*

N.Y. Penal Law § 130.05.............................................5, 6

**Rules**

Fed. R. Evid. 403 ...........................................18, 21, 22

Fed. R. Evid. 404 ...........................................19, 20

Fed. R. Evid. 412 ................................................................................................7, 8, 12

Fed. R. Evid. 415 .....................................................................................................21

**Miscellaneous**

Cambridge Advanced Learner's Dictionary ...............................................................19

New York City's Gender-Motivated Violence Act ....................................................15

Defendant Antonio Marquis "L.A." Reid ("Reid") submits this opposition to the Motions *In Limine* filed by Plaintiff Drew Dixon ("Dixon").

## I.    EVIDENCE OF DIXON'S CONSENSUAL CONDUCT WITH REID IS PLAINLY ADMISSIBLE

Dixon makes an astonishing request that the Court exclude any evidence and argument that her alleged physical encounters with Reid—which purportedly included kissing and fondling which she refers to in the Complaint as "digital penetration"—were consensual. (*See* Mot. at pp. 6-10.) In support of this outrageous argument, Dixon cites *sexual harassment* cases which have no bearing on the issues here. Dixon is essentially asking the Court to summarily adjudicate the issue of consent, which is among *the central issues* that the jury must determine in deciding whether Reid can be held liable pursuant to the Adult Survivor's Act ("ASA").

### A.    Dixon's Consent, Or Lack Thereof, Is The Central Issue On Her Claims

The ASA states that it revives "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct *which would constitute a sexual offense* as defined in article one hundred thirty of the penal law …." N.Y. C.P.L.R. § 214-j (emphasis added). To constitute a "sexual offense" under Article 130 so as to revive claims under the ASA, the conduct must be *non-consensual*. In that regard, the "New York Penal Code states that '[w]hether or not specifically stated, it is an element of every offense defined in [Article 130] that the sexual act was committed *without consent of the victim*.'" *United States v. Helbrans*, 2021 WL 4778525, at *32 (S.D.N.Y. Oct. 12, 2021) (quoting N.Y. Penal Law § 130.05(1)) (emphasis added).

Moreover, it is express in Article 130 that such consent may be "implied." Article 130.05(2) states that "[l]ack of consent results from (a) Forcible compulsion; or (b) Incapacity to

consent; or (c) Where the offense charged is sexual abuse or forcible touching, any circumstances, in addition to forcible compulsion or incapacity to consent, ***in which the victim does not expressly or impliedly acquiesce*** in the actor's conduct …." N.Y. Penal Law § 130.05(2) (emphasis added). New York courts have recognized hat under Article 130.05(2)(c), "lack of consent may be established by any surrounding circumstances which indicate that the victim does not expressly or impliedly acquiesce in the actor's conduct." *People v. Parbhu*, 191 743 N.Y.S.2d 660, 664 (Crim. Ct. 2002). ***But the converse is also true***. A jury can consider the surrounding circumstances to determine whether Dixon "impliedly acquiesce[d]" in any alleged conduct by Reid, such that there is consent for purposes of Article 130.05.

**B.      The Court Must Admit Dixon's Admissions Of Consent**

There are three particularly compelling pieces of evidence in this case supporting that Dixon impliedly acquiesced to any supposed sexual contact by Reid, such that she cannot establish a sexual offense under Article 130 and cannot prevail:

First, Dixon produced an audio recording of herself in conversation with several other persons, where she spoke candidly about her relationship with Reid. The recording has been designated as Defendant's Trial Exhibit 46. In this audio recording, Dixon admits that she repeatedly, voluntarily "made out" with Reid in his car, ***and also allowed Reid to put his hands down her shirt and pants***, and that she did these things to "keep the flame low" (her words)— meaning that she allowed Reid to touch her to trick him into believe she was interested in a sexual relationship, so as to further her career at Arista. The audio recording is manifestly relevant and admissible. It is a candid admission by Dixon that she impliedly (if not expressly) acquiesced to the purported fondling that she now claims was a sexual assault, such that there is ***no*** "lack of consent" under Penal Law section 130.05(2), and any claims fail under the ASA.

Second, Dixon's proffered expert on sexual abuse, Dr. Chitra Raghavan, recorded in her

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

notes of interviews with Dixon that she admitted that during the second alleged assault—which occurred on a car ride to Dixon's apartment with Reid—she "pretended to have an orgasm" while Reid fondled her.[1] Manifestly, Dixon's faking of an orgasm is direct evidence that she "impliedly acquiesced" (if not expressly acquiesced) within the meaning of the Penal Law so as to lead Reid to believe any purported sexual contact was consensual.

Third, as referenced in the Dixon's motion, she has written in memoirs about "making out" with Reid on numerous occasions. Again, this admission that Dixon was voluntarily making out with Reid is evidence that she impliedly acquiesced to any sexual contact occurring during these encounters.

Dixon's assertion that this evidence is excludable under Federal Rule of Evidence 412, and her citation to *Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 737 (D. Minn. 1994), are misplaced and frivolous. Rule 412 states that, subject to certain exceptions (discussed below), a Court should not admit (1) evidence offered to prove that a victim engaged in ***other*** sexual behavior; or (2) evidence offered to prove a victim's ***sexual predisposition***." (Emphasis added.) But the evidence here does ***not*** concern "other" sexual behavior, nor Dixon's "sexual predisposition." This is not, for example, evidence of Dixon's sexual relationships with other men, intended to show that she welcomes the sort of conduct she is challenging. At issue here are ***admissions*** by Dixon ***that the very instances of purported sexual contact at issue in the case were expressly or impliedly consensual***.

Moreover, even if Rule 412 applied—which it does not—it contains an express exception for civil cases, stating: "In a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger

---

[1] Needless to say, Dixon's statement to Dr. Raghavan is admissible notwithstanding the hearsay rule as a party admission.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). Needless to say, Dixon's admissions that she expressly or impliedly acquiesced to the purported sexual contact by Reid are overwhelmingly probative and not unfairly prejudicial, where the entire issue to be decided is whether the conduct occurred and, if so, whether it was consensual.

Finally, Dixon's numerous citations to *sexual harassment* cases are entirely off-point. This is not a hostile work environment case. It is a case asserting sexual assault and battery pursuant to the ASA, where "lack of consent" is an *element* of Dixon's required showing. The Court should deny the motion and admit all evidence of Dixon's admissions concerning her physical and other relationship with Reid, which bear on whether she expressly or impliedly consented to the alleged conduct that she now claims was an assault.

## II.    EVIDENCE OF OTHER SEXUAL ASSAULTS IS ADMISSIBLE AS TO HER CLAIM FOR EMOTIONAL DISTRESS DAMAGES

Dixon moves under Federal Rule of Evidence 412 to exclude evidence that she was sexually assaulted by her former boss, Russell Simmons, ███████████, and by ███████. (*See* Motion at pp. 3-6.) Dixon also moves to exclude evidence that ███████ ███████████████████████. The requests are legally baseless and should be rejected.

Dixon is asserting a claim in this case for emotional distress damages. (*See*, *e.g.*, Compl. ¶ 97 ("As a direct and proximate result of the aforementioned gender-motivated violence, Ms. Dixon has sustained in the past and will continue to sustain, monetary damages, physical injury, pain and suffering, *and serious psychological and emotional distress*, entitling her to an award of compensatory damages."). In addition to seeking general compensatory damages with regard to this alleged emotional distress, Dixon is also seeking millions of dollars in damages for lifetime counseling and other treatment, which she claims is necessary in light of the alleged assaults by Reid. These purported damages have been quantified by her proffered expert, Dr.

Raghavan.

It is black letter law than when a plaintiff claims emotional distress—including as the result of sexual misconduct—the defense is entitled to inquire into and present evidence of other potential causes of the distress. *See*, *e.g.*, *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 223 (S.D.N.Y. 1994) ("Moreover, since plaintiffs seek to prove that they have suffered emotional distress as a result of the sexual harassment through their testimony and the testimony of their therapists, defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related.") (citing *Lowe v. Philadelphia Newspapers Inc.*, 101 F.R.D. 296, 298 (E.D. Pa. 1983)).

In *Lowe*, which *Bridges* cited and relied on, the district court recognized that the right to a fair trial demands that a defendant have an opportunity to show other causes of claimed emotional distress, even if this may have a chilling effect on the filing of claims, stating:

> The difficulty with plaintiff's contentions is that she is the person asserting that she has suffered severe physical and emotional distress and harm, and seeks to prove this through her own testimony and that of physicians and psychiatrists .... Defense counsel, therefore, has a clear right to make a searching inquiry into plaintiff's past for the purpose, among others, of showing that her emotional and physical distress was caused, at least in part, if not in whole, by events and circumstances that were in no way "job related." ***At trial, if she contends that she has suffered emotional distress, clearly defendant is entitled to present evidence that other stressful situations in her past personal history have contributed to her emotional distress***.

101 F.R.D. at 298 (emphasis added). The court in *Lowe* rejected that the potential chilling effect of this rule was cause to disallow the defendant from pursuing other potential causes of the distress:

> Plaintiff's counsel argues that to allow broad searching discovery into a claimant's personal history will discourage claimants with worthy causes from filing actions for discrimination. Plaintiff contends that the defendant has caused plaintiff personal injury by way of emotional distress so severe as to require psychiatric care for which compensatory and punitive damages are sought. The right of

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

privacy as to plaintiff's personal history that a plaintiff may otherwise have ***must be balanced against the defendant's right to a fair trial***.

*Id.* (emphasis added).

Consistent with *Bridges* and *Lowe*, New York district courts have repeatedly recognized the relevance and admissibility of <mark>evidence of other **mental and physical** issues that could be a cause of the plaintiff's claimed emotional distress</mark>. In *Alden v. Time Warner, Inc.*, 1995 WL 679238 *2 (S.D.N.Y. Nov. 14, 1995), for example, the court held that "[b]y seeking $2 million in damages for emotional distress allegedly caused by the defendant, Mr. Alden has clearly placed his emotional health at issue in this case." The court held that the assertion of this claim permitted the defendant to inquire into the plaintiff's therapy sessions with a marriage counselor, because "[m]arital difficulties significant enough to prompt counseling are likely to have been an independent cause of emotional distress," as well as the plaintiff's alcohol and substance abuse, because "drug and alcohol abuse surely contribute to emotional distress." *Id.* at *2-3.

Here, the particular evidence that Dixon seeks to exclude is <mark>uniquely probative of the cause of her claimed emotional distress, because it is of the same nature (sexual assault) and even worse in severity</mark>. As detailed in her Complaint, in her memoirs, and in an HBO documentary entitled *On The Record*, Dixon contends that she was violently raped by music mogul Russell Simmons ***in 1997***. This was just a few years before the alleged incidents with Reid in 2001, and was even more severe in nature than the allegations that have been made against Reid. Dixon has further written extensively in her personal writings—including a memoir that she has sent to numerous third parties and tried to publish—about ███████████████ ████████████████████████████████████████████████████. Additionally, in sessions with her former treating therapist, Dr. Valerie Bryant, who will testify in this case, Dixon contends <mark>she was raped by</mark> ████████████████████. ***All*** of these other alleged assaults are highly relevant and admissible to show that Dixon's claimed emotional

distress damages are attributable in whole or substantial part to the purported sexual assaults committed against her and her children by numerous other men in her life.

Moreover, the Court must allow Reid and his counsel to introduce evidence of these other alleged assaults as part of the cross-examination of Dr. Ragahavan (assuming Dr. Raghavan is permitted to testify, which she should not be). Dr. Raghavan intends to render an opinion at trial that based on a battery of tests she performed—all of which were predicated entirely on Dixon's self-reporting of symptoms—Dr. Raghavan can testify "with a reasonable degree of psychological certainty" that Dixon's emotional distress was caused by Reid sexually assaulting her, and *not* by the supposed assaults by Mr. Simmons and                          . For all the reasons discussed in Reid's *Daubert* motion, Dr. Raghavan's testimony must be excluded. But in either case, whether the testimony is excluded as it should be or not, the mere fact that Dixon would elicit opinion testimony that her emotional distress was caused by the alleged incidents with Reid and not by the other sexual assaults demonstrates the relevance of these other assaults and requires that Reid and his counsel have an opportunity to present evidence of them. It is outrageous for Dixon and her counsel to suggest to this Court that they can present opinion testimony, and argue to the jury, that Dixon's emotional distress was caused solely by Reid, and then prevent Reid from countering this claim by presenting evidence of other causes of the distress. *See Lowe*, 101 F.R.D. at 298 ("[C]ounsel has the right to inquire fully into matters taken into consideration by Dr. Speck in reaching his conclusions as to plaintiff's emotional distress."); *Bridges*, 850 F. Supp. At 223 ("[S]ince plaintiffs seek to prove that they have suffered emotional distress as a result of the sexual harassment through their testimony and the testimony of their therapists, defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related. [Citation]. *Indeed, as far as the testimony of their therapists is concerned,*

***defendants must be allowed to inquire into all relevant information upon which the therapists' opinions is based***, not necessarily only information directly related to their employment.").

Dixon's reliance on Federal Rule of Evidence 412 is once again misplaced. Reid would not be introducing evidence of other sexual assaults to show that Dixon has a particular predisposition, and so Rule 412 is inapposite. The evidence is relevant, rather, to show the actual causes of or contributing factors to Dixon's claimed emotional distress. Even if Rule 412 applied, which it does not, the exception in Rule 412(b) would surely require that the Court permit Reid to introduce evidence of these other alleged assaults.

## III.    EVIDENCE OF DIXON'S HEALTH CONDITIONS IS LIKEWISE RELEVANT TO HER EMOTIONAL DISTRESS CLAIM

Dixon asks the Court to "exclude all references to Plaintiff's unrelated (mental or physical) health conditions—whether contained in the memoir drafts or elsewhere." (Mot. at 15.) The request fails to specify with sufficient particularity what evidence is sought to be excluded , and on that basis alone the request should be denied.

Further, for all the reasons stated above, Dixon's request is meritless. Dixon's writings detail that in the same general time period of the alleged assaults by Reid and Mr. Simmons, Dixon suffered from and was treated for ███████████████████. Obviously, an illness ███████████ would be a potential cause of emotional distress, and is admissible to rebut Dixon's claim that Reid (and Reid alone) is the cause of her damages.

Likewise, other medical and mental conditions that Dixon has suffered are admissible for this purpose. Dixon's writings detail, for example, ████████████████████████ ████████████████████████████████████. Manifestly, ████████████ is a potential cause of emotional distress and is relevant. *See Alden*, 1995 WL 679238 *2-3 ("drug and alcohol abuse surely contribute to emotional distress").

IV.    **THE COURT MUST ADMIT DIXON'S MEMOIRS, WHICH CONTAIN INNUMERABLE EXCULPATORY ADMISSIONS**

At pages 10 *et seq*. of the Motion, Dixon seeks a blanket order excluding "all references to Plaintiff's unfinished memoir drafts," comprising hundreds of pages of writings with compelling admissions by Dixon on numerous relevant topics (as discussed more below). Dixon makes this grossly-overreaching request based on an assertion that ***certain portions*** of the memoirs—including those referencing sexual assaults by other men—are irrelevant or prejudicial. The request is baseless and should be denied on several grounds.

A.    **The Motion Should Be Denied As Impermissibly Vague**

To start, the Court must deny the motion as impermissibly vague. Dixon did not submit the portions of the memoirs that she seeks to exclude, much less the entirety of the ***hundreds*** of pages of draft memoirs she has written and that she seeks to exclude. The Court has no ability, therefore, to review the documents and determine whether there are any grounds for admission. On that basis alone, the request to exclude the memoirs must be denied. *See Viada v. Osaka Health Spa, Inc.*, 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005) ("In the case at bar, the motions in limine made by the two defendants identified above are vague in that they do not specify the writings or potential testimony that the movants believe should be excluded from the trial of this action. As a result, the Court is unable to determine, with any degree of certainty, whether the writings and testimony sought to be excluded from the trial would be inadmissible under any of the provisions of the Federal Rules of Evidence. Therefore, the respective motions in limine are denied."); *see also Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 556 (E.D.N.Y. 2011) (denying without prejudice motion in limine to exclude evidence of prior lawsuits where "defendants have provided no information about the prior lawsuits upon which the court may base its judgment").

**B.**     **The Motion Is Meritless, Because The Memoirs Are Replete With Exculpatory Admissions**

Most importantly, the motion to exclude the entirety of the memoirs must be denied because the documents are replete with compelling, exculpatory admissions that constitute some of the most important evidence in the case. Below are just a few examples that illustrate the importance of the memoirs to Reid's defense.

**1.     Dixon's Refutation Of The Claimed Assault On A Private Flight**

Dixon alleges in the Complaint that Reid first assaulted her while on a private flight to a company retreat in Puerto Rico. In deposition, Dixon purported to describe (albeit vaguely) Reid penetrating her vagina with something during the flight, which she believed to be his finger. However, Dixon not only told her personal therapist, in therapy sessions before this case was filed, that she does not recall anything that occurred on the flight, but she wrote in detail in her draft memoirs that she does not recall what happened on the flight:

> "I remember getting on the plane and discovering that the only people on the plane were myself, LA Reid, a stewardess and presumably the pilots. I remember going to the restroom and sort of hanging out in there for a long time waiting for the plane to take off assuming that when I came out the rest of the staff would have arrived. I don't remember anyone else arriving. ***I don't remember anything else about the flight*** …. ***I don't know what happened on that plane. I am not sure I want to know.*** I would love for someone to call me and tell me that they were on the plane, too, that the senior staff did arrive, and that for some reason I just don't remember. I hope that's what happened. I don't want to be the woman who has to face another painful buried memory. I have far too many of those …. ***I don't know what happened on that private plane***. I told you I'm not sure I can

30021-00002/912083.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

handle the truth."

(Declaration of Gregory Korn, Ex. 1 [Excerpt of DIXON00007473 at 7480 to 7482].)

The significance of this admission needs no explanation, but stated succinctly, Dixon's own words are compelling evidence that she has no actual recollection of Reid assaulting her; that she has presumed that her lack of memory is evidence of some kind of "painful buried memory"; and that she has contrived this newfound, supposed recollection of being assaulted by Reid only after the ASA was passed.

### 2. Dixon's Admission That Reid Was Never "Violent" With Her

In this case, Dixon alleges that Reid violently penetrated her, and asserts a claim for violation of New York City's Gender-Motivated Violence Act. But in her memoirs, Dixon wrote that Reid was never violent with her:

> "Working for LA Reid was a total mindf***. *He was not violent*, but he could be cruel. If he wasn't happy with you, he made your life miserable. If you weren't on his good side, he could block your progress at every turn, and that's exactly what he did to me."

(Korn Decl. Ex. 1 (DIXON00007480).)

This is consistent with Dixon's admissions during interviews, on at least two other occasions, that Reid has never been violent with her, including one where she stated: ""I knew how to not end up alone with him [Reid] where I might be assaulted, *and I'm not suggesting for one second that L.A. Reid is violent or might be violent with me or was ever violent with anyone. I don't have any reason to speculate that at all.*" (Korn Decl. Ex. 2 (DIXON00000865).)

Dixon's admission that Reid was "not violent" clearly contradicts her claims and is relevant and admissible.

### 3.    Dixon's Contrasting Of The "Assault" By Simmons And "Harassment" By Reid

Additionally, Dixon's memoirs contain innumerable examples where in a single sentence, Dixon was careful to contrast the "assault" or "rape" by Mr. Simmons with the "harassment" by Reid. It was not until the filing of this lawsuit that Dixon began recharacterizing what allegedly occurred with Reid as an "assault." These statements are likewise compelling evidence that whatever occurred with Reid, it was *not* a physical assault as Dixon now asserts in order to pursue claims under the ASA.

### 4.    The Above-Described Examples Are Only Examples

The foregoing is anything but an exhaustive discussion of the countless relevant, admissible statements in Dixon's memoirs. For example, the memoirs also contain detailed discussions of the many other incidents that would be causes of or at least contributing factors to Dixon's alleged emotional distress, including the purported rape by Simmons, the purported ████████████████████████████████████████████ and other medical issues. For the reasons discussed above, these portions of the memoirs would be admissible to counter Dixon's claim for emotional distress damages, and to cross-examine Dr. Raghavan's testimony (if she is allowed to testify).

As the motion references, the memoirs contain discussions of Dixon's voluntary decision to leave the music industry after her brief stint, following her graduation from Harvard Business School, in order to focus on raising her children. These statements are directly relevant to the damages opinions rendered by Dixon's proffered experts, Michael Selverne and Marc Plotkin, whose opinions rely on assumptions about Dixon's desire and willingness to continue working in the music industry. The testimony of Selverne and Plotkin should be excluded for the reasons discussed in Reid's *Daubert* motions; but if it is not, these statements by Dixon are clearly

relevant to undermining her experts' damages calculations.

Put simply, Dixon's request for a blanket order excluding the entirety of the memoirs from the trial, and preventing Reid from relying on Dixon's clearly exculpatory admissions, is not just meritless but also an outrageous attempt to rig the trial in her favor.

### C.    The Memoirs Are Not Inadmissible Under Fed. R. Evid. 403 Or 412

Dixon's argument that the memoirs should be excluded—because of the references therein to the alleged sexual assaults by Simmons and others, ▮▮▮▮▮▮ and other medical conditions—fails for the reasons discussed above. These incidents and conditions are plainly relevant to Dixon's claim for emotional distress damages.

## V.    OTHER PENDING LAWSUITS

Reid does not intend to reference Dixon's lawsuit against Simmons, but the facts underlying the lawsuit are relevant for the reasons discussed above and should not be excluded.

## VI.    REID STIPULATES THAT EVIDENCE OF HIS FINANCIAL STATUS AND INSOLVENCY IS INADMISSIBLE IN THE FIRST PHASE OF THE TRIAL

Dixon argues that evidence of Reid's financial status and insolvency is not relevant unless and until a finding is made that Dixon is entitled to punitive damages, and thus should be excluded. (*See* Mot. at pp. 17-18.) Ironically, less than a week before the filing of this opposition, Dixon's lead counsel, during a telephonic hearing with the Court, refused to stipulate to a bifurcated trial and ask for an opportunity to brief why evidence of Reid's financial status ***should*** be admitted in a first phase of the trial.

Dixon's counsel is playing both sides here. Reid agrees with Dixon's statement of the law and issues in pages 17-18 of the Motion. Reid's financial status is irrelevant, and any and all evidence or argument about his financial status during an initial phase of the trial—including any attempts to impeach Reid on this collateral matter—should be prohibited unless and until there is

a finding of an entitlement to punitive damages.

## VII.    THE COURT SHOULD EXCLUDE EVIDENCE CONCERNING REID'S "OTHER WORKPLACE CONDUCT AND ASSOCIATIONS"

By her Motion, Dixon seeks to admit various unspecified evidence concerning what she describes as Reid's other workplace sexual conduct and associations. There is no basis for admitting such evidence and doing so would create a substantial risk of unfair prejudice, of confusing and misleading the jury, and of undue delay. Accordingly, the evidence should be excluded. Because Dixon's Motion distinguishes between purported evidence of non-assault conduct and purported evidence of assault, Reid organizes his response using the same categories of evidence.

### A.    Evidence of Reid's Alleged Non-Assault Harassment or Consensual Relationships is Inadmissible and Prejudicial Character Evidence

As Dixon concedes in her Motion, it is well settled that evidence of other allegedly wrongful acts committed by a defendant *cannot* be admitted to demonstrate a defendant's propensity to commit a particular act. (*See* Motion at 20, citing *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004).) Nor can it be admitted (even if it is relevant to a disputed issue at trial) if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Despite this clear rule, Dixon asks the Court for advance permission to introduce unspecified evidence[2] of what she characterizes as Reid's "non-assault harassment or ostensibly

---

[2] Much of the "evidence" covered by Dixon's request is unsubstantiated allegations for which Dixon cites to online articles or alleges based on "information and belief." Motion at 19-20. Moreover, the deposition testimony cited as support for Dixon's information and belief that there is "evidence of additional instances of Defendant having inappropriate sexual contact with

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

consensual workplace relationships." Motion at 19-20. There is no question that Dixon seeks to introduce such evidence for the *improper* purpose of trying to prove that Reid possesses certain character traits and that that he "acted in accordance with [that] character" in his dealings with Dixon. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") Accordingly, the evidence should be excluded. *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774 (5th Cir. 2009) ("The Federal Rules of Evidence do not allow the introduction of 'character evidence' – evidence of other 'crimes, wrongs, or acts' – 'to show conformity therewith.'")

Realizing she cannot disclose her actual (and improper) motive for introducing the evidence, Dixon attempts to persuade the Court that the evidence is admissible to establish Reid's purported *modus operandi*. The evidence, however, does not even come close to establishing a pattern of behavior and thus is not admissible under Federal Rule of Evidence 404(b)(2). Evidence of prior acts is only probative of a *modus operandi* where characteristics of the various acts "are sufficiently idiosyncratic to permit a fair inference of a pattern's existence."[3] Motion at 20. *See also Montanez v. City of Syracuse*, 2019 WL 4328872, * 4 (N.D.N.Y. Sept. 12, 2019) ("[T]o warrant admission as evidence of a pattern of relevant conduct, the evidence must 'share 'unusual characteristics' with the act charged or represent a 'unique scheme.'"").

---

subordinates throughout his career" does not in any way establish that such instances occurred. Motion at 20, citing Ex. 3 at 206:19-207:4. The deposition testimony consists of Dixon's counsel asking a third-party witness if she is aware of *allegations* against Reid and the witness denying any knowledge or recollection of such allegations. Ex. 3 at 206:19-207:4.

[3] The Cambridge Advanced Learner's Dictionary & Thesaurus defines "idiosyncratic" as "having strange or unusual habits, ways of behaving, or features."

Here, Dixon fails to identify *any unusual or distinctive similarities* between the conduct at issue here and the other purported acts of misconduct, much less unexpected or uncommon similarities sufficient to show a unique scheme by Reid. *See e.g., Montanez*, 2019 WL 4328872, * 4 (finding that accounts of prior alleged sexual misconduct and misconduct at issue were "not 'so nearly identical in method . . . to ear-mark [it] as [his] handiwork."). Dixon relies on two purported similarities: (1) Reid purportedly luring female employees "into private areas (generally in or near the office) to either demand sexual favors from them or sexually assault them" and (2) Reid making "inappropriate remarks about [the employee's] appearance and clothing" and propositions that caused the employees "embarrassment and distress." Motion at 21. Putting aside the fact that Dixon fails to identify any other instances in which Reid has "lur[ed] other women into private areas" and only identifies one allegation of Reid making comments about a woman's appearance, the "similarities" identified by Dixon are in no way unusual or distinctive, much less representative of a "unique scheme." To the contrary, the "similarities" describe behavior that would be ordinary, common, or expected in instances of sexual harassment.

Dixon's argument that the instances of other conduct establish a *modus operandi* also fails because the alleged other conduct is dissimilar to and not close in time to the conduct at issue in this case. As Dixon concedes, some of the instances of prior conduct are consensual sexual relationships (e.g.., the purported affair with the artist Chilli) that occurred years prior to the conduct at issue here. Motion at 20, 22. A consensual affair is quite distinct from a sexual assault. Moreover, certain of the alleged acts (e.g., the purported harassment of Reid's assistant) took place more than a decade (in 2016) after the purported assault of Dixon in 2001.

In sum, the claimed evidence of other prior acts of "non-assault harassment or ostensibly consensual workplace relationships" is not admissible under Federal Rule of Evidence 404(b)(2)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

and should be excluded. However, if the Court is unwilling to exclude such evidence at this time, the Court should defer on ruling on the admissibility of such evidence until the scope and nature of the evidence is more clearly defined.

**B.      Dixon Has Failed to Proffer Any Evidence That is Even Potentially Admissible under Federal Rule of Evidence 415**

In her Motion, Dixon argues that evidence relating to "Reid's sexual assaults of subordinates" should be admitted at trial pursuant to Federal Rule of Evidence 415. However, Dixon fails to cite a single piece of evidence of a purported assault; instead representing (without any citations to evidence) that "[t]here will be testimony at trial that Defendant's conduct with respect to the non-party accusers rose to [the] level [of sexual assault]." Putting aside the impropriety of Dixon making such a serious allegation against Reid without citing any evidence, Dixon's tactics demonstrate the absurdity of her request.

The authorities cited by Dixon make clear that, prior to admitting evidence of "other sexual assaults" under Federal Rule of Evidence 415, the court must, among other things, "determine that a jury could reasonably find by a preponderance of evidence that the party *committed* the other sexual assault (as defined by Rule 413)." Motion at 23 (emphasis added). Because Dixon fails to cite any evidence suggesting that such a prior assault took place, there is absolutely no basis upon which this Court can make such a finding. Accordingly, Dixon's motion for the admission of such evidence must be denied.

**C.      Federal Rule of Evidence 403 Precludes Any Evidence Concerning Reid's Other Workplace Sexual Conduct and Associations**

Even if Dixon could articulate some basis by which evidence of Reid's other conduct is marginally relevant to the claims alleged herein (it is not), such evidence should still be excluded under Federal Rule of Evidence 403. Pursuant to Rule 403:

> The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Here, permitting evidence of Reid's purported acts would create a substantial danger of unfair prejudice and of misleading the jury. The evidence will focus the jury on extraneous facts that place Reid in a bad light for the purpose of diverting the jury's attention from the facts of this case and prejudicing the jurors against Reid. Allowing the jury to hear evidence of unproven allegations of other purported misconduct would invite the jury to punish Reid in this litigation for *unproven* allegations, including an allegation that was lodged against Reid a decade after the alleged incident involving Dixon. Where evidence has the likelihood of inflaming the emotions of the jury and motivating them to act to punish or reward one side rather than logically evaluate the evidence, the introduction of such evidence is unfairly prejudicial.

Moreover, if Dixon is permitted to introduce allegations regarding the other purported acts, such evidence would confuse the jury, cause undue delay, waste time and lead to the needless presentation of evidence. Dixon should be prohibited from confusing the jury with information about unproven and unrelated allegations. However, if Dixon is allowed to present such evidence, Reid will be forced to cross-examine witnesses and present his own evidence explaining the true facts underlying the allegations. Such evidence will result in numerous "trials within a trial" on irrelevant issues, which will needlessly consume judicial resources and extend the trial for the Court and jury. The Court should not permit Dixon to misuse the Court's resources for a prejudicial and salacious sideshow. Evidence of other purported acts of workplace sexual conduct and associations should be excluded.

DATED:  August 4, 2025                    KINSELLA HOLLEY ISER KUMP
                                          STEINSAPIR LLP


                                    By: _____

                                          Gregory Korn
                                          Attorneys for Defendant Antonio Marquis "L.A."
                                          Reid

                                          **KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
                                          Shawn Holley (*pro hac vice*)
                                          Gregory Korn (*pro hac vice*)
                                          Suann C. MacIsaac *(pro hac vice)*
                                          Kate Mangels *(pro hac vice)*
                                          11766 Wilshire Boulevard, Suite 750
                                          Los Angeles, CA 90025
                                          310-566-9822

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

## CERTIFICATE OF COMPLIANCE (LOCAL RULE 7.1(c)

The undersigned, counsel of record for Defendant Antonio Marquis "L.A." Reid, certifies

that this brief contains 5883 words, which complies with the word limit of Local Rule 7.1(c).

 Dated: August 4, 2025

_____

Gregory Korn

## CERTIFICATE OF SERVICE

   I certify that on August 4, 2025, I electronically served the above document on the following:

Kenya K. Davis
Boies Schiller Flexner LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley
Amber S. Stewart
Daniel J. Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
astewart@bsfllp.com
dcrispino@bsfllp.com

*Counsel for Plaintiff Drew Dixon*

               */s/ Gregory Korn*
               Gregory Korn

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

DREW DIXON,

                Plaintiff,                           Case No.:      1:23-cv-09878-JAV

v.

ANTONIO MARQUIS "L.A." REID,

                Defendant.

_____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS *IN LIMINE*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD .............................................................................................. 1

ARGUMENT ............................................................................................................ 2

I.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO OTHER UNRELATED SEXUAL ASSAULTS ON PLAINTIFF ▮▮▮▮▮▮▮▮▮ OTHER THAN DEFENDANT'S SEXUAL ASSAULTS ON PLAINTIFF ................... 2

    A.    The Court Should Exclude All References to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ........................................................................... 2

    B.    The Court Should Exclude All References to Sexual Assaults of Plaintiff Committed by Non-Party Perpetrators. ...................................... 3

    C.    The Court Should Exclude All References to Any Sexual Behavior Characterized by Defendant as Consensual, Either with Defendant or any Third Party, And All References to ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ................................................... 6

II.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO PLAINTFF'S UNFINISHED MEMOIRS DRAFTS ............................................................. 10

    A.    The Memoirs Contain Descriptions Of Other Sexual Acts Which Are Barred by the Rape Shield Law, and their Probative Value Does Not Substantially Outweigh the Danger of Harm to the Plaintiff ............................... 11

    B.    The Probative Value of Relevant, Non-Sexual-Act-Related Statements in Plaintiff's Memoir Drafts Is Substantially Outweighed by the Risk of Prejudice ............................................................................. 11

III.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO PLAINTIFF'S UNRELATED HEALTH CONDITIONS ......................................................... 15

IV.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO PLAINTIFF'S OTHER PENDING LAWSUITS ................................................................... 15

V.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO DEFENDANT'S FINANCIAL STATUS, NET WORTH, AND PURPORTED INSOLVENCY UNTIL THE PUNITIVE DAMAGES PHASE ................................................. 17

i

VI.    THE COURT SHOULD ADMIT EVIDENCE CONCERNING DEFENDANT'S OTHER SEXUAL CONDUCT AND ASSOCIATIONS.................................................. 18

    A.    Evidence of Defendant's Non-Assault Harassment or Ostensibly Consensual Workplace Relationships is Admissible as it Establishes His *Modus Operandi*, and the Probative Value of This Evidence Outweighs Any Risk of Prejudice................................................................................. 20

    B.    Evidence Relating to Defendant's Sexual Assaults of Subordinates is Admissible Under Federal Rule of Evidence 415................................................. 23

VII.    FOR THE REASONS STATED IN THE ADVERSE INFERENCE MOTION PLAINTIFF SHOULD BE PERMITTED TO ADMIT EVIDENCE OF DEFENDANT'S SPOLIATION OF EVIDENCE ......................................................... 25

CONCLUSION.................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Cases</u>**

*Alaniz v. Zamora-Quezada*,
591 F.3d 761, 774-75 (5th Cir. 2009)………………………………………………………22

*Ayala v. Tapia*,
1991 WL 241873 (D.D.C. Nov. 1, 1991) ............................................................... 10

*Babcock v. Frank*,
729 F.Supp.279 (S.D.N.Y. 1990) ........................................................................... 7

*Back v. Hastings On Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004)................................................................................... 14

*Blazina v. Port Auth. of N.Y. & N.J.*,
2008 WL 4539484 (S.D.N.Y. Oct. 7, 2008) ......................................................... 1

*Board of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
860 F.Supp.2d 251 (S.D.N.Y. 2012) ..................................................................... 16

*Bonilla v. H&M Hennes & Mauritz L.P.*,
2014 WL 12661621 (S.D.N.Y. Apr. 16, 2014)...................................................... 15

*Bouveng v. NYG Cap. LLC*,
175 F.Supp.3d 280 (S.D.N.Y. 2016)...................................................................... 7, 8

*Boyce v. Weber*,
2021 WL 2821154 (S.D.N.Y. July 7, 2021) ........................................ 20, 22, 23, 25

*Burger v. Litton Indus., Inc.*,
1995 WL 476712 (S.D.N.Y. Aug. 10, 1995)......................................................... 4

*Burns v. McGregor Elec. Indus., Inc.*,
989 F.2d 959 (8th Cir. 1993) ................................................................................. 5

*Carrero v. New York City Housing Auth.*,
668 F.Supp. 196 (S.D.N.Y. 1987) ......................................................................... 8

*Carroll v. Trump*,
124 F.4th 140 (2d Cir. 2024) ................................................................... 23, 24

*Carroll v. Trump*,
660 F.Supp.3d 196 (S.D.N.Y. 2023)...................................................................... 23

*Chamblee v. Harris & Harris, Inc.*,
154 F.Supp.2d 670 (S.D.N.Y. 2001)...................................................................... 4

*Combe v. Cinemark USA, Inc.*,
   2009 WL 2578853 (D. Utah Aug. 19, 2009) ........................................................ 10

*Cook v. Greyhound Lines, Inc.*,
   847 F.Supp. 725 (D. Minn. 1994) ................................................................ 4, 7

*Dixon v. Simmons*,
   No. 151431/2024 (NY Sup. Ct. N.Y. Cnty.) ...................................................... 15

*Doe v. Gooding*,
   2023 WL 3805836 (S.D.N.Y.  June 2, 2023) ....................................................... 24

*Doe v. Provident Life and Acc. Ins. Co.*,
   176 F.R.D. 464 (E.D. Pa. 1997) ................................................................. 11

*Dubay v. King*,
   2018 WL 3619636 (M.D. Fla. July 13, 2018) ..................................................... 10

*Dufresne v Duemler*,
   108 A.D.2d 1102 (3d Dep't 1985) ............................................................... 17

*E.E.O.C. v. Donohue*,
   746 F.Supp.2d 662 (W.D. Pa. 2010) .............................................................. 2

*E.E.O.C. v. Kyklos Bearings Int'l, LLC*,
   2015 WL 1119949 (N.D. Ohio 2015) ........................................................... 13

*Eckhart v. Fox News Network, LLC*,
   2025 WL 786536 (S.D.N.Y. March 12, 2025) ..................................................... 24

*Escobar v. Airbus Helicopters SAS*,
   2016 WL 6080612 (D. Hawaii 2016) ............................................................ 11

*Gowens v. Tidwell*,
   2013 WL 2285446 (E.D. Mich. May 23, 2013) ................................................... 18

*Graham v. Ambridge Area Sch. Dist.*,
   2011 WL 13365094 (W.D. Pa. 2011) ........................................................... 4, 5

*Hernandez v. Kelly*,
   2011 WL 2117611 (E.D.N.Y. May 27, 2011) ..................................................... 12

*Highland Cap. Mgt., L.P. v Schneider*,
   551 F.Supp.2d 173 (S.D.N.Y. 2008) .............................................................. 1

*Howard v. Historic Tours of Am.*,
   177 F.R.D. 48 (D.D.C. 1997) .................................................................... 9

*James D. Vollertsen Assocs. v John T. Nothnagle, Inc.*,

48 A.D.2d 1007 (4th Dep't 1975) .................................................................................... 18

*Jean-Laurent v. Hennessy,*
   840 F.Supp.2d 529 (E.D.N.Y. 2011) ........................................................................ 16

*Johnson v. Elk Lake Sch. Dist.,*
   283 F.3d 138 (3rd Cir. 2002) .................................................................................... 24

*Karibian v. Columbia Univ.,*
   14 F.3d 773 (2d Cir. 1994) .......................................................................................... 7

*Lewis v. Velez,*
   149 F.R.D. 474 (S.D.N.Y. 1993) ............................................................................. 12

*Luce v. United States,*
   469 U.S. 38 (1984) ....................................................................................................... 1

*Marshall v. Port Auth. of New York and New Jersey,*
   2022 WL 17491006 (S.D.N.Y. Dec. 5, 2022) .................................................... 17, 18

*Mazzocchi v. Windsor Owners Corp.,*
   204 F.Supp.3d 583 (S.D.N.Y. 2016) ....................................................................... 12

*McBeth v. Porges,*
   2018 WL 5997918 (S.D.N.Y. Nov. 15, 2018) ........................................................ 17

*Meritor Sav. Bank, FSB v. Vinson,*
   477 U.S. 57 (1986) ....................................................................................................... 7

*Metzger v. Medical Health Group, Inc.,*
   Civ.A. no. 1:09-cv-00803-WDQ ............................................................................. 13

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,*
   232 F.Supp.3d 558 (S.D.N.Y. 2017) ....................................................................... 17

*Montanez v. City of Syracuse,*
   2019 WL 4328872 (N.D.N.Y. Sept. 12, 2019) ....................................................... 21

*Montera v. Premier Nutrition Corp.,*
   2022 WL 1465044 (N.D. Cal. May 9, 2022) ........................................................... 15

*Moore v. Rubin,*
   2020 WL 13573582 (E.D.N.Y. 2020) ..................................................................... 16

*Nevada Dept. of Human Res. v. Hibbs,*
   538 U.S. 721 (2003) ................................................................................................... 14

*Outley v. City of New York*,
  837 F.2d 587 (2d Cir. 1988)........................................................................................ 16


*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997)........................................................................................ 11

*Puglisi v. Town of Hempstead Sanitary Dist. No. 2*,
  2014 WL 12843521 (E.D.N.Y. Jan. 27, 2014) ........................................................... 15

*Rodriguez-Hernandez v. Miranda-Velez*,
  132 F.3d 848 (1st Cir. 1998)..................................................................................... 5, 9

*Rupert v Sellers*,
  48 A.D.2d 265 (4th Dep't 1975) .......................................................................... 17, 18

*Smith v. Ergo Sols., LLC*,
  2019 WL 3068293 (D.D.C. 2019) ............................................................................... 9

*Smith v. Lightning Bolt Prods., Inc.*,
  861 F.2d 363 (2d Cir. 1988)........................................................................................ 18

*Socks-Brunot v. Hirschvogel Inc.*,
  184 F.R.D. 113 (S.D. Ohio 1999) ........................................................................... 2, 15

*Sohnen v. Charter Comms., Inc.*,
  761 F.Supp.3d 556 (E.D.N.Y. 2025) ............................................................................ 16

*T.C. on Behalf of S.C. v. Metro. Gov't of Nashville and Davidson Cnty., Tennessee*,
  2018 WL 3348728 (M.D. Tenn. July 9, 2018) ......................................................... 6, 8

*Thompson v. Spota*,
  2022 WL 17253464 (E.D.N.Y. Nov. 28, 2022).......................................................... 16

*Trezza v. Hartford, Inc.*,
  1998 WL 912101 (S.D.N.Y. 1998).............................................................................. 14

*Trooper 1 v. New York State Police*,
  2024 WL 168326 (E.D.N.Y. Jan. 16, 2024) ................................................................. 2

*Troxel v Granville*,
  530 US 57 (2000)............................................................................................................ 4

*Truong v. Smith*,
  183 F.R.D. 273 (D. Colo. 1998) .................................................................................... 7

*United States v. Baker*,
  2023 WL 3851968 (E.D. Okla. June 6, 2023) .............................................................. 6

vi

*United States v. Barnason,*
    852 F.Supp.2d 367 (S.D.N.Y. 2012)................................................................. 23, 24


*United States v. Charles,*
    2016 WL 355073 n.3 (D.N.J. Jan. 28, 2016) ......................................................... 6

*United States v. Davis,*
    2015 WL 519455 (C.D. Cal. Feb. 5, 2015) ........................................................... 6

*United States v. Frederick,*
    683 F.3d 913 (8th Cir. 2012) ............................................................................... 3

*United States v. Graham,*
    2015 WL 6161292 (S.D.N.Y Oct. 20, 2015) ...................................................... 25

*United States v. LaFlam,*
    369 F.3d 153 (2d Cir. 2004)............................................................................... 20

*United States v. Larson,*
    112 F.3d 600 (2d Cir. 1997)............................................................................... 24

*United States v. Maxwell,*
    2021 WL 2292773 (S.D.N.Y. June 4, 2021) ...................................................... 10

*United States v. Mohamed,*
    148 F.Supp.3d 232 (E.D.N.Y. 2015) ................................................................. 20

*United States v. Moye,*
    793 F. App'x 19 (2d Cir. 2019) ......................................................................... 20

*United States v. Roldan-Zapata,*
    916 F.2d 795 (2d Cir. 1990)............................................................................... 25

*United States v. Russell,*
    2018 WL 2122938 (D.N.M. May 6, 2018) .......................................................... 6

*United States v. Sasso,*
    59 F.3d 341 (2d Cir. 1995)................................................................................. 12

*United States v. Schaffer,*
    851 F.3d 166 (2d Cir. 2017)............................................................................... 23

*United States v. Sliker,*
    751 F.2d 477 (2d Cir. 1984)............................................................................... 20

*United States v. Spoor,*
    904 F.3d 141 (2d Cir. 2018)............................................................................... 22

*United States v. Tail*,
   459 F.3d 854 (8th Cir. 2006) ................................................................................ 3


*United States v. Terranova*,
   750 F.Supp.3d 15 (E.D.N.Y. 2024) ...................................................................... 5

*Williams v. Bd. of Cty. Comm'rs of Unified Gov't of Wyandotte Cnty. & Kansas City*,
   192 F.R.D. 698 (D. Kan. 2000) ............................................................................. 6

*Williams v. Geraci*,
   2020 WL 5848738 (E.D.N.Y. Sept. 30, 2020) ................................................... 16

*Wolak v. Spucci*,
   217 F.3d 157 (2d Cir. 2000) ................................................................................. 2

## Rules

Fed. R. Civ. P. 42(b) ............................................................................................ 18

Fed. R. Evid. 401 ............................................................................................ 10, 15

Fed. R. Evid. 403 ....................................................................................... passim

Fed. R. Evid. 404 ................................................................................ 5, 16, 20, 25

Fed. R. Evid. 412 ....................................................................................... passim

Fed. R. Evid. 413 ................................................................................................ 23

Fed. R. Evid. 414 ................................................................................................ 23

Fed. R. Evid. 415 ....................................................................................... passim

## Other Authorities

179 Am. Jur. Trials 257 ........................................................................................ 1

*EEOC – Medical Health Group, Inc. Sued By EEOC For Disability Discrimination Issue No. 209*, Accom. Disab. Bus. Mgmt. Guide 10814653 ................................................ 13

*L.A. Reid's Epic Records Exit Followed Harassment Claim by Female Staffer*, HOLLYWOOD REPORTER, May 14, 2017, https://www.hollywoodreporter.com/news/music-news/music-exec-la-reids-epic-records-exit-followed-allegations-by-female-staffer-1003665/............ 18, 21

McCormick on Evidence § 196 at 578–81 (3d ed. 1984) ........................................ 16

*Pebbles Reid Claims TLC's Chilli Had an Affair With Ex-Husband L.A. Reid, Slams VH1 Biopic*,

U.S. WEEKLY, Nov. 14, 2013, https://www.usmagazine.com/entertainment/news/pebbles-reid-claims-tlcs-chilli-had-an-affair-with-ex-husband-la-reid-slams-vh1-biopic-20131411/.......... 19

Ted Boscia, *Study: Women reject promiscuous female peers as friends*, CORNELL CHRONICLE, May 30, 2013, https://news.cornell.edu/stories/2013/05/study-women-reject-promiscuous-female-peers-friends ................................................................................................................. 5

## PRELIMINARY STATEMENT

Defendant has attempted to muddy the waters and distract from his own wrongdoing by invoking Plaintiff's past relationships, her mental and physical health, prior sexual assaults she has endured, and even ███████████████████. At the same time, Defendant has sought to curry sympathy by both falsely claiming that he is financially insolvent and unable to afford attorney's fees, and laboring to keep evidence of his serial sexual abuse and harassment of women away from the jury. Plaintiff respectfully requests that this Court reject Defendant's strategy, and issue an order both excluding the categories of evidence described below from trial of this matter, and admitting other categories of evidence described below.

## LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgt., L.P. v Schneider*, 551 F.Supp.2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Blazina v. Port Auth. of N.Y. & N.J.*, 2008 WL 4539484, at *1 (S.D.N.Y. Oct. 7, 2008) (citation omitted); *see also* 179 Am. Jur. Trials 257 § 8 (noting that motions *in limine* are appropriate when material sought to be excluded is "highly prejudicial or inflammatory").

1

## ARGUMENT

**I.      THE COURT SHOULD EXCLUDE ALL REFERENCES TO OTHER UNRELATED SEXUAL ASSAULTS ON PLAINTIFF ████████████ OTHER THAN DEFENDANT'S SEXUAL ASSAULTS ON PLAINTIFF**

**A.**    ████████████████████████████████████████

Federal Rule of Evidence 412 prohibits parties from introducing evidence "offered to prove that a victim engaged in other sexual behavior; or . . . offered to prove a victim's sexual predisposition." In civil cases, such evidence can be introduced only if "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *Id.*; *see also Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000) ("Rule 412 . . . explicitly includes civil cases involving sexual misconduct"); Advisory Committee Notes ("Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct."); *E.E.O.C. v. Donohue*, 746 F.Supp.2d 662, 664 (W.D. Pa. 2010) ("The purpose of the amended rule is 'to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.'") (citation omitted); *Socks-Brunot v. Hirschvogel Inc.*, 184 F.R.D. 113, 119 (S.D. Ohio 1999) ("While relevant evidence is generally admissible under Federal Rule of Evidence 403, evidence subject to Rule 412 is presumptively inadmissible"). Rule 412 also protects non-party sexual assault victims in civil cases. *See e.g.*, *Trooper 1 v. New York State Police*, 2024 WL 168326, at *2 (E.D.N.Y. Jan. 16, 2024) (non-party filed motions to quash subpoenas that sought "impermissible" evidence under Rule 412).

████████████████████████████████████████████████████ , *see* ECF No. 143-01 (Deposition of Plaintiff Drew Dixon, "Dixon Depo.") at 391-402, presumptively fall within Rule 412's prohibition against evidence "offered to prove that a victim engaged in other sexual

2

behavior." Under any conceivable theory, the probative value of evidence of ██████████ ████████████████████████████████████████████████ does not substantially outweigh the risk of prejudice. Admission of this evidence would be prejudicial because it would ████████████████████████████████████████████████████████████████ ████████████████████. Any argument that this evidence would be probative either as to Plaintiff's ████████████████, or her general credibility, fails not only the balancing tests of Rules 403 and 412, but also Rule 401's minimal relevance requirement. ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Admission of ████████████ evidence also risks both confusing the jury—as ████████████████████████████████████████████—and wasting time, as the jury will have to ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

**B.    The Court Should Exclude All References to Sexual Assaults of Plaintiff Committed by Non-Party Perpetrators.**

The following references presumptively fall within Rule 412's prohibition against evidence "offered to prove that a victim engaged in other sexual behavior":

- Any references to Plaintiff being sexually abused ████████████████;

- Any references to Plaintiff being sexually assaulted by Russell Simmons; and

3

- ██████████████████████████████████████████████████.

"[O]ther sexual behavior" encompasses instances in which the victim was sexually assaulted or raped by non-party perpetrators. *See e.g.*, *Cook v. Greyhound Lines, Inc.*, 847 F.Supp. 725, 737 (D. Minn. 1994) (Rule 412 barred the defendant from compelling the plaintiff to answer interrogatories demanding that she identify non-party boyfriend who allegedly "date rape[d]" her; "*whether the [p]laintiff has ever considered herself to have been a victim of a[nother] sexual assault has a most tenuous connection to the issues of this case*") (emphasis added); *Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 680 (S.D.N.Y. 2001) ("[A]ny other evidence of [the plaintiff's] sexual history, is irrelevant except to prove a sexual disposition of [the] plaintiff, a purpose plainly forbidden by Rule 412."). As a result, any evidence relating to Russell Simmons' rape of Plaintiff and familial sexual abuse fall within the scope of Rule 412.

The "burden" is therefore on Defendant to establish that "the probative value" of such evidence "substantially outweighs the invasion of [Plaintiff's] privacy," and the risk of prejudice to Plaintiff generally. *Burger v. Litton Indus., Inc.*, 1995 WL 476712, at *2 (S.D.N.Y. Aug. 10, 1995) (cleaned up); *see also Graham v. Ambridge Area Sch. Dist.*, 2011 WL 13365094, at *1 (W.D. Pa. 2011) ("[Rule] 412 forbids the admission of the alleged victim's sexual behavior or sexual predisposition in all proceedings involving alleged sexual misconduct except in very limited circumstances") (internal citation and quotations omitted).

The other sexual behavior here is prejudicial for several reasons. First, ███████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

4

██████████████████████████████████████

████████████████████████

Second, due to social stigma against <mark>women perceived as promiscuous, *see e.g.*, Ted Boscia, *Study: Women reject promiscuous female peers as friends*, CORNELL CHRONICLE, May 30, 2013, https://news.cornell.edu/stories/2013/05/study-women-reject-promiscuous-female-peers-friends (discussing study which concludes that "[c]ollege-aged women judge promiscuous female peers . . . more negatively than more chaste women and view them as unsuitable for friendship"), other sexual act evidence risks sending jurors down forbidden paths of misogynistic inferences, such as: if a woman is a frequent victim of sexual assault, then she must be putting herself out there too much. *See Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 856 (1st Cir. 1998) (affirming district court ruling excluding "evidence concerning [the] plaintiff's moral character or promiscuity . . . under Rule 412").</mark> Such reasoning "amounts to little more than a thinly veiled attempt to generate evidence of propensity or character trait that is prohibited by Federal Rule of Evidence 404(a)." *Graham*, 2011 WL 13365094, at *2 <mark>("Introducing evidence about the [] plaintiff having engaged in sexual conduct in other settings"</mark> "is not probative" "and amounts to little more than a thinly veiled attempt to generate evidence of propensity or character"); <mark>*see also Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 963 (8th Cir. 1993) ("Her private life . . . did not provide lawful acquiescence to unwanted sexual advances at her work place by her employer.").</mark>

<mark>Finally, if Defendant wishes to argue that Plaintiff's other sexual acts bear on her truthfulness and credibility, that would also be a prohibited theory.</mark> *See e.g.*, *United States v. Terranova*, 750 F.Supp.3d 15, 30 (E.D.N.Y. 2024) ("[I]mpeaching the victim's truthfulness and

showing [his or] her capability to fabricate a story are not recognized exceptions to Rule 412.")
(internal citations and quotations omitted).[1]

**C.    The Court Should Exclude All References to Any Sexual Behavior Characterized by Defendant as Consensual, Either with Defendant or any Third Party,** ▮▮▮▮▮▮▮▮

Inasmuch as Defendant attempts to admit evidence that Plaintiff engaged in sexual behavior characterized by Defendant as consensual with Defendant or anyone else, that evidence too is barred by Rule 412 and is prejudicial.

First, as noted above, *supra* at I.B, it is crystal clear that Rule 412 forbids probing into Plaintiff's sexual (consensual or not) history with third parties. *See T.C. on Behalf of S.C. v. Metro. Gov't of Nashville and Davidson Cnty., Tennessee*, 2018 WL 3348728, at \*9 (M.D. Tenn. July 9, 2018) ("The logic supporting [the defendant's] theory of relevance—that a plaintiff's private sexual history has some bearing on whether unrelated sexual contact was wanted—is hollow, as many courts before this one have found"); *Williams v. Bd. of Cty. Comm'rs of Unified Gov't of Wyandotte Cnty. & Kansas City*, 192 F.R.D. 698, 703-04 (D. Kan. 2000) (inquiry into the plaintiff's sexual history was of "marginal relevance" to claim and presented "inordinate risk of

---

[1]    *See also* Fed. R. Evid. 412 advisory committee's note to 1994 amendment (explaining that Rule 412 generally "bar[s] evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, *whether offered as substantive evidence or for impeachment*") (emphasis added); *United States v. Baker*, 2023 WL 3851968, at \*3 (E.D. Okla. June 6, 2023) (excluding evidence of minor victim's YouTube videos that were "sexual in nature" under Rule 412, over the defendant's argument that videos were intended to show that victim was a "talented storyteller" who previously "told fictional accounts of sexual behavior"); *United States v. Russell*, 2018 WL 2122938, at \*2 (D.N.M. May 6, 2018) (excluding purported "impeachment" evidence of victim's prior sexual encounter); *United States v. Charles*, 2016 WL 355073, at \*4 n.3 (D.N.J. Jan. 28, 2016) (holding that the defendant was properly precluded from questioning victim about "sexual history"); *United States v. Davis*, 2015 WL 519455, at \*4 (C.D. Cal. Feb. 5, 2015) (rejecting argument that "Rule 412 is inapplicable to evidence … offered to prove dishonesty or bias").

harm" to the plaintiff); *Truong v. Smith*, 183 F.R.D. 273, 275 (D. Colo. 1998) (evidence of the plaintiff's "prior sexual activity with third parties has no bearing on . . . whether she consented to the sexual violence charged").

Second, claims that Plaintiff "consensually" made out with Defendant on several occasions fall within the scope of Rule 412, as "other sexual behavior" encompasses any separate, consensual sexual behavior the victim engaged in, even with the perpetrator. *See e.g.*, *Cook v. Greyhound Lines, Inc.*, 847 F.Supp. 725, 737 (D. Minn. 1994). Defendant might argue that evidence that Plaintiff made out with him on a few occasions—to placate Defendant and keep her job—is probative of her consent to the sexual acts of which she complains. But any probative value as to consent is limited, since Plaintiff did not actually consent.

The Supreme Court has recognized that "the fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not [physically] forced to participate against her will," does not mean that it was "[]welcome," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986), merely because the perpetrator used forms of "coercion" that were "subtler" "than direct physical threats or attacks." *Babcock v. Frank*, 729 F.Supp.279, 287 (S.D.N.Y. 1990). The law thus forbids "quid pro quo" arrangements, where employers "expressly or tacitly link[] tangible job benefits to the acceptance or rejection of sexual advances." *Bouveng v. NYG Cap. LLC*, 175 F.Supp.3d 280, 311 (S.D.N.Y. 2016). A complainant's submission to sexual advances is not truly voluntary if she can only reject those advances on pain of losing her livelihood or jeopardizing her professional advancement. *See Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir. 1994) (Quid pro quo harassment occurs when "submission to or rejection of [unwelcome sexual] conduct . . . is used as the basis for employment decisions affecting [the victim].") (citation omitted).

7

==Here, Defendant tacitly conditioned Plaintiff's continued, successful employment at Arista on submission to his sexual advances, seeing as Defendant in fact retaliated against Plaintiff, and sought to undermine her career and publicly humiliate her, following the assault and once she rejected his further advances.== *See* ECF No. 1 ("Compl.") at ¶¶52-57; *see also Carrero v. New York City Housing Auth.*, 668 F.Supp. 196, 201-02 (S.D.N.Y. 1987) (where the plaintiff had to "work closely" with the defendant supervisor, "meet [with him] every morning," and where the defendant "was responsible for insuring that [the plaintiff] was trained in every facet of the job," the plaintiff should not have been "required to be constantly on guard against" his sexual advances); *Bouveng*, 175 F.Supp.3d at 313 (A "reasonable jury could [] conclude that [the p]laintiff submitted to [the defendant's] unwelcome sexual advances in order to protect her job," as the plaintiff "was afraid to reject" his advances to avoid "upset[ting] him," the plaintiff "saw how he could get enraged at the office," and she believed that the defendant would "fire her" if she rejected him) (cleaned up) (citations omitted). ==Given that Plaintiff wrote in her memoir that she only made out with Defendant to placate him, and in light of Defendant's subsequent retaliation after she rebuffed him, Plaintiff's acquiescence to his advances was not truly consensual, and evidence relating to these incidents is thus not probative as to consent.==

==But even if these interactions could be characterized as consensual, the fact that a victim consents to sexual acts with defendants on separate, prior occasions, is not itself probative of consent to the separate sexual acts complained of.== *See e.g.*, *T.C. on Behalf of S.C.*, 2018 WL 3348728 at *9 ("It is now beyond question in the federal courts that the fact that the plaintiffs may welcome sexual advances from certain individuals has absolutely no bearing on the emotional trauma they may feel from sexual harassment that is unwelcome. . . . To find otherwise would be to suggest that, once a person becomes sexually active, he or she welcomes sexual attention from

all who might give it and is immune to the harm that results from unwanted sexual conduct. That line of reasoning has not been persuasive for decades.") (citations omitted).

Evidence of prior consensual sexual encounters between parties is only probative where the prior conduct is of the same nature as the conduct at issue in the case. *See e.g.*, *Howard v. Historic Tours of Am.*, 177 F.R.D. 48, 52 (D.D.C. 1997) ("A woman who does not resist a co-worker's request for a date, leading to a sexual relationship, may welcome another co-worker's similar request but it is absurd to suggest that she would also welcome his cruder and bolder sexual advances"); *Smith v. Ergo Sols., LLC*, 2019 WL 3068293, at *3 (D.D.C. 2019) (prior sexual act which consisted of "sending crude emails" was not probative under Rule 412 in case involving "physical sexual advances," due to dissimilarity between the forms of conduct at issue). Because the prior sexual conduct Plaintiff seeks to exclude consists of kissing, whereas the sexual misconduct in this case consists of Defendant forcibly touching Plaintiff's genitalia, the conduct is dissimilar, and the prior sexual acts are not probative. By contrast, the evidence is prejudicial because it would allow Defendant to portray Plaintiff as having been promiscuous in the workplace, despite overwhelming evidence that Plaintiff was coerced into any sexual behavior.



and such evidence would only prejudice Plaintiff by enabling Defendant to both insinuate that

Therefore, the Court should exclude any reference to Plaintiff kissing

Defendant—whether consensually or not—and any other sexual behaviors Plaintiff engaged in with third parties, ████████████████████████████.

## II.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO PLAINITFF'S UNFINISHED MEMOIRS DRAFTS

Were Defendant to seek to introduce into evidence the entirety of Plaintiff's unpublished memoir drafts, this proffer would run afoul of the Federal Rules' demand that evidence be relevant. *See* Fed. R. Evid. 401. Courts refuse to order disclosure of entire diaries or journals when those documents contain personal or sensitive entries and the party seeking disclosure cannot demonstrate that anything relevant has been withheld. *See, e.g., Dubay v. King*, 2018 WL 3619636, at *1 (M.D. Fla. July 13, 2018) ("Plaintiff failed to show how the production of Mr. King's private journal entries–containing information about Mr. King's private life and daily musings–relate to the subject matter of the claims in this lawsuit."); *Combe v. Cinemark USA, Inc.*, 2009 WL 2578853, at *2 (D. Utah Aug. 19, 2009) ("Without any limit on relevancy, the entire journal is not discoverable. A plaintiff does not expose her entire private life to adverse scrutiny by filing suit."); *Ayala v. Tapia*, 1991 WL 241873, at *2 (D.D.C. Nov. 1, 1991) (same); *see also United States v. Maxwell*, 2021 WL 2292773, at *1-2 (S.D.N.Y. June 4, 2021) (denying the defendant's motion to authorize subpoena seeking victim's "entire journal" from the time of alleged crimes).

Most of the content in Plaintiff's memoirs concerns unrelated life events or contemporary political issues that neither have a "tendency to make a fact [at issue in this case] more or less probable than it would be without the evidence" nor are otherwise "of [any] consequence in determining th[is] action." Fed. R. Evid. 401.

**A.    The Memoirs Contain Descriptions Of Other Sexual Acts Which Are Barred by the Rape Shield Law, and their Probative Value Does Not Substantially Outweigh the Danger of Harm to the Plaintiff**

For the reasons stated above, *supra* at I., any references in the memoir to unrelated sexual acts committed by non-party perpetrators, or any unrelated consensual conduct, are presumptively barred under Rule 412.

**B.    The Probative Value of Relevant, Non-Sexual-Act-Related Statements in Plaintiff's Memoir Drafts Is Substantially Outweighed by the Risk of Prejudice**

Evidence may be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The primary function of Rule 403 is preventing juries from hearing evidence that has "an undue tendency to suggest decision on an improper basis." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (quoting Rule 403 Advisory Committee Notes); *see also Escobar v. Airbus Helicopters SAS*, 2016 WL 6080612, at *1 (D. Hawaii 2016) ("Evidence is unfairly prejudicial . . . because of its ability to appeal to the jury's sympathies, arouse jurors' sense of horror, provoke a jury's instinct to punish, and trigger other intense human reactions.").

Here, the probative value of the memoirs' references to Plaintiff's mental health conditions and treatment, ████████████████, are substantially outweighed by the risk of unfair prejudice and confusing the issues. As to mental health, █████████████████████████

████████████████████████████████████████████████

████████████████████████████ plus it is just not accurate. *See e.g. cf. Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) (granting plaintiff's request for pseudonymity in case against disability insurer for coverage of psychiatric disorder; acknowledging that "[u]nfortunately, in our society, there is a significant stigma associated with

being identified as suffering from a mental illness"; noting that there was a "great risk that plaintiff will be stigmatized in his professional life" if the allegations are publicized; and recognizing the public interests "in preventing the stigmatization of litigants with mental illnesses . . . [and] avoid[ing] deterring people with mental illnesses from suing to vindicate their rights"); *Mazzocchi v. Windsor Owners Corp.*, 204 F.Supp.3d 583, 604 (S.D.N.Y. 2016) ("In some cases, the effects of mental illness may create a hindrance sufficient to permit third-party standing," because "the societal stigma associated with receiving mental healthcare can 'blunt mental health patients' incentive to pursue litigation.'") (citation omitted).

References to a mental health disorder is also "not probative of [her] state of mind at the time of the events being recalled," because the most harmful mental health conditions developed *after* Defendant's sexual assault. *Hernandez v. Kelly*, 2011 WL 2117611, at *5 (E.D.N.Y. May 27, 2011) ("A mere history of psychological illness, not probative of the witness's state of mind at the time of the events being recalled, should not be admitted and risks stereotyping people with mental illness as incapable of testifying to events."); *see also Lewis v. Velez*, 149 F.R.D. 474, 484 (S.D.N.Y. 1993) ("A holding that any and all aspects of a witness' psychiatric history are probative of credibility would embrace unwarranted stereotypes of persons who seek mental health treatment."); *United States v. Sasso*, 59 F.3d 341, 348 (2d Cir. 1995) ("In light of the nature of [witness'] condition, *i.e.*, a not-unpredictable depression resulting from her involvement in a specific catastrophic event, the fact that her depression was relatively recent did not necessarily suggest . . . any probative value.").

The probative value of Plaintiff's ███████████ is similarly outweighed by the dangers of unfair prejudice, confusing the issues, and undue delay. Any claim that the ███████████ is probative because it suggests an alternative reason for Plaintiff leaving the music industry lacks

merit because ███████████ preceded Defendant's sexual assault. Since Plaintiff continued

working at Arista following ██████████—and since she returned to the music industry

again in 2004 to work with John Legend, *see* Compl. at ¶58—this could not have been the reason

her career was derailed.

Conversely, evidence relating to Plaintiff's ████████—and the need to litigate the

details of Plaintiff's ██████████—risks prejudicing Plaintiff, confusing the issues and

causing undue delay. There is a risk of prejudice because many assume that ████████

██████████ are inherently debilitated at work. ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████ There is also a risk of confusing the issues as jurors will be presented with

the details and timeline of ██████████, which could overshadow Defendant's misconduct.

Furthermore, the presentation of these issues would be detail-intensive, causing undue delays.

Lastly, the probative value of the reference in Plaintiff's *Other Side* Memoir Draft to her mulling over possibly revisiting her attempt after business school to build a new identity as a wife and stay at home mother is substantially outweighed by the risk of prejudice and confusing the issues. Any probative value of this offhand statement as to Plaintiff's future life plans is slight, as Plaintiff did not have her first child until 2005, [years after Defendant's misconduct, and after she attempted to return to the music industry in 2004 to work with John Legend—not directly after completing her studies at Harvard Business School. Compl. at ¶58. At best, this statement is evidence that Plaintiff had a fleeting thought that she would someday become a stay-at-home mother, a plan that was put on the backburner for years.

Introducing this statement would be prejudicial because the assumption that women are mothers first and foremost is pervasive, as is skepticism about their ability to be **both** effective workers and mothers. *See e.g.*, *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 736 (2003) (citing Congressional findings that "[h]istorically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are mothers first, and workers second. This prevailing ideology about women's roles has in turn justified discrimination against women when they are mothers or mothers-to-be"); *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 115 (2d Cir. 2004) (defendant stated that it was "not possible for [the plaintiff] to be a good mother and have this job."); *Trezza v. Hartford, Inc.*, 1998 WL 912101, at *2 (S.D.N.Y. 1998) (defendant remarked on the "incompetence and laziness of women who are also working mothers" and stated that "I don't see how you can do either job well"). These stereotypes and biases might cause jurors to be unduly skeptical that Plaintiff would have had a long career as an A&R executive, had Defendant not sexually assaulted her.

14

### III.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO PLAINTIFF'S UNRELATED HEALTH CONDITIONS

For the reasons stated above, *supra* at II.B., the Court should exclude all references to Plaintiff's unrelated (mental or physical) health conditions—whether contained in the memoir drafts or elsewhere—as the probative value of such evidence is substantially outweighed by its prejudicial effect.

### IV.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO PLAINTIFF'S OTHER PENDING LAWSUITS

The Court should exclude any reference to other pending or past litigation involving Plaintiff, such as her case against Russell Simmons, *see Dixon v. Simmons*, No. 151431/2024 (NY Sup. Ct. N.Y. Cnty.), including any of the pleadings or motions, or news reports. Since these lawsuits involve sexual assault, they also fall within the scope of Rule 412's Rape Shield, and any evidence relating to the lawsuits can only be admitted if its probative value substantially outweighs its prejudicial effect. *See e.g.*, *supra* at I.; *Socks-Brunot v. Hirschvogel Inc.*, 184 F.R.D. 113, 119 (S.D. Ohio 1999) ("[E]vidence subject to Rule 412 is presumptively inadmissible").

More fundamentally, "[e]vidence concerning the other lawsuits is irrelevant," *Montera v. Premier Nutrition Corp.*, 2022 WL 1465044, at *3 (N.D. Cal. May 9, 2022); *see also Bonilla v. H&M Hennes & Mauritz L.P.*, 2014 WL 12661621, at *16 (S.D.N.Y. Apr. 16, 2014) (noting that other lawsuit evidence was "irrelevant to the case before us"),  as the fact that Plaintiff was raped by Russell Simmons and is currently suing him over his defamatory denial neither makes it "more or less probable" that Defendant sexually assaulted Plaintiff nor "is [otherwise] of [any] consequence in determining th[is] action." Fed. R. Evid. 401.

Beyond lack of relevance, "[c]ourts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court . . . because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice,"

even under the default, more-admission-friendly Rule 403 balancing test. *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2014 WL 12843521, at *2 (E.D.N.Y. Jan. 27, 2014);[2] *see also Board of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F.Supp.2d 251, 254-55 (S.D.N.Y. 2012); *Sohnen v. Charter Comms., Inc.*, 761 F.Supp.3d 556, 571 (E.D.N.Y. 2025); *Moore v. Rubin*, 2020 WL 13573582, at *3 (E.D.N.Y. 2020). The lack of probative value is apparent here because there is no allegation that Defendant in any way collaborated with Russell Simmons in sexually assaulting Plaintiff while she was an employee at Def Jam—indeed, the assaults occurred years apart. It is noteworthy that Defendant made Plaintiff aware that he knew about the assault by Simmons.

The prejudicial effect of the other lawsuit evidence is also apparent as it would allow Defendant to (improperly) suggest that Plaintiff is a "chronic litigant." *Thompson v. Spota*, 2022 WL 17253464, at *4 (E.D.N.Y. Nov. 28, 2022) ("[T]o the extent that the prior suit would be introduced to characterize [the plaintiff] as a 'chronic litigant'—i.e. for propensity purposes—it is subject to exclusion under Rule 404(b)(1)"); *see also Jean-Laurent v. Hennessy*, 840 F.Supp.2d 529, 542 (E.D.N.Y. 2011) ("[I]t is generally improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a 'chronic litigant.'"). "The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent." *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) (citing *McCormick on Evidence* § 196 at 578–81 (3d ed. 1984); 3A J. Wigmore, *Evidence* §§ 963, 981 (Chadbourn rev. 1970)).

---

[2]    Again, the 403 balancing test is reversed for evidence within the scope of Rule 412, such evidence can be introduced only if "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."

While "[p]rior [or pending] lawsuits may be admissible if used for one of the proper purposes listed in Rule 404(b) . . . Defendant[ has] given no indication that [he] would use [this evidence] for any such purpose." *Thompson*, 2022 WL 17253464, at *4 (citing *Williams v. Geraci*, 2020 WL 5848738, at *11 (E.D.N.Y. Sept. 30, 2020)). And for good reason: every other conceivable purpose runs up against an independent evidentiary bar. For instance, Defendant could not impeach Plaintiff with evidence of other lawsuits, as "impeaching the victim's truthfulness . . . [is] not [a] recognized exception[] to Rule 412." *Supra* at 5, n.1 (collecting cases). The Court should thus exclude all references to Plaintiff's other pending lawsuits.

## V.    THE COURT SHOULD EXCLUDE ALL REFERENCES TO DEFENDANT'S FINANCIAL STATUS, NET WORTH, AND PURPORTED INSOLVENCY UNTIL THE PUNITIVE DAMAGES PHASE

"It is clear that with respect to compensatory damages the wealth of either party has no bearing in law, and hence [] is not discoverable." *Rupert v Sellers*, 48 A.D.2d 265, 268 (4th Dep't 1975); *see also Dufresne v Duemler*, 108 A.D.2d 1102 (3d Dep't 1985) (same). Prior to the computation of punitive damages, evidence concerning a defendant's "net worth . . . or other aspects of [his] financial condition" is "not relevant and unduly prejudicial." *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F.Supp.3d 558, 580 (S.D.N.Y. 2017); *see also McBeth v. Porges*, 2018 WL 5997918, at *3 (S.D.N.Y. Nov. 15, 2018) ("Evidence of individual wealth 'is generally inadmissible in trials not involving punitive damages'") (citation omitted).

Although Defendant resides in a lavish Bel Air mansion and has a lucrative professional relationship with Mariah Carey and other titans of his industry, *see* ECF No. 156 at 7-11 (Plaintiff's Memorandum of Law in Opposition to Defense Counsel's Motion to Withdraw), he pleads insolvency. But even crediting his claims, evidence relating to Defendant's financial woes could only be relevant *after* the jury determines that Plaintiff is entitled to punitive damages. Before then, this evidence only prejudices Plaintiff and confuses the issues by allowing Defendant to present

an impermissible basis for awarding fewer compensatory damages or returning a no liability verdict: undue sympathy for Defendant's financial situation. *See Marshall v. Port Auth. of New York and New Jersey*, 2022 WL 17491006, at *6 (S.D.N.Y. Dec. 5, 2022) ("[F]orcing [a party] to offer evidence" of wealth and financial status "would cause prejudice[,]" "confuse the jury, and [] result in a waste of time").

Federal Rule of Civil Procedure 42(b) provides that the court may, "to avoid prejudice . . . order a separate trial of one or more separate issues." Courts thus "bifurcat[e ] punitive damages claim[s] and reserve[e] trial" on issues relating to defendants' financial status "until after a finding on liability and compensatory damages." *Marshall*, 2022 WL 17491006, at *6; *see also Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373-74 (2d Cir. 1988). New York law likewise mandates that evidence of defendants' wealth only come in after the jury determines that "[the] plaintiff is entitled to punitive damages." *Rupert*, 48 A.D.2d at 272; *see also James D. Vollertsen Assocs. v John T. Nothnagle, Inc.*, 48 A.D.2d 1007 (4th Dep't 1975) (same). The Court should therefore exclude all references to Defendant's net worth or financial status until the jury determines that Plaintiff is entitled to punitive damages. Even then the Court should only allow that evidence to enter at that time if it is authenticated and substantiated.

## VI.    THE COURT SHOULD ADMIT EVIDENCE CONCERNING DEFENDANT'S OTHER WORKPLACE SEXUAL CONDUCT AND ASSOCIATIONS[3]

---

[3]    It is appropriate to admit evidence of Defendant's prior sexual misconduct and simultaneously exclude evidence of Plaintiff's prior sexual acts. Indeed, in erecting a presumptive barrier to admission of the prior sexual acts of plaintiffs, *see* Fed. R. Evid. 412, while at the same time lowering the evidentiary hurdles for admission of prior sexual assaults committed by defendants, the Federal Rules recognize that there is not symmetry between the probativeness of the past acts of victims and perpetrators. Whereas the past sexual relationships of Plaintiff that Defendant seeks to admit primarily involve non-consensual acts committed by others against her, and thus shed no light on Plaintiff's character, *see e.g.*, *Gowens v. Tidwell*, 2013 WL 2285446, at *3 (E.D. Mich. May 23, 2013) ("[T]he distress of sexual assault is rooted in the violation of one's body without consent and not in the number of sexual partners that a person has *chosen* by act of free will") (emphasis in original), Defendant's prior misconduct is suggestive of his *modus*

In 2017, Defendant stepped down as CEO of Epic Records following allegations from an assistant—who had worked with him for just over a year—that he sexually harassed and retaliated against for turning down his advances, and Defendant's company, Sony, settled with the accuser. *See* Hannah Karp, *L.A. Reid's Epic Records Exit Followed Harassment Claim by Female Staffer*, Hollywood Reporter, May 14, 2017, https://www.hollywoodreporter.com/news/music-news/music-exec-la-reids-epic-records-exit-followed-allegations-by-female-staffer-1003665/.

> Seeking a settlement, the lawyer alleged that Reid had harassed his client on a daily basis over the course of a year, humiliating her with inappropriate remarks about her appearance and icing her out when she rebuffed his advances. The letter also alleged that other high-ranking Epic executives knew about Reid&#8217;s supposed misconduct, with one of the assistant&#8217;s superiors warning her not to speak out. &#8220;Before you say anything more, think about what that means for you. Just think about what it means,&#8221; the executive allegedly told the assistant.

During his deposition Reid acknowledged that he was aware of the settlement though he did not pay it, *see* Exhibit 1 (L.A. Reid Deposition Transcript) at 289-91, the company paid instead and fired him. *See* Exhibit 2 (2016 Sony Settlement Agreement). Defendant denies the allegations.

Defendant was also accused of sexual harassment by his assistant, Kim Phan. *See* Ex. 3 (Karen Kwak Deposition Transcript) at 203-05. This led to an investigation where Kwak was questioned by HR at the label about the harassment of Kim Phan. *See id*. Defendant denies the allegations.

Cherub Moore an Arista artist has provided the following account:

> "I was a signed solo artist on Arista Records in 2001-2002. I had a huge song that the label was excited to release because they thought it would be a big hit. They were slated to release my single and pressed up the vinyl [made physical copies of the album] to have everything shipped out to the DJ's when LA Reid accosted me at a Grammy party and told me I "owed him". He told my A&R at the time, Mark Pitts, that he wanted to sleep with me. I responded directly to him that night that I would not be sleeping with him. The **next day** they pulled the plug on my single, closed my budget and within a few months, dropped me from the label."

---

*operandi*. Moreover, Rule 415 confirms that Defendant's prior sexual misconduct can be used to suggest that he has a propensity to engage in such behavior. *See infra* at VI.B.

In a televised interview, Defendant's ex-wife Pebbles recounts an affair that the Defendant has with another artist, Chili, a young woman she considered a mentee of the pair when they were spouses and business partners at La Face records. *See e.g.*, Allison Takeda, *Pebbles Reid Claims TLC's Chilli Had an Affair With Ex-Husband L.A. Reid, Slams VH1 Biopic*, U.S. WEEKLY, Nov. 14, 2013, https://www.usmagazine.com/entertainment/news/pebbles-reid-claims-tlcs-chilli-had-an-affair-with-ex-husband-la-reid-slams-vh1-biopic-20131411/. On information and belief, there are also evidence of additional instances of Defendant having inappropriate sexual contact with subordinates throughout his career. *See* Ex. 3. at 206:19-207:04.

### A. Evidence of Defendant's Non-Assault Harassment or Ostensibly Consensual Workplace Relationships is Admissible as it Establishes His *Modus Operandi*, and the Probative Value of This Evidence Outweighs Any Risk of Prejudice

Other wrongs or acts committed by a Defendant "may be admissible [to] prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit takes an "inclusionary" approach to other acts evidence. *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (citation omitted). It allows such evidence to be admitted for any purpose other than to demonstrate propensity, so long as the evidence is relevant to some disputed issue at trial and satisfies Rule 403. *Id*.

Establishing *modus operandi* is a well-recognized proper purpose under Rule 404(b). *See United States v. Moye*, 793 F. App'x 19, 21 (2d Cir. 2019). A *modus operandi* exists where there are "characteristics" shared between the defendant's separate acts that "are sufficiently idiosyncratic to permit a fair inference of a pattern's existence." *United States v. Mohamed*, 148 F.Supp.3d 232, 240-41 (E.D.N.Y. 2015) (*quoting United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984)); *see also Boyce v. Weber*, 2021 WL 2821154, at *5 (S.D.N.Y. July 7, 2021) ("[T]he probative value of any particular Non-Party Accuser's testimony with respect to [the defendant's]

alleged *modus operandi* turns on the *similarity and temporal proximity between that witness's testimony and [the plaintiff's] allegations*") (emphasis added).

In Plaintiff's case, Defendant began making sexual advances towards her once he became CEO of Arista, and once he wielded authority over her. Compl. at ¶¶39-41. He demanded that Plaintiff accompany him privately so that he could sexually assault her while in transport to work functions. *Id*. at ¶¶38-57. After these assaults, and after Plaintiff rebuffed Defendant's subsequent advances—such as his requests to accompany him to his hotel room, *id*. at ¶¶ 53. 56—Defendant retaliated against her, derailing her career and humiliating her in front of colleagues. *Id*. at ¶¶ 52-57. In each of the other act cases, Defendant likewise took advantage of female employees, used his position of authority to lure them into private areas (generally in or near the office) to either demand sexual favors from them or sexually assault them. *See Montanez v. City of Syracuse*, 2019 WL 4328872, at *4 (N.D.N.Y. Sept. 12, 2019) ("Given that [the defendant] disputes [the plaintiff's] assertion that he exposed himself and told [the plaintiff] to give him oral sex, evidence that [the defendant] made very similar advances on [a third party] during a call less than two years before, tends to make more probable the alleged fact that [the defendant] acted in the same manner with [the plaintiff].").

Just like Plaintiff, most of these accusers were unable to continue working with Defendant, as he retaliated against them to undermine their careers, forcing them to leave the companies, retain counsel, and enter settlement agreements with Defendant. So striking are the similarities in Defendant's conduct across these cases that, with the Epic Records accuser, Defendant made "inappropriate remarks about [the employee's] appearance and clothing and [made sexual] propositions that caused her embarrassment and distress, making it impossible for her to continue working at the label," *see* Hannah Karp, *L.A. Reid's Epic Records Exit Followed Harassment*

*Claim by Female Staffer*, Hollywood Reporter, May 14, 2017. https://www.hollywoodreporter.com/news/music-news/music-exec-la-reids-epic-records-exit-followed-allegations-by-female-staffer-1003665/, which is just how Defendant acted towards Plaintiff. Compl. at ¶¶ 52-7. That even these more granular aspects of Defendant's strategy of predation are similar across different women is highly probative of his *modus operandi*. *See Boyce*, 2021 WL 2821154, at *5 (there was sufficient evidence of a *modus operandi* when there were multiple similarities across the defendant's cases of sexual assault, such as making his victims engage in "breathing exercises" and suggesting that they would have more successful careers if they had "fewer inhibitions").

Even if Defendant's sexual relationships with any of these women was at any point in time consensual, and not a function of power asymmetry, this demonstrates Defendant's *modus operandi* of having sexual intercourse in the office with employees and using his authority to demand sexual favors from them. *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774-75 (5th Cir. 2009) ("Evidence that [the defendant] harassed other parties was admissible for purposes other than 'propensity.' At trial, the Appellees' portrayed [the defendant] as an intimidating boss with a particular *modus operandi* in making sexual overtures to female subordinates.")

Beyond these similarities, each of the cases described above, save the Epic Records case, occurred contemporaneously with or soon after Plaintiff's time at Arista. *See id*. (non-party accusations probative as *modus operandi* evidence because "the events described by the[] six witnesses allegedly occurred between 2008 and 2011, only a few years before the conduct alleged by [the plaintiff]").[4]

---

[4]    *See infra* at VI.B. for balancing of the probative value of the evidence of Defendant's other sexual acts with the claimed prejudicial effects.

**B.    Evidence Relating to Defendant's Sexual Assaults of Subordinates is Admissible Under Federal Rule of Evidence 415**

Rule 415 provides that, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault … the court may admit evidence that the party committed any other sexual assault." Such evidence "may be considered on any matter to which it is relevant," including a defendant's "propensity to commit the alleged acts," creating an exception to the common law's general prohibition on the use of propensity evidence. *Boyce v. Weber*, 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021) (citing *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018)). In creating that exception, Congress "considered knowledge that the defendant has committed [sexual assault] on other occasions to be critical in assessing the relative plausibility of sexual assault claims and accurately deciding cases." *Id*. at *8 (quoting *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017)). "The district court may [therefore] admit evidence of other sexual assaults under Rule 415 when: (1) the civil case before it involves a claim for relief based on a party's alleged sexual assault; (2) the court determines that a jury could reasonably find by a preponderance of the evidence that the party committed the other sexual assault (as defined by Rule 413); and (3) applying Rule 403, the court further determines that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Carroll v. Trump*, 124 F.4th 140, 156 (2d Cir. 2024).

Here, the case is "based on" sexual assault: Plaintiff alleges that Defendant committed sexual assault and battery, and that his conduct would have violated the New York penal code. *See* Compl. at ¶¶ 79-82. Plaintiff's claims for false imprisonment and intentional infliction of emotional distress arise from this same sexual assault. *See Boyce*, 2021 WL 2821154, at *9 (the relevant question is "whether an alleged sexual assault constitutes a factual premise of the plaintiff's claim"); *United States v. Barnason*, 852 F.Supp.2d 367, 373 (S.D.N.Y. 2012) (admitting

23

Rule 415 evidence in connection with Fair Housing Act claim); *Carroll v. Trump*, 660 F.Supp.3d 196, 201 (S.D.N.Y. 2023) (defamation claim which turned on whether the defendant was lying about having sexually assaulted the plaintiff was "based on [] party's alleged sexual assault").

Rule 413 defines sexual assault as "contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus."; or "contact, without consent, between the defendant's genitals or anus and any part of another person's body." F.R.E. 413(d)(2)(3). There will be testimony at trial that Defendant's conduct with respect to the non-party accusers rose to that level. Evasion and stonewalling by Defendant and witnesses, *see e.g.*, Ex 3. at 203:01-207:20, and the confidentiality of settlements with certain accusers, contributes to a lack of clarity about the precise nature of Defendant's conduct.

However, the Court "need not itself find by a preponderance of the evidence that the other assaults occurred. Instead, the court must 'ask whether a jury could reasonably make such a finding.'" *Carroll*, 124 F.4th at 156 (citing *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 152 (3rd Cir. 2002)); *Eckhart v. Fox News Network, LLC*, 2025 WL 786536, at *13 (S.D.N.Y. March 12, 2025) (other sexual act evidence admissible when a "reasonable jury could believe those accounts and infer that [the defendant] engaged in similar misconduct with [the plaintiff]"). Moreover, even if in any individual case the Defendant did not successfully come into "contact with particular parts of [his victim's] anatomy . . . evidence is nevertheless admissible that tends to show [that the D]efendant's 'ultimate goal' was to 'bring his hands or other parts of his anatomy in contact with' the [victim's] genitals and/or anus." *Doe v. Gooding*, 2023 WL 3805836, at *1 (S.D.N.Y. June 2, 2023) (citation omitted).

Finally, as noted, *supra* at VI.A., the probative value of evidence of Defendant's other sexual acts substantially outweighs the risk of prejudice, especially as the "Second Circuit has held

that Rule 403 should be applied less rigorously in evaluating Rule 415 evidence to avoid Rule 403 from precluding evidence Congress intended to make admissible." *Barnason*, 852 F.Supp.2d at 376. Indeed, the "*presumption* is that [] evidence admissible pursuant to [Rules 413–15] is [] relevant and probative, and . . . not outweighed by any risk of prejudice.'" *United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997) (citation omitted) (emphasis added).

Any risk of unfair prejudice to Defendant is remote since the conduct that the accusers allege that Defendant committed is not "any more sensational or disturbing" than the conduct alleged by Plaintiff. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see also United States v. Graham*, 2015 WL 6161292, at *4 (S.D.N.Y Oct. 20, 2015) (probative value of testimony about the defendant's participation in other prostitution activities was no more sensational or disturbing than the charged sex trafficking crime).

As for confusing the issues, "[j]urors are frequently called upon to keep track of multiple events and people." *Boyce*, 2021 WL 2821154, at *6. Moreover, admitting references to the accounts of other accusers—one of whom is already testifying—is not needlessly cumulative. *See id.* at *5 (admitting the testimony of six nonparty accusers of sexual assault under Rule 404(b)). The Court should therefore admit the evidence described above pursuant to Rule 415.

## VII.  FOR THE REASONS STATED IN THE ADVERSE INFERENCE MOTION PLAINTIFF SHOULD BE PERMITTED TO ADMIT EVIDENCE OF DEFENDANT'S SPOLIATION OF EVIDENCE

In a letter motion sent to the Court, Plaintiff outlined how Defendant has spoliated evidence, despite repeated requests from Plaintiff to preserve such evidence. *See* ECF No. 174 (Letter Motion for Leave to File Motion for Adverse Inference). Plaintiff should thus be permitted to reference Defendant's spoliation, and the resultant adverse inference.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the foregoing

motion *in limine* and exclude the evidence described above from the trial of this matter, and admit

the evidence described above in the trial of this matter.

Dated: New York, New York                          BOIES SCHILLER FLEXNER LLP
      July 21, 2025

                                            */s/ Kenya K. Davis*

                                            Kenya K. Davis (NY Bar #4162483)
                                            BOIES SCHILLER FLEXNER LLP
                                            1401 New York Ave., NW
                                            Washington, DC 20005
                                            (202) 237-9608
                                            kdavis@bsfllp.com

                                            Sigrid S. McCawley (NY Bar # 6051460)
                                            Daniel J. Crispino (*pro hac vice*)
                                            Amber Stewart (*pro hac vice*)
                                            BOIES SCHILLER FLEXNER LLP
                                            401 E. Las Olas Blvd., Suite 1200
                                            Fort Lauderdale, FL 33301
                                            (954) 356-0011
                                            smccawley@bsfllp.com
                                            dcrispino@bsfllp.com
                                            astewart@bsfllp.com

                                            *Counsel for Plaintiff Drew Dixon*

## <u>CERTIFICATE OF MEET AND CONFER</u>

Pursuant to the Court's Individual Rule and Practice in Civil Cases 8(G), undersigned counsel conferred with opposing counsel, Gregory P. Korn, before filing Plaintiff's Motions in Limine. Opposing counsel do not consent to any of Plaintiff's Motions in Limine.